**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| CARBON HEALTH TECHNOLOGIES, INC., et al., | Case No. 26-90306 (CML) |
| Debtors. [1] | (Joint Administration Requested) |

**DEBTORS' <u>EMERGENCY</u> MOTION FOR ENTRY OF ORDERS (I) ESTABLISHING NOTIFICATION PROCEDURES AND APPROVING RESTRICTIONS ON (A) CERTAIN TRANSFERS OF INTERESTS IN DEBTORS AND (B) CERTAIN WORTHLESS STOCK DEDUCTION CLAIMS; (II) ESTABLISHING NOTIFICATION PROCEDURES AND APPROVING RESTRICTIONS ON CERTAIN TRANSFERS OF CLAIMS AGAINST DEBTORS; AND (III) GRANTING RELATED RELIEF**

> **Emergency relief has been requested. Relief is requested not later than February 3, 2026.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on February 3, 2026, at 2:00 p.m. (prevailing Central Time). Participation at the hearing will only be permitted by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. Once connected, you will be asked to enter the conference room number. Judge Lopez's conference room number is 590153. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Lopez's homepage. The meeting code is "JudgeLopez". Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Lopez's homepage. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

---

[1]   A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/CarbonHealth.The location of Carbon Health Technologies, Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 500 East Remington Drive, Suite 20, Sunnyvale, CA 94087.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state the following in support of this motion (this "Motion"):

## **RELIEF REQUESTED**

1.      By this Motion, pursuant to sections 362 and 105(a) of title 11 of the United States Code (the "Bankruptcy Code"), the Debtors request entry of an order (i) authorizing the Debtors to establish procedures (each as attached to the Proposed Orders (defined below) as **Exhibit 1**, collectively, the "Procedures") to protect the potential value of the Debtors' carryforwards of consolidated net operating losses ("NOLs"), disallowed business interest expense, and certain other tax benefits (including certain state tax attributes) (collectively, the "Tax Attributes") for use during the Chapter 11 Cases and in connection with any post-emergence disposition of assets of the Debtors; and (ii) granting related relief.

2.      The Procedures apply to the beneficial ownership (including direct and indirect ownership) of common stock (the "CHTI Stock") of Carbon Health Technologies, Inc. ("CHTI"), and any options or similar rights (within the meaning of applicable U.S. Treasury regulations) to acquire such stock ("Options"), as well as to any claim (for U.S. federal income tax reporting purposes) of a worthlessness deduction under section 165 of title 26 of the United States Code (the "Tax Code") by a Majority Holder (defined below) with respect to the beneficial ownership of CHTI Stock (a "Worthless Stock Deduction").

3.      In addition, and subject to entry of the Claim Procedures Order, the Procedures also apply to the beneficial ownership (including direct and indirect ownership) of prepetition claims (each, as defined in section 101(5) of the Bankruptcy Code, a "Claim") against one or more of the Debtors, under certain circumstances.

4.      Accordingly, the Debtors request that the Court (A) enter the proposed form of order attached hereto as **Exhibit A** (the "Stock Procedures Order"), which, *inter alia*, (i) approves the Stock Procedures (defined below); (ii) establishes a deadline to object to the Claims Procedures (defined below) and a hearing date with respect thereto; and (iii) grants related relief; and (B) enter the proposed form of order attached hereto as **Exhibit B** (the "Claims Procedures Order," and together with the Stock Procedures Order, the "Proposed Orders"), which, *inter alia*, (i) approves the Claims Procedures; and (ii) grants related relief.

## JURISDICTION

5.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## GENERAL BACKGROUND

6.      On the date hereof (the "Petition Date"), the Debtors each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code. The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee of creditors has been appointed in these Chapter 11 Cases.

7.      Carbon Health Technologies, Inc. ("Carbon Health") is a leading urgent care ("UC") and primary care ("PC") medical service provider with approximately 93 locations nationwide offering comprehensive services, including UC, PC, pediatric care, workplace health and clinical research, complemented with virtual care access. Carbon Health serves as a primary entry point to the healthcare ecosystem, offering a comprehensive array of services that cater to diverse patient communities, enhancing accessibility and quality of care.

8.     Carbon Health leverages its proprietary platform, CarbyOS, to implement a digital strategy that enhances patient engagement and drives operating efficiency. This approach enables Carbon to provide a versatile range of services across care locations through improved operational efficiency.

9.     Additional information regarding the Debtors' business and capital structure and the circumstances leading to the commencement of these Chapter 11 Cases is set forth in the *Declaration of Kerem Ozkay, in Support of the Debtors' Chapter 11 Petitions and First Day Relief* (the "<u>First Day Declaration</u>"),[2] which has been filed with the Court contemporaneously herewith and is incorporated by reference herein.

**<u>TAX ATTRIBUTES</u>**

10.     The Debtors have certain Tax Attributes, which include, as of the Petition Date, estimated available NOLs of approximately $724 million (through December 31, 2024), an additional amount of available NOLs of approximately $60 million (relating to tax year 2025), and certain other favorable Tax Attributes, including consolidated disallowed business interest expense carryforwards. The Tax Attributes are valuable assets of the Debtors' estates. The Tax Code generally permits a corporation to carry forward its NOLs and disallowed business interest expense to reduce future taxable income, thereby reducing such corporation's tax liability in future periods.[3] Accordingly, absent any intervening limitations and depending on future operating results, the Tax Attributes are available to offset the income realized through the taxable year that includes the effective date of a chapter 11 plan and potentially thereafter (subject to reduction in part due to the discharge of claims and to the additional limitations discussed below).

---

[2]     A capitalized term used but not otherwise defined herein shall have the meaning ascribed to it in the First Day Declaration.

[3]     *See* 26 U.S.C. §§ 172, 163(j).

11. The Debtors' ability to use the Tax Attributes to reduce future tax liability is subject to certain statutory limitations. Sections 382 and 383 of the Tax Code limit a corporation's ability to use its Tax Attributes to offset future income and tax liability after the corporation has undergone an "ownership change" within the meaning of section 382 of the Tax Code (and such ownership change, an "<u>Ownership Change</u>"). Pursuant to section 382 of the Tax Code, an Ownership Change generally occurs when the percentage of a corporation's equity held by its "5-percent shareholders" (as that term is used in section 382 of the Tax Code, a "<u>5-Percent Shareholder</u>") increases by more than fifty (50) percentage points above the lowest percentage of ownership owned by such shareholder(s) at any time during the relevant testing period (generally three years, or shorter depending on the applicable circumstances).[4]

12. Further, section 382(g)(4)(D) of the Tax Code generally provides that, if (a) a 50-percent shareholder (which includes a person who beneficially owns or owned, as determined for tax purposes, at least fifty percent (50%) of the stock by value at any time during the applicable three-year period)[5] in a corporation claims a worthlessness deduction with respect to such stock during any taxable year and (b) the stock with respect to which such worthlessness deduction is taken is beneficially owned by the holder at the end of such holder's taxable year, then the holder is treated as newly acquiring its beneficial ownership of such stock on the first day of the holder's next taxable year and is treated as never having owned such beneficial ownership during any prior year for purposes of testing whether an Ownership Change has occurred. Thus, an Ownership Change generally occurs when a 50-percent shareholder claims a worthlessness deduction with respect to its beneficial ownership of stock of a corporation.

---

[4]  *See* 26 U.S.C. § 382(g).

[5]  Such three-year period is separate from, and irrespective of, the duration of the testing period for Ownership Change purposes.

13.     The Debtors believe that they have significant Tax Attributes that would be adversely affected (and could be effectively eliminated) by an Ownership Change during the pendency of these Chapter 11 Cases. If such an Ownership Change occurs, the valuation for determining the annual amount of useable Tax Attributes is expected to be at or close to zero, which may effectively eliminate the availability of such Tax Attributes. It is therefore in the best interests of the Debtors and their stakeholders to restrict both transfer of the beneficial ownership of CHTI Stock and any claim of a Worthless Stock Deduction by a Majority Holder (as defined below) that could result in an Ownership Change *before* the effective date of any chapter 11 plan or other applicable bankruptcy court order. Such a restriction would protect the Debtors' ability to use the Tax Attributes during the pendency of these Chapter 11 Cases and in connection with any chapter 11 plan.

14.     Although, as described below, the limitations imposed by section 382 of the Tax Code may be significantly lessened when an Ownership Change occurs pursuant to a confirmed chapter 11 plan (or applicable court order), the benefits of a confirmed plan (or court order) would not be applied retroactively to reduce limitations on Tax Attributes imposed by a *previous* Ownership Change.[6]  Accordingly, pursuant to this Motion, the Debtors seek to put in place the Procedures in order to monitor and potentially restrict (i) acquisitions, dispositions and trading with respect to the beneficial ownership (including direct and indirect ownership) of CHTI Stock and Options to acquire beneficial ownership of CHTI Stock, and (ii) the claiming of a Worthless Stock Deduction by any Majority Holder with respect to its beneficial ownership of CHTI Stock.

15.     The Debtors may propose a chapter 11 plan that involves the issuance of new stock in the Debtors (or any successor to the Debtors) and the distribution of such stock to certain

---

[6]     *See* 26 U.S.C. § 382(l)(5), (6).

creditors in satisfaction, in whole or in part, of their respective Claims against the Debtors. This issuance and distribution likely would result in an Ownership Change. In such event, it is possible that the special relief afforded by section 382(l)(5) of the Tax Code could be available to and beneficial for the Debtors, and that the Debtors would, therefore, seek to qualify the restructuring for such relief. Such relief, however, may become unavailable to the Debtors if the Claim Procedures (defined below) concerning the trading and accumulation of certain Claims after the Petition Date and prior to the effective date of a chapter 11 plan are not effective. Accordingly, through the Claim Procedures, the Debtors also seek to establish procedures to monitor and potentially restrict the trading and accumulation of Claims against the Debtors.

## PROCEDURES RELATING TO CHTI STOCK OWNERSHIP, ACQUISITION, AND DISPOSITION

16.     By establishing procedures for monitoring and restricting the transfer of any beneficial ownership of CHTI Stock, and the claiming of a Worthless Stock Deduction by any Majority Holders with respect to their beneficial ownership of CHTI Stock, the Debtors can preserve their ability to seek the necessary relief at the appropriate time if it appears that transfers of such CHTI Stock may jeopardize the Debtors' ability to benefit from their Tax Attributes. Therefore, the Debtors propose the following notice, restrictions, and other procedures regarding ownership and transfers of CHTI Stock (the "Stock Procedures"):

(i)     Definitions. For purposes of these Stock Procedures, the following terms have the following meanings:

(1)     "CHTI Stock" or shall mean any stock issued by Debtor CHTI. For the avoidance of doubt, by operation of the definition of beneficial ownership, an owner of an Option to acquire CHTI Stock may be treated as the owner of such CHTI Stock.

(2)     "Option" shall mean any contingent purchase, warrant, convertible debt, put, stock subject to risk of forfeiture, contract to acquire stock, or similar interest, regardless of whether such interest is contingent, subject to vesting or otherwise not currently exercisable.

(3)    "<u>Beneficial ownership</u>" (and any variation thereof including "beneficially owns") of CHTI Stock and Options to acquire CHTI Stock shall be determined in accordance with applicable rules under section 382 of the Tax Code, Treasury Regulations, and rulings issued by the Internal Revenue Service (the "<u>IRS</u>"), and as provided herein, thus, shall include, without limitation, (i) direct and indirect ownership of CHTI Stock, without regard to any rule that treats stock of an entity as to which the constructive ownership rules apply as no longer owned by that entity (*e.g.*, a holding company would be considered to beneficially own all stock owned or acquired by its subsidiaries), (ii) ownership by a holder's family members, (iii) any group of persons acting pursuant to a formal or informal understanding to make a coordinated acquisition of stock, and (iv) to the extent set forth in Treasury Regulations section 1.382-4, the ownership of an Option to acquire CHTI Stock.

(4)    "<u>Entity</u>" shall mean any "entity" as such term is defined in Treasury Regulations section 1.382-3(a), including a group of persons who have a formal or informal understanding among themselves to make a coordinated acquisition of stock.

(5)    "<u>Majority Holder</u>" shall mean any person that either (i) beneficially owned at any time since December 31, 2025 at least 61,917,982 shares of CHTI Stock (representing approximately 45.0% of the lowest amount of outstanding shares of CHTI Stock at any time since that date (approx. 137,595,516 shares)), or (ii) would be a "50-percent shareholder" (within the meaning of section 382(g)(4)(D) of the Tax Code) of CHTI Stock if such person claimed a Worthless Stock Deduction on its federal income tax return at any time on or after the Petition Date.

(6)    "<u>Substantial Stockholder</u>" shall mean any person or Entity that beneficially owns at least 6,535,787 shares of CHTI Stock (representing approximately 4.75% of all issued and outstanding common shares as of the Petition Date (approx. 137,595,516 shares)). For the avoidance of doubt, by operation of the definition of Beneficial Ownership, an owner of an Option to acquire CHTI Stock may be treated as the owner of such CHTI Stock.

(7)    "<u>Worthless Stock Deduction</u>" shall mean any claim (for U.S. federal income tax reporting purposes) of a worthlessness deduction under section 165 of the Tax Code with respect to the beneficial ownership of CHTI Stock.

(8)    "<u>Disclosure Parties</u>" shall mean (i) counsel to the Debtors, Pachulski Stang Ziehl & Jones LLP, Attn: James O'Neill (joneill@pszjlaw.com) and Brooke Wilson (bwilson@pszjlaw.com), (ii) counsel to the DIP Agent, KTBS Law LLP, Attn: Nir Maoz (nmaoz@ktbslaw.com) and (iii) counsel for any statutory committee of unsecured creditors appointed in these cases.

(ii)    <u>Notice of Substantial Ownership.</u> Any person or Entity that beneficially owns, at any time on or after the Petition Date, CHTI Stock in an amount sufficient to qualify such person or Entity as a Substantial Stockholder shall file with the Bankruptcy Court, and serve upon the Disclosure Parties, a notice (a "<u>Substantial Stock Ownership Notice</u>") in substantially the form annexed to the Stock Procedures as **Exhibit 2**, which describes specifically and in detail the person's or Entity's beneficial ownership of CHTI Stock, on or before the date that is the later of: (a) twenty (20) calendar days after the entry of an order approving these Stock Procedures, and (b)

ten (10) business days after that person or Entity qualifies as a Substantial Stockholder. At the election of the Substantial Stockholder, the Substantial Stock Ownership Notice to be filed with this Court (but not the Substantial Stock Ownership Notice that is served upon the Disclosure Parties) may be redacted to exclude the Substantial Stockholder's taxpayer identification number and the amount of CHTI Stock that the Substantial Stockholder beneficially owns.

(iii)    Acquisition of CHTI Stock. At least twenty (20) business days prior to the proposed date of any transfer in the beneficial ownership of CHTI Stock (including directly or indirectly, and including the grant or acquisition of Options, as defined herein, to acquire beneficial ownership of such stock), or exercise of any Option to acquire beneficial ownership of CHTI Stock, that would result in an increase in the amount of CHTI Stock beneficially owned by any person or Entity that currently is or that would result in a person or Entity becoming a Substantial Stockholder (a "Proposed Acquisition Transaction"), such acquiring or increasing person, Entity or Substantial Stockholder (a "Proposed Transferee") shall file with the Bankruptcy Court, and serve upon the Disclosure Parties, a Notice of Intent to Purchase, Acquire, or Otherwise Accumulate CHTI Stock (an "Acquisition Notice"), in the form annexed to the Stock Procedures Order as **Exhibit 3**, which describes specifically and in detail the Proposed Acquisition Transaction. At the election of the Proposed Transferee, the Acquisition Notice to be filed with this Court (but not the Acquisition Notice that is served upon the Disclosure Parties) may be redacted to exclude the Proposed Transferee's taxpayer identification number and the amount of CHTI Stock that the Proposed Transferee beneficially owns.

(iv)    Disposition of CHTI Stock. At least twenty (20) business days prior to the proposed date of any transfer or other disposition in the beneficial ownership of CHTI Stock (including directly and indirectly, and Options to acquire beneficial ownership of CHTI Stock) that would result in either a decrease in the amount of CHTI Stock beneficially owned by a Substantial Stockholder or a person or Entity ceasing to be a Substantial Stockholder (a "Proposed Disposition Transaction," and together with a Proposed Acquisition Transaction, a "Proposed Transaction"), such selling or decreasing person, Entity, or Substantial Stockholder (a "Proposed Transferor") shall file with the Bankruptcy Court, and serve upon the Disclosure Parties, a Notice of Intent to Sell, Trade, or Otherwise Transfer CHTI Stock (a "Disposition Notice", and together with an Acquisition Notice, a "Trading Notice"), in the form annexed to the Stock Procedures Order as **Exhibit 4**, which describes specifically and in detail the proposed transaction in which CHTI Stock would be transferred. At the election of the Proposed Transferor, the Disposition Notice to be filed with this Court (but not the Disposition Notice that is served upon the Disclosure Parties) may be redacted to exclude the Proposed Transferor's taxpayer identification number and the amount of CHTI Stock that the Proposed Transferor beneficially owns.

(v)    Notice of Intent to Claim a Worthless Stock Deduction. At least twenty (20) business days before a Majority Holder files any federal income tax return, or any amendment to such a return, claiming a Worthless Stock Deduction for a tax year of the Majority Holder ending on or before the effective date of a chapter 11 plan for the Debtors, such Majority Holder shall file with this Court and serve upon the Disclosure Parties advanced written notice of the intended tax deduction (a "Worthless Stock Deduction Notice"), in substantially the form annexed to the Stock Procedures Order as **Exhibit 5**. At the election of the Majority Holder, the Worthless Stock Deduction Notice to be filed with this Court (but not the Worthless Stock Deduction Notice that is served upon the Disclosure Parties) may be redacted to exclude the Majority Holder's taxpayer

identification number and the amount of CHTI Stock that the Proposed Transferor beneficially owns.

(vi)     <u>Objection Procedures.</u> The Debtors shall have fifteen (15) business days after the filing of a Trading Notice or Worthless Stock Deduction Notice (the "<u>Objection Period</u>") to file with the Bankruptcy Court and serve on a Proposed Transferee or a Proposed Transferor, as the case may be, an objection (an "<u>Objection</u>") to any Proposed Transaction described in such Trading Notice or any Worthless Stock Deduction described in such Worthless Stock Deduction Notice. For the avoidance of doubt, the Debtors do not seek to limit the rights that any other parties in interest may have to object to any Proposed Transaction. If the Debtors file an Objection by the expiration of the Objection Period (the "<u>Objection Deadline</u>"), then the Proposed Transaction shall not be effective unless approved by a final and non-appealable order of the Bankruptcy Court. If the Debtors do not file an Objection by the Objection Deadline or if the Debtors provide written authorization to the Proposed Transferee or the Proposed Transferor, as the case may be, or the Majority Holder, as applicable, approving the Proposed Transaction or the Worthless Stock Deduction prior to the Objection Deadline, then such Proposed Transaction or the Worthless Stock Deduction may proceed solely as specifically described in the applicable Trading Notice or Worthless Stock Deduction Notice. Any further Proposed Transaction or Worthless Stock Deduction must be the subject of an additional Trading Notice or Worthless Stock Deduction Notice and Objection Period.

(vii)     <u>Noncompliance with the Procedures.</u> Any acquisition, disposition, or trading in the beneficial ownership of, or Worthless Stock Deduction with respect to, CHTI Stock (including directly and indirectly, and Options to acquire beneficial ownership of CHTI Stock) in violation of the Stock Procedures shall be null and void *ab initio* pursuant to the Bankruptcy Court's equitable powers under section 105(a) of the Bankruptcy Code and as an act in violation of the automatic stay under section 362 of the Bankruptcy Code. Furthermore, any person or Entity that acquires, disposes of, or trades in the beneficial ownership of, or claims a Worthless Stock Deduction with respect to, CHTI Stock (including directly and indirectly, and Options to acquire beneficial ownership of CHTI Stock) in violation of the Stock Procedures shall be subject to sanctions as provided by law.

(viii)     <u>Debtors' Right to Waive.</u> The Debtors may, in their sole and exclusive discretion, waive, in writing, any and all of the foregoing restrictions, stays, and notification procedures.

## <u>RESTRICTIONS RELATING TO TRADING IN CLAIMS</u>

17.     By establishing the procedures described below with respect to Claims (the "<u>Claims Procedures</u>"),[7] the Debtors can preserve their ability to determine and, if applicable, preserve the availability of the special relief afforded by section 382(l)(5) of the Tax Code. Therefore, the

---

[7]   The complete proposed Claims Procedures are set forth in **<u>Exhibit 1</u>** to the Claims Procedures Order and incorporated herein by reference.

Debtors respectfully request that the Court approve the Claims Procedures in the Claims Procedures Order.

18.     As described in further detail below, the Claims Procedures would permit the full trading of Claims until the Debtors or another Plan Proponent (as hereinafter defined) files a chapter 11 plan contemplating the potential utilization of section 382(l)(5) of the Tax Code, at which point, the described procedures would apply, and would permit, if necessary for the Debtors to utilize that provision, the Debtors to seek to require that a purchaser of certain Claims after the Petition Date resell some or all of such Claims. The following are certain principal provisions of the proposed Claims Procedures:

(i)     Disclosure of 382(l)(5) Plan. If the proponent of a Plan (a "Plan Proponent") determines that the Debtors likely will benefit from the application of section 382(l)(5) of the U.S. Tax Code and reasonably anticipates that the Debtors (or any successors thereto) (the "Post-Emergence CHTI") will invoke such section (a "382(l)(5) Plan"), then the Plan Proponent shall, to the extent applicable, disclose the following in its proposed disclosure statement or, in the case of items (3) through (5) described below, a later, separate notice (collectively, the "Proposed 382(l)(5) Disclosure Statement"):

(1)     Adequate information about the incremental tax benefits anticipated to be realized through the use of section 382(l)(5) of the U.S. Tax Code that, taking into account the Debtors' anticipated net unrealized built-in gains or net unrealized built-in losses, would not otherwise be available;

(2)     A summary of any restrictions expected to be imposed on the transferability of securities issued under the Plan in order to preserve such incremental tax benefits;

(3)     The (i) dollar amount of Claims (by class or other applicable classification) expected to result in a one-percent (1%) interest in the equity of Post-Emergence CHTI (the "New CHTI Stock") and (ii) number of any specified interests (the "Owned Interests") in the Debtors, including but not necessarily limited to CHTI Stock, expected to result in a one-percent (1%) interest in the New CHTI Stock, in each case based upon then-available information;

(4)     A specified date (the "Determination Date") that is not less than ten (10) calendar days after the service of the notice of the hearing with respect to the Proposed 382(l)(5) Disclosure Statement; and

(5)     A specified date (the "<u>Reporting Deadline</u>") that is not less than five (5) calendar days after the Determination Date, by which persons or Entities (as such term is defined in the Stock Procedures, an "<u>Entity</u>") must serve on various parties the "<u>Notice of Substantial Claim Ownership</u>" (as defined in section B(ii)(5) of **Exhibit 1** to the Claims Procedures Order) required by these Claims Procedures.

(ii)     <u>Claims Trading Before and After the Determination Date</u>:

(1)     Any person or Entity generally may trade freely and make a market in Claims until the Determination Date.

(2)     After the Determination Date, any acquisition of Claims by a person or Entity who filed or is or was required to file a Notice of Substantial Claim Ownership or by a person or Entity who would be required to file a Notice of Substantial Claim Ownership as a result of the consummation of the contemplated transaction if the proposed acquisition date had been the Determination Date (each such person or Entity, a "<u>Proposed Claims Transferee</u>"), shall not be effective unless consummated in compliance with the Claims Procedures.

(3)     After the Determination Date, at least ten (10) business days prior to the proposed date of any acquisition of Claims by a Proposed Claims Transferee (each acquisition, a "<u>Proposed Claims Acquisition Transaction</u>"), such Proposed Claims Transferee shall serve upon the Plan Proponent and its attorneys (and the Debtors and their attorneys if not the Plan Proponent) and attorneys for any statutory committees appointed in these Chapter 11 Cases (each, an "<u>Official Committee</u>") a notice of such Proposed Claims Transferee's request to purchase, acquire, or otherwise accumulate a Claim (a "<u>Claims Acquisition Request</u>"), in substantially the form annexed to the Claims Procedures Order as **Exhibit 3**, which describes specifically and in detail the Proposed Claims Acquisition Transaction, regardless of whether such transfer would be subject to the filing, notice, and hearing requirements set forth in Bankruptcy Rule 3001.

(4)     The Plan Proponent may determine, in consultation with the Debtors (if not the Plan Proponent) and counsel to any Official Committee, whether to approve a Claims Acquisition Request. If the Plan Proponent does not approve a Claims Acquisition Request in writing within ten (10) business days after the Claims Acquisition Request is filed with the Court, the Claims Acquisition Request shall be deemed rejected.

(iii)   <u>Creditor Conduct and Sell-Downs</u>.

(1)   To permit reliance by the Debtors on Treasury Regulations section 1.382-9(d)(3), upon the entry of the Claims Procedures Order, any "Substantial Claimholder" (as defined in section A(i) of **<u>Exhibit 1</u>** to the Claims Procedures Order) that participates in formulating any chapter 11 plan of or on behalf of the Debtors (which shall include, without limitation, making any suggestions or proposals to the Debtors or their advisors with regard to such a Plan) shall not disclose or otherwise make evident to the Debtors that any Claims in which such Substantial Claimholder has a beneficial ownership are "Newly Traded Claims" (as defined in section A(i) of **<u>Exhibit 1</u>** to the Claims Procedures Order), unless compelled to do so by an order of a court of competent jurisdiction or some other applicable legal requirement; *provided, however*, that the following activities shall not constitute participation in formulating a Plan if, in pursuing such activities, the Substantial Claimholder does not disclose or otherwise make evident (unless compelled to do so by an order of a court of competent jurisdiction or some other applicable legal requirement) to the Debtors that such Substantial Claimholder has beneficial ownership of Newly Traded Claims: filing an objection to a proposed disclosure statement or to confirmation of a proposed Plan; voting to accept or reject a proposed Plan; reviewing or commenting on a proposed business plan; providing information on a confidential basis to counsel to the Debtors; holding general membership on an official committee or an ad hoc committee; or taking any action required by an order of the Court.

(2)   Following the Determination Date, if a Plan Proponent determines that certain persons or Entities must sell or transfer all or a portion of their beneficial ownership of Claims acquired on or after the Petition Date so that the requirements of section 382(l)(5) of the Tax Code will be satisfied, the Plan Proponent may file a motion with the Court for entry of an order—after notice to counsel to any Official Committee, and the relevant claimholder(s) and a hearing— approving the issuance of a notice (each, a "<u>Sell-Down Notice</u>") that such claimholder(s) must sell, cause to sell, or otherwise transfer a specified amount of its beneficial ownership of Claims.

(3)   Notwithstanding anything to the contrary in this Motion, no claimholder shall be required to sell, cause to sell, or otherwise transfer any beneficial ownership of Claims if such sale or transfer would result in the claimholder's beneficial ownership of an aggregate amount of Claims (by class or other applicable classification) that is less than such Substantial Claimholder's "<u>Protected Amount</u>" (as defined in section A(i) of **<u>Exhibit 1</u>** to the Claims Procedures Order).

(4)     Each Sell-Down Notice shall direct the claimholder to sell, cause to sell, or otherwise transfer its beneficial ownership of the amount of Claims specified in the Sell-Down Notice to "Permitted Transferees" (as defined in section A(i) of **Exhibit 1** to the Claims Procedures Order).

(5)     Any person or Entity that violates its obligations under these Claims Procedures shall be precluded from receiving, directly or indirectly, any consideration consisting of a beneficial ownership of New CHTI Stock that is attributable to the "Excess Amount" of Claims (as defined in paragraph A(v)(2) of **Exhibit 1** to the Claims Procedures Order) for such person or Entity, including any consideration in lieu thereof; *provided, however*, that such person or Entity may be entitled to receive any other consideration to which such person or Entity may be entitled by virtue of holding Claims.

(iv)     <u>Noncompliance with the Procedures</u>. Any acquisition, disposition, or trading of the beneficial ownership of Claims against the Debtors in violation of these Claims Procedures shall be null and void *ab initio* as an act in violation of the automatic stay under section 362 of the Bankruptcy Code and pursuant to the Bankruptcy Court's equitable powers under section 105(a) of the Bankruptcy Code. Furthermore, any person (including any Entity) that violates these Procedures shall be subject to sanctions as provided by law.

(v)     <u>Debtors' Right to Waive</u>. The Debtors may, in their sole and independent discretion, waive, in writing, any and all restrictions, stays, and notification procedures contained in these Procedures; *provided*, *however*, that after a 382(l)(5) Plan has been properly filed by a Plan Proponent (other than by, or jointly with, the Debtors) and is still actively being pursued before the Court, the consent of such Plan Proponent also shall be necessary for any subsequent waiver to be effective.

## **RELIEF REQUESTED SHOULD BE GRANTED**

### A.     **Automatic Stay Bars Any Equity Transfer That Would Diminish or Limit Debtors' Interests in the Tax Attributes**

19.     In furtherance of the automatic stay provisions of section 362 of the Bankruptcy Code and pursuant to section 105 of the Bankruptcy Code, the Debtors seek authority to monitor and approve (or disapprove) certain changes in the beneficial ownership of, and certain Worthless Stock Deduction claims by a Majority Holder with respect to its beneficial ownership of, CHTI Stock to protect against the occurrence of an Ownership Change during the pendency of these Chapter 11 Cases and thereby to preserve the potential value of the Tax Attributes. The Debtors

also seek to implement certain procedures that would provide for the monitoring of the beneficial ownership of Claims, and for the authorization to seek the sell down of certain Claims acquired during these Chapter 11 Cases in order to preserve the Debtors' ability to avail themselves of relief under section 382(l)(5) of the Tax Code, if such relief is ultimately determined to be desirable and otherwise available.

20.     Pursuant to section 1107(a) of the Bankruptcy Code, a debtor has, among other things, the "implied duty of the debtor-in-possession to 'protect and preserve the estate, including an operating business' going-concern value.'"[8]  Under section 105(a) of the Bankruptcy Code, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."[9]

21.     Section 362 of the Bankruptcy Code enjoins all entities from, among other things, taking any action to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate.[10]  Section 541 of the Bankruptcy Code defines "property of the estate" to include all legal or equitable interests of the debtor in property as of the Petition Date and includes the Tax Attributes.[11]

22.     The Tax Attributes are valuable property of the Debtors' estates and thus are protected, by operation of the automatic stay, from actions that would adversely diminish or eliminate their value, including direct or indirect transfers that would result in an Ownership

---

[8]   *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002)).

[9]   *See CoServ*, 273 B.R. at 497 (holding that sections 105 and 1107 of the Bankruptcy Code provide authority for a debtor-in-possession to pay prepetition claims); *see also In re Tusa-Expo Holdings, Inc.*, Case No. 08-45057-DML-11, 2008 WL 4857954, at *1 (Bankr. N.D. Tex. Nov. 7, 2008); *CEI Roofing*, 315 B.R. at 56; *In re Mirant Corp.*, 296 B.R. 427 (Bankr. N.D. Tex. 2003).

[10]   11 U.S.C. § 362(a)(3).

[11]   11 U.S.C. § 541.

Change. It is well established that a debtor's NOLs are property of the debtor's estate protected by the automatic stay.[12]  The United States Court of Appeals for the Second Circuit, in its seminal decision, *In re Prudential Lines Inc.*, affirmed the application of the automatic stay to a debtor's tax benefits and upheld a permanent injunction prohibiting a parent corporation from taking a worthless stock deduction that would have adversely affected the ability of the parent corporation's subsidiary to utilize its NOLs under the special relief provisions of section 382 of the Tax Code.[13]  As the Second Circuit stated:

> Including NOL carryforwards as property of a corporate debtor's estate is consistent with congress' intention to "bring anything of value that the debtors have into the estate." Moreover, . . . [i]ncluding the right to a NOL carryforward as property of [the debtor's] bankruptcy estate furthers the purpose of facilitating the reorganization of [the debtor].[14]

23.     In *Prudential Lines*, the Second Circuit determined that, if the parent were permitted to take a worthless stock deduction, it would have an adverse impact on the debtor subsidiary's ability to carry forward its NOLs.[15]  Therefore, the Second Circuit noted that, "despite the fact that the [parent corporation's] action is not directed specifically at [the debtor subsidiary],

---

[12]  *See Off. Comm. of Unsecured Creditors v. PSS S.S. Co. (In re Prudential Lines Inc.)*, 928 F.2d 565, 574 (2d Cir. 1991) ("[W]here a non-debtor's action with respect to an interest that is intertwined with that of a bankrupt debtor would have the legal effect of diminishing or eliminating property of the bankrupt estate, such action is barred by the automatic stay."); *Nisselson v. Drew Indus., Inc. (In re White Metal Rolling & Stamping Corp.)*, 222 B.R. 417, 424 (Bankr. S.D.N.Y. 1998) ("It is beyond peradventure that NOL carrybacks and carryovers are property of the estate of the loss corporation that generated them.") (citing *Off. Comm. of Unsecured Creditors v. PSS S.S. Co. (In re Prudential Lines, Inc.)*, 928 F.2d 565, 571-73 (2d Cir. 1991)); *In re Grossman's Inc.*, No. 97-695 (PJW), 1997 WL 33446314 (Bankr. D. Del. Oct. 9, 1997).

[13]  *See* 928 F.2d at 568, 573.

[14]  *Id.* at 573 (quoting H.R. Rep. No. 95-595, at 176 (1978) (internal citations omitted); *see also In re Fruehauf Trailer Corp.*, 444 F.3d 203, 211 (3d Cir. 2006) ("Property of the estate 'includes all interests, such as . . . contingent interests and future interests, whether or not transferable by the debtor.'") (quoting *Prudential Lines*, 928 F.2d at 572); *Gibson v. United States (In re Russell)*, 927 F.2d 413, 417 (8th Cir. 1991) (concluding the "right to carry forward the [debtor's] NOLs" was a "property interest" of the estate).

[15]  928 F.2d at 574.

it is barred by the automatic stay as an attempt to exercise control over property of the estate."[16] In addition to finding that a debtor's NOLs were protected by the stay, the Second Circuit also held that, pursuant to its equitable powers under section 105(a) of the Bankruptcy Code, the bankruptcy court could issue a permanent injunction to protect such NOLs.[17]  Because the NOLs were valuable assets of the debtor, the Second Circuit refused to disturb the bankruptcy court's decision preserving the debtor's right to apply its NOLs to offset income in future years.[18]

24.    In *In re Phar-Mor, Inc.*,[19] the court applied similar reasoning and granted the debtors' motion to prohibit transfers of their stock that could have an adverse effect on their ability to use NOLs, even though the stockholders did not state any intent to sell their stock and the debtors did not show that there was a pending sale that would trigger the prescribed ownership change under section 382.[20]  Despite the "ethereal" nature of the situation, the court observed that "[w]hat is certain is that the *NOL has a potential value, as yet undetermined*, which will be of benefit to creditors and will assist debtors in their reorganization process. This asset is entitled to protection while debtors move forward toward reorganization."[21]

25.    The *Phar-Mor* court also concluded that, because the debtors were seeking to enforce the stay, they did not have to meet the more stringent requirements for preliminary injunctive relief:

> The requirements for enforcing an automatic stay under 11 U.S.C. § 362(a)(3) do not involve such factors as lack of an adequate remedy at law, or irreparable injury, or loss and a likelihood of success on the merits. The key elements for a stay . . . are the existence of

---

[16]  *Id.*

[17]  *Id.*

[18]  *Id.*

[19]  152 B.R. 924 (Bankr. N.D. Ohio 1993)

[20]  *See id.* at 927.

[21]  *Id.* (emphasis added).

property of the estate and the enjoining of all efforts by others to obtain possession or control of property of the estate.[22]

26.     The imposition of procedures on equity trading and/or Worthless Stock Deduction claims to protect a debtor against the possible loss of valuable Tax Attributes are regularly approved by this and other courts.[23]   As these cases demonstrate, it is well-settled that the automatic stay under section 362(a)(3) of the Bankruptcy Code enjoins actions that would adversely affect a debtor's NOLs and other tax benefits.

**B.     The Procedures Are Necessary and Appropriate and Are in the Best Interests of the Debtors, their Estates, and their Creditors**

27.     The Procedures are necessary to preserve the Debtors' ability to use their Tax Attributes, while providing certain latitude for trading. The Debtors' ability to preserve their Tax Attributes may be seriously jeopardized unless procedures are established immediately to ensure that trading in the beneficial ownership of CHTI Stock (including Options to acquire beneficial ownership of CHTI Stock), and the claiming of a Worthless Stock Deduction by a Majority Holder with respect to its beneficial ownership of CHTI Stock is either precluded or closely monitored and made subject to Court approval. Further, the Debtors' ability to implement a restructuring that qualifies under section 382(l)(5) of the Tax Code could be seriously impaired unless the Claims Procedures are established.

---

[22]   *Id.* at 926 (quoting *In re Golden Distribs., Inc.*, 122 B.R. 15, 19 (Bankr. S.D.N.Y. 1990)).

[23]   *See, e.g.*, *In re: Core Scientific, Inc.*, No. 22-90341 (DRJ) [Docket No. 120] (Bankr. S.D. Tex. Dec. 22, 2022) (approving and granting a final order allowing for notification procedures and restrictions on certain transfers of equity interests in the debtors); *In re Basic Energy Services, Inc.*, No. 21-90002 (DRJ) [Docket No. 82] (Bankr. S.D. Tex. Aug. 19, 2021) (same); *In re NPC International, Inc.,* No. 20-33353 (DRJ) [Docket No. 100] (Bankr. S.D. Tex. July 2, 2020) (same); *In re Neiman Marcus Grp. Ltd.*, No. 20-32519 (DRJ) [Docket No. 243] (Bankr. S.D. Tex. May 8, 2020) (same); *In re Pioneer Energy Servs. Corp.,* No. 20-31425 (DRJ) [Docket No. 77] (Bankr. S.D. Tex. Mar. 2, 2020) (same); *In re McDermott Int'l, Inc.,* No. 2030336 (DRJ) [Docket No. 155] (Bankr. S.D. Tex. Jan. 23, 2020) (same).

28.     Depending on the Debtors' tax profile during the pendency of these Chapter 11 Cases, the extent of any gain or other income recognized in connection with the Debtors' ownership or disposition of their assets, and the consequences of any chapter 11 plan, the Debtors' ability to utilize the Tax Attributes may enhance the Debtors' prospects for a successful emergence from chapter 11. The relief requested herein is narrowly tailored to permit certain stock and Claims trading to continue, subject to Bankruptcy Rule 3001(e) and applicable securities, corporate, and other laws.

29.     The Debtors respectfully submit that the Stock Procedures must be implemented as soon as possible, and that it is in the best interests of the Debtors and their stakeholders to restrict trading in the beneficial ownership of CHTI Stock and the claiming of a Worthless Stock Deduction by a Majority Holder that could result in an Ownership Change *before* the effective date of a chapter 11 plan or applicable bankruptcy court order. This permits the use of Tax Attributes, if needed, to offset gain or other income recognized in connection with the Debtors' ownership and operation of their assets. If such an Ownership Change occurs, the valuation for determining the annual amount of useable NOLs and other affected Tax Attributes is expected to be at or close to zero, effectively eliminating the availability of such NOLs and certain other attributes. Accordingly, the Debtors' ability to realize the value of their Tax Attributes may be permanently diminished. The relief requested, therefore, is crucial to prevent an irrevocable diminution of the value of the Debtors' estates.

30.     With respect to an Ownership Change that occurs *pursuant to* a confirmed chapter 11 plan or any applicable bankruptcy court order, the limitations imposed by section 382 of the

Tax Code can be significantly less restrictive than those applicable to an Ownership Change that occurs before the effective date of (or otherwise outside of) a chapter 11 plan.[24]

31.     The Debtors also request that the Claims Procedures, subject to entry of the Claims Procedures Order, be implemented, given the Debtors' ability to qualify for the special relief afforded by section 382(l)(5) of the Tax Code could be adversely affected by substantial accumulations of Claims during the Chapter 11 Cases. For the avoidance of doubt, the Claims Procedures permit the full trading of Claims until the Debtors or another Plan Proponent files a chapter 11 plan that contemplates the potential utilization of section 382(l)(5) of the Tax Code, at which point, if necessary for the Debtors' ability to utilize that provision, a purchaser of certain Claims on or after the Petition Date may be required to resell some or all of such Claims.[25]

32.     Under section 382(l)(5) of the Tax Code (the "Section 382(l)(5) Safe Harbor"), a corporation is not subject to the annual limitation ordinarily imposed by section 382 of the Tax Code with respect to an Ownership Change, provided that the Ownership Change resulted from the consummation of a chapter 11 plan or pursuant to any applicable court order and that the debtor's pre-Ownership Change shareholders and/or "Qualified Creditors" (as hereinafter defined) emerge from the Debtors' Chapter 11 Cases owning at least fifty percent (50%) of the total value and voting power of the post-emergence debtor's stock immediately after the Ownership Change.[26]

33.     Under section 382(l)(5)(E) of the Tax Code and the applicable Treasury Regulations, a creditor whose Claim is exchanged for stock of the post-emergence debtor under a chapter 11 plan or pursuant to any applicable court order is, for purposes of section 382 of the Tax Code, a "qualified creditor" (each, a "Qualified Creditor") if (a) such creditor's Claim either has

---

[24]  *See, e.g.*, 26 U.S.C. §§ 382(l)(5), (6).

[25]  *See* 26 U.S.C. §§ 382(l)(5), (6).

[26]  *See id.* § 382(l)(5)(A).

been owned by such creditor for eighteen (18) or more months prior to the Petition Date, or arose in the ordinary course of the debtor's business and at all times such creditor had beneficial ownership of it, or (b) despite not satisfying such holding period requirements, if such creditor meets the criteria set forth in Treasury Regulations section 1.382-9(d)(3) (the latter, the "<u>De Minimis Rule</u>"). Certain "qualified transfers" may allow for a creditor that acquired its Claim to be treated as having held its Claim for the period in which it was held by a transferor.[27] Similarly, to the extent a debtor satisfies its indebtedness with new indebtedness (*e.g.*, through an exchange of new indebtedness for old indebtedness), the owner of the new indebtedness is treated as having held that indebtedness for the period that it owned the old indebtedness.[28]

34.     Under the De Minimis Rule, a debtor may, for purposes of the Section 382(l)(5) Safe Harbor, "treat indebtedness as always having been owned by the beneficial owner of the indebtedness immediately before the ownership change if the beneficial owner is not, immediately after the ownership change, either a 5-percent shareholder or an entity through which a 5-percent shareholder owns an indirect ownership interest" in the debtor, so long as the holder does not make evident to the debtor in connection with the formulation of the plan that it has not owned the indebtedness for the requisite holding period.[29]  If a creditor is treated as having continuously owned its Claim(s) under the De Minimis Rule, such creditor will be regarded as a Qualified Creditor so long as the particular Claim(s) that it holds either (a) arose in the ordinary course of the debtor's business or (b) came into existence (or is treated under the applicable tax rules as having come into existence) at least eighteen (18) months prior to the Petition Date.

---

[27]   *See* 26 C.F.R. § 1.382-9(d)(5)(ii).

[28]   *See id*. § 1.382-9(d)(5)(iv).

[29]   *See id*. § 1.382-9(d)(3).

35.     Although there can be no assurance that the Section 382(l)(5) Safe Harbor will ultimately be available to the Debtors, it is important that the Debtors preserve their ability to propose a chapter 11 plan that could take advantage of the Section 382(l)(5) Safe Harbor to potentially maximize the value of their Tax Attributes. Because the determination of whether a creditor is "qualified," in whole or in part, depends on the nature of the Claims and whether such creditor has held its Claims (within the meaning of the applicable Treasury Regulations) until the effective date of the chapter 11 plan or other applicable transactions, transfers of Claims by creditors before such date pose a threat to the Debtors' ability to satisfy the requirements of the Section 382(l)(5) safe harbor. The requested relief will ensure that the Debtors will have flexibility, if the Debtors determine it to be desirable, to structure a chapter 11 plan or other distributions to comply with the requirements of the Section 382(l)(5) Safe Harbor and thus to preserve the Tax Attributes to the fullest extent possible. Although certain Claims were not in existence 18 months prior to the filing of the bankruptcy petition and may not have arisen in the ordinary course of business, and thus may not themselves be appropriate Claims for qualification, the requested relief is appropriate for such Claims as well because the accumulation of such Claims together with so-called "good" Claims could disqualify such good Claims if the holder of such new Claim became a 5-percent shareholder pursuant to the plan. The requested relief will ensure that the Debtors will have flexibility, if the Debtors determine it to be desirable, to structure a chapter 11 plan or other distributions to comply with the requirements of the Section 382(l)(5) Safe Harbor and thus to preserve the Tax Attributes to the fullest extent possible.

36.     Even if it is ultimately determined that section 382(l)(5) is unavailable to the Debtors (or that the relief provided by section 382(l)(5) would not materially benefit Debtors in the context of their restructuring), section 382(l)(6) provides a second (alternative) special rule in

the case of an Ownership Change occurring pursuant to a confirmed chapter 11 plan or applicable bankruptcy court order. Specifically, section 382(1)(6) of the Tax Code provides that, if a corporation undergoes an ownership change pursuant to a chapter 11 plan and section 382(l)(5) does not apply (either because the corporation elects out of that provision or because its requirements are not satisfied), then the appropriate value of the debtors for purposes of calculating the annual limitation under section 382 of the Tax Code shall reflect the increase in value of the debtors resulting from any surrender or cancellation of creditors' claims in the transaction. Generally, under section 382 of the Tax Code, the taxable income of a loss corporation available for offset by pre-ownership change Tax Attributes is annually limited to an amount equal to the long-term tax-exempt bond rate times the value of the loss company's stock *immediately before* the ownership change. Thus, assuming the equity value of the Debtors increases as a result of the emergence from chapter 11, section 382(1)(6) of the Tax Code will provide for a higher annual limitation than would result under the general rules of section 382 of the Tax Code, thereby preserving the Debtors' ability to use a greater portion of its otherwise available Tax Attributes to offset any post-Ownership Change income. In all circumstances, it is in the best interests of the Debtors and their stakeholders to grant the requested relief so as to prevent an ownership change prior to the effective date of a chapter 11 plan or applicable court order.

37.     The approval of the Procedures will benefit the Debtors and their stakeholders by preventing the loss of the Tax Attributes. Absent the relief requested, the Debtors may be irreparably harmed due to transfers in the beneficial ownership of CHTI Stock, or the claiming of a Worthless Stock Deduction by a Majority Holder, that may follow immediately after persons or Entities (as defined in the Stock Procedures) receive notice of this Motion and these Chapter 11 Cases. Persons or Entities may rush to acquire or dispose of their beneficial ownership of CHTI

Stock (including Options to acquire beneficial ownership of CHTI Stock), or a Majority Holder might claim a Worthless Stock Deduction, before any restrictions on trading is approved by this Court, and such transfers might be respected as occurring for tax purposes even if such trades should be null and void under Bankruptcy Code section 362 or as a result of a final order prohibiting such trading effective as of the Petition Date. Such transfers or actions would jeopardize the Debtors' Tax Attributes and be counterproductive to the Debtors' objectives in seeking the relief requested herein. As described above, the granting of approval of the Claims Procedures will also minimize the likelihood that substantial accumulations of Claims during the Chapter 11 Cases would deprive the Debtors of the ability to utilize the special relief afforded by section 382(l)(5) of the Tax Code. Accordingly, the Debtors request that the Procedures proposed herein be approved.

38.     In all circumstances, it is in the best interests of the Debtors and their stakeholders for this Court to grant the requested relief in order to prevent an Ownership Change prior to the effective date of a chapter 11 plan or any applicable bankruptcy court order. For the foregoing reasons, the relief requested is necessary, appropriate, and in the best interests of the Debtors, their estates, and all other parties in interest in these cases. Accordingly, the Debtors respectfully request that the Court grant the requested relief.

## **EMERGENCY CONSIDERATION**

39.     The Debtors request emergency consideration of the Motion pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first twenty-one days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm." An immediate and orderly transition into chapter 11 is critical to the viability of the Debtors' operations and any delay in granting the relief requested could

hinder such operations and cause irreparable harm. The failure to receive the requested relief during the first twenty-one days of these Chapter 11 Cases could disrupt the Debtors' operations at this critical juncture and add needless costs to the administration of these cases. The Debtors have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and request that the Court approve the relief requested herein on an emergency basis.

## <u>WAIVER OF BANKRUPTCY RULES 6004(a) AND 6004(h)</u>

40.     The Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## <u>RESERVATION OF RIGHTS</u>

41.     Nothing contained herein is intended to be or shall be deemed as (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver or limitation of the Debtors' or any party in interest's rights to dispute the amount of, basis for, or validity of any claim, (iii) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable nonbankruptcy law, (iv) an agreement or obligation to pay any claims, (v) a waiver of any claims or causes of action which may exist against any creditor or interest holder, (vi) an admission as to the validity of any liens satisfied pursuant to this Motion, or (vii) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code. Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' or any other party in interest's rights to dispute such claim subsequently.

## NOTICE

42.     Notice of the hearing on the relief requested in this Motion will be provided by the Debtors in accordance and compliance with Bankruptcy Rules and Local Rules. The Debtors will provide notice of this motion to the following: (a) the U.S. Trustee for the Southern District of Texas; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the DIP Lenders; (d) the Prepetition Secured Parties; (e) the United States Attorney's Office for the Southern District of Texas; (f) the Internal Revenue Service; (g) the parties holding secured claims against the Debtors; (h) the registered holders of CHTI Stock, to the extent known; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002 and Local Rule 9013-1(d). No other or further notice is needed in light of the nature of the relief requested.

## CONCLUSION

WHEREFORE, the Debtors request that the Court enter the Proposed Orders granting the relief requested herein and such other and further relief as may be just and proper under the circumstances.

*[Remainder of Page Intentionally Left Blank]*

Dated: February 2, 2026

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Maxim B. Litvak*

Maxim B. Litvak (SBT 24002482)
Theodore S. Heckel (SBT 24133488)
700 Louisiana Street, Suite 4500
Houston, TX 77002
Telephone: (713) 691-9385
Facsimile:  (713) 691-9407
mlitvak@pszjlaw.com
theckel@pszjlaw.com

-and-

Debra I. Grassgreen (*pro hac vice* pending)
John W. Lucas (*pro hac vice* pending)
One Sansome Street, 34th Floor, Suite 3430
San Francisco, CA 94104
Telephone: (415) 263-7000
Facsimile:  (415) 263-7010
dgrassgreen@pszjlaw.com
jlucas@pszjlaw.com

*Proposed Counsel to the Debtors and Debtors in Possession*

**Certificate of Service**

I certify that on February 2, 2026 I caused a copy of the foregoing document to be served via the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/ *Maxim B. Litvak*

Maxim B. Litvak