IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>CARBON HEALTH TECHNOLOGIES, INC., et al.,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 26-90306 (CML)<br><br>(Joint Administration Requested) |

**DEBTORS' EMERGENCY MOTION FOR THE ENTRY OF AN ORDER
(I) AUTHORIZING THE DEBTORS TO MAINTAIN AND ADMINISTER THEIR
EXISTING PATIENT PROGRAM AND HONOR CERTAIN PREPETITION
OBLIGATIONS RELATED THERETO, AND (II) GRANTING RELATED RELIEF**

> **Emergency relief has been requested. Relief is requested not later than February 3, 2026.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on February 3, 2026, at 2:00 p.m. (prevailing Central Time). Participation at the hearing will only be permitted by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. Once connected, you will be asked to enter the conference room number. Judge Lopez's conference room number is 590153. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Lopez's homepage. The meeting code is "JudgeLopez". Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Lopez's homepage. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

respectfully state as follows in support of this motion (the "Motion"):

---

[1]   A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/CarbonHealth.The location of Carbon Health Technologies, Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 500 East Remington Drive, Suite 20, Sunnyvale, CA 94087.

**RELIEF REQUESTED**

1. By this Motion, the Debtors, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, seek entry of an order, substantially in the form attached hereto (the "Order"): (a) authorizing the Debtors to: (i) maintain and administer their patient-related program (as described herein, the "Patient Program") in the ordinary course of business consistent with prepetition practices, including allowing for recoupments and offsets of undisputed debts; and (ii) pay and honor certain prepetition obligations related thereto; and (b) granting related relief.

**JURISDICTION AND VENUE**

2. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). The Debtors confirm their consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The bases for the relief requested herein are sections 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code") and Bankruptcy Rule 6003.

**BACKGROUND**

**A.   General Background**

4. On the date hereof (the "Petition Date"), the Debtors each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases"). The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee of creditors has been appointed in these Chapter 11 Cases.

5. Carbon Health Technologies, Inc. ("CHTI") is a leading urgent care ("UC") and primary care ("PC") medical service provider, approximately 93 locations nationwide offering

comprehensive services, including UC, PC, pediatric care, workplace health and clinical research, complemented with virtual care access. CHTI serves as a primary entry point to the healthcare ecosystem, offering a comprehensive array of services that cater to diverse patient communities, enhancing accessibility and quality of care.

6. CHTI leverages its proprietary platform, CarbyOS, to implement a digital strategy that enhances patient engagement and drives operating efficiency. This approach enables Carbon to provide a versatile range of services across care locations through improved operational efficiency.

7. Additional information regarding the Debtors' business and capital structure and the circumstances leading to the commencement of these Chapter 11 Cases is set forth in the *Declaration of Kerem Ozkay in Support of the Debtors' Chapter 11 Petitions and First Day Relief* (the "First Day Declaration"),[2] which has been filed with the Court contemporaneously herewith and is incorporated by reference herein.

B.  **The Debtors' Patients and Patient Program**

8. The Debtors provide urgent care and primary care medical services to over one million patients (the "Patients"). As part of the patient care offering, the Debtors routinely interact with the healthcare ecosystem including labs, imaging (x-rays and ultrasound), medical history lookup, pharmacies, EMR data exchange, and notably, insurance providers. The Debtors are paid by their Patients through a variety of means, including commercial health insurance, Medicare, Medicaid, workplace health benefits, and self-pay. As a reality of operating in the healthcare space and providing medical services to Patients, the Debtors' business involves processing and

---

[2] A capitalized term used but not otherwise defined herein shall have the meaning ascribed to it in the First Day Declaration.

resolving insurance claims for their Patients. Additionally, to develop and maintain Patient loyalty, the Debtors, through their platform, streamline the process for submitting insurance claims and managing denials of insurance claims, and set up flexible payment plans for their Patients to pay for medical services.

9. As a function of the healthcare and insurance systems, there are instances where a Patient who paid the Debtors for medical services submits for reimbursement to a Third Party Payor[3] and is entitled to a refund, reimbursement, clawback, repayment, adjustment, or any other reconciliation (collectively, the "Prepetition Reconciliations") as a result of adjustments sought by such Third Party Payor. Because the Debtors are not entitled to retain such payments under applicable law, the Debtors in the ordinary course of business (and as is customary in the Debtors' industry), remit those funds to the Patients. The Prepetition Reconciliations also include all related paid deductibles, co-payments, co-insurance, or amounts paid in connection by the Patient.

10. In the aggregate, the Debtors believe there could be as much as $2,000,000 in Prepetition Reconciliations outstanding under their Patient Program as of the Petition Date. In 2025, there were approximately 30,000 Prepetition Reconciliations. The total amount of Prepetition Reconciliations is difficult for the Debtors to forecast given how they arise and the interplay with Third Party Payors. The Debtors request the authority to continue the Patient Program for any prepetition obligations that come due after the Petition Date. There should not be any impact on the Debtors' estate since involves the reconciliation of collections the Debtors are not entitled to.

---

[3] This includes Federal Health Care Programs, commercial insurance plans, health maintenance organizations, or any capitated payment relationship with any person other than an individual patient (collectively, the "Third Party Payors").

**BASIS FOR RELIEF**

**A.   Continuing to Honor Patient Program in the Ordinary Course
      Is Warranted Under Sections 105(a) and 363(b) of the Bankruptcy Code**

11. Authority for relief requested herein is found in sections 1107(a) and 1108 of the Bankruptcy Code. A debtor, operating its business as debtor in possession under sections 1107(a) and 1108 of the Bankruptcy Code, is a fiduciary "holding the bankruptcy estate and operating the business for the benefit of its creditors and (if the value justifies) equity owners." *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). Implicit in the duties of a chapter 11 debtor in possession is the duty "to protect and preserve the estate, including an operating business's going-concern value." *Id.*

12. The court in *CoServ* held that there are instances in which a debtor in possession can fulfill its fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim." *Id.* The court specifically held that preplan satisfaction of prepetition claims would be a valid exercise of a debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate," and also when the payment was to "sole suppliers of a given product." *Id.* at 497–98. The court provided a three-pronged test for determining whether a preplan payment on account of a prepetition claim was a valid exercise of a debtor's fiduciary duty:

> First, it must be critical that the debtor deal with the claimant. Second, unless it deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's prepetition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim.

*Id.* at 498.

13. The relief sought in this Motion satisfies each element of the *CoServ* standard. The disruption of the Debtors' operations attendant to the failure to maintain the Patient Program would cause the Debtors' estates to lose revenue, which could negatively impact the Debtors' ability to

achieve their chapter 11 objectives. The potential harm and economic disadvantage that would stem from the failure to honor any of the Debtors' prepetition obligations is grossly disproportionate to the amount of the prepetition claims that may be paid. Therefore, the Debtors can only meet their fiduciary duties as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code by payment of their prepetition obligations.

14. The Court may also grant the relief requested herein pursuant to section 363 of the Bankruptcy Code, which provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(1). Under section 363 of the Bankruptcy Code, a court may authorize a debtor to pay certain prepetition claims. *See In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (discussing a prior order authorizing the payment of prepetition wage claims pursuant to section 363(b) of the Bankruptcy Code). To do so, "the debtor must articulate some business justification, other than the mere appeasement of major creditors." *Id.*

15. The Court may also authorize payment of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code, which codifies the equitable powers of the bankruptcy court and empowers the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Under section 105(a) of the Bankruptcy Code, courts may permit pre-plan payments of prepetition obligations when essential to the continued operation of a debtor's business. Specifically, the Court may use its power under section 105(a) of the Bankruptcy Code to authorize payment of prepetition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity").

16. The relief sought is further supported by the "doctrine of necessity." The doctrine of necessity is a well-settled doctrine that permits a bankruptcy court to authorize payment of certain prepetition claims prior to the completion of the chapter 11 case where the payment of such claims is necessary to the debtor's restructuring efforts. *See In re Scotia Dev., LLC*, Case No. 07-20027, 2207 Bankr. LEXIS 3262, 2007 WL 2788840, at *6 (Bankr. S.D. Tex. Sep. 21, 2007) (acknowledging the existence of the doctrine of necessity); *In re CoServ, L.L.C.*, 273 B.R. at 497 (same); *see also In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (stating that courts may authorize payment of prepetition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"); *see also In re Penn Cent. Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972) (recognizing that the necessity of payment doctrine permits "immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until its pre-reorganization claims have been paid"); *In re Just for Feet, Inc.*, 242 B.R. 821, 824–25 (D. Del. 1999) (noting that, in the Third Circuit, debtors may pay prepetition claims that are essential to continued operation of their business); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (same).

17. The rationale for the necessity of payment rule—the rehabilitation of a debtor in reorganization cases—is "the paramount policy and goal of Chapter 11." *Ionosphere Clubs*, 98 B.R. at 176; *see also Just for Feet*, 242 B.R. at 826 (finding that the payment of prepetition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization"); *In re Quality Interiors, Inc.*, 127 B.R. 391, 396 (Bankr. N.D. Ohio 1991) ("[P]ayment by a debtor-in-possession of pre-petition claims outside of a confirmed plan of reorganization is generally prohibited by the Bankruptcy Code," but "[a] general practice has developed . . . where bankruptcy courts permit the payment of certain pre-petition claims, pursuant

to 11 U.S.C. § 105, where the debtor will be unable to reorganize without such payment."); *In re Eagle-Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) (approving the payment of prepetition unsecured claims of tool makers as "necessary to avert a serious threat to the Chapter 11 process"). Accordingly, the Court may authorize the Debtors to continue the Patient Program and pay prepetition claims related thereto pursuant to sections 105(a) and 363(b) of the Bankruptcy Code.

18. Continuing the Patient Program without interruption during these Chapter 11 Cases will help preserve the Debtors' valuable Patient relationships and goodwill, which will inure to the benefit of all of the Debtors' creditors and stakeholders. Continuing the Patient Program will also allow the Debtors to operate in the ordinary course of business. If the Debtors are unable to continue their Patient Program postpetition or to pay amounts or other value due and owing to their Patients under the various Patient Program, the Debtors risk alienating certain Patient constituencies and suffering corresponding losses in Patient loyalty and goodwill that will harm the Debtors' prospects for a restructuring that maximizes value.

19. Where retaining the loyalty and patronage of customers, and in this case patients, is critical to successful chapter 11 cases, courts in this district, and others, routinely authorize the continuation of similar customer programs. *See, e.g.*, *In re Party City Holdco Inc.*, No. 23-90005 (DRJ) (Bankr. S.D. Tex. Jan. 18, 2023) (authorizing the debtors to continue maintaining customer programs on a final basis); *In re Serta Simmons Bedding, LLC*, No. 23-90020 (DRJ) (Bankr. S.D. Tex. Jan. 24, 2023) (same); *In re Invacare Corp.*, No. 23-90068 (CML) (Bankr. S.D. Tex. Feb. 1, 2023) (same); *In re Avaya, Inc.*, No. 23-90088 (DRJ) (Bankr. S.D. Tex. Feb. 15, 2023) (same).

20. Accordingly, the Debtors submit that the substantial benefit conferred on the Debtors' estates by the Patient Program warrants the authority to honor the Patient Program and

any Patient obligations relating thereto, whether arising prepetition or postpetition, and the Debtors respectfully request the authority to continue their Patient Program and honor prepetition commitments related thereto.

## EMERGENCY CONSIDERATION

21. The Debtors request emergency consideration of this Motion pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003. For the reasons discussed above, authorizing the Debtors to continue the Patient Program and satisfy prepetition obligations related thereto, and granting the other relief requested herein, is essential to the Debtors' ability to transition their operations into these Chapter 11 Cases smoothly. Failure to receive such authorization and other relief during the first 21 days of these Chapter 11 Cases would severely disrupt the Debtors' operations at this critical juncture. For the reasons discussed herein, the relief requested is necessary in order for the Debtors to operate their business in the ordinary course, preserve the going-concern value of the Debtors' operations, and maximize the value of their estates for the benefit of all stakeholders. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and request that the Court approve the relief requested herein on an emergency basis.

## WAIVER OF BANKRUPTCY RULE 6004(a) AND 6004(h)

22. The Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

**RESERVATION OF RIGHTS**

23. Nothing contained in this Motion or any actions taken by the Debtors pursuant to the relief granted in the Order is intended or should be construed as: (a) an admission as to the validity, priority, or amount of any particular claim against a Debtor entity; (b) a waiver of the Debtors' or any other party-in-interest's right to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' or any other party-in-interest's rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors or any other party-in-interest that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion are valid, and the Debtors and all other parties-in-interest expressly reserve their rights to contest the extent, validity, or perfection or to seek avoidance of all such liens. If the Court grants the relief sought herein, any payment made (or to be made) pursuant to the Order is not intended and should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party-in-interest's rights subsequently to dispute such claim.

**NOTICE**

24. Notice of the hearing on the relief requested in this Motion will be provided by the Debtors in accordance and compliance with Bankruptcy Rules and Local Rules. The Debtors will provide notice of this motion to the following: (a) the U.S. Trustee for the Southern District of Texas; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the DIP Lenders; (d) the Prepetition Secured Parties; (e) the United States Attorney's

Office for the Southern District of Texas; (f) the Internal Revenue Service; (g) the parties holding secured claims against the Debtors; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002 and Local Rule 9013-1(d). No other or further notice is needed in light of the nature of the relief requested.

## NO PRIOR REQUEST

25. No prior request for the relief sought in this Motion has been made to this Court or any other court.

## CONCLUSION

**WHEREFORE**, the Debtors request that the Court enter the Order granting the relief requested herein and such other and further relief as may be just and proper under the circumstances.

Dated: February 2, 2026

**PACHULSKI STANG ZIEHL & JONES LLP**

/s/ *Maxim B. Litvak*
Maxim B. Litvak (SBT 24002482)
Theodore S. Heckel (SBT 24133488)
700 Louisiana Street, Suite 4500
Houston, TX 77002
Telephone: (713) 691-9385
Facsimile:  (713) 691-9407
mlitvak@pszjlaw.com
theckel@pszjlaw.com

-and-

Debra I. Grassgreen (*pro hac vice* pending)
John W. Lucas (*pro hac vice* pending)
One Sansome Street, 34th Floor, Suite 3430
San Francisco, CA 94104
Telephone: (415) 263-7000
Facsimile:  (415) 263-7010
dgrassgreen@pszjlaw.com
jlucas@pszjlaw.com

*Proposed Counsel to the Debtors and Debtors in Possession*

**Certificate of Service**

I certify that on February 2, 2026 I caused a copy of the foregoing document to be served via the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/ *Maxim B. Litvak*
Maxim B. Litvak