IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |
|---|---|
| In re:<br><br>CARBON HEALTH TECHNOLOGIES, INC., et al.,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 26-90306 (CML)<br><br>(Joint Administration Requested) |

**DEBTORS' EMERGENCY MOTION FOR THE ENTRY OF AN ORDER
(I) APPROVING THE PROPOSED ADEQUATE ASSURANCE DEPOSIT FOR
FUTURE UTILITY SERVICES, (II) PROHIBITING UTILITY PROVIDERS FROM
ALTERING, REFUSING, OR DISCONTINUING SERVICES, (III) APPROVING
THE PROPOSED ADEQUATE ASSURANCE PROCEDURES FOR RESOLVING
ADEQUATE ASSURANCE REQUESTS, AND (IV) GRANTING RELATED RELIEF**

> **Emergency relief has been requested. Relief is requested not later than February 3, 2026.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on February 3, 2026, at 2:00 p.m. (prevailing Central Time). Participation at the hearing will only be permitted by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. Once connected, you will be asked to enter the conference room number. Judge Lopez's conference room number is 590153. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Lopez's homepage. The meeting code is "JudgeLopez". Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Lopez's homepage. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

---

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/CarbonHealth. The location of Carbon Health Technologies, Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 500 East Remington Drive, Suite 20, Sunnyvale, CA 94087.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state the following in support of this motion (this "Motion"):

## RELIEF REQUESTED

1. By this Motion, pursuant to sections 105(a) and 366 of the Bankruptcy Code, the Debtors seek the entry of an order, substantially in the form attached hereto (the "Proposed Order"), (a) determining that the Adequate Assurance Deposit (defined below) provides the Utility Providers (defined below) with adequate assurance of payment within the meaning of section 366 of the Bankruptcy Code (defined below), (b) prohibiting the Utility Providers from altering, refusing, or discontinuing services, (c) approving the Adequate Assurance Procedures (defined below) for resolving any dispute in connection with the Adequate Assurance Deposit, and (d) granting related relief.

## JURISDICTION AND VENUE

2. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). The Debtors confirm their consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The bases for the relief requested herein are sections 105(a) and 366 of Title 11 of the United States Code (the "Bankruptcy Code"), and Rule 9013-1 of the Local Bankruptcy Rules for the Southern District of Texas (the "Local Rules").

**BACKGROUND**

A. **General Background**

4. On the date hereof (the "Petition Date"), the Debtors each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code. The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee of creditors has been appointed in these Chapter 11 Cases.

5. Carbon Health Technologies, Inc. ("CHTI") is a leading urgent care ("UC") and primary care ("PC") medical service provider, approximately 93 locations nationwide offering comprehensive services, including UC, PC, pediatric care, workplace health and clinical research, complemented with virtual care access. CHTI serves as a primary entry point to the healthcare ecosystem, offering a comprehensive array of services that cater to diverse patient communities, enhancing accessibility and quality of care.

6. CHTI leverages its proprietary platform, CarbyOS, to implement a digital strategy that enhances patient engagement and drives operating efficiency. This approach enables Carbon to provide a versatile range of services across care locations through improved operational efficiency.

7. Additional information regarding the Debtors' business and capital structure and the circumstances leading to the commencement of these Chapter 11 Cases is set forth in the *Declaration of Kerem Ozkay, in Support of the Debtors' Chapter 11 Petitions and First Day Relief* (the "First Day Declaration"),[2] which has been filed with the Court contemporaneously herewith and is incorporated by reference herein.

---

[2] A capitalized term used but not otherwise defined herein shall have the meaning ascribed to it in the First Day Declaration.

B. **The Utility Services**

8. In connection with the operation of their business, the Debtors obtain electricity, water, internet, telephone, gas, and other similar services (collectively, the "Utility Services"), from a number of utility providers (collectively, the "Utility Providers"). A non-exclusive list of the Utility Providers that provide Utility Services to the Debtors as of the Petition Date is annexed to the Proposed Order as Schedule 1 (the "Utility Providers List"). In addition, the Debtors pay for Utility Services through their landlords in accordance with the terms of applicable real property leases. While the Debtors are providing notice of this Motion to all known Utility Providers, the relief requested herein is requested with respect to all Utility Providers and is not limited to those listed on the Utility Providers List.[3]

9. On average, the Debtors spend approximately $200,200, in the aggregate, each month on Utility Services, calculated based on the historical average of payments made to the Utility Providers during January 1, 2025 through December 31, 2025. The Debtors anticipate that their weekly utility spending will continue consistently with historical practice following the Petition Date.

C. **The Adequate Assurance Deposit**

10. The Debtors intend to satisfy postpetition obligations owed to the Utility Providers in the ordinary course of business and in a timely manner. The Debtors' cash on hand, cash generated in the ordinary course of business, and the Debtors' proposed cash collateral budgets provide for payments to Utility Providers in accordance with ordinary prepetition practice. As

---

[3] Although the Debtors believe that the Utility Providers List includes all of their Utility Providers, subject to the limitations set forth in the Adequate Assurance Procedures, the Debtors reserve the right to supplement the list if they inadvertently omitted any Utility Provider. Additionally, the listing of an entity on the Utility Providers List is not an admission by the Debtors that such entity is or is not a utility within the meaning of section 366 of the Bankruptcy Code, and the Debtors reserve all rights with respect to any such determination. The Debtors also may have inadvertently omitted one or more Utility Providers. Therefore, the Debtors request relief applicable to all Utility Providers regardless of whether such Utility Provider is identified on the Utility Providers List.

additional assurance of payment, the Debtors propose to deposit $100,098.57 (the "Adequate Assurance Deposit") into a single, segregated bank account (the "Adequate Assurance Account") maintained by the Debtors, within fourteen (14) calendar days after the Proposed Order is entered.

11. The Adequate Assurance Deposit is equal to approximately two weeks of the Debtors' average monthly cost of Utility Services, calculated based on the historical average of payments made to the Utility Providers during the period of January 1, 2025 through December 31, 2025. The Adequate Assurance Deposit, in conjunction with the Debtors' cash on hand, cash generated in the ordinary course of business, and anticipated access to cash collateral (collectively, the "Proposed Adequate Assurance"), demonstrates the Debtors' ability to pay for future Utility Services in accordance with past practice and constitutes sufficient adequate assurance to the Utility Providers in full satisfaction of section 366 of the Bankruptcy Code.

D.  **The Adequate Assurance Procedures**

12. The Debtors propose the adequate assurance procedures set forth herein (the "Adequate Assurance Procedures") for any Utility Provider that is either (a) not satisfied with the Proposed Adequate Assurance or (b) seeking payment of their applicable portion of the Adequate Assurance Deposit for adequate assurance of future payment (each, an "Adequate Assurance Request") during the pendency of these Chapter 11 cases. In summary, the Adequate Assurance Procedures permit a Utility Provider to object to the Proposed Adequate Assurance by filing or serving an Adequate Assurance Request upon certain notice parties identified in the Proposed Order. The Debtors may use their discretion to resolve any Adequate Assurance Request with the Utility Provider and without further order of the Court. If the Debtors determine that the Adequate Assurance Request cannot be consensually resolved, the Debtors may seek Court resolution of the Adequate Assurance Request. In addition, if postpetition amounts remain unpaid beyond the

applicable grace period associated with the Utility Services, the Utility Provider may make an Adequate Assurance Request pursuant to the proposed Adequate Assurance Procedures. As such, the proposed Adequate Assurance Procedures are an efficient and streamlined resolution process for matters related to Utility Services that may arise during the cases.

**E.**     **Modifications to the Utility Providers List**

13.     The Debtors have made an extensive and good faith effort to identify all Utility Providers and include them on the Utility Providers List. If the Debtors subsequently identify additional Utility Providers or discontinue any Utility Services, the Debtors seek authority, in their sole discretion, to amend the Utility Providers List to add or remove any Utility Provider. The Debtors further request that the relief requested in this Motion, including the proposed Adequate Assurance Procedures, and any order granting the relief requested in this motion shall apply to any subsequently identified Utility Provider. The Debtors will serve a copy of this Motion and any related order on any Utility Provider added to the Utility Providers List. Any subsequently added Utility Provider shall have twenty one (21) calendar days from the date of service of this Motion and any related order to make a request for additional adequate assurance of payment in accordance with the Adequate Assurance Procedures. Pursuant to the Adequate Assurance Procedures, the Debtors may seek to resolve any subsequently added Utility Provider's request for adequate assurance of payment by mutual agreement with the Utility Provider without further order of this Court or the need to schedule a hearing with this Court to determine the adequacy of assurance payment.

**F.**     **Prohibitions on Altering, Refusing, or Discontinuing Service**

14.     Uninterrupted Utility Service is essential to the Debtors' ongoing business operations and overall success of these Chapter 11 cases. Should any Utility Provider refuse or

discontinue service, the Debtors' business operations could be disrupted severely and cause operational and manufacturing disruptions. Moreover, based on their books and records, the Debtors believe there are no material defaults or arrearages for undisputed invoices accrued in connection with Utility Services. As such, it is essential that the Utility Services continue uninterrupted during the pendency of these Chapter 11 cases.

15. For the foregoing reasons, the Debtors request that, pending the entry of the Proposed Order and the resolution of any Additional Assurance Request, objection, or Determination Hearing, the Utility Providers, including any Additional Utility Provider, are prohibited from (a) discriminating against the Debtors, (b) altering, refusing, or discontinuing service to the Debtors, or (c) requiring payment of a deposit or receipt of any other security for continued service other than the Adequate Assurance Deposit as a result of these Chapter 11 cases or any unpaid prepetition invoices.

## BASIS FOR RELIEF REQUESTED

16. Section 366 of the Bankruptcy Code protects a debtor against the immediate termination or alteration of utility services after the commencement of a chapter 11 case. *See* 11 U.S.C. § 366. Section 366(c) of the Bankruptcy Code requires a debtor to provide "adequate assurance" of payment for postpetition services in a form "satisfactory" to the utility company within thirty (30) days of the petition date, or the utility provider may alter, refuse, or discontinue service. 11 U.S.C. § 366(c)(2). A non-exhaustive list of examples for what constitutes "assurance of payment" is contained in section 366 of the Bankruptcy Code. 11 U.S.C. § 366(c)(1) (a cash deposit, letter of creditor, and certificate of deposit are examples of forms of adequate assurance of payment).

17. Although assurance of payment must be "adequate," it need not constitute an absolute guarantee of a debtors' ability to pay. *See In re Great Atl. & Pac. Tea Co.*, No. 11-CV-1338, 2011 WL 5546954, 2011 U.S. Dist. LEXIS 131621, at *5 (S.D.N.Y. Nov. 14, 2011) (finding that "[c]ourts will approve an amount that is adequate enough to insure against unreasonable risk of nonpayment, but are not required to give the equivalent of a guaranty of payment in full"); *In re Caldor, Inc.*, 199 B.R. 1, 3 (S.D.N.Y. 1996) ("Section 366(b) . . . does not require an absolute guarantee of payment.") (internal quotation and citation omitted), *aff'd sub nom.*, *Va. Elec. & Power Co. v. Caldor, Inc.-NY*, 117 F.3d 646 (2d Cir. 1997). A court should examine the totality of the circumstances to decide whether a utility company will be subject to an unreasonable risk of nonpayment when considering whether a proposed assurance amount is "adequate." *See In re Keydata Corp.*, 12 B.R. 156, 158 (B.A.P. 1st Cir. 1981). The focus should be on "the need of the utility for assurance" to ensure that the debtor will "supply no more than that" because the debtor "has a conflicting need to conserve scarce financial resources." *Va. Elec. & Power Co.*, 117 F.3d at 650 (internal quotations omitted). Accordingly, a utility company's demand for a guarantee of payment should be refused when the debtor has already afforded adequate assurance of payment based on the specific circumstances.

18. Termination of the Utility Services would impair the Debtors' business operations, interrupt operational and manufacturing activities, and generally be detrimental to all of the Debtors' stakeholders. *See In re Pilgrim's Pride Corp.*, No. 08-45664 (DML), 2009 WL 7313309, 2009 Bankr. LEXIS 2, at *2 (Bankr. N.D. Tex. Jan. 4, 2009) ("The consequences of an unexpected termination of utility service to [the debtors] could be catastrophic."). Here, the Utility Providers are adequately assured against any risk of nonpayment for future services. The Adequate Assurance Deposit, the Debtors' ongoing ability to meet obligations as they come due in the

ordinary course, and anticipated access to cash collateral in accordance with the terms of the Debtors' proposed cash collateral budget provides assurance of the Debtors' payment of their future obligations. The Debtors intend to allocate $100,098.57 in the Adequate Assurance Account, which is segregated from the Debtors' cash management system. The Adequate Assurance Deposit is equal to approximately two weeks' of the Debtors' average monthly cost of Utility Services, calculated based on the historical average of payments made to the Utility Providers, calculated based on the historical average of payments made to the Utility Providers during the period of January 1, 2025 through December 31, 2025.

19.     In addition, the Debtors have proposed Adequate Assurance Procedures that give Utility Providers an opportunity to seek additional adequate assurance as appropriate on an expeditious and streamlined basis. These procedures should be permitted because they facilitate the Debtors' ability to provide assurance of future payment without prejudicing the rights of Utility Providers. Courts are permitted to fashion reasonable procedures, such as the Adequate Assurance Procedures proposed herein, to implement the protections afforded under section 366 of the Bankruptcy Code. *See*, *e.g.*, *In re Circuit City Stores, Inc.*, No. 08-35653, 2009 WL 484553, 2009 Bankr. LEXIS 237, at *5 (Bankr. E.D. Va. Jan. 14, 2009) (stating that "the plain language of § 366 of the Bankruptcy Code allows the Court to adopt the [p]rocedures set forth in the [u]tility [o]rder"). Such procedures are important because, without them, the Debtors "could be forced to address numerous requests by utility companies in an unorganized manner at a critical period in their efforts to reorganize." *Id.* If the Debtors are inundated with requests, a Utility Provider could seize on the chaos and make an extortionate, last-minute demand for adequate assurance that would force the Debtors to pay amounts beyond what would be required under section 366 as a result of the threat of losing critical Utility Services. *See id*. The proposed Adequate Assurance Procedures

prevent such an outcome and create an orderly process while preserving the Utility Providers' rights under sections 366(b) and (c)(2) of the Bankruptcy Code. *See id.* at *5–6. Further, any rights the Utility Providers believe they have under sections 366(b) and 366(c)(2) of the Bankruptcy Code are preserved under the Adequate Assurance Procedures. *See id.* at *5–6. The Utility Providers still have the right to request modification of the Proposed Adequate Assurance in accordance with such procedures. *See id.* at *6.

20. Moreover, this Court possesses the power under section 105(a) of the Bankruptcy Code to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Here, the Proposed Order approving both the Adequate Assurance Procedures and the Proposed Adequate Assurance is necessary and appropriate to carry out the provisions of the Bankruptcy Code, particularly section 366 thereof. If neither the Adequate Assurance Procedures nor the Proposed Adequate Assurance are approved, then there is a substantial risk that Utility Providers could attempt to terminate the Utility Services. Accordingly, the Court should exercise its powers under sections 366 and 105(a) of the Bankruptcy Code and approve both the Adequate Assurance Procedures and the Proposed Adequate Assurance.

## EMERGENCY CONSIDERATION

21. The Debtors request emergency consideration of the Motion pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first twenty-one days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm." An immediate and orderly transition into chapter 11 is critical to the viability of the Debtors' operations and any delay in granting the relief requested could hinder such operations and cause irreparable harm. The failure to receive the requested relief during the first twenty-one days of these Chapter 11 Cases could disrupt the Debtors' operations

at this critical juncture and add needless costs to the administration of these cases. The Debtors have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and request that the Court approve the relief requested herein on an emergency basis.

## WAIVER OF BANKRUPTCY RULES 6004(a) AND 6004(h)

22. The Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## RESERVATION OF RIGHTS

23. Nothing contained herein or any actions taken by the Debtors pursuant to any order granting the relief requested by this Motion is intended or should be construed as: (a) an admission as to the validity, priority, or amount of any particular claim against a Debtor entity; (b) a waiver of the Debtors' right to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined herein or in any order granting the relief requested by this Motion, or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtors or any other party-in-interest that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid and the Debtors and all other parties-in-interest expressly reserve their rights to contest the extent, validity, or perfection, or to seek avoidance of all such liens. If the Court grants the relief sought herein, any payment made

pursuant to the Court's order is not intended and should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party-in-interest's rights to subsequently dispute such claim.

## NOTICE

24.     Notice of the hearing on the relief requested in this Motion will be provided by the Debtors in accordance and compliance with Bankruptcy Rules and Local Rules. The Debtors will provide notice of this motion to the following: (a) the U.S. Trustee for the Southern District of Texas; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the DIP Lenders; (d) the Prepetition Secured Parties; (e) the United States Attorney's Office for the Southern District of Texas; (f) the Internal Revenue Service; (g) the parties holding secured claims against the Debtors; (h) the Utility Providers; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002 and Local Rule 9013-1(d). No other or further notice is needed in light of the nature of the relief requested.

[*Remainder of Page Intentionally Left Blank*]

## CONCLUSION

**WHEREFORE**, the Debtors request that the Court enter the attached order granting the relief requested herein and such other and further relief as may be just and proper under the circumstances.

Dated: February 2, 2026

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Maxim B. Litvak*
Maxim B. Litvak (SBT 24002482)
Theodore S. Heckel (SBT 24133488)
700 Louisiana Street, Suite 4500
Houston, TX 77002
Telephone: (713) 691-9385
Facsimile:  (713) 691-9407
mlitvak@pszjlaw.com
theckel@pszjlaw.com

-and-

Debra I. Grassgreen (*pro hac vice* pending)
John W. Lucas (*pro hac vice* pending)
One Sansome Street, 34th Floor, Suite 3430
San Francisco, CA 94104
Telephone: (415) 263-7000
Facsimile:  (415) 263-7010
dgrassgreen@pszjlaw.com
jlucas@pszjlaw.com

*Proposed Counsel to the Debtors and Debtors in Possession*

### Certificate of Service

I certify that on February 2, 2026 I caused a copy of the foregoing document to be served via the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Maxim B. Litvak*
Maxim B. Litvak