**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| CARBON HEALTH TECHNOLOGIES, INC., et al., | Case No. 26-90306 (CML) |
| Debtors.[1] | (Joint Administration Requested) |

**DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE INSURANCE COVERAGE ENTERED INTO PREPETITION AND SATISFY PREPETITION OBLIGATIONS RELATED THERETO, (B) HONOR AND RENEW THE PREMIUM FINANCING AGREEMENT ENTERED INTO PREPETITION AND SATISFY OBLIGATIONS RELATED THERETO, AND (C) RENEW, AMEND, SUPPLEMENT, EXTEND, OR PURCHASE INSURANCE POLICIES; AND (II) GRANTING RELATED RELIEF**

**Emergency relief has been requested. Relief is requested not later than February 3, 2026.**

**If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

**A hearing will be conducted on this matter on February 3, 2026, at 2:00 p.m. (prevailing Central Time). Participation at the hearing will only be permitted by an audio and video connection.**

**Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. Once connected, you will be asked to enter the conference room number. Judge Lopez's conference room number is 590153. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Lopez's homepage. The meeting code is "JudgeLopez". Click the settings icon in the upper right corner and enter your name under the personal information setting.**

**Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Lopez's homepage. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/CarbonHealth.The location of Carbon Health Technologies, Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 500 East Remington Drive, Suite 20, Sunnyvale, CA 94087.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state the following in support of this motion (this "Motion"):

## RELIEF REQUESTED

1. By this Motion, the Debtors respectfully request entry of an order, in substantially the form attached hereto (the "Order"): (a) authorizing the Debtors to (i) continue insurance coverage entered into prepetition and satisfy prepetition obligations related thereto in the ordinary course of business,[2] (ii) honor and renew the premium financing agreement entered into prepetition and satisfy obligations related thereto, and enter into new premium financing agreements in the ordinary course of business, and (iii) renew, amend, supplement, extend, or purchase insurance coverage in the ordinary course of business on a postpetition basis; and (b) granting related relief.

## JURISDICTION AND VENUE

2. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). The Debtors confirm their consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The bases for the relief requested herein are sections 105(a), 363(b), 364(c), 503, 1107(a), and 1108 of Title 11 of the United States Code (the "Bankruptcy Code"), Bankruptcy Rules 6003 and 6004, and Rules 4002-1 and 9013-1 of the Local Bankruptcy Rules for the Southern District of Texas (the "Local Rules").

---

[2] Nothing herein shall be deemed an admission of any payments due or past due under or related to any of the Insurance Policies (as defined herein).

## BACKGROUND

### A. Case Background

4. On the date hereof (the "Petition Date"), the Debtors each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code. The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee of creditors has been appointed in these chapter 11 cases.

5. Carbon Health is a leading urgent care ("UC") and primary care ("PC") medical service provider, approximately 93 locations nationwide offering comprehensive services, including UC, PC, pediatric care, workplace health, and clinical research, complemented with virtual care access. The Company serves as a primary entry point to healthcare ecosystem, offering a comprehensive array of services that cater to diverse patient communities, enhancing accessibility and quality of care. Carbon Health leverages its proprietary platform, "CarbyOS," to implement a digital strategy that enhances patient engagement and drives operating efficiency. This approach enables the Company to provide a versatile range of services across care locations through improved operational efficiency.

6. Additional information regarding the Debtors' business and capital structure and the circumstances leading to the commencement of these Chapter 11 Cases is set forth in the *Declaration of Kerem Ozkay, in Support of the Debtors' Chapter 11 Petitions and First Day Relief* (the "First Day Declaration"),[3] which has been filed with the Court contemporaneously herewith and is incorporated by reference herein.

---

[3] A capitalized term used but not otherwise defined herein shall have the meaning ascribed to it in the First Day Declaration.

**B. The Insurance Policies**

7. In the ordinary course of the Debtors' business, the Debtors maintain approximately 15 insurance policies (collectively, the "Insurance Policies," and the carriers thereof, the "Insurance Carriers")[4] providing coverage for, among other things, general liability, commercial property, employer practice, and directors' and officers' liability. The Insurance Policies are essential to the preservation of the Debtors' business and assets, and, in many instances, such insurance coverage is required by regulation, law, or contract that governs the Debtors' business. A comprehensive list of the Insurance Policies is attached to the Order as **Exhibit 1**, which is incorporated herein by reference.

8. To preserve the value of the Debtors' business operations, properties, and assets, it is essential that the Debtors be able to continue or renew the Insurance Policies and enter into new insurance policies. In many cases, regulations, laws, and contract provisions that govern the Debtors' commercial activities require the types of coverage provided for under the Insurance Policies, as well as the Bankruptcy Code and the operating guidelines issued by the United States Trustee for Region 7 (the "U.S. Trustee Guidelines"). The relief requested in this Motion is designed to ensure uninterrupted coverage under the Insurance Policies. Therefore, the Debtors seek authorization to maintain the existing Insurance Policies, pay prepetition obligations related

[4] The descriptions of the Insurance Policies set forth in this Motion constitute a summary only. The actual terms of the Insurance Policies and related agreements will govern in the event of any inconsistency with the description in this Motion. Although Exhibit 1 to the Order is intended to be comprehensive, the Debtors may have inadvertently omitted Insurance Policies from Exhibit 1 to the Order. The Debtors request authority to honor existing Insurance Policies and renew Insurance Policies, as applicable, regardless of whether the Debtors inadvertently failed to include a particular Insurance Policy on Exhibit 1 to the Order, and any such omitted Insurance Policy is hereby included in the defined term "Insurance Policies" as used herein and in the Order. In addition, the Debtors maintain numerous insurance policies with respect to, among other things, employee health, disability, and life insurance benefits, as well as the Debtors' workers' compensation program. These programs are described, and the relief is requested with respect to such programs, in the *Debtors' Emergency Motion for Entry of an Order (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Employee Benefits Programs and (II) Granting Related Relief* (the "Wages Motion"), filed contemporaneously herewith.

thereto upon entry of the Order, and renew, amend, supplement, extend[5], or purchase new Insurance Policies on a postpetition basis in the ordinary course of business consistent with past practice.

**C. <u>Premium Financing</u>**

9. The Debtors finance their Professional and Technical Error and Omissions Policy with the Beazley Group and their stand-alone Cyber Insurance Policy with Coalition Insurance Solutions, Inc. on an installment basis (the "Financed Policies") in a premium financing agreement with First Insurance Funding. As of the Petition Date, the Debtors expend approximately $70,000, in the aggregate, each month on such monthly premium finance payments, and estimate an aggregate of $350,000 coming due on a postpetition basis.

10. For the remaining Insurance Policies which are not financed under Premium Financing Agreements, the Debtors directly pay the premium obligations associated with the Insurance Policies to the applicable Insurer or Broker (the "Insurance Premiums", together with the Premium Financing Payments, the "Premiums"). The Debtors have paid an aggregate amount of approximately $1.7 million in Premiums in 2025 for Debtor entity Insurance Policies. As of the Petition Date, the Debtors believe they owe approximately $150,000 on account of unpaid Premiums.[6]

11. The Debtors seek authority to enter into new premium financing agreements, directly with the finance providers, or new non-financed Insurance Policies as necessary or appropriate, without further Court approval.

---

[5] The Debtors have recently extended the term of their directors' and officers' insurance.

[6] The estimated $1.7 million paid in 2025 and $150,000 owed as of the petition does not include premiums paid for Stop Loss, Workers Compensation, and Turkish Employee Health Insurance policies (the "Excluded Policies"). The Debtors have paid an aggregate amount of approximately $1.2 million in premiums in 2025 for Excluded Policies. As of the petition date, the Debtors believe they owe approximately $300,000 for excluded policy premiums.

**D. Deductibles and Self-Insured Retentions**

12. Certain of the Insurance Policies require the Debtors to pay a deductible (collectively, the "Deductibles"). Generally, if a claim is made under an Insurance Policy with a Deductible, the Debtors are obligated to pay any defense costs or successful or settled claims up to the amount of the Deductible. Carriers are directly responsible for any claim under the applicable Insurance Policy to the extent such claim is in excess of the Deductible. The Deductibles may range up to $175,000, subject to certain limitations.

13. Alternatively, certain of the Insurance Policies may use self-insured retentions (collectively, the "SIRs") instead of Deductibles. If a claim is made under these policies, the Debtors must make payments in the first instance up to the limit of the SIR and, once the Debtors have made such payments, the carrier is obligated to cover remaining costs.

14. The Debtors do not believe there are any accrued but unpaid amounts pursuant to the Deductibles and SIRs. However, out of an abundance of caution, the Debtors seek authority to continue to honor their obligations under the Deductibles or SIRs as they come due on a postpetition basis in the ordinary course of business.

**E. Insurance Brokerage Fees**

15. The Debtors obtain Insurance Policies through Alliant Insurance Services, Inc and FMC Insurance, their insurance brokers (collectively, the "Insurance Brokers"), who assist the Debtors in obtaining comprehensive insurance coverage and with the procuring and negotiating the Insurance Policies, enabling the Debtors to obtain Insurance Policies on advantageous terms and at competitive rates. The Insurance Brokers collect fees for services rendered as part of the Premiums paid on the Insurance Policies (the "Brokerage Fees"). As of the Petition Date, the Debtors do not believe that they owe the Insurance Brokers any amounts on account of the

Brokerage Fees. Pursuant to this Motion, the Debtors seek authority to pay any outstanding prepetition Brokerage Fees and to continue to honor any Brokerage Fees as they come due on a postpetition basis in the ordinary course of business.

## BASIS FOR RELIEF

### F. Maintenance of Insurance Coverage is Necessary in Order to Comply with United States Trustee Requirements

16. The Insurance Policies provide a comprehensive range of protection for the Debtors' businesses, properties, and assets. It is essential that the Debtors' insurance coverage continues in full force and effect during the course of these Chapter 11 cases. Section 1112(b)(4)(C) of the Bankruptcy Code provides that "failure to maintain appropriate insurance that poses a risk to the estate or to the public" is "cause" for mandatory conversion or dismissal of a chapter 11 case.[7] In many instances, the coverage provided under the Insurance Policies is required by the regulations, laws, and contracts that govern the Debtors' commercial activities, in addition to Section III of the U.S. Trustee Guidelines, which provides that "[a]ll debtors must maintain insurance and pay all premiums as they come due." It is essential to the Debtors' estates, and consistent with the Bankruptcy Code and the U.S. Trustee Guidelines, that they (a) maintain and continue to make all payments required under their Insurance Policies, and (b) have the authority to supplement, amend, extend, renew, or replace their Insurance Policies as needed, in their business judgment, without further order of the Court.

### G. Continuation or Renewal of the Insurance Policies in the Ordinary Course of Business is Warranted Under Sections 363(b) and (c) of the Bankruptcy Code

17. Given the importance of the Insurance Policies to the continued operation of the Debtors' business, the Debtors request authority to pay any prepetition amounts due on account

[7] 11 U.S.C. § 1112(b)(4)(C).

thereof, including any Broker Fees, and to continue their insurance program in the ordinary course of business on a postpetition basis. In authorizing payments of prepetition insurance obligations, courts have relied on several legal theories rooted in sections 105(a), 363(b), 503, 1107(a), and 1108 of the Bankruptcy Code. Pursuant to these sections of the Bankruptcy Code, and consistent with the chapter 11 goal of value preservation, the Court may authorize the Debtors to maintain the Insurance Policies and renew or enter into new policies on a postpetition basis.

18. Courts in the Fifth Circuit have recognized that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate, including an operating business's going-concern value.[8] Moreover, section 503(b)(l)(A) of the Bankruptcy Code provides that: "After notice and a hearing, there shall be allowed administrative expenses[,] including . . . the actual, necessary costs and expenses of preserving the estate." The Court, therefore, can authorize the Debtors to use estate funds to pay any obligations under the Insurance Policies arising during or relating to the period after the Petition Date. In addition, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, a debtor in possession is a fiduciary "holding the bankruptcy estate and operating the business for the benefit of its creditors and (if the value justifies) equity owners."[9] Implicit in the fiduciary duties of any debtor in possession is the obligation to "protect and preserve the estate, including an operating business's going concern value."[10]

---

8 *See*, *e.g.*, *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) (stating that, in certain situations, a debtor's duty to maximize the value of the estate for all parties can only be satisfied through payment of a prepetition claim); *see also In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) ("The ability of a Bankruptcy Court to authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept.").

9 *CoServ*, 273 B.R. at 497.

10 *Id.*

19. Under section 363(b) of the Bankruptcy Code, a debtor in possession "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate[.]"[11] Section 363(c) of the Bankruptcy Code authorizes a debtor in possession to "enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and . . . use property of the estate in the ordinary course of business without notice or a hearing."[12] Maintenance of the Insurance Policies, including payment of postpetition obligations thereunder, renewing the Insurance Policies, and entering into new insurance arrangements are within the ordinary course of the Debtors' business.

20. Even if the continuation and/or renewal of the Insurance Policies was not considered to be ordinary course, under applicable case law, if a debtor's proposed use of its assets pursuant to section 363(b) of the Bankruptcy Code represents a reasonable business judgment on the part of the debtor, such use should be approved.[13]

21. The Court may also authorize payment of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code. Section 105(a) of the Bankruptcy Code, which codifies the inherent equitable powers of the bankruptcy court, empowers the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Under section 105(a), courts may permit payments of prepetition obligations when essential to the continued operation of a debtor's

---

11 11 U.S.C. § 363(b)(1).

12 11 U.S.C. § 363(c)(1).

13 *See*, *e.g.*, *In re Cont'l Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or a debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside of the ordinary course of business."); *In re Asarco, L.L.C.*, 650 F.3d 593, 601 (5th Cir. 2011) *aff'g* 441 B.R. 813, 824 (S.D. Tex. 2010) ("Section 363 of the Bankruptcy Code addresses the debtor's use of property of the estate and incorporates a business judgment standard.").

business. The Court's power under section 105(a) to authorize payment of prepetition obligations is popularly referred to as the "necessity of payment" rule (also referred to as the "doctrine of necessity"). The "doctrine of necessity" or the "necessity of payment" rule has long been recognized as precedent within the Fifth Circuit.[14] Today, the rationale for the necessity of payment rule—the rehabilitation of a debtor in reorganization cases—is the paramount policy and goal of chapter 11.[15]

22. The Insurance Policies provide the Debtors with essential insurance coverage. Any lapse in the coverage to be provided under the Insurance Policies could expose the Debtors to substantial liability, monetary and otherwise, for injuries, damages, and penalties for failing to maintain proper insurance. Therefore, in light of the importance of the Insurance Policies, the Debtors should be permitted to exercise their reasonable business judgment to continue and/or renew the Insurance Policies as they expire.

### H. The Court Should Authorize the Debtors to Honor and Renew the Premium Financing Agreement

23. Pursuant to section 364(c) of the Bankruptcy Code, a debtor may, in the exercise of its business judgment, incur secured postpetition debt if the debtor has been unable to obtain unsecured credit and the borrowing is in the best interests of the estate. Permitting the Debtors to continue their installment premiums and to enter into new premium financing agreements, directly with the finance providers, or new non-financed Insurance Policies as necessary or appropriate, is in the best interests of the Debtors' estates.

---

[14] *See CoServ* at 492–93, 497 (discussing the instances in which the "doctrine of necessity" or "necessity of payment" apply to debtors in possession).

[15] *Id.* at 493; *see also In re Mirant*, 296 B.R. 427, 429 (Bankr. N.D. Tex. 2003) (allowing a debtor in possession to pay prepetition claims when failing to do so could "seriously damage" the debtor's business).

**I. Cause Exists to Authorize the Debtors' Financial Institutions to Honor Checks and Electronic Funds Transfers**

24. The Debtors have sufficient funds to pay the amounts described in this Motion in the ordinary course of business. In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to an authorized payment in respect of the Insurance Policies. Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently. Therefore, the Debtors respectfully request that the Court authorize all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion.

**EMERGENCY CONSIDERATION**

25. The Debtors request emergency consideration of the Motion pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first 21 days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm." An immediate and orderly transition into chapter 11 is critical to the viability of the Debtors' operations and that any delay in granting the relief requested could hinder such operations and cause irreparable harm. The failure to receive the requested relief during the first 21 days of these Chapter 11 cases could disrupt the Debtors' operations at this critical juncture and add needless costs to the administration of these cases. The Debtors have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and request that the Court approve the relief requested herein on an emergency basis.

**WAIVER OF BANKRUPTCY RULES 6004(a) AND 6004(h)**

26. The Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

**NOTICE**

27. Notice of the hearing on the relief requested in this Motion will be provided by the Debtors in accordance and compliance with Bankruptcy Rules and Local Rules. The Debtors will provide notice of this motion to the following: (a) the U.S. Trustee for the Southern District of Texas; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the DIP Lenders; (d) the Prepetition Secured Parties; (e) the United States Attorney's Office for the Southern District of Texas; (f) the Internal Revenue Service; (g) the parties holding secured claims against the Debtors; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002 and Local Rule 9013-1(d). No other or further notice is needed in light of the nature of the relief requested.

**CONCLUSION**

**WHEREFORE**, the Debtors request that the Court enter the Orders granting the relief requested herein and such other and further relief as may be just and proper under the circumstances.

[*Remainder of Page Intentionally Left Blank*]

Dated: February 2, 2026

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Maxim B. Litvak*
Maxim B. Litvak (SBT 24002482)
Theodore S. Heckel (SBT 24133488)
700 Louisiana Street, Suite 4500
Houston, TX 77002
Telephone: (713) 691-9385
Facsimile: (713) 691-9407
mlitvak@pszjlaw.com
theckel@pszjlaw.com

-and-

Debra I. Grassgreen (*pro hac vice* pending)
John W. Lucas (*pro hac vice* pending)
One Sansome Street, 34th Floor, Suite 3430
San Francisco, CA 94104
Telephone: (415) 263-7000
Facsimile: (415) 263-7010
dgrassgreen@pszjlaw.com
jlucas@pszjlaw.com

*Proposed Counsel to the Debtors and Debtors in Possession*

**Certificate of Service**

I certify that on February 2, 2026 I caused a copy of the foregoing document to be served via the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/ *Maxim B. Litvak*
Maxim B. Litvak