**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re:<br><br>CARBON HEALTH TECHNOLOGIES, INC., et al.,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 26-90306 (CML)<br><br>(Joint Administration Requested) |

**DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS TO REDACT CERTAIN PERSONALLY IDENTIFIABLE INFORMATION, (II) APPROVING THE FORM AND MANNER OF NOTIFYING CREDITORS OF THE COMMENCEMENT OF THE CHAPTER 11 CASES AND OTHER INFORMATION, AND (III) GRANTING RELATED RELIEF**

> **Emergency relief has been requested. Relief is requested not later than February 3, 2026.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on February 3, 2026, at 2:00 p.m. (prevailing Central Time). Participation at the hearing will only be permitted by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. Once connected, you will be asked to enter the conference room number. Judge Lopez's conference room number is 590153. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Lopez's homepage. The meeting code is "JudgeLopez". Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Lopez's homepage. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state the following in support of this motion (this "Motion"):

---

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/CarbonHealth. The location of Carbon Health Technologies, Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 500 East Remington Drive, Suite 20, Sunnyvale, CA 94087.

**RELIEF REQUESTED**

1. The Debtors seek entry of an order, substantially in the form attached hereto (the "Order"), (a) authorizing the Debtors to redact certain personally identifiable information, (b) authorizing the implementation of procedures to protect confidential Patient information; (c) approving the form and manner of notifying creditors of these Chapter 11 Cases and events therein, including special noticing procedures for the Debtors' current and former Patients; and (d) granting related relief.

**JURISDICTION AND VENUE**

2. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). The Debtors confirm their consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The bases for the relief requested herein are sections 105(a), 107(c), and 521 of Title 11 of the United States Code (the "Bankruptcy Code"), Bankruptcy Rules 1007, 2002, and 9037(a), and Rules 1075-1 and 9013-1 of the Local Bankruptcy Rules for the Southern District of Texas (the "Local Rules").

**BACKGROUND**

**A.    General Background**

5. On the date hereof (the "Petition Date"), the Debtors each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code. The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to

sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee of creditors has been appointed in these Chapter 11 Cases.

6. Carbon Health Technologies, Inc. ("Carbon Health") is a leading urgent care ("UC") and primary care ("PC") medical service provider, approximately 93 locations nationwide offering comprehensive services, including UC, PC, pediatric care, workplace health and clinical research, complemented with virtual care access. Carbon Health serves as a primary entry point to the healthcare ecosystem, offering a comprehensive array of services that cater to diverse patient communities, enhancing accessibility and quality of care.

7. Carbon Health leverages its proprietary platform, CarbyOS, to implement a digital strategy that enhances patient engagement and drives operating efficiency. This approach enables Carbon to provide a versatile range of services across care locations through improved operational efficiency.

8. Additional information regarding the Debtors' business and capital structure and the circumstances leading to the commencement of these Chapter 11 Cases is set forth in the *Declaration of Kerem Ozkay, in Support of the Debtors' Chapter 11 Petitions and First Day Relief* (the "First Day Declaration"),[2] which has been filed with the Court contemporaneously herewith and is incorporated by reference herein.

## BASIS FOR RELIEF

**B.  Redaction of Certain Confidential Information of Individuals Is Warranted**

9. Section 107(c) of the Bankruptcy Code provides that the Court:

> "for cause, may protect an individual, with respect to the following types of information to the extent the court finds that disclosure of

---

[2] A capitalized term used but not otherwise defined herein shall have the meaning ascribed to it in the First Day Declaration.

> such information would create undue risk of identity theft or other unlawful injury to the individual or the individual's property:
>
> (A) Any means of identification . . . contained in a paper filed, or to be filed, in a case under [the Bankruptcy Code].
>
> (B) Other information contained in a paper described in subparagraph (A)."

11 U.S.C. § 107(c)(1). Furthermore, Bankruptcy Rule 9037(a) authorizes the redaction of personally identifiable information of minors. *See* Fed. R. Bankr. P. 9037(a).

10. It is appropriate to authorize the Debtors to redact from any paper filed or to be filed with the Court in these Chapter 11 Cases, including the consolidated list of creditors (the "Creditor Matrix") and Schedules and Statements,[3] the names and addresses of individual creditors including the Debtors' employees, independent contractors, former employees, current and former patients, because such information can be used to perpetrate identity theft and phishing scams or to locate survivors of domestic violence, harassment, or stalking under section 107(c)(1) of the Bankruptcy Code, exposing the Debtors to potential civil liability and significant financial penalties. The risk in relation to section 107(c)(1) of the Bankruptcy Code is not merely speculative. In at least one chapter 11 case, the abusive former partner of a debtor's employee used the publicly accessible creditor and employee information filed in the chapter 11 case to track the employee at her new address that had not been publicly available until then, forcing the employee to change addresses again.[4]

---

[3] As defined in the *Debtors' Emergency Motion for Entry of an Order (I) Extending Time to File (A) Schedules of Assets and Liabilities, (B) Schedules of Current Income and Expenditures, (C) Schedules of Executory Contracts and Unexpired Leases, (D) Statements of Financial Affairs, and (E) Rule 2015.3 Financial Reports, and (II) Granting Related Relief*, filed contemporaneously herewith.

[4] The incident, which took place during the first *Charming Charlie* chapter 11 proceedings in 2019, is described in the "creditor matrix motion" filed in *In re Charming Charlie Holdings, Inc.*, No. 19-11534 (CSS) (Bankr. D. Del. Jul. 11, 2019), Docket No. 4.

11. The Debtors propose to provide an unredacted version of the Creditor Matrix, Schedules and Statements, and any other filings redacted pursuant to the Order to (a) the Court, (b) the United States Trustee for the Southern District of Texas (the "U.S. Trustee"), (c) counsel to any official committee appointed in these Chapter 11 Cases, and (d) any party in interest upon a request to the Debtors (email being sufficient) that is reasonably related to these Chapter 11 Cases. In each case, this would be subject to a review of whether such disclosure, on a case-by-case basis, would violate any privacy or data protection law or regulation. Nothing herein precludes a party in interest's right to file a motion requesting that the Bankruptcy Court unseal the information redacted by the Order. In addition, the Debtors will distribute, as applicable, any notices that are received at the Debtors' corporate headquarters and are intended for a current employee.

12. The Debtors recognize that the exceptions to section 107(a) of the Bankruptcy Code should be construed narrowly. However, the addition of section 107(c) in BAPCPA "broadened the situations in which the court could protect individuals from disclosure of sensitive information in light of the emerging problem of identity theft and also the possible need to protect individuals from domestic violence or other injury."[5] Courts have expounded on the importance of authorizing debtors to redact individual creditors' personally identifiable information, including home addresses in particular.[6] For example, in *Mountain Express*, this Court remarked with respect to a similar motion, "I think that I've been pretty consistent in the past couple of hearings about being overly protective . . . of these folks who come to the bankruptcy case involuntarily. And I have

---

[5] *In re Motions Seeking Access to 2019 Statements*, 585 B.R. 733, 747 (D. Del. 2018) (quoting 2 COLLIER ON BANKRUPTCY ¶ 107.LH[2] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.), *aff'd sub nom In re AC&S Inc.*, 775 Fed. Appx. 78 (3d Cir. 2019).

[6] *See, e.g., In re Endo Int'l plc*, No. 22-22549 (JLG), 2022 Bankr. LEXIS 3093 (Bankr. S.D.N.Y. Nov. 2, 2022).

erred on the side of caution."[7] In *Clover*, while overruling the objection of the U.S. Trustee to redaction relief, the same as that proposed herein, Judge Owens noted that "[t]o me it is common sense. I don't need evidence that there is, at best, a risk of identity theft and worse a risk of personal injury from listing someone's name and address on the internet by way of the court's electronic case filing system and, of course, the claims agent's website. . . The court can completely avoid contributing to the risk by redacting the addresses. And while there is, of course, an important right of access we routinely redact sensitive and confidential information for corporate entities and redact individual's home addresses."[8] In *Forever 21*, in overruling the U.S. Trustee's objection, Judge Gross found that "[w]e live in a new age in which the theft of personal identification is a real risk, as is injury to persons who, for personal reasons, seek to have their addresses withheld."[9] Similarly in *Anna Holdings*, Judge Sontchi also overruled the U.S. Trustee's objection, emphasizing the importance of protecting individuals from unnecessary disclosure of such information, noting that "I think it's just plain common sense in 2019—soon-to-be 2020—to put as little information out as possible about people's personal lives to [prevent] scams. . . So, you know, it's a real-life issue, and, of course, the issue of domestic violence is extremely important."[10]

13. Absent the relief requested herein, the Debtors (a) would unnecessarily render individuals more susceptible to identity theft and (b) could jeopardize the safety of claimants in these Chapter 11 Cases who, unbeknownst to the Debtors, are survivors of domestic violence, harassment, or stalking by publishing their home addresses without any advance notice or opportunity to opt out or take protective measures.

---

[7] Hr'g Tr. At 32:12-15, *In re Mountain Express Oil Co.*, 23-90147 (DRJ) (Bankr. S.D. Tex. Mar. 22, 2023).

[8] Hr'g Tr. at 24:21-25, 25:9-10, *In re Clover Techs. Grp., LLC*, No. 19-12680 (KBO) (Bankr. D. Del. Jan. 22, 2020).

[9] Hr'g Tr. at 60:22–25, *In re Forever 21, Inc.*, No. 19-12122 (KG) (Bankr. D. Del. Dec. 19, 2019).

[10] Hr'g Tr. at 48:20-25, 49:1–8, *In re Anna Holdings, Inc.*, No. 19-12551 (Bankr. D. Del. Dec. 3, 2019).

C.     **The Implementation of the Proposed Patient Protection Procedures Is Warranted.**

14.     Alongside seeking authorization to redact personally identifiable information from papers filed in these cases, the Debtors also seek issuance of an order approving the below-defined Patient Protection Procedures. The Health Insurance Portability and Accountability Act of 1996 ("HIPAA") creates a duty for healthcare providers to maintain the confidentiality of Patient information. Pursuant to HIPAA, certain regulations concerning such duties are set forth in 45 C.F.R. §§ 160, 162, and 164. These regulations impose stringent standards on healthcare providers and establish significant penalties for any healthcare provider that improperly uses or discloses Patient information.

15.     Because the Debtors are healthcare providers and contract with healthcare providers that transmit health information in electronic form, they may be considered to be "covered entities" or "business associates" under 45 C.F.R. § 160.103 and must therefore comply with the confidentiality requirements of HIPAA.[11] Such requirements prevent the Debtors from disclosing PHI, as it is defined in HIPAA, except in limited circumstances.[12] The Debtors could be subjected to significant monetary penalties for the unauthorized disclosure of PHI.[13] The penalties imposed for violations of HIPAA can be imposed even if a person "did not know and, by exercising reasonable diligence, would not have known" that a violation occurred.[14] Penalties may also be imposed under state privacy acts for violation of Patient privacy rules. For example,

---

[11]   These regulations also apply to "business associates," which includes persons who provide management, legal, accounting, and consulting services for a covered entity. 45 C.F.R. § 160.103. The Debtors have filed an application seeking to employ the Notice and Solicitation Agent. Because the Notice and Solicitation Agent is certified as HIPAA-compliant, it will be able to compile the names and addresses of the Patients in order to serve necessary notices and compile information needed for the Patient Schedules.

[12]   45 C.F.R. § 164.502.

[13]   *Id.* at § 160.402.5.

[14]   *Id.* at § 160.404(b)(2)(i).

Texas imposes civil penalties ranging from $5,000 to $25,000 per violation for unauthorized disclosure of sensitive personal information.[15] Similarly, in California and Florida, subject to limited exceptions, protected health information may not be disclosed without written authorization from the Patient and violators are subject to discipline by either the state attorney general or the appropriate licensing authority for a provider.[16]

16. The Debtors are also party to business associate agreements with a variety of healthcare providers that impose contractual obligations on the Debtors to comply with HIPAA and to protect the PHI generated by these entities. Disclosure of this PHI would result in direct liability under HIPAA and contractual liability under these agreements which may threaten business relationships with healthcare providers. These healthcare providers constitute a key source of revenue for the Debtors and a failure to meet the Debtors' obligations under these business associate agreements could hamper the Debtors' efforts to complete a successful restructuring transaction.

17. The requirements to maintain Patient confidentiality under HIPAA conflict with the requirements placed on the Debtors to disclose information under the Bankruptcy Code, specifically the duty to file a list of all creditors under section 521(a)(1)(A) and the duty to file schedules of all assets and liabilities under section 521(a)(1)(B)(i). The Debtors therefore request that such Patient information be protected by the Patient Protection Procedures, pursuant to section 107(c) of the Bankruptcy Code, which provides that the Court:

> for cause, may protect an individual, with respect to the following types of information to the extent the court finds that disclosure of such information would create undue risk of identity theft or other unlawful injury to the individual or the individual's property:

---

[15] Tex. Health & Safety Code § 5181.201. Disclosures that are knowing or intentionally made for financial gain are subject to increasing penalties, up to $250,000 per violation. *Id.*

[16] *See* California Consumer Privacy Act of 2018 and Fla. Stat. § 456.057. The Attorney General can impose a fine up to $5,000 per violation.

> (A) Any means of identification . . . contained in a paper filed, or to be filed, in a case under [the Bankruptcy Code.]
>
> (B) Other information contained in a paper described in subparagraph (A).[17]

18. The Court may also approve the proposed procedures pursuant to section 105(a) of the Bankruptcy Code, which authorizes the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). In addition to the Bankruptcy Code, Bankruptcy Rule 9018 empowers a bankruptcy court, on motion, to enter any order that justice requires "to protect governmental matters that are made confidential by statute or regulation." Fed. R. Bankr. P. 9018.

19. Specifically, the Debtors request that the Court authorize the following procedures (the "Patient Protection Procedures"):

> (a) The Debtors (and/or their Claims Agent) will maintain a list of current or former Patients (the "Patient List" of the "Patients"), which will assign a unique identification number to each Patient.
>
> (b) The Debtors will redact and/or omit any protected health information ("PHI"), including any references to current or former Patients, from any paper to be filed with the Court, subject to Section (d) below, including:
>
>> i. the Consolidated Creditor Matrix;
>>
>> ii. any certificate of service; and
>>
>> iii. any schedule of assets and liabilities and statement of financial affairs for any Debtor.
>
> (c) The unredacted versions of any paper filed under seal with the Court pursuant to the Patient Protection Procedures shall not be made available to any party (other than those specified in Section (d) hereof) and may not be filed on the public docket and shall remain under seal until further order of the Court.
>
> (d) The Debtors (and/or their Claims Agent) will make available the Patient List and an unredacted copy of any paper redacted pursuant to the Patient Protection Procedures to (i) the Court and the U.S. Trustee, upon request,

---

[17] `11 U.S.C. § 107(c)(1).

    (ii) any other party in interest only after the Court has entered an Order, after notice and hearing, authorizing the Debtors to do so; *provided* that any receiving party shall not transfer or otherwise provide such unredacted document to any person or entity not party to the request.[18]

  (e) When the Debtors (and/or their Claims Agent on behalf of the Debtors), serve any paper upon any person listed on the Patient List, the Debtors shall note in the respective certificate of service that the parties served include persons listed on the Patient List.

20. Notwithstanding the Patient Protection Procedures, the Debtors shall disclose information about Patients who have filed lawsuits against the Debtors as required under the Bankruptcy Rules or any other order of the Court.

21. The Debtors also seek relief to continue their storage and maintenance of Patient records in the ordinary course, including to transfer or pay a third-party provider to maintain certain such records in the case of facility or office closure and pursuant to all applicable federal or state laws and regulations.

22. The Debtors believe that the relief requested herein balances the need to maintain confidentiality with respect to Patient information under HIPAA with the need for disclosure under the Bankruptcy Code. Absent the relief requested herein, the Debtors may, by fulfilling their duty to disclose information under the Bankruptcy Code, (a) violate HIPAA or any other applicable healthcare privacy laws or other contractual obligations, thereby exposing them to severe monetary penalties that could threaten the Debtors' ability to consummate a successful restructuring transaction and (b) unnecessarily and unlawfully jeopardize privacy of the Patients.

23. The relief requested herein has been routinely granted by courts. *See, e.g., In re CareMax, Inc.*, No. 24-80093 (MVL) (Bankr. S.D. Tex. Nov. 20, 2024) (Docker No. 78)

---

[18] Under 45 C.F.R. § 164.512(f)(1)(ii), protected health information may be disclosed in response to "(A) A court order . . . issued by a judicial officer [or] (C) An administrative request . . . provided that: (1) The information sought is relevant and material to a legitimate law enforcement inquiry."

(authorizing the debtors to implement procedures to maintain and protect confidential information of current and former Patients); *In re Steward Health Care System LLC*, No. 24-90213 (CML) (Bankr. S.D. Tex. May 7, 2024) (Docket No. 88) (same); *In re Genesis Care Pty Limited*, No. 23-90614 (DJR) (Bankr. S.D. Tex. June 1, 2023) (Docket No. 74) (same); *In re Envision Healthcare Corporation*, No. 23-90342 (CML) (Bankr. S.D. Tex. May 15, 2023) (Docket No. 119) (same); *In re American Physician Partners, LLC*, No. 23-11469 (BLS) (Bankr. D. Del. Oct. 27, 2023) (Docket No. 296) (same); *In re UpHealth Holdings, Inc.*, No. 23-11476 (LSS) (Bankr. D. Del. Oct. 24, 2023) (Docket No. 49) (same).

24. The Debtors submit that the relief requested herein is appropriate in these Chapter 11 Cases and well within the provisions of the Bankruptcy Code and Bankruptcy Rules).

D. **Notice of the Chapter 11 Cases and Limitations on Certain Further Notices**

25. Bankruptcy Rule 2002(a) provides, in relevant part, that "the clerk, or some other person as the court may direct, shall give the debtor, the trustee, all creditors and indenture trustees at least 21 days' notice by mail of: the meeting of creditors under § 341 or § 1104(b) of the Code." FED. R. BANKR. P. 2002(a). Subsection (f) provides that notice of the order for relief shall be sent by mail to all creditors. *See* FED. R. BANKR. P. 2002(f).

26. The Debtors propose that Kroll Restructuring Administration LLC (the "Claims Agent"), the Debtors' claims and noticing agent, undertake all mailings directed by the Court or the U.S. Trustee or as required in section 342(a) of the Bankruptcy Code and Bankruptcy Rules 2002(a) and (f), including the notice of commencement of these Chapter 11 Cases, substantially in the form attached as **Exhibit A** to the Order (the "Notice of Commencement"). The Debtors believe that using the Claims Agent to promptly provide notices to all applicable parties will maximize efficiency in administering these Chapter 11 Cases and will ease administrative burdens

that would otherwise fall upon the Court and the U.S. Trustee. Additionally, the Claims Agent will assist the Debtors in preparing creditor lists and mailing initial notices, and, therefore, it is more efficient to authorize the Claims Agent to mail the notice of commencement of these Chapter 11 Cases. Further, coordinating the mailing of notice of any bar date and the Notice of Commencement through a single source, the Claims Agent, will reduce the opportunities for the dissemination of conflicting or confusing information to parties in interest. Accordingly, the Claims Agent should undertake such mailings.

27. Further, the Debtors request authority to serve the Notice of Commencement to creditors and Patients by email, where available,[19] as outlined below (the "<u>Noticing Procedures</u>"). Although the Bankruptcy Rules generally require notices to be served on creditors at their mailing addresses, such rules give significant latitude to bankruptcy courts for modifying the general rule. *See* Fed. R. Bankr. P. 2002(m) and 9007. And, bankruptcy courts have explicit authority to modify the manner in which notice is given. *See* Fed. R. Bankr. P. 2002(m).

28. With approximately 1,500,000 current Patients and former Patients, if the Debtors were to provide service of the Notice of Commencement to all of the Patients via first-class mail, the costs would be exorbitant. Accordingly, the Debtors request approval of the following Noticing Procedures for service of the Notice of Commencement and notice of other pleadings to Patients and creditors:

- The Debtors will serve the Notice of Commencement via email,[20] if available, maintained in their books and records for all creditors and current and former patients.

---

[19] For the avoidance of doubt, the proposed Noticing Procedures shall apply to all notices and mailings the Patients and creditors that are entitled to receive in these Chapter 11 Cases, including, without limitation, the notice of the hearing on approval of the disclosure statement and approval of any plan.

[20] The Debtors are using the email maintained in their books and records for Patients. In instances where the Debtors did not have a current email address on file, the Debtor utilized Experian to obtain the email. If there is more than one email the Debtors will send the Notice of Commencement to each of the emails that are associated with the Patient.

- If email is not available, the Debtors will serve all Patients and creditors with a 4¼" x 6" postcard (the "Notice Card") containing the material information in the Notice of Commencement via first class presort postage or the most cost-effective method available directed to the last known physical address, if available, maintained in the Debtors' books and records. The Notice Card will include a OR code (quick response code) linking the reader directly to the Debtors' case management website, which will provide (i) access to the Notice of Commencement, (ii) an option to receive future notices by email, and (iii) access to other information about the Chapter 11 Cases, including the public docket.

- The Debtors will publish the Notice of Commencement in the national edition of *USA Today*. The Debtors will also publish the Notice of Commencement on the Debtors' case management website established by the Claims Agent.

29. The Debtors submit the combination of service of the Notice of Commencement, and any other notices and mailings the Patients and creditors are entitled to receive in these Chapter 11 Cases, by email or by first class email where no email is available, and publication of the Notice of Commencement, is the most practical method by which to notify Patients of the commencement of these Chapter 11 Cases and constitutes an efficient use of the estates' resources. Courts within this Circuit and others have granted similar relief to the relief requested herein. *See, e.g., In re Caremax, Inc. et al.*, Case No. 24-80093 (MVL) (Bankr. S.D. Tex. Nov. 20, 2024) (Docket No. 78); *In re Cano Health, Inc.*, No. 10164 (KBO) (Bankr. D. Del. Feb. 7, 2024) (Docket No. 91) (approving service through postcard and email if available); *In re Steward Health Care System LLC*, No. 24-90213 (CML) (Bankr. S.D. Tex. May 7, 2024) (Docket No. 90) (authorizing the debtors to serve all pleadings and papers, including the notice of commencement, on all parties listed on the creditor matrix by email, if available); *In re Genesis Care Pty Limited*, No. 23-90614 (DRJ) (Bankr. S.D. Tex. June 1, 2023) (Docket No. 73) (same); *In re Envision Healthcare Corporation*, No. 23-90342 (CML) (Bankr. S.D. Tex. May 15, 2023) (Docket No. 118) (same).

30. Not only is service of the Notice of Commencement by email, first class mail where no email is available, and by publication notice, as described above, the most efficient and cost-

effective manner by which service of all interested parties can be completed, it is also the most likely to facilitate responses. In addition, this method of service will help alleviate administrative burdens and costs, which will be enormous, on the Debtors' estates. The Debtors submit that this request is well within the Court's equitable powers under section 105(a) of the Bankruptcy Code.

31. Additionally, the Debtors request that the Court limit the notice requirements of Bankruptcy Rule 2002(a)(2)-(3), which require Debtors to provide notice of any proposal to use, sell or lease property of the estate outside the ordinary course of business or to approve a compromise or settlement to all creditors, the U.S. Trustee, and all indenture trustees, unless the Court orders otherwise. The Debtors propose to limit notice of motions under Bankruptcy Rule 2002(a)(2)-(3) to known parties asserting an interest in the property being sold or any claims being resolved, parties who have appeared or requested notice in the cases, the U.S. Trustee, counsel to any statutory committee appointed, and any indenture trustees (if any). Until such time as a statutory committee is appointed (if any), the Debtors propose to provide notice to the creditors identified on their consolidated list of top 30 unsecured creditors in lieu thereof.

32. The Fifth Circuit has held that the "notice requirement is satisfied when the creditor has actual knowledge of the case in time to permit it to take steps to protect its rights." *Raymond James & Assocs. v. Jalbert (In re German Pellets La., L.L.C.)*, 91 F.4th 802, 809 (5th Cir. 2024) (quoting *In re Sam*, 894 F.2d 778, 781 (5th Cir. 1990)) (internal marks omitted and alteration in original). Here, the Debtors will be providing Notice of Commencement on all creditors as well as reference to the Claims Agent's website regarding an order granting complex case treatment shortly after the commencement of the cases. As such, all known creditors will be promptly appraised with notice of these Chapter 11 Cases.

33. Contemporaneously with the Petition Date or shortly after the Petition Date, the Debtors will be filing a motion to establish procedures for and to sell substantially all of their assets (the "Sale Motion"). The Sale Motion will be posted to the bankruptcy case website maintained by the Claims Agent (the "Case Website") contemporaneously with its filing and if there are future sales or settlements, such motions will likewise be promptly available on the Case Website. The bankruptcy case website is specifically included within the Notice of Commencement to better inform creditors of the events of these Chapter 11 Cases.

34. Limiting notice in this way will relieve the Debtors' estates of the costs associated with serving more than 1,500,000 parties, who are largely current and former Patients of the Debtors that do not hold any interest in the Debtors' assets. These parties will have already received the Notice of Commencement and will have the opportunity to appear in the cases and request further notice. As such, providing further express notice of the Sale Motion or of any further sales or disposition of estate property or settlements is unlikely to meaningfully add to the transparency of the Chapter 11 Cases when balanced with the potential costs thereof. Furthermore, parties who do not wish to appear but nonetheless monitor the Chapter 11 Cases, will be able to do so free of charge through the Case Website. Additionally, parties who are expressly affected by such motions, such as secured parties, will continue to receive notice under this limitation and any party who would like to monitor or appear in the cases will have ample opportunity to do so. Accordingly, under the circumstances, the Court should limit notice under Bankruptcy Rule 2002(a)(2)-(3).

## EMERGENCY CONSIDERATION

35. The Debtors request emergency consideration of the Motion pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first 21 days after the

commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm." An immediate and orderly transition into chapter 11 is critical to the viability of the Debtors' operations and that any delay in granting the relief requested could hinder such operations and cause irreparable harm. This Motion requests relief from procedural rules and requirements that pertain to matters of immediate significance or which involve deadlines sooner than 21 days after the Petition Date. The requested relief will save costs and avoid undue administrative burden and confusion only if granted before the applicable deadlines. The Debtors have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and request that the Court approve the relief requested herein on an emergency basis.

### WAIVER OF BANKRUPTCY RULES 6004(a) AND 6004(h)

36. The Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

### NOTICE

37. Notice of the hearing on the relief requested in this Motion will be provided by the Debtors in accordance and compliance with Bankruptcy Rules and Local Rules. The Debtors will provide notice of this motion to the following: (a) the U.S. Trustee for the Southern District of Texas; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the DIP Lenders; (d) the Prepetition Secured Parties; (e) the United States Attorney's Office for the Southern District of Texas; (f) the Internal Revenue Service; (g) the parties holding secured claims against the Debtors; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002 and Local Rule 9013-1(d). No other or further notice is needed in light of the nature of the relief requested.

## CONCLUSION

**WHEREFORE**, the Debtors request that the Court enter the attached order granting the relief requested herein and such other and further relief as may be just and proper under the circumstances.

[*Remainder of Page Intentionally Left Blank*]

Dated: February 2, 2026

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Maxim B. Litvak*
Maxim B. Litvak (SBT 24002482)
Theodore S. Heckel (SBT 24133488)
700 Louisiana Street, Suite 4500
Houston, TX 77002
Telephone: (713) 691-9385
Facsimile:  (713) 691-9407
mlitvak@pszjlaw.com
theckel@pszjlaw.com

-and-

Debra I. Grassgreen (*pro hac vice* pending)
John W. Lucas (*pro hac vice* pending)
One Sansome Street, 34th Floor, Suite 3430
San Francisco, CA 94104
Telephone: (415) 263-7000
Facsimile:  (415) 263-7010
dgrassgreen@pszjlaw.com
jlucas@pszjlaw.com

*Proposed Counsel to the Debtors and Debtors in Possession*

## Certificate of Service

I certify that on February 2, 2026 I caused a copy of the foregoing document to be served via the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Maxim B. Litvak*
Maxim B. Litvak