IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>CARBON HEALTH TECHNOLOGIES, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 26-90306 (CML)<br><br>(Joint Administration Requested) |

**DECLARATION OF REILLY OLSON OF ALVAREZ & MARSAL
NORTH AMERICA, LLC IN SUPPORT OF DEBTORS' DIP FINANCING MOTION**

I, Reilly Olson, hereby declare under penalty of perjury as follows:

1. I submit this declaration (the "Declaration") in support of the *Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Post-Petition Secured Financing Pursuant to Section 364 of the Bankruptcy Code; (II) Authorizing the Debtors to Use Certain Cash Collateral; (III) Granting Liens and Superpriority Administrative Expense Claims; (IV) Granting Adequate Protection to the Prepetition Secured Parties; (V) Modifying the Automatic Stay; (VI) Scheduling a Final Hearing; and (VII) Granting Related Relief* (the "DIP Financing Motion"), filed concurrently herewith, of the above-captioned debtors and debtors in possession (the "Debtors").[2]

2. Unless otherwise indicated, the statements set forth in this Declaration are based on: (a) my personal knowledge or views based on my experience; (b) information I have received from the Debtors, my colleagues at Alvarez & Marsal North America, LLC ("A&M") working

---

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/CarbonHealth. The location of Carbon Health Technologies, Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 500 East Remington Drive, Suite 20, Sunnyvale, CA 94087.

[2] Capitalized terms used but not defined herein shall have the meanings set forth in the DIP Financing Motion.

4932-2711-7194.4 12854.00001

directly with me or under my supervision, direction, or control, or other advisors of the Debtors; and (c) my review of relevant documents.

3. I am over the age of 18 and am authorized to submit this Declaration on behalf of the Debtors. I am not being specifically compensated for this testimony other than through payments received by A&M, as engaged by the Debtors; none of those payments are specifically payable on account of this testimony. If I were called upon to testify, I could and would testify competently to the facts and views set forth herein.

## Professional Background and Qualifications

4. I am a Senior Director at Alvarez & Marsal North America, LLC (together with its affiliates, "A&M"), a turnaround management consulting firm and the proposed financial advisor to Carbon Health Technologies Inc., based in the Chicago office located at 540 West Madison, Suite 1800, Chicago, IL 60661.

5. A&M is a leading restructuring consulting firm with extensive experience providing high quality, specialized management and restructuring advisory services to debtors and distressed companies. Specifically, A&M's core services include turnaround advisory services, interim and crisis management, revenue enhancement, claims management, and creditor and risk management advisory services. A&M provides a wide range of debtor advisory services targeted at stabilizing and improving a company's financial position, including: (i) developing or validating forecasts, business plans, and related assessments of strategic positions; (ii) monitoring and managing cash, cash flow, and supplier relationships; (iii) assessing and recommending cost reduction strategies; and (iv) designing and negotiating financial restructuring packages. In addition, A&M provides advice on specific aspects of the turnaround process and helps manage complex constituency relations and communications. A&M is known for its ability to work

alongside company management and key constituents during chapter 11 restructurings to develop a feasible and executable plan of reorganization.

6. I have 20 years of experience specializing in restructuring, with more than five years focused on the healthcare industry. I have served in both advisory and interim management roles where I have been responsible for designing and leading strategy implementation efforts, financial analysis, cash management, crisis management, market analysis and operational improvement, both in and out of court. A&M is a restructuring consulting firm with extensive experience providing specialized management and restructuring advisory services to debtors and distressed companies. Prior engagements include serving as financial advisor to CareMax, Omnicare, Eiger Biopharmaceuticals, National Spine and Pain Centers, and several other healthcare clients. Since November 26, 2025, I have been the primary advisor at A&M responsible for day-to-day general restructuring and operational advice with the Debtors.

### Retention of A&M

7. The Debtors engaged A&M on November 26, 2025, to provide restructuring services. Since July 2025, A&M provided financial and operational services to the Debtors outside of the restructuring engagement. Through A&M's pre-petition engagement, the A&M team has worked closely with the Debtors' management and other professionals retained by the Debtors to assist in considering and planning for various financial and restructuring scenarios. Through that work, I am familiar with the Debtors' capital structure, business operations, books and records, and circumstances leading to the restructuring. Additionally, I have developed a comprehensive understanding of the Debtors' liquidity position and need for debtor-in-possession financing.

**The Debtors' Need for the DIP Facility and Access to Cash Collateral**

8. The Debtors are in a precarious liquidity situation, and without the DIP Facility, they would be facing an imminent shutdown of their clinics and operations. The Debtors require ongoing access to liquidity in these chapter 11 cases to, among other things, stabilize their operations (including their clinic operations), continue delivering critical patient care, maintain business relationships with affiliated medical providers, vendors, suppliers and payors, make payroll to employees (including but not limited to clinicians and healthcare staff), satisfy other working capital and operational needs, and fund the expenses of these chapter 11 cases.

9. Stabilizing the Debtors' operations with additional financing is critical to preserving the Debtors' value and monetizing and maximizing such value for the benefit of all the Debtors' stakeholders, including medical providers, employees, vendors, and patients. Without additional financing, the Debtors would not be able to continue operating as a going concern, effectively turning the Debtors' current marketing process into a forced liquidation sale (at best) where potential buyers would consider the sales process as an opportunity to acquire assets at substantially less than fair value. In addition, the failure to continue funding the Debtors' operations and a forced liquidation would deprive patients of access to the Debtors' healthcare services.

10. The Debtors' operations are not currently profitable. The Debtors require additional liquidity to continue business in the ordinary course and satisfy accruing administrative expenses. The Debtors cannot operate on access to Cash Collateral alone; they require debtor-in-possession financing to ensure the administrative solvency of their estates. Such financing is also required to allow the Debtors to continue their ongoing chapter 11 plan and sale process and thereby maximize value for the benefit of all constituents. Absent immediate access to Cash Collateral and the

funding available under the DIP Facility, the Debtors would be unable to sustain operations, pay their employees and vendors, and ultimately achieve a successful restructuring through the chapter 11 process. Accordingly, the Debtors have an urgent and immediate need for the financing and access to Cash Collateral as requested in the DIP Motion.

11. Against that backdrop, the Debtors negotiated with the DIP Lenders and Prepetition Lenders to develop an Approved Budget, adequate protection package, and restructuring timeline that would induce the DIP Lenders to commit to the DIP Facility and the Prepetition Lenders to consent to the use of their Cash Collateral in light of the Debtors' circumstances. After good-faith, arms'-length negotiations, the Debtors, the DIP Lenders, and the Prepetition Lenders ultimately agreed on the terms of the DIP Facility and consensual use of Cash Collateral. The Debtors believe that the financing available under DIP Facility, along with consensual access to Cash Collateral, all in accordance with the projections in the Approved Budget, is adequate and that the funding contemplated thereunder is reasonable and on market terms that will allow the Debtors to have adequate liquidity to satisfy their accruing administrative expenses during the course of these chapter 11 cases.

## The Approved Budget is Reasonable and Appropriate

12. I and my team at A&M assisted the Debtors in developing a 13-week cash flow forecast for the Approved Budget for the use of loan proceeds from the DIP Facility and access to Cash Collateral during these chapter 11 cases. The Approved Budget contains line items for cash flows anticipated to be received and disbursed during the time period reflected in the Approved Budget. I believe the Approved Budget is based on reasonable and appropriate assumptions and demonstrates that the Debtors will have adequate liquidity during that period.

13. Because the Debtors' access to borrowings available under the DIP Facility and consensual use of Cash Collateral is fundamental to the Debtors' continued business operations and the success of these chapter 11 cases, I believe that the relief requested in the DIP Financing Motion is necessary and appropriate to avoid immediate and irreparable harm to the Debtors' estates and should be approved by this Court.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated:  February 2, 2026

/s/ Reilly Olson
Reilly Olson
Senior Director
Alvarez & Marsal North America, LLC