# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>CARBON HEALTH TECHNOLOGIES, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 26-90306 (CML)<br><br>(Joint Administration Requested) |

**DECLARATION OF VLADIMIR MOSHINSKY OF STIFEL, NICOLAUS & COMPANY IN SUPPORT OF DEBTORS' DIP FINANCING MOTION**

I, Vladimir Moshinsky, hereby declare under penalty of perjury as follows:

1. I submit this declaration (the "Declaration") in support of the *Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Post-Petition Secured Financing Pursuant to Section 364 of the Bankruptcy Code; (II) Authorizing the Debtors to Use Certain Cash Collateral; (III) Granting Liens and Superpriority Administrative Expense Claims; (IV) Granting Adequate Protection to the Prepetition Secured Parties; (V) Modifying the Automatic Stay; (VI) Scheduling a Final Hearing; and (VII) Granting Related Relief* (the "DIP Financing Motion"), filed concurrently herewith, of the above-captioned debtors and debtors in possession (the "Debtors").[2]

2. Unless otherwise indicated, the statements set forth in this Declaration are based on: (a) my personal knowledge or views based on my experience; (b) information I have received from the Debtors, my colleagues at Stifel, Nicolaus & Company, Incorporated ("Stifel") working

---

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/CarbonHealth. The location of Carbon Health Technologies, Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 500 East Remington Drive, Suite 20, Sunnyvale, CA 94087.

[2] Capitalized terms used but not defined herein shall have the meanings set forth in the DIP Financing Motion.

4935-3933-0442.4 12854.00001

directly with me or under my supervision, direction, or control, or other advisors of the Debtors; and (c) my review of relevant documents.

3.  I am over the age of 18 and am authorized to submit this Declaration on behalf of the Debtors. I am not being specifically compensated for this testimony other than through payments received by Stifel, as engaged by the Debtors; none of those payments are specifically payable on account of this testimony. If I were called upon to testify, I could and would testify competently to the facts and views set forth herein.

## Professional Background and Qualifications

4.  I am a Managing Director at Stifel, which is headquartered at 501 North Broadway, St. Louis, Missouri 63102 and has its principal investment banking office at 787 Seventh Avenue, New York, New York 10019. The Debtors retained Stifel as its investment banker prepetition, and the Debtors intend to file a motion to retain Stifel as its investment banker in these chapter 11 cases.

5.  Stifel is an investment bank that provides strategic and financial advisory services in large-scale corporate restructuring transactions. Stifel professionals have extensive experience providing such services to financially distressed companies and to creditors, equity holders, and other constituencies in reorganization proceedings and complex financial restructurings, both in- and out-of-court.

6.  Stifel is the primary investment banking and broker-dealer subsidiary of Stifel Financial Corp. ("SF", NYSE: SF). SF conducts a wide range of financial services globally through its approximately 100 subsidiaries, including Stifel.

7.  I have over ten years of investment banking experience and, in my extensive experience, my work has focused on advising debtors, creditors, and equity holders in a wide range

of recapitalization and restructuring transactions, including procuring, structuring, and negotiating postpetition financing facilities across a broad range of industries. Prior to joining Stifel full-time in 2013, I worked as a Senior Consultant in the Financial Valuation Group of American Appraisal Associates, a division of Kroll. I hold an M.B.A. with high distinction from the Ross School of Business at the University of Michigan and a B.S. in Finance, with honors, from Rutgers Business School in New Brunswick, New Jersey.

### Retention of Stifel

8. The Debtors engaged Stifel in March 2025 as their investment banker to provide advice regarding obtaining financing and pursuing strategic alternatives in the midst of an increasingly difficult liquidity situation. In a short period of time prior to the Petition Date, it became increasingly clear that the Debtors would likely need to file these chapter 11 cases to obtain a breathing spell and pursue restructuring options to maximize value, including an orderly chapter 11 and sale process.

### The Debtors' Need for the DIP Facility and Access to Cash Collateral

9. As part of the Debtors' preparation for these chapter 11 cases, Stifel assisted the Debtors with the evaluation of their immediate financing needs and funding alternatives. Stifel also assisted the Debtors in their assessment of the current DIP financing market. As part of the foregoing evaluation, Stifel worked with the Debtors and their management and advisors in analyzing the Debtors' immediate and long-term financing needs.

10. Based on discussions with the Debtors' management, I understand that the Debtors lack sufficient liquidity and do not generate sufficient cash from operations to fund their businesses through a chapter 11 bankruptcy process. Accordingly, without the DIP Facility and the ability to use Cash Collateral, the Debtors will not have the liquidity needed to operate their businesses, fund

their ordinary course expenditures, or pay the expenses necessary to administer these chapter 11 cases. Absent increased funding in the form of the DIP Facility, the Debtors could be forced to terminate their businesses as going concerns, to the detriment of the Debtors, their estates, and all stakeholders.

11. The Debtors also believe that the DIP Facility and access to cash collateral will provide a clear message to their customers, vendors, employees, and contract counterparties that the Debtors have sufficient liquidity to meet their current and future obligations based on how they have historically conducted business. The proposed financing will demonstrate the Debtors' ability to continue meeting the needs of their patients, provide compensation to their employees, and operate their businesses in the ordinary course.

### The Debtors' Efforts to Obtain Postpetition Financing

12. The Debtors, with the assistance of Stifel and their other advisors, have worked extensively to assist the Debtors with their capital structure and operational challenges. In the months leading up to the commencement of these chapter 11 cases, the Debtors began to explore restructuring options, including the potential of a chapter 11 filing. In connection with these efforts, the Debtors instructed Stifel to explore potential sources of postpetition financing.

13. On January 26, 2026, Stifel and the Debtors commenced a formal marketing process for postpetition financing designed to canvas the market and identify the best possible solution to the Debtors' particular financing needs on the best terms available. As part of the formal marketing process, the Debtors and Stifel prepared a teaser describing the DIP loan opportunity and approached various alternative funding sources. None of these potential third-party lenders were prepared to offer debtor-in-possession financing to the Debtors, particularly on a junior basis to the existing Prepetition Secured Liens.

14. The Debtors recognized that their choices with respect to postpetition financing were limited. In addition to difficult market conditions, substantially all of the Debtors' material assets are pledged as collateral to the Prepetition Lenders. None of the financing parties contacted were willing to provide unsecured financing or financing secured by liens junior to the Debtors' prepetition debt. Ultimately, as noted above, the Debtors did not receive any DIP financing proposals from third-party lenders. Further, I do not believe a more extended marketing process would have had a different result given the lack of available unencumbered collateral to secure financing and the current market conditions.

15. The Debtors and their advisors conducted good-faith, arm's-length negotiations with the DIP Lenders and Prepetition Lenders regarding the proposed terms of DIP financing and use of cash collateral. Discussions involved detailed estimates for a potential DIP loan sizing, potential alternatives available to the Debtors, and the adverse impact to the Debtors' estates in the absence of such financing. These negotiations resulted in the terms set forth in the DIP Financing Motion.

16. The proposed DIP Facility, which provides the Debtors with immediate access to liquidity and allows for access to and the use of Cash Collateral on a consensual basis, was the result of a comprehensive marketing and negotiation process and represents the best available terms for the Debtors' debtor-in-possession financing under the circumstances.

17. For the foregoing reasons, I do not believe that alternative third-party sources of debtor-in-possession financing are available to the Debtors. I believe that the proposed DIP Facility provides the Debtors with an expeditious path toward emergence that is in the best interests of the Debtors' stakeholders.

**The DIP Facility**

18. The Debtors are now seeking secured post-petition financing and the use of Cash Collateral of the Prepetition Lenders subject to the terms and conditions of a proposed interim financing order.

19. Based on my experience as a restructuring professional and involvement in the process described above, I believe the DIP Facility represents the best available and most expedient postpetition financing under the circumstances. As noted above, no party that Stifel is aware of was interested in providing, or willing to provide, DIP financing to the Debtors on an unsecured or junior basis. Moreover, the Debtors and the Prepetition Lenders agreed to terms that will provide the Debtors with access to much-needed liquidity and an opportunity to maximize value during the pendency of these chapter 11 cases. In particular, I believe the size, terms, and pricing of the DIP Facility are appropriate and reasonable given the Debtors' circumstances and the industry and economic pressures they face.

20. For the above reasons, and based on my experience as a restructuring professional and involvement in other financing transactions, I believe that the DIP Facility is the best financing option presently available to the Debtors and that the terms of the DIP Facility are in the best interests of the Debtors' estates.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated:  February 2, 2026                    */s/ Vladimir Moshinsky*
                                                                                       Vladimir Moshinsky
                                                                                       Managing Director
                                                                                       Stifel, Nicolaus & Company, Incorporated