**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CARBON HEALTH TECHNOLOGIES, INC., | ) | Case No. 26-90306 (CML) |
|  | ) |  |
|  | ) | (Jointly Administered) |
| Debtors. [1] | ) |  |
|  | ) |  |

**GLOBAL NOTES AND**
**STATEMENTS OF LIMITATIONS, METHODOLOGY,**
**AND DISCLAIMERS REGARDING THE DEBTORS' SCHEDULES OF**
**ASSETS AND LIABILITIES AND STATEMENTS OF FINANCIAL AFFAIRS**

**General**

Carbon Health Technologies, Inc. ("Carbon Health") and certain of its affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), filed their respective Schedules of Assets and Liabilities (each, a "Schedule" and, collectively, the "Schedules") and Statements of Financial Affairs (each, a "Statement" and, collectively, the "Statements" and, together with the Schedules, the "Schedules and Statements") with the United States Bankruptcy Court for the Southern District of Texas (the "Court"). The Debtors, with the assistance of their legal and financial advisors, prepared the unaudited Schedules and Statements in accordance with section 521 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") and Rule 1007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

These global notes and statements of limitations, methodology, and disclaimers regarding the Debtors' Schedules and Statements (the "Global Notes") pertain to, are incorporated by reference in, and comprise an integral part of, all of the Schedules and Statements and should be referred to and referenced in connection with any review of the Schedules and Statements.[2]

---

[1]   A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/CarbonHealth. The location of Carbon Health Technologies, Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 500 East Remington Drive, Suite 20, Sunnyvale, CA 94087.

[2]   These Global Notes supplement, and are in addition to, any specific notes contained in each Debtor's Schedules and Statements. The fact that the Debtors prepared a Global Note with respect to any of the individual Debtor's Schedules and Statements and not to those of another should not be interpreted as a decision by the Debtors to exclude the applicability of such Global Note to any of the Debtors' other Schedules and Statements, as appropriate.

The Schedules and Statements are unaudited and reflect the Debtors' reasonable efforts to report certain financial information of each Debtor on a stand-alone, unconsolidated basis. These Schedules and Statements neither purport to represent financial statements prepared in accordance with Generally Accepted Accounting Principles in the United States ("GAAP"), nor are they intended to be fully reconciled with the financial statements of each Debtor.

In preparing the Schedules and Statements, the Debtors relied on financial data derived from their books and records that was available at the time of such preparation. Although the Debtors have made commercially reasonable efforts to ensure the accuracy and completeness of the Schedules and Statements, subsequent information or discovery may result in material changes to the Schedules and Statements. As a result, inadvertent errors or omissions may exist. Accordingly, the Debtors and their directors, managers, officers, agents, attorneys, and financial advisors do not guarantee or warrant the accuracy or completeness of the data that is provided herein, and shall not be liable for any loss or injury arising out of or caused in whole or in part by the acts, errors, or omissions, whether negligent or otherwise, in procuring, compiling, collecting, interpreting, reporting, communicating, or delivering the information contained herein or the Schedules and Statements.  In no event shall the Debtors or their directors, managers, officers, agents, attorneys, and financial advisors be liable to any third party for any direct, indirect, incidental, consequential, or special damages (including, but not limited to, damages arising from the disallowance of a potential claim against the Debtors or damages to business reputation, lost business, or lost profits), whether foreseeable or not and however caused, even if the Debtors or their directors, managers, officers, agents, attorneys, and financial advisors are advised of the possibility of such damages.

The Schedules and Statements have been signed by Kerem Ozkay (Chief Executive Officer) and Sujal Mandavia (Chief Medical Officer), both Authorized Signatories of the Debtors. Mr. Ozkay and Dr. Mandavia have reviewed and verified all of the Schedules and Statements. In reviewing the Schedules and Statements, Mr. Ozkay and Dr. Mandavia relied upon the efforts, statements, advice, and representations of personnel of the Debtors and the Debtors' advisors and other professionals.  Given the scale of the Debtors' business, Mr. Ozkay and Dr. Mandavia have not (and practically could not have) personally verified the accuracy of each statement and representation in the Schedules and Statements, including, but not limited to, statements and representations concerning amounts owed to creditors, classification of such amounts, and creditor addresses.

Subsequent receipt of information or an audit may result in material changes in financial data requiring amendment of the Schedules and Statements. Accordingly, the Schedules and Statements remain subject to further review and verification by the Debtors. The Debtors reserve the right to amend the Schedules and Statements from time to time as may be necessary or appropriate; *provided*, that the Debtors, their agents, and their advisors expressly do not undertake any obligation to update, modify, revise, or recategorize the information provided herein or to notify any third party should the information be updated, modified, revised, or recategorized, except to the extent required by applicable law.

## Global Notes and Overview of Methodology

1. **Description of the Cases**.  On February 2, 2026 (the "Petition Date"), Debtor Carbon Health Technologies, Inc. and certain of its affiliated entities filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On February 2, 2026, the Court entered an order authorizing the joint administration of the cases pursuant to Bankruptcy Rule 1015(b) [Docket No. 17].  On February 16, 2026, the United States Trustee for the Southern District of Texas appointed an official Committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code [Docket No. 115]. No request for the appointment of an examiner has been made in these chapter 11 cases. Notwithstanding the joint administration of the Debtors' cases for procedural purposes, each Debtor has filed its own Schedules and Statements.

2. **Global Notes Control**.  Disclosure of information in one or more Schedules, one or more Statements, or one or more exhibits or attachments to the Schedules or Statements, even if incorrectly placed, shall be deemed to be disclosed in the correct Schedules, Statements, exhibits, or attachments.  In the event that the Schedules and Statements differ from any of the Global Notes, the Global Notes shall control.

3. **Reservation of Rights**.  Commercially reasonable efforts have been made to prepare and file complete and accurate Schedules and Statements; however, as noted above, inadvertent errors or omissions may exist. The Debtors reserve all rights to amend and supplement the Schedules and Statements as may be necessary or appropriate but do not undertake any obligation to do so, except to the extent required by applicable law.  Nothing contained in the Schedules, Statements, or Global Notes shall constitute a waiver of rights with respect to these chapter 11 cases, including, but not limited to, any rights or claims the Debtors may hold against any third party or any insider, or issues involving substantive consolidation, defenses, statutory or equitable subordination, and/or causes of action arising under the provisions of chapter 5 of the Bankruptcy Code and any other relevant non-bankruptcy laws to recover assets or avoid transfers.  Any specific reservation of rights contained elsewhere in the Global Notes does not limit in any respect the general reservation of rights contained in this paragraph.

    a.  **No Admission.**  Nothing contained in the Schedules and Statements is intended as, or should be construed as, an admission or stipulation as to the validity of any claim against any Debtors or any assertion made therein or herein, or a waiver of any of the Debtors' rights to dispute any claim or assert any cause of action or defense against any party.

    b.  **Claims Listing and Descriptions**.  The listing of a claim does not constitute an admission of liability by the Debtors, and the Debtors reserve the right to amend the Schedules and Statements accordingly.  Any failure to designate a claim listed on the Schedules and Statements as "disputed," "contingent," or "unliquidated" does not constitute an admission by the Debtors that such amount is not "disputed," "contingent," or "unliquidated."  The Debtors reserve the right to dispute and to assert setoff rights, counterclaims, and defenses to any claim reflected on their Schedules and Statements on any grounds, including, but not limited to, amount,

liability, priority, status, and classification, and to otherwise subsequently designate any claim as "disputed," "contingent," or "unliquidated."

c.   **Recharacterization**.  The Debtors have made commercially reasonable efforts to correctly characterize, classify, categorize, and designate the claims, assets, executory contracts, unexpired leases, and other items reported in the Schedules and Statements.  Nevertheless, due to the complexity of the Debtors' business, the Debtors may not have accurately characterized, classified, categorized, or designated certain items and/or may have omitted certain items.  Accordingly, the Debtors reserve all of their rights to recharacterize, reclassify, recategorize, or redesignate items reported in the Schedules and Statements at a later time as necessary or appropriate, including, without limitation, whether contracts or leases listed herein were deemed executory or unexpired as of the Petition Date and remain executory and unexpired on a postpetition basis.

d.   **Classifications**.  The listing of (i) a claim (a) on Schedule D as "secured," or (b) on Schedule E/F as either "priority" or "unsecured priority," or (ii) a contract or lease on Schedule G as "executory" or "unexpired" does not constitute an admission by the Debtors of the legal rights of the claimant or contract counterparty or a waiver of the Debtors' rights to recharacterize or reclassify such claim or contract pursuant to a schedule amendment, claim objection, or otherwise.  Moreover, although the Debtors may have scheduled claims of various creditors as secured claims for informational purposes, no current valuation of the Debtors' assets in which such creditors may have a security interest has been undertaken.  Except as provided in an order of the Court, including, without limitation, the *Interim Order (I) Authorizing the Debtors to Obtain Post-petition Secured Financing Pursuant to Section 364 of the Bankruptcy Code; (II) Authorizing the Debtors to Use Certain Cash Collateral, (III) Granting Liens and Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection to the Prepetition Secured Parties, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief*  [Docket No. 49], the Debtors reserve all rights to dispute and challenge the secured nature or amount of any such creditor's claims, the characterization of the structure of any transaction, and any document or instrument related to such creditor's claim.

e.   **Estimates and Assumptions**.  To prepare these Schedules and Statements and report information on an entity-by-entity basis, the Debtors were required to make certain reasonable estimates and assumptions with respect to the reported amounts of assets and liabilities, the amount of contingent assets and contingent liabilities, and the reported amounts of revenues and expenses as of the Petition Date.  Actual results could differ from such estimates.  The Debtors reserve all rights to amend the reported amounts of assets and liabilities to reflect changes in those estimates or assumptions.

f.   **Causes of Action**.  Despite commercially reasonable efforts, the Debtors may not have identified and/or set forth all of their causes of action (filed or potential) against third parties as assets in their Schedules and Statements, including, without

limitation, avoidance actions arising under chapter 5 of the Bankruptcy Code and actions under other relevant bankruptcy and non-bankruptcy laws to recover assets.  The Debtors reserve all rights with respect to any claim, controversy, demand, right, action, suit, obligation, liability, debt, account, defense, offset, power, privilege, license, lien, indemnity, guaranty, interest, damage, remedy, cause of action, proceeding, agreement, or franchise of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable directly or derivatively, matured or unmatured, suspected or unsuspected, whether arising before, on, or after the Petition Date, in contract, in tort, at law, in equity, or otherwise.   Causes of action also include:  (i) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law or in equity; (ii) any claim based on or relating to, or in any manner arising from, in whole or in part, tort, breach of contract, breach of fiduciary duty, violation of local, state, federal, or foreign law, or breach of any duty imposed by law or in equity, including, without limitation, securities laws, negligence, and gross negligence; (iii) the right to object to or otherwise contest claims or interests; (iv) claims pursuant to sections 362 or chapter 5 of the Bankruptcy Code; (v) such Claims and defenses as fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code; and (vi) any avoidance actions arising under chapter 5 of the Bankruptcy Code or under similar local, state, federal, or foreign statutes and common law, including, without limitation, fraudulent transfer laws, and neither the Global Notes nor the Schedules and Statements shall be deemed a waiver of any such claims, causes of action, or avoidance actions or in any way prejudice or impair the assertion of such claims or causes of action.

g.     **Intellectual Property Rights**.  Exclusion of certain intellectual property on the Schedules and Statements shall not be construed to be an admission that such intellectual property rights have been abandoned, have been terminated, or otherwise have expired by their terms, or have been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction. Conversely, inclusion of certain intellectual property on the Schedules and Statements shall not be construed to be an admission that such intellectual property rights have not been abandoned, have not been terminated, or otherwise have not expired by their terms or have not been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction.  The Debtors have made every effort to attribute intellectual property to the rightful Debtor owner; however, in some instances, intellectual property owned by one Debtor may, in fact, be owned by another Debtor.  Accordingly, the Debtors reserve all of their rights with respect to the legal status of any and all intellectual property rights.

h.     **Insiders**.  The Debtors have attempted to include all payments made within the twelve months before the Petition Date to or for the benefit of any individual (and their relatives) or entity who, in the Debtors' good faith belief, may be deemed an "insider."   As to each Debtor, an individual or entity is designated as an "insider" for the purposes of the Schedules and Statements if such individual or entity, based

on the totality of the circumstances, has at least a controlling interest in, or exercises sufficient authority over, the Debtor so as to dictate corporate policy and the disposition of corporate assets. The Debtors have also considered the requirements of GAAP and Securities and Exchange Commission (the "SEC") reporting standards with respect to designating certain individuals and entities as "insider" herein.

The listing or omission of a party as an "insider" for the purposes of the Schedules and Statements is for informational purposes and is not intended to be, nor should be construed as, an admission that such parties are insiders for purposes of section 101(31) of the Bankruptcy Code. Information regarding the individuals or entities listed as insiders in the Schedules and Statements may not be used for: (i) the purposes of determining (a) control of the Debtors; (b) the extent to which any individual or entity exercised management responsibilities or functions; (c) corporate decision-making authority over the Debtors; or (d) whether such individual or entity (or the Debtors) could successfully argue that they are not an insider under applicable law, including, without limitation, the Bankruptcy Code and federal securities laws, or with respect to any theories of liability or (ii) any other purpose. Furthermore, certain of the individuals or entities identified as insiders may not have been insiders for the entirety of the twelve-month period before the Petition Date. Nevertheless, the Debtors have included such individuals or entities herein out of an abundance of caution, and the Debtors reserve all rights with respect thereto.

## 4. **Methodology**

a. **Basis of Presentation**. For financial reporting purposes, the Debtors generally prepare consolidated financial statements, which include financial information for the Debtors and certain non-Debtor affiliates. Combining the assets and liabilities set forth in the Debtors' Schedules and Statements would result in amounts that would be substantially different from financial information that would be prepared on a consolidated basis under GAAP. Therefore, these Schedules and Statements neither purport to represent financial statements prepared in accordance with GAAP nor are they intended to fully reconcile to the financial statements prepared by the Debtors. Unlike the consolidated financial statements, these Schedules and Statements, except where otherwise indicated, reflect the assets and liabilities of each separate Debtor. Information contained in the Schedules and Statements has been derived from the Debtors' books and records and historical financial statements.

The Debtors attempted to attribute the assets and liabilities, certain required financial information, and various cash disbursements to the proper Debtor entity. Nevertheless, due to limitations within the Debtors' accounting systems, it is possible that not all assets, liabilities, or amounts of cash disbursements have been recorded with the correct legal entity on the Schedules and Statements. Accordingly, the Debtors reserve all rights to supplement and/or amend the Schedules and Statements in this regard.

Given, among other things, the uncertainty surrounding the collection, ownership, and valuation of certain assets and the amount and nature of certain liabilities, a Debtor may report more assets than liabilities. Such report shall not constitute an admission that such Debtor was solvent on the Petition Date or at any time prior to or after the Petition Date. Likewise, a Debtor's reporting more liabilities than assets shall not constitute an admission that such Debtor was insolvent on the Petition Date or at any time prior to or after the Petition Date. For the avoidance of doubt, nothing contained in the Schedules and Statements is indicative of the Debtors' enterprise value. The Schedules and Statements contain unaudited information that is subject to further review and potential revisions.

b.   **Reporting Date**. The asset information provided herein, except as otherwise noted, represents the Debtors' asset data as of December 31, 2025, the date of the Debtors' month-end closure to their balance sheet, and the Debtors' liability data is as of the Petition Date, adjusted for authorized payments under the First Day Orders (as defined herein).

c.   **Confidentiality or Sensitive Information**. There may be instances in which certain information in the Schedules and Statements has been intentionally redacted due to, among other things, concerns for the privacy of an individual or concerns about the confidential or commercially sensitive nature of certain information. Any alterations or redactions in the Schedules and Statements are limited only to what the Debtors believe is necessary to protect the Debtors or the applicable third-party, and the Debtors have provided interested parties with sufficient information to discern the nature of the listing. The Debtors may also be authorized or required to redact certain information from the public record pursuant to orders of the Court authorizing the Debtors to redact, seal, or otherwise protect such information from public disclosure.[3]

d.   **Duplication**. Certain of the Debtors' assets, liabilities, and prepetition payments may properly be disclosed in response to multiple parts of the Statements and Schedules. To the extent these disclosures would be duplicative, the Debtors have determined to only list such assets, liabilities, and prepetition payments once.

e.   **Net Book Value of Assets**. In many instances, current market valuations are not maintained by or readily available to the Debtors. It would be prohibitively expensive, unduly burdensome, and an inefficient use of estate resources for the Debtors to obtain current market valuations for all assets. As such, unless otherwise indicated, net book values set forth in these Schedules and Statements are presented as of December 31, 2025, for all assets. When necessary, the Debtors have indicated that the value of certain assets is "Unknown" or "Undetermined." Amounts ultimately realized may vary materially from net book value (or other value so ascribed). Accordingly, the Debtors reserve all rights to

---

[3]   *See, e.g., Order (I) Authorizing the Debtors to Redact Certain Personally Identifiable Information; (II) Approving the Form and Manner of Notifying Creditors of the Commencement of the Chapter 11 Cases and other Information, and (III) Granting Related Relief* [Docket No. 48] (the "Creditor Matrix Order").

amend, supplement, and adjust the asset values set forth in the Schedules and Statements. Assets that have been fully depreciated or that were expensed for accounting purposes either do not appear in these Schedules and Statements or are listed with a zero-dollar value, as such assets have no net book value. The omission of an asset from the Schedules and Statements does not constitute a representation regarding the ownership of such asset, and any such omission does not constitute a waiver of any rights the Debtors have with respect to such asset. Nothing in the Debtors' Schedules and Statements shall be, or shall be deemed to be, an admission that any Debtor was solvent or insolvent as of the Petition Date or at any time prior to or after the Petition Date.

f.     **Currency**. All amounts shown in the Schedules and Statements are in U.S. Dollars, unless otherwise indicated.

g.     **Payment of Prepetition Claims Pursuant to First Day Orders**. Following the Petition Date, the Court entered various orders authorizing, but not directing, the Debtors to, among other things, pay certain prepetition: (i) service fees and charges assessed by the Debtors' banks; (ii) insurance and surety obligations; (iii) employee wages, salaries, and related items and (iv) honor pre-petition patient programs (collectively, the "First Day Orders"). As such, outstanding liabilities may have been reduced by Court-approved postpetition payments made on account of prepetition payables. Where and to the extent these liabilities have been satisfied, they are not listed in the Schedules and Statements unless otherwise indicated. The Debtors reserve the right to update the Schedules and Statements to reflect payments made pursuant to an order of the Court (including the First Day Orders).

h.     **Other Paid Claims**. To the extent the Debtors have reached any postpetition settlement with a vendor or other creditor, the terms of such settlement will prevail, supersede amounts listed in the Schedules and Statements, and shall be enforceable by all parties, subject to any necessary Court approval. To the extent the Debtors pay any of the claims listed in the Schedules and Statements pursuant to any orders entered by the Court, the Debtors reserve all rights to amend and supplement the Schedules and Statements and take other action, such as filing claims objections, as is necessary and appropriate to avoid overpayment or duplicate payment for such liabilities.

i.     **Intercompany**. Intercompany balances presented on a legal entity basis may not reconcile directly between individual entities. This discrepancy arises due to standard accounting practices, wherein adjustments are made to ensure the balances align on a consolidated basis. These adjustments are recorded in a designated adjustment/elimination accounts, which facilitates proper consolidation of financial statements but does not impact the entity-to-entity level reconciliation.

The Debtors maintain two intercompany receivable accounts that were previously used and reflect historical balancing and reconciliation entries among Debtor and

non-Debtor affiliates. Because granular due to / due from and transaction level detail for these accounts is not readily available at the time of filing of the Schedules and Statements, the accounts have been excluded from intercompany reporting in Schedules A/B, F, and Statement 4.

j.    **Setoffs**.  The Debtors routinely incur setoffs in the ordinary course of business. Such setoffs and nettings may occur due to a variety of transactions or disputes, including, but not limited to, intercompany transactions, counterparty settlements, pricing discrepancies, rebates, returns, warranties, refunds, and negotiations and/or other disputes between the Debtors and their customers or vendors. In accordance with the Debtors' agreements with their vendors and other contract counterparties, these amounts are set off on a reoccurring basis against future revenues in a normal course reconciliation process with these partners.  Certain of these ordinary course setoffs are not independently accounted for and, as such, may be excluded from the Schedules and Statements.  Any setoff of a prepetition debt to be applied against the Debtors is subject to the automatic stay and must comply with section 553 of the Bankruptcy Code.  The Debtors reserve all rights to challenge any setoff and/or recoupment rights that may be asserted against them, including, but not limited to, any and all rights preserved pursuant to section 558 of the Bankruptcy Code.

k.    **Accounts Receivable**.  The accounts receivable information listed on the Schedules includes receivables from the Debtors' customers and may be calculated net of any amounts that, as of the Petition Date, may be owed to such customers in the form of offsets pursuant to the Debtors' patient program policies and day-to-day operating policies.

l.    **Property and Equipment**.  Unless otherwise indicated, owned property and equipment are stated at net book value.  Certain intangibles are listed in the asset schedules for the Debtors.  Such treatment may not reflect actual legal ownership.

The Debtors may lease furniture, fixtures, and equipment from certain third-party lessors.  Any such leases are set forth in the Schedules and Statements.  Nothing in the Statements or Schedules is or shall be construed as an admission or determination as to the legal status of any lease (including whether any lease is a true lease or a financing arrangement), and the Debtors reserve all rights with respect to any such lease, including, but not limited to, the recharacterization thereof.

m.    **Liens**.  The inventories, property, and equipment listed in the Statements and Schedules are presented without consideration of any asserted liens that may attach (or have attached) to such inventories, property, and equipment, and the Debtors reserve all of their rights with respect to such liens (if any).  Liens, including those levied in accordance with the Uniform Commercial Code, as of the Petition Date, if any, are listed on Schedule D.

n. **Excluded Assets and Liabilities**. Certain liabilities resulting from accruals, liabilities recognized in accordance with GAAP, and/or estimates of long-term liabilities either are not payable at this time or have not yet been reported. Therefore, they do not represent specific claims as of the Petition Date and are not otherwise set forth in the Schedules. Additionally, certain deferred assets, charges, accounts, or reserves recorded for GAAP reporting purposes only, and certain assets with a net book value of zero, are not included in the Schedules. Excluded categories of assets and liabilities include, but are not limited to, deferred tax assets and liabilities, deferred income, favorable lease rights, and unfavorable lease liabilities. In addition, and as set forth above, the Debtors may have excluded amounts for which the Debtors have paid or have been granted authority to pay pursuant to the First Day Orders or other orders that may be entered by the Court. Other immaterial assets and liabilities may also have been excluded.

o. **Undetermined Amounts**. The description of an amount as "unknown" or "undetermined" is not intended to reflect upon the materiality of such amount.

p. **Totals**. All totals that are included in the Schedules and Statements represent totals of all the known amounts included in the Schedules and Statements and exclude items identified as "unknown" or "undetermined." If there are unknown or undetermined amounts, the actual totals may be materially different from the listed totals. The description of an amount as "unknown" or "undetermined" is not intended to reflect upon the materiality of such amount. To the extent a Debtor is a guarantor of debt held by another Debtor or non-Debtor affiliate, the guarantee obligations have been included in these Schedules but are reflected at undetermined amounts.

q. **Credits and Adjustments**. The claims of individual creditors for, among other things, goods, products, services, and taxes are listed as the amounts entered on the Debtors' books and records and may either (i) not reflect credits, allowances, or other adjustments due from such creditors to the Debtors or (ii) be net of accrued credits, allowances, rebates, trade debits, or other adjustments that are actually owed by a creditor to the Debtors on a postpetition basis on account of such credits, allowances, or other adjustments earned from prepetition payments and postpetition payments, if applicable. The Debtors reserve all of their rights with regard to such credits, allowances, and other adjustments, including but not limited to, the right to assert claims objections and/or setoffs with respect to the same.

r. **Guarantees and Other Secondary Liability Claims**. The Debtors used commercially reasonable efforts to locate and identify guarantees and other secondary liability claims (the "Guarantees") in their secured financings, debt instruments, and other agreements. Nevertheless, a review of these agreements, specifically the Debtors' unexpired leases and executory contracts, is ongoing. Where such Guarantees have been identified, they have been included in the relevant Schedules D, F, G and H for the affected Debtor or Debtors as appropriate. The Debtors have reflected the obligations under the Guarantees for

both the primary obligor and the guarantors with respect to their secured financings, debt instruments, and other such agreements on Schedule H. Guarantees embedded in the Debtors' executory contracts, unexpired leases, secured financings, debt instruments, and other agreements may have been omitted inadvertently. The Debtors may identify additional Guarantees as they continue their review of their books and records and contractual agreements. The Debtors reserve their rights, but are not required, to amend the Schedules and Statements if additional Guarantees are identified.

s.    **Leases**. The Debtors have not included future obligations under any capital or operating leases in the Schedules and Statements. To the extent there was an amount outstanding on account of such lease as of the Petition Date, the creditor has been included on Schedule E/F of the Schedules. In the ordinary course of business, certain of the Debtors may enter into agreements titled as leases for property, other property interests, and/or equipment from third-party lessors for use in the daily operation of their business. Any such prepetition obligations that are known to the Debtors have been listed on Schedule F, and the underlying lease agreements are listed on Schedule G or, if the leases are in the nature of real property interests under applicable state laws, on Schedule A/B. Nothing in the Schedules and Statements is, or shall be construed to be, an admission as to the determination of the legal status of any lease (including whether any lease is a true lease, a financing arrangement, or a real property interest), and the Debtors reserve all rights with respect to such issues.

t.    **Executory Contracts**. Although the Debtors made diligent efforts to attribute an executory contract to its rightful Debtor, in certain instances, the Debtors may have inadvertently failed to do so. Accordingly, the Debtors reserve all of their rights with respect to the named parties of any and all executory contracts, including the right to amend Schedule G.

u.    **Allocation of Liabilities**. The Debtors, in consultation with their advisors, have sought to allocate liabilities between the prepetition and postpetition periods based on the information and research that was conducted in connection with the preparation of the Schedules and Statements. As additional information becomes available and further research is conducted, the allocation of liabilities between prepetition and postpetition periods may change. The Debtors reserve the right to amend and/or supplement the Schedules and Statements as they deem appropriate in this regard.

v.    **Addresses**. For purposes of completing the Statement of Financial Affairs, the addresses of all employees of the Debtors have been consolidated and reported under the lead Debtor's address (500 East Remington Drive, Suite 20, Sunnyvale CA 94087).

w.    **Unliquidated Claim Amounts**. Claim amounts that could not be readily quantified by the Debtors are scheduled as "unliquidated."

x.    **Umbrella or Master Agreements**.  Contracts and leases listed in the Schedules and Statements may be umbrella or master agreements that cover relationships with some or all of the Debtors.  Where relevant, such agreements have been listed in the Schedules and Statements only for the Debtor entity that signed the original umbrella or master agreement.  Other Debtors, however, may be liable together with such Debtor on account of such agreements and the Debtors reserve all rights to amend the Schedules to reflect changes regarding the liabilities of the Debtors with respect to such agreements, if appropriate.  The master service agreements or other ancillary documents have been listed in Schedule G, but such listing does not reflect any decision by the Debtors as to whether such agreements are executory in nature.

<u>**Specific Schedule Disclosures**</u>

Schedules A/B, D, E/F, G, and H may contain explanatory or qualifying notes that pertain to the information provided in the Schedules.  Those Schedule-specific notes are incorporated herein by reference.  Unless otherwise noted, the asset totals listed on the Schedules are derived from amounts included in the Debtors' books and records as of the Petition Date.  To the extent there are unknown or undetermined amounts, the actual total may be different from the total listed.

1.    <u>**Schedule A/B**</u>

a.    **Part 1**.  Carbon Health's Cash Management System comprises a total of 62 Bank Accounts.  All the bank accounts are owned and controlled by the Debtors.  The Debtors' primary cash management bank is Silicon Valley Bank. Further details with respect to the Cash Management System are provided in the Cash Management Motion.  The cash amounts listed are as of the Petition Date and reflect the bank balance, not the net book value.

b.    **Part 2**.  The Debtors maintain certain deposits in the ordinary course of their business operations.  Security deposits for property leases have been recorded in the Schedules at the Debtor obligated under the corresponding lease. However, the booking entity may not align with the actual Debtor obligated under the corresponding lease. Due to an ERP system transition certain consolidated accounting adjustments have been made to the schedules so that on a net basis the reported numbers tie to the December 31, 2025 balance sheet. Accordingly, the amounts listed in Part 2 do not necessarily reflect values that the Debtors will be able to collect or realize.

c.    **Part 3**.  The Debtors' accounts receivable information includes receivables from the Debtors' customers, vendors, or third parties.

The Debtors generally prepare their financial statements on a consolidated basis. To avoid overstatement of accounts receivable on the Schedules, all related amounts have been reflected in these forms. As a result, certain individual legal entities on an unconsolidated basis appear to report negative accounts receivable balances. Accordingly, accounts receivable should be evaluated on a consolidated,

global basis rather than at the level of any single legal entity. Accordingly, the amounts listed in Part 3 do not necessarily reflect values that the Debtors will be able to collect or realize.

d.    **Part 4**. Part 4 identifies only subsidiaries owned directly by the applicable Debtor entity.    Subsidiaries owned indirectly by the Debtor entity are not listed. Ownership interests in subsidiaries, partnerships, and joint interests have been listed in Schedule A/B, Question 15 as undetermined amounts on account of the fact that the fair market value of such ownership is dependent on numerous variables and factors and may differ significantly from their net book value.

e.    **Part 5**. The Debtors do not maintain a formal inventory due to the nature of their business. There is no established process for inventory, as items are typically utilized or consumed quickly in the ordinary course of business. Given the timing and pace with which these items are used, it is not a beneficial business practice for the Debtors to complete a formal inventory process. Accordingly, the Debtors do not book inventory as an asset on the balance sheet. As such, the Debtors have responded "no" for all Debtors on Part 5 of Schedule A/B.

f.    **Part 7**. Actual realizable values may vary significantly relative to net book values as of the Petition Date. All amounts have been reported under furniture because furniture comprises the majority of the category and the Debtors maintain furniture and fixtures as a consolidated account on the balance sheet.

g.    **Part 8 & 9**.  Property leased by the Debtors is listed on both Part 8 and Part 9 of Schedule A/B and on Schedule G.  Furthermore, property values are scheduled in accordance with the Debtor's books and records, which may not comport with the legal owner of record.  Actual realizable values of the assets identified may vary significantly relative to net book values as of the Petition Date.  The Debtors reserve all rights to recharacterize their interests in real property at a later date.

h.    **Part 10**. Part 10 identifies the various licenses and website domains owned and maintained by the Debtors.  The Schedules may not list the value of such intangible assets as no recent appraisals have been performed.  Various software licenses the Debtors use for their operations, which are easily obtainable and hold minimal value are not included.

**Part 11**. The Debtors maintain approximately 31 insurance policies administered by multiple third-party insurance carriers. The insurance policies provide coverage for, among other things, the Debtors' property, general liability, automobile liability, and directors' and officers' liability.  The Debtors more fully describe such policies in the *Debtors' Emergency Motion for Entry of an Order (I) Authorizing the Debtors to (A) Continue Insurance Coverage Entered Into Prepetition and Satisfy Prepetition Obligations Related Thereto, (B) Honor and Renew the Premium Financing Agreement Entered Into Prepetition and Satisfy Obligations Related Thereto and (C) Renew, Amend, Supplement, Extend, or Purchase Insurance Policies; and (II) Granting Related Relief* [Docket No. 10].

In addition, the Debtors attempted to list known causes of action and other claims. The Debtors' failure to list any cause of action, claim, or right of any nature is not an admission that such cause of action, claim, or right does not exist and should not be construed as a waiver of such cause of action, claim, or right.

## 2. **Schedule D**

a.   The claims listed on Schedule D, as well as the guarantees of those claims listed on Schedule H, arose and were incurred on various dates. To the best of the Debtors' knowledge, all claims listed on Schedule D arose, or were incurred before the Petition Date.

b.   Except as otherwise agreed or stated pursuant to a stipulation, agreed order, or general order entered by the Court that is or becomes final, the Debtors and/or their estates reserve the right to dispute and challenge the validity, perfection, or immunity from avoidance of any lien purported to be granted or perfected in any specific asset to a creditor listed on Schedule D of any Debtor and, subject to the foregoing limitations, note as follows: (i) although the Debtors may have scheduled claims of various creditors as secured claims for informational purposes, no current valuation of the Debtors' assets in which such creditors may have a lien has been undertaken, and (ii) the descriptions provided on Schedule D and herein are intended to be a summary. Reference to the applicable loan agreements and related documents is necessary for a complete description of the collateral and the nature, extent, and priority of any liens. Detailed descriptions of the Debtors' prepetition debt structure, guarantees, and descriptions of collateral relating to each obligation, if any, contained on Schedule D are contained in the Declaration of Kerem Ozkay in Support of the Debtors' Chapter 11 Petitions and First Day Relief [Docket No. 16].

c.   Schedule D does not include beneficiaries of letters of credit. Although the claims of such parties may be secured by a letter of credit, the Debtors' obligations under the letters of credit run to the issuers thereof, and not to the beneficiaries thereof.

d.   The Debtors have not listed on Schedule D any parties whose claims may be secured through rights of setoff, deposits, or advance payments posted by, or on behalf of, the Debtors, or judgment or statutory lien rights. The Debtors have not investigated which of the claims may include such rights, and their population is currently unknown.

e.   Corporate-level funding secured debt is presented at its principal debt balance as of the filing date. This balance does not include capitalized interest and fees, where applicable.

f.   A response of 'no' to the question of whether any other party is liable for the debts listed on Schedule D should not be interpreted as a definitive statement that no such parties exist. It simply indicates the Debtors' understanding and belief at the time these documents were filed.

g.      In response to the question "Do multiple creditors have an interest in the same property?", the Debtor has checked yes out of an abundance of caution to account for, among other things, the possible existence of inchoate statutory liens. The Debtor is taking no position in this document regarding the validity of any such liens or the extent or validity of a particular creditor's lien, including other creditors listed in this Schedule D.

## 3. <u>Schedule E/F</u>

a.      **Part 1**.  The claims listed on Part 1 arose and were incurred on various dates. A determination of the date upon which each claim arose or was incurred would be unduly burdensome and cost prohibitive.  Accordingly, no such dates are included for each claim listed on Part 1.  To the best of the Debtors' knowledge, all claims listed on Part 1 arose or were incurred before the Petition Date.

The Debtors have not listed any wage or wage-related obligations that the Debtors have already paid pursuant to the First Day Orders on Part 1.  The Debtors further believe that all such claims for wages, salaries, expenses, benefits, and other compensation as described in the First Day Orders have been or will be satisfied in the ordinary course during these chapter 11 cases pursuant to the authority granted to the Debtors in the relevant First Day Orders.  The Debtors reserve their right to dispute or challenge whether creditors listed on Part 1 are entitled to priority claims under the Bankruptcy Code.

The Debtors have not listed any tax-related obligations that have accrued but are not yet due. The only tax matters reflected in the Schedules relate to amounts that are either past due or subject to ongoing audit. The Debtors believe that, pursuant to the Tax Motion (Docket No. 109), all tax claims described therein have been or will be paid in the ordinary course of these chapter 11 cases in accordance with the authority granted by the Court's orders. Notwithstanding the foregoing, the Debtors expressly reserve all rights to dispute or challenge whether any creditor listed on Part 1 is entitled to priority status under the Bankruptcy Code.

b.      **Part 2**.  The Debtors have exercised commercially reasonable efforts to list all liabilities on Part 2 of each applicable Debtor's Schedule.  As a result of the Debtors' consolidated operations, however, Part 2 for each Debtor should be reviewed in these cases for a complete understanding of the unsecured claims against the Debtors.  Certain creditors listed on Part 2 may owe amounts to the Debtors, and, as such, the Debtors may have valid setoff and recoupment rights with respect to such amounts.  The amounts listed on Part 2 may not reflect any such right of setoff or recoupment, and the Debtors reserve all rights to assert the same and to dispute and challenge any setoff and/or recoupment rights that may be asserted against the Debtors by a creditor, including, but not limited to, any and all rights preserved pursuant to section 558 of the Bankruptcy Code.  Additionally, certain creditors may assert liens against the Debtors for amounts listed on Part 2. The Debtors reserve their right to dispute and challenge the validity, perfection, and immunity from avoidance of any lien purported to be perfected by a creditor

listed on Part 2 of any Debtor. In addition, certain claims listed on Part 2 may potentially be entitled to administrative priority under section 503(b)(9) of the Bankruptcy Code.

The Debtors have made commercially reasonable efforts to include all unsecured creditors on Part 2. The Debtors, however, believe the possibility exists that there are instances where creditors have yet to provide proper invoices for prepetition goods or services. While the Debtors maintain general accruals to account for these liabilities in accordance with GAAP, these amounts are estimates and have not been included on Part 2.

Unless otherwise noted, the claims listed on Part 2 are based on the Debtors' books and records as of the Petition Date.

Part 2 does not include certain balances, such as deferred liabilities, accruals, or reserves. Such amounts are, however, reflected on the Debtors' books and records as required in accordance with GAAP. Such accruals primarily represent estimates of liabilities and do not represent specific claims as of the Petition Date.

Part 2 does not include reserves for liabilities that may have arisen under litigation or threatened litigation in which a Debtor is a defendant unless there is a final judgment or a settlement agreement.

The claims of individual creditors may not reflect credits and/or allowances due from creditors to the applicable Debtor. The Debtors reserve all of their rights with respect to any such credits and/or allowances, including, but not limited to, the right to assert objections and/or setoffs or recoupments with respect to same.

The Court has authorized the Debtors to pay, in their discretion, certain unsecured claims pursuant to the First Day Orders. To the extent practicable, each Debtor's Schedule E/F is intended to reflect the balance as of the Petition Date, adjusted for postpetition payments made under some or all of the First Day Orders. Each Debtor's Schedule E/F will, if applicable, reflect some of that Debtor's payment of certain claims pursuant to the First Day Orders, and, to the extent an unsecured claim has been paid or may be paid, it is possible such claim is not included on Schedule E/F. Certain Debtors may pay additional claims listed on Schedule E/F during these chapter 11 cases pursuant to the First Day Orders and other orders of the Court, and the Debtors reserve all of their rights to update Schedule E/F to reflect such payments or to modify the claims register to account for the satisfaction of such claims. Additionally, Schedule E/F does not include potential rejection damage claims, if any, of the counterparties to executory contracts and unexpired leases that may be rejected.

The Debtors have not listed any ordinary course patient program obligations that the Debtors have already paid pursuant to the First Day Orders. The Debtors further believe that all such claims have been or will be satisfied in the ordinary course during these chapter 11 cases pursuant to the authority granted to the

16

Debtors in the relevant First Day Orders.  The Debtors reserve their right to dispute or challenge whether creditors listed on Part 1 are entitled to priority claims under the Bankruptcy Code.

Pursuant to the First Day Orders, the Court has authorized the Debtors to redact the names, mailing address, and email address of individuals including the Debtors' customers listed on Schedule E/F.  Such individuals shall be sent an individualized notice pursuant to an order of the Court establishing the dates by which parties in interest must file proofs of claim in these chapter 11 cases (the "Bar Dates"), which will enable such individuals to determine the amount of their scheduled claim.

## 4.  Schedule G

a.   Although commercially reasonable efforts have been made to ensure the accuracy of Schedule G regarding executory contracts and unexpired leases (collectively, the "Agreements") as of the filing of the Statements and Schedules, the Debtors' collection and review process of the Agreements is ongoing, and inadvertent errors, omissions, or over- or under-inclusion may have occurred.  The Debtors may have entered into various other types of Agreements in the ordinary course of their businesses, such as indemnity agreements, supplemental agreements, amendments/letter agreements, master service agreements, and confidentiality agreements, that may not be set forth in Schedule G.  Omission of a contract or agreement from Schedule G does not constitute an admission that such omitted contract or agreement is not an executory contract or unexpired lease.  Schedule G may be amended at any time to add any omitted Agreements.  Likewise, the listing of an Agreement on Schedule G does not constitute an admission that such Agreement is an executory contract or unexpired lease or that such Agreement was in effect on the Petition Date or is valid or enforceable.  The Agreements listed on Schedule G may have expired or may have been modified, amended, or supplemented from time to time by various amendments, restatements, waivers, estoppel certificates, letters and other documents, instruments, and agreements which may not be listed on Schedule G.  Schedule G may be amended at any time to remove any Agreements that are not executory contracts or unexpired leases or are otherwise not enforceable against the Debtors.

## 5.  Schedule H

a.   The Debtors are party to various debt agreements that were executed by multiple Debtors.  The guaranty obligations under prepetition debt agreements are noted on Schedule H for each individual Debtor.  In the ordinary course of their businesses, the Debtors are involved in pending or threatened litigation and claims arising out of the conduct of their businesses. Some of these matters may involve multiple plaintiffs and defendants, some or all of whom may assert crossclaims and counterclaims against other parties.  To the extent such claims are listed elsewhere in the Schedules of each applicable Debtor, they have not been set forth individually on Schedule H.  In the event that two or more Debtors are co-obligors

with respect to a scheduled debt or guaranty, such debt or guaranty is listed in the Schedules and Statements at the full amount of the potential claim for the primary obligor(s) and then in unliquidated value for all guarantors. No claim set forth on the Schedules and Statements of any Debtor is intended to acknowledge claims of creditors that are otherwise satisfied or discharged by other Debtors or non-Debtors. To the extent these Global Notes include notes specific to Schedules D–G, such Global Notes also apply to the co-Debtors listed in Schedule H. The Debtors reserve all of their rights to amend the Schedules to the extent that additional guarantees are identified or such guarantees are discovered to have expired or be unenforceable.

### **Specific Notes with Respect to the Debtors' Statements of Financial Affairs**

6. **Statement 1 & 2**. The revenue figures presented reflect realized collections rather than amounts billed, and are reported net of certain collection-related adjustments. Due to the nature of the Debtors' business, collections do not align with billed amounts; consequently, billed amounts are not indicative of collected (realized) revenue. For clarity, references to "gross revenue" herein denote revenue after netting specific collection adjustments and should not be construed as billed revenue.

7. **Statement 3**. As described in the Cash Management Motion, the Debtors utilize their cash management system in the ordinary course of business to collect, transfer, and distribute funds, and to facilitate cash monitoring, forecasting, and reporting for the entire corporate enterprise.

    a. The response to Statement 3 excludes regular salary payments and related disbursements or transfers for the period, which, to the extent required, are reported on Statement 4. These payroll amounts are however reflected as funds transferred to the third-party payroll provider, ADP, which then disburses payments to individual employees.

    b. The response to Statement 3 excludes payments for services of any entities that provided consultation concerning debt counseling or restructuring services, relief under the Bankruptcy Code, or preparation of a petition in bankruptcy for this period, which are listed on Statement 11.

8. **Statement 4**. Intercompany exhibits do not include amounts designated to mitigation accounts. These mitigation accounts are maintained as part of consolidated bookkeeping and are excluded from intercompany reporting as it relates to the Statement 4 response.

9. **Statement 7**. While the Debtors believe they were diligent in their efforts to include all relevant information on Statement 7, it is possible that certain suits and proceedings may have been inadvertently excluded in the Debtors' response to Statement 7. The Debtors reserve all rights to amend or supplement their response to Statement 7.

10. **Statement 10**. The Debtors occasionally incur losses for a variety of reasons, including theft and property damage. The Debtors, however, may not have records of all losses to the extent

such loses do not have a material impact on the Debtors' business or are not reported for insurance purposes and such losses have been excluded from Statement 10.

11. **Statement 11**.   Certain disbursements listed in Statements, Part 6, Question 11 reflect payments to professionals made by a certain Debtor entity, but may be subject to applicable allocation amongst the Debtors. Additionally, the Debtors have listed payments made to professionals retained by the Debtors but not payments made to advisors of their lenders or other parties. Additionally, As described in the A&M retention application, prior to and leading up to the Petition Date, Alvarez & Marsal Private Equity Performance Improvement Group, LLC (A&M PEPI), an affiliate of A&M, provided services to the Debtors under a separate engagement agreement. Amounts paid under that engagement have not been included in the response to this question with the exception of amounts paid during the 90 day-period.

12. **Statement 15**. CarbyOS is Carbon's internal electronic health record system and the primary system of record for patient information.

13. **Statement 16**. Carbon Health Technologies Inc. (CHTI) does not collect direct patient data; however, CHTI retains patient information as part of the CarbyOS system, serving as the repository for such data where implemented.

14. **Statement 17**. The list of prior addresses within the three years before filing reflects corporate addresses only and does not include all previous clinic locations, to the extent any existed. Records of occupancy dates for various debtor addresses could not be located. The disclosure has been completed to the best of the Company's ability and knowledge.

15. **Statement 20**.  Debtors' employees do not have physical access to these facilities; therefore, the "individual with access" field is left blank in the disclosures. Medical records maintained offsite are retrieved or converted to electronic form on an as-needed basis by the custodial provider, rather than through direct access by Debtors' employees. For equipment or furnishings stored offsite, coordination is handled through the vendor for delivery rather than Debtors accessing warehouses. Some offsite-stored property is not owned by the Debtors and is held under lease arrangements. Office furniture previously stored at certain locations was discarded in May 2025.

16. **Statement 21**. Certain locations are utilized by more than one Debtor and contain property responsive to this question; accordingly, we have provided responses for each applicable Debtor entity for those shared sites. The Debtors estimate that the value of property held, borrowed, stored for, or held in trust for another entity at each clinic location is approximately $4,500 per clinic.

17. **Statement  22-24**. The Debtors have made commercially reasonable efforts to provide responsive information regarding matters and issues that have arisen. However, the Debtors recognize that information related to proceedings, governmental notices, and reported releases of hazardous materials relevant to Statements 22-24 may be inadvertently excluded or will be identified after the filing of the Schedules and Statements. Additionally, for certain notices of violation (NOVs) included in the listing, the Debtors do not have information related to the specific environmental law in all cases. While the Debtors have reviewed their

records, it is possible that certain closed matters may have been missed. Accordingly, the Debtors reserve the right to supplement or amend this response if additional information becomes available in the future.

18. **<u>Statement 26a-c</u>**.  The Debtors provide certain parties such as banks, auditors, potential investors, vendors, and financial advisors with financial statements.  The Debtors do not maintain detailed records tracking such disclosures.

19. **<u>Statement 27</u>**. The Debtors do not maintain a formal inventory due to the nature of their business. There is no established process for inventory, as items are typically utilized or consumed quickly in the ordinary course of business. Given the timing and pace with which these items are used, it is not a beneficial business practice for the Debtors to complete a formal inventory process. Accordingly, the Debtors have responded "no" for all Debtors for Statement Question 27.

20. **<u>Statement 30</u>**.  Refer to the Methodology section regarding all payments to insiders.

| Fill in this information to identify the case: |
| --- |

Debtor name __Central Jersey Urgent Care Limited Liability Company__

United States Bankruptcy Court for the: __Southern District of Texas, Houston Division__

Case number (If known) __26-30684__

☐ Check if this is an amended filing

## Official Form 207

# Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy

04/25

The debtor must answer every question. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and case number (if known).

### Part 1:   Income

**1.  Gross revenue from business**

☐ None

| Identify the beginning and ending dates of the debtor's fiscal year, which may be a calendar year | | | Sources of revenue<br>Check all that apply | Gross revenue<br>(before deductions and exclusions) |
| --- | --- | --- | --- | --- |
| **From the beginning of the fiscal year to filing date:** | From 01/01/2026<br>MM/DD/YYYY | to 01/31/2026 | ☑ Operating a business<br>☐ Other _____ | $         2,120,121.15 |
| **For prior year:** | From 01/01/2025<br>MM/DD/YYYY | to 12/31/2025<br>MM/DD/YYYY | ☑ Operating a business<br>☐ Other _____ | $       25,213,819.21 |
| **For the year before that:** | From 01/01/2024<br>MM/DD/YYYY | to 12/31/2024<br>MM/DD/YYYY | ☑ Operating a business<br>☐ Other _____ | $       24,636,322.47 |

**2.  Non-business revenue**

Include revenue regardless of whether that revenue is taxable. Non-business income may include interest, dividends, money collected from lawsuits, and royalties. List each source and the gross revenue for each separately. Do not include revenue listed in line 1.

☐ None

| <u>See Attached Rider for Additional Details</u> | | | Description of sources of revenue | Gross revenue from each source<br>(before deductions and exclusions) |
| --- | --- | --- | --- | --- |
| **From the beginning of the fiscal year to filing date:** | From 01/01/2024<br>MM/DD/YYYY | to 12/31/2024 | Various | $            7,304.77 |
| **For prior year:** | From _____<br>MM/DD/YYYY | to _____<br>MM/DD/YYYY | _____ | $ _____ |
| **For the year before that:** | From _____<br>MM/DD/YYYY | to _____<br>MM/DD/YYYY | _____ | $ _____ |

| Debtor | Central Jersey Urgent Care Limited Liability Company | Case number (If known) | 26-30684 |
|---|---|---|---|
| | Name | | |

## Part 2:   List Certain Transfers Made Before Filing for Bankruptcy

**3.  Certain payments or transfers to creditors within 90 days before filing this case**

List payments or transfers including expense reimbursements to any creditor, other than regular employee compensation, within 90 days before filing this case unless the aggregate value of all property transferred to that creditor is less than 8575. (This amount may be adjusted on 4/01/2028 and every 3 years after that with respect to cases filed on or after the date of adjustment.)

☑ None

| Creditor's name and address | Dates | Total amount or value | Reasons for payment or transfer<br>Check all that apply |
|---|---|---|---|
| 3.1 _____<br>Street _____<br>City ____ State ____ Zip Code ____ | _____ | $ _____ | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>☐ Services<br>☐ Other _____ |
| 3.2 _____<br>Street _____<br>City ____ State ____ Zip Code ____ | _____ | $ _____ | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>☐ Services<br>☐ Other _____ |

**4.  Payments or other transfers of property made within 1 year before filing this case that benefited any insider**

List payments or transfers, including expense reimbursements, made within 1 year before filing this case on debts owed to an insider or guaranteed or cosigned by an insider unless the aggregate value of all property transferred to or for the benefit of the insider is less than 8575. (This amount may be adjusted on 4/01/2028 and every 3 years after that with respect to cases filed on or after the date of adjustment.) Do not include any payments listed in line 3. Insiders include officers, directors, and anyone in control of a corporate debtor and their relatives; general partners of a partnership debtor and their relatives; affiliates of the debtor and insiders of such affiliates; and any managing agent of the debtor. 11 U.S.C. § 101(31).

☐ None   **See Attached Rider**

| Insider's name and address | Dates | Total amount or value | Reasons for payment or transfer |
|---|---|---|---|
| 4.1 _____<br>Street _____<br>City ____ State ____ Zip Code ____ | _____ | $ _____ | _____ |
| **Relationship to debtor** _____ | | | |
| 4.2 _____<br>Street _____<br>City ____ State ____ Zip Code ____ | _____ | $ _____ | _____ |
| **Relationship to debtor** _____ | | | |

| Debtor | Central Jersey Urgent Care Limited Liability Company | Case number (if known) | 26-30684 |
|---|---|---|---|
| | Name | | |

**5. Repossessions, foreclosures, and returns**

List all property of the debtor that was obtained by a creditor within 1 year before filing this case, including property repossessed by a creditor, sold at a foreclosure sale, transferred by a deed in lieu of foreclosure, or returned to the seller. Do not include property listed in line 6.

☑ None

| | Creditor's name and address | Description of the property | Date | Value of property |
|---|---|---|---|---|
| 5.1 | _____ | _____ | _____ | $ _____ |
| | Street | _____ | | |
| | City          State          Zip Code | | | |
| 5.2 | _____ | _____ | _____ | $ _____ |
| | Street | _____ | | |
| | City          State          Zip Code | | | |

**6. Setoffs**

List any creditor, including a bank or financial institution, that within 90 days before filing this case set off or otherwise took anything from an account of the debtor without permission or refused to make a payment at the debtor's direction from an account of the debtor because the debtor owed a debt.

☑ None

| Creditor's name and address | Description of the action creditor took | Date action was taken | Amount |
|---|---|---|---|
| _____ | _____ | _____ | $ _____ |
| Street | _____ | | |
| City          State          Zip Code | | | |

Last 4 digits of account number: XXXX - _____

**Part 3:      Legal Actions or Assignments**

**7. Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits**

List the legal actions, proceedings, investigations, arbitrations, mediations, and audits by federal or state agencies in which the debtor was involved in any capacity-within 1 year before filing this case.

☐ None   **See Attached Rider**

| | Case title | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|---|
| 7.1 | _____ | _____ | _____ | ☐ Pending |
| | | | Street | ☐ On appeal |
| | Case number | | City          State          Zip Code | ☐ Concluded |
| | _____ | | | |
| 7.2 | _____ | _____ | _____ | ☐ Pending |
| | | | Street | ☐ On appeal |
| | Case number | | City          State          Zip Code | ☐ Concluded |
| | _____ | | | |

Debtor  Central Jersey Urgent Care Limited Liability Company                    Case number (If known)   26-30684
         Name

**8. Assignments and receivership**

List any property in the hands of an assignee for the benefit of creditors during the 120 days before filing this case and any property in the hands of a receiver, custodian, or other court-appointed officer within 1 year before filing this case.

☑ None

| Custodian's name and address | Description of the property | Value |
|---|---|---|
| | | $ _____ |
| _____ Street | **Case title** | **Court name and address** |
| _____ City   State   Zip Code | _____ | |
| | **Case number** | |
| | _____ | |
| | **Date of order or assignment** | |
| | _____ | |

---

**Part 4:    Certain Gifts and Charitable Contributions**

**9. List all gifts or charitable contributions the debtor gave to a recipient within 2 years before filing this case unless the aggregate value of the gifts to that recipient is less than $1,000**

☑ None

| Recipient's name and address | Description of the gifts or contributions | Dates given | Value |
|---|---|---|---|
| 9.1 _____ Street | _____ | _____ | $ _____ |
| _____ City   State   Zip Code | _____ | | |
| **Recipient's relationship to debtor** | | | |
| _____ | | | |
| 9.2 _____ Street | _____ | _____ | $ _____ |
| _____ City   State   Zip Code | _____ | | |
| **Recipient's relationship to debtor** | | | |
| _____ | | | |

---

**Part 5:    Certain Losses**

**10. All losses from fire, theft, or other casualty within 1 year before filing this case.**

☐ None    **See Attached Rider**

| Description of the property lost and how the loss occurred | Amount of payments received for the loss  If you have received payments to cover the loss, for example, from insurance, government compensation, or tort liability, list the total received. List unpaid claims on Official Form 106A/B (Schedule A/B: Assets - Real and Personal Property). | Date of loss | Value of property lost |
|---|---|---|---|
| _____ _____ | _____ | _____ | $ _____ |

---

Debtor   Central Jersey Urgent Care Limited Liability Company                    Case number (If known)   26-30684
        Name

---

**Part 6:**        **Certain Payments or Transfers**

11. **Payments related to bankruptcy**

List any payments of money or other transfers of property made by the debtor or person acting on behalf of the debtor within 1 year before the filing of this case to another person or entity, including attorneys, that the debtor consulted about debt consolidation or restructuring, seeking bankruptcy relief, or filing a bankruptcy case.

☑ None

| Who was paid or who received the transfer? | If not money, describe any property transferred | Dates | Total amount or value |
|---|---|---|---|
| 11.1 | | | $ |
| **Address** | | | |
| Street | | | |
| City          State          Zip Code | | | |
| **Email or website address** | | | |
| **Who made the payment, if not debtor?** | | | |

| Who was paid or who received the transfer? | If not money, describe any property transferred | Dates | Total amount or value |
|---|---|---|---|
| 11.2 | | | $ |
| **Address** | | | |
| Street | | | |
| City          State          Zip Code | | | |
| **Email or website address** | | | |
| **Who made the payment, if not debtor?** | | | |

12. **Self-settled trusts of which the debtor is a beneficiary**

List any payments or transfers of property made by the debtor or a person acting on behalf of the debtor within 10 years before the filing of this case to a self-settled trust or similar device.

Do not include transfers already listed on this statement.

☑ None

| Name of trust or device | Describe any property transferred | Dates transfers were made | Total amount or value |
|---|---|---|---|
| | | | $ |
| **Trustee** | | | |

---

Debtor   Central Jersey Urgent Care Limited Liability Company

Name

Case number (If known)   26-30684

---

**13. Transfers not already listed on this statement**

List any transfers of money or other property-by sale, trade, or any other means-made by the debtor or a person acting on behalf of the debtor within 2 years before the filing of this case to another person, other than property transferred in the ordinary course of business or financial affairs.  Include both outright transfers and transfers made as security. Do not include gifts or transfers previously listed on this statement.

☑ None

| | Who received transfer? | Description of property transferred or payments received or debts paid in exchange | Date transfer was made | Total amount or value |
|---|---|---|---|---|
| 13.1 | | | | $ |
| | **Address** | | | |
| | Street | | | |
| | City          State          Zip Code | | | |
| | **Relationship to debtor** | | | |

| | Who received transfer? | Description of property transferred or payments received or debts paid in exchange | Date transfer was made | Total amount or value |
|---|---|---|---|---|
| 13.2 | | | | $ |
| | **Address** | | | |
| | Street | | | |
| | City          State          Zip Code | | | |
| | **Relationship to debtor** | | | |

---

**Part 7:**   **Previous Locations**

**14. Previous addresses**

List all previous addresses used by the debtor within 3 years before filing this case and the dates the addresses were used.

☐ Does not apply      **See Attached Rider**

| | Address | Dates of Occupancy |
|---|---|---|
| 14.1 | Street | From _____   To _____ |
| | City          State          Zip Code | |
| 14.2 | Street | From _____   To _____ |
| | City          State          Zip Code | |

---

Debtor  Central Jersey Urgent Care Limited Liability Company                    Case number (If known)   26-30684
       Name

## Part 8:  Health Care Bankruptcies

15. **Health Care bankruptcies**

Is the debtor primarily engaged in offering services and facilities for:
- diagnosing or treating injury, deformity, or disease, or
- providing any surgical, psychiatric, drug treatment, or obstetric care?

☐ No. Go to Part 9.
☑ Yes. Fill in the information below.      **See Attached Rider**

| Facility name and address | Nature of the business operation, including type of services the debtor provides | If debtor provides meals and housing, number of patients in debtor's care |
|---|---|---|
| 15.1 _____ <br> Street <br> _____ <br> City    State    Zip Code | _____ | _____ |
| | **Location where patient records are maintained** (if different from facility address). If electronic, identify any service provider. <br> _____ <br> _____ | **How are records kept?** <br> *Check all that apply:* <br> ☐ Electronically <br> ☐ Paper |
| **Facility name and address** | **Nature of the business operation, including type of services the debtor provides** | **If debtor provides meals and housing, number of patients in debtor's care** |
| 15.2 _____ <br> Street <br> _____ <br> City    State    Zip Code | _____ | _____ |
| | **Location where patient records are maintained** (if different from facility address). If electronic, identify any service provider. <br> _____ | **How are records kept?** <br> *Check all that apply:* <br> ☐ Electronically <br> ☐ Paper |

## Part 9:  Personally Identifiable Information

16. **Does the debtor collect and retain personally identifiable information of customers?**

☐ No.
☑ Yes. State the nature of the information collected and retained.         FULL NAME, DATE OF BIRTH, SEX, HOME ADDRESS, EMAIL ADDRESS, PHONE NUMBER, MEDICAL RECORDS, LABORATORY RESULTS AND PRESCRIPTION HISTORY AS NECESSARY FOR PATIENT CARE, DIAGNOSIS AND TREATMENT.

Does the debtor have a privacy policy about that information?
☐ No
☑ Yes

17. **Within 6 years before filing this case, have any employees of the debtor been participants in any ERISA, 401(k), 403(b), or other pension or profit-sharing plan made available by the debtor as an employee benefit?**

☑ No. Go to Part 10.
Yes. Does the debtor serve as plan administrator?
☐ No. Go to Part 10.
☐ Yes. Fill in below

| Name of plan | Employer identification number of the plan |
|---|---|
| _____ | EIN: _____ |

Has the plan been terminated?
☐ No
☐ Yes

Debtor   Central Jersey Urgent Care Limited Liability Company      Case number (If known)   26-30684

Name

## Part 10: Certain Financial Accounts, Safe Deposit Boxes, and Storage Units

**18. Closed financial accounts**

Within 1 year before filing this case, were any financial accounts or instruments held in the debtor's name, or for the debtor's benefit, closed, old, moved, or transferred?
Include checking, savings, money market, or other financial accounts; certificates of deposit; and shares in banks, credit unions, brokerage houses, cooperatives, associations, and other financial institutions.

☑ None

| Financial institution name and address | Last 4 digits of account number | Type of account | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
|---|---|---|---|---|
| 18.1 _____ <br> Street _____ <br> City  State  Zip Code | XXXX-_____ | ☐ Checking <br> ☐ Savings <br> ☐ Money Market <br> ☐ Brokerage <br> ☐ Other _____ | _____ | $ _____ |
| 18.2 _____ <br> Street _____ <br> City  State  Zip Code | XXXX-_____ | ☐ Checking <br> ☐ Savings <br> ☐ Money Market <br> ☐ Brokerage <br> ☐ Other _____ | _____ | $ _____ |

**19. Safe deposit boxes**

List any safe deposit box or other depository for securities, cash, or other valuables the debtor now has or did have within 1 year before filing this case.

☑ None

| Depository institution name and address | Names of anyone with access to it | Description of the contents | Does debtor still have it? |
|---|---|---|---|
| _____ <br> Street _____ <br> City  State  Zip Code | _____ <br><br> Address _____ <br> _____ | _____ <br> _____ | ☐ No <br> ☐ Yes |

**20. Off-premises storage**

List any property kept in storage units or warehouses within 1 year before filing this case. Do not include facilities that are in a part of a building in which the debtor does business.

☑ None

| Facility name and address | Names of anyone with access to it | Description of the contents | Does debtor still have it? |
|---|---|---|---|
| _____ <br> Street _____ <br> City  State  Zip Code | _____ <br><br> Address _____ <br> _____ | _____ <br> _____ | ☐ No <br> ☐ Yes |

| Debtor | Central Jersey Urgent Care Limited Liability Company | Case number (If known) | 26-30684 |
|---|---|---|---|
| | Name | | |

## Part 11:   Property the Debtor Holds or Controls That the Debtor Does Not Own

**21.  Property held for another**

List any property that the debtor holds or controls that another entity owns. Include any property borrowed from, being stored for, or held in trust. Do not list leased or rented property.

☐  None    __See Attached Rider__

| Owner's name and address | Location of the property | Description of the property | Value |
|---|---|---|---|
| | | | $ |
| _____ | _____ | _____ | _____ |
| Street | | | |
| _____ | | | |
| City          State        Zip Code | | | |

## Part 12:   Details About Environmental Information

For the purpose of Part 12, the following definitions apply:

- *Environmental law* means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium).

- *Site* means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.

- *Hazardous material* means anything that an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similarly harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

**22.  Has the debtor been a party in any judicial or administrative proceeding under any environmental law?** Include settlements and orders.

☑  No
☐  Yes. Provide details below.

| Case title | Court or agency name and address | Nature of the case | Status of case |
|---|---|---|---|
| _____ | _____ | _____ | ☐  Pending |
| **Case Number** | Street | | ☐  On appeal |
| | _____ | | ☐  Concluded |
| _____ | City          State        Zip Code | | |

**23.  Has any governmental unit otherwise notified the debtor that the debtor may be liable or potentially liable under or in violation of an environmental law?**

☑  No
☐  Yes. Provide details below.

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|
| _____ | _____ | _____ | _____ |
| Street | Street | | |
| _____ | _____ | | |
| City          State        Zip Code | City          State        Zip Code | | |

Debtor   Central Jersey Urgent Care Limited Liability Company                        Case number (If known)   26-30684
         Name

24. **Has the debtor notified any governmental unit of any release of hazardous material?**

☑ No

☐ Yes. Provide details below.

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|
| | | | |
| Street | Street | | |
| City          State          Zip Code | City          State          Zip Code | | |

---

**Part 13:   Details About the Debtor's Business or Connections to Any Business**

25. **Other businesses in which the debtor has or has had an interest**

List any business for which the debtor was an owner, partner, member, or otherwise a person in control within 6 years before filing this case. Include this information even if already listed in the Schedules.

☑ None

| | Business name and address | Describe the nature of the business | Employer Identification number<br>Do not include Social Security number or ITIN. |
|---|---|---|---|
| 25.1 | | | EIN: |
| | Street | | **Dates business existed** |
| | City          State          Zip Code | | From _____   To _____ |

| | Business name and address | Describe the nature of the business | Employer Identification number<br>Do not include Social Security number or ITIN. |
|---|---|---|---|
| 25.2 | | | EIN: |
| | Street | | **Dates business existed** |
| | City          State          Zip Code | | From _____   To _____ |

| | Business name and address | Describe the nature of the business | Employer Identification number<br>Do not include Social Security number or ITIN. |
|---|---|---|---|
| 25.3 | | | EIN: |
| | Street | | **Dates business existed** |
| | City          State          Zip Code | | From _____   To _____ |

Debtor   Central Jersey Urgent Care Limited Liability Company _____   Case number (If known)   26-30684 _____
     Name

26.   **Books, records, and financial statements**

26a. List all accountants and bookkeepers who maintained the debtor's books and records within 2 years before filing this case.

☐ None   __**See Attached Rider**__

| Name and address | Dates of service |
|---|---|
| 26a.1 _____ <br> Street _____ <br> City          State          Zip Code | From _____  To _____ |

| Name and address | Dates of service |
|---|---|
| 26a.2 _____ <br> Street _____ <br> City          State          Zip Code | From _____  To _____ |

26b. List all firms or individuals who have audited, compiled, or reviewed debtor's books of account and records or prepared a financial statement within 2 years before filing this case.

☐ None

| Name and address | Dates of service |
|---|---|
| 26b.1 ERNST & YOUNG LLP <br> 725 S FIGUEROA ST <br> LOS ANGELES, CA 90017 | From 01/01/2022  To 12/31/2025 |

| Name and address | Dates of service |
|---|---|
| 26b.2 | From _____  To _____ |

26c. List all firms or individuals who were in possession of the debtor's books of account and records when this case is filed.

☐ None   __**See Attached Rider**__

| Name and address | if any books of account and records are unavailable, explain why |
|---|---|
| 26c.1 _____ <br> Street _____ <br> City          State          Zip Code | _____ <br> _____ |

Debtor   Central Jersey Urgent Care Limited Liability Company
Name

Case number (If known)   26-30684

| Name and address | if any books of account and records are unavailable, explain why |
|---|---|
| 26c.2 | |
| Street | |
| City          State          Zip Code | |

26d. List all financial institutions, creditors, and other parties, including mercantile and trade agencies, to whom the debtor issued a financial statement within 2 years before filing this case.

☐ None   **See Attached Rider**

| Name and address |
|---|
| 26d.1 |
| Street |
| City          State          Zip Code |

| Name and address |
|---|
| 26d.2 |
| Street |
| City          State          Zip Code |

27. **Inventories**

Have any inventories of the debtor's property been taken within 2 years before filing this case?

☑ No

☐ Yes. Give the details about the two most recent inventories.

| Name of the person who supervised the taking of the inventory | Date of inventory | The dollar amount and basis (cost, market, or other basis) of each inventory |
|---|---|---|
| | | $ |

| Name and address of the person who has possession of inventory records | | |
|---|---|---|
| 27.1 | | |
| Street | | |
| City          State          Zip Code | | |

Debtor  Central Jersey Urgent Care Limited Liability Company     Case number (If known)  26-30684

     Name

| Name of the person who supervised the taking of the inventory | Date of inventory | The dollar amount and basis (cost, market, or other basis) of each inventory |
|---|---|---|
| | | $ |

| Name and address of the person who has possession of inventory records | | |
|---|---|---|
| 27.2 | | |
| Street | | |
| City | State | Zip Code |

28. **List the debtor's officers, directors, managing members, general partners, members in control, controlling shareholders, or other people in control of the debtor at the time of the filing of this case.**

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| See Attached Rider | | | |
| | | | |
| | | | |
| | | | |
| | | | |

29. **Within 1 year before the filing of this case, did the debtor have officers, directors, managing members, general partners, members in control of the debtor, or shareholders in control of the debtor who no longer hold these positions?**

☒ No
☐ Yes. Identify below.

| Name | Address | Position and nature of any interest | Period during which position or interest was held |
|---|---|---|---|
| | | | From — To |
| | | | From — To |
| | | | From — To |
| | | | From — To |

30. **Payments, distributions, or withdrawals credited or given to insiders**

Within 1 year before filing this case, did the debtor provide an insider with value in any form, including salary, other compensation, draws, bonuses, loans, credits on loans, stock redemptions, and options exercised?

☐ No
☐ Yes. Identify below.

| Name and address of recipient | Amount of money or description and value of property | Dates | Reason for providing the value |
|---|---|---|---|
| 30.1 Please refer to SOFA question 4. | | | |
| Street | | | |
| City            State            Zip Code | | | |

| Relationship to debtor |
|---|
| |

Official Form 207       **Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**       Page **13**

Debtor   Central Jersey Urgent Care Limited Liability Company
Name

Case number (If known)   26-30684

| | Name and address of recipient | Amount of money or description and value of property | Dates | Reason for providing the value |
|---|---|---|---|---|
| 30.2 | | | | |
| | Street | | | |
| | City          State          Zip Code | | | |
| | **Relationship to debtor** | | | |

**31. Within 6 years before filing this case, has the debtor been a member of any consolidated group for tax purposes?**

☒ No

☐ Yes. Identify below.

| Name of the parent corporation | Employer Identification number of the parent corporation |
|---|---|
| | EIN: |

**32. Within 6 years before filing this case, has the debtor as an employer been responsible for contributing to a pension fund?**

☒ No

☐ Yes. Identify below.

| Name of the pension fund | Employer Identification number of the pension fund |
|---|---|
| | EIN: |

**Part 14:   Signature and Declaration**

**WARNING** -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

I have examined the information in this *Statement of Financial Affairs* and any attachments and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   02/27/2026
                         MM / DD / YYYY

**X** /s/ Sujal Mandavia                                   Printed name   Sujal Mandavia
Signature of individual signing on behalf of the debtor

Position or relationship to debtor   Chief Medical Officer

**Are additional pages to *Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy* (Official Form 207) attached?**

☐ No

☒ Yes

Debtor Name:  Central Jersey Urgent Care Limited Liability Company                                                      Case Number:  26-30684

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**SOFA Question 2:** Non-business revenue

| From Date | To Date | Description of sources of revenue | Gross Revenue |
|---|---|---|---|
| 01/01/2024 | 12/31/2024 | Acquired Other Revenue | $7,303.45 |
| 01/01/2024 | 12/31/2024 | Interest Income | $1.32 |

Debtor Name: Central Jersey Urgent Care Limited Liability Company

Case Number: 26-30684

**Intercompany Exhibit**

| Debtor | Debtor Affiliated Entity | Period (Month End) | Beginning Receivable (Payable) | Ending Receivable (Payable) | Net Monthly Activity Receivable / (Payable) |
|---|---|---|---|---|---|
| Central Jersey Urgent Care Limited Liability Company | Carbon Health Medical Group of Florida, P.A. | Dec 2024 - Jan 2025 | (32,259,066) | (33,672,673) | (1,413,608) |
| Central Jersey Urgent Care Limited Liability Company | Carbon Health Medical Group of Florida, P.A. | Jan 2025 - Feb 2025 | (33,672,673) | (35,081,474) | (1,408,801) |
| Central Jersey Urgent Care Limited Liability Company | Carbon Health Medical Group of Florida, P.A. | Feb 2025 - Mar 2025 | (35,081,474) | (36,339,260) | (1,257,786) |
| Central Jersey Urgent Care Limited Liability Company | Carbon Health Medical Group of Florida, P.A. | Mar 2025 - Apr 2025 | (36,339,260) | (37,549,699) | (1,210,439) |
| Central Jersey Urgent Care Limited Liability Company | Carbon Health Medical Group of Florida, P.A. | Apr 2025 - May 2025 | (37,549,699) | (38,916,440) | (1,366,741) |
| Central Jersey Urgent Care Limited Liability Company | Carbon Health Medical Group of Florida, P.A. | May 2025 - Jun 2025 | (38,916,440) | (40,031,218) | (1,114,778) |
| Central Jersey Urgent Care Limited Liability Company | Carbon Health Medical Group of Florida, P.A. | Jun 2025 - Jul 2025 | (40,031,218) | (41,310,889) | (1,279,672) |
| Central Jersey Urgent Care Limited Liability Company | Carbon Health Medical Group of Florida, P.A. | Jul 2025 - Aug 2025 | (41,310,889) | (42,602,428) | (1,291,539) |
| Central Jersey Urgent Care Limited Liability Company | Carbon Health Medical Group of Florida, P.A. | Aug 2025 - Sep 2025 | (42,602,428) | (43,907,369) | (1,304,941) |
| Central Jersey Urgent Care Limited Liability Company | Carbon Health Medical Group of Florida, P.A. | Sep 2025 - Oct 2025 | (43,907,369) | (45,101,368) | (1,193,999) |
| Central Jersey Urgent Care Limited Liability Company | Carbon Health Medical Group of Florida, P.A. | Oct 2025 - Nov 2025 | (45,101,368) | (46,362,626) | (1,261,258) |
| Central Jersey Urgent Care Limited Liability Company | Carbon Health Medical Group of Florida, P.A. | Nov 2025 - Dec 2025 | (46,362,626) | (47,689,159) | (1,326,533) |
| | | | | | |
| Central Jersey Urgent Care Limited Liability Company | Carbon Health Technologies, Inc. | Dec 2024 - Jan 2025 | (11,491,902) | (12,248,741) | (756,839) |
| Central Jersey Urgent Care Limited Liability Company | Carbon Health Technologies, Inc. | Jan 2025 - Feb 2025 | (12,248,741) | (13,036,659) | (787,918) |
| Central Jersey Urgent Care Limited Liability Company | Carbon Health Technologies, Inc. | Feb 2025 - Mar 2025 | (13,036,659) | (13,809,805) | (773,146) |
| Central Jersey Urgent Care Limited Liability Company | Carbon Health Technologies, Inc. | Mar 2025 - Apr 2025 | (13,809,805) | (14,590,575) | (780,770) |
| Central Jersey Urgent Care Limited Liability Company | Carbon Health Technologies, Inc. | Apr 2025 - May 2025 | (14,590,575) | (15,409,919) | (819,344) |
| Central Jersey Urgent Care Limited Liability Company | Carbon Health Technologies, Inc. | May 2025 - Jun 2025 | (15,409,919) | (16,225,430) | (815,512) |
| Central Jersey Urgent Care Limited Liability Company | Carbon Health Technologies, Inc. | Jun 2025 - Jul 2025 | (16,225,430) | (17,042,728) | (817,298) |
| Central Jersey Urgent Care Limited Liability Company | Carbon Health Technologies, Inc. | Jul 2025 - Aug 2025 | (17,042,728) | (17,871,869) | (829,141) |
| Central Jersey Urgent Care Limited Liability Company | Carbon Health Technologies, Inc. | Aug 2025 - Sep 2025 | (17,871,869) | (18,675,306) | (803,437) |
| Central Jersey Urgent Care Limited Liability Company | Carbon Health Technologies, Inc. | Sep 2025 - Oct 2025 | (18,675,306) | (19,458,253) | (782,947) |
| Central Jersey Urgent Care Limited Liability Company | Carbon Health Technologies, Inc. | Oct 2025 - Nov 2025 | (19,458,253) | (20,233,740) | (775,487) |
| Central Jersey Urgent Care Limited Liability Company | Carbon Health Technologies, Inc. | Nov 2025 - Dec 2025 | (20,233,740) | (21,004,533) | (770,793) |
| | | | | | |
| Central Jersey Urgent Care Limited Liability Company | Carbon Health Medical Group of California, P.C. | Dec 2024 - Jan 2025 | 27,511,899 | 28,686,899 | 1,175,000 |
| Central Jersey Urgent Care Limited Liability Company | Carbon Health Medical Group of California, P.C. | Jan 2025 - Feb 2025 | 28,686,899 | 30,741,899 | 2,055,000 |
| Central Jersey Urgent Care Limited Liability Company | Carbon Health Medical Group of California, P.C. | Feb 2025 - Mar 2025 | 30,741,899 | 32,281,899 | 1,540,000 |
| Central Jersey Urgent Care Limited Liability Company | Carbon Health Medical Group of California, P.C. | Mar 2025 - Apr 2025 | 32,281,899 | 33,931,899 | 1,650,000 |
| Central Jersey Urgent Care Limited Liability Company | Carbon Health Medical Group of California, P.C. | Apr 2025 - May 2025 | 33,931,899 | 35,306,899 | 1,375,000 |
| Central Jersey Urgent Care Limited Liability Company | Carbon Health Medical Group of California, P.C. | May 2025 - Jun 2025 | 35,306,899 | 36,461,899 | 1,155,000 |
| Central Jersey Urgent Care Limited Liability Company | Carbon Health Medical Group of California, P.C. | Jun 2025 - Jul 2025 | 36,461,899 | 37,951,899 | 1,490,000 |
| Central Jersey Urgent Care Limited Liability Company | Carbon Health Medical Group of California, P.C. | Jul 2025 - Aug 2025 | 37,951,899 | 39,226,899 | 1,275,000 |
| Central Jersey Urgent Care Limited Liability Company | Carbon Health Medical Group of California, P.C. | Aug 2025 - Sep 2025 | 39,226,899 | 40,726,899 | 1,500,000 |
| Central Jersey Urgent Care Limited Liability Company | Carbon Health Medical Group of California, P.C. | Sep 2025 - Oct 2025 | 40,726,899 | 42,146,899 | 1,420,000 |
| Central Jersey Urgent Care Limited Liability Company | Carbon Health Medical Group of California, P.C. | Oct 2025 - Nov 2025 | 42,146,899 | 42,146,899 | - |
| Central Jersey Urgent Care Limited Liability Company | Carbon Health Medical Group of California, P.C. | Nov 2025 - Dec 2025 | 42,146,899 | 63,722,775 | 21,575,876 |
| | | | | | |
| Central Jersey Urgent Care Limited Liability Company | Prairie Medical Associates, Inc. | Dec 2024 - Jan 2025 | - | - | - |
| Central Jersey Urgent Care Limited Liability Company | Prairie Medical Associates, Inc. | Jan 2025 - Feb 2025 | - | - | - |
| Central Jersey Urgent Care Limited Liability Company | Prairie Medical Associates, Inc. | Feb 2025 - Mar 2025 | - | - | - |
| Central Jersey Urgent Care Limited Liability Company | Prairie Medical Associates, Inc. | Mar 2025 - Apr 2025 | - | - | - |
| Central Jersey Urgent Care Limited Liability Company | Prairie Medical Associates, Inc. | Apr 2025 - May 2025 | - | - | - |
| Central Jersey Urgent Care Limited Liability Company | Prairie Medical Associates, Inc. | May 2025 - Jun 2025 | - | - | - |
| Central Jersey Urgent Care Limited Liability Company | Prairie Medical Associates, Inc. | Jun 2025 - Jul 2025 | - | - | - |
| Central Jersey Urgent Care Limited Liability Company | Prairie Medical Associates, Inc. | Jul 2025 - Aug 2025 | - | - | - |
| Central Jersey Urgent Care Limited Liability Company | Prairie Medical Associates, Inc. | Aug 2025 - Sep 2025 | - | - | - |
| Central Jersey Urgent Care Limited Liability Company | Prairie Medical Associates, Inc. | Sep 2025 - Oct 2025 | - | - | - |
| Central Jersey Urgent Care Limited Liability Company | Prairie Medical Associates, Inc. | Oct 2025 - Nov 2025 | - | 1,150,000 | 1,150,000 |
| Central Jersey Urgent Care Limited Liability Company | Prairie Medical Associates, Inc. | Nov 2025 - Dec 2025 | 1,150,000 | 1,450,000 | 300,000 |

Debtor Name:  Central Jersey Urgent Care Limited Liability Company

Case Number:  26-30684

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**SOFA Question 7:** Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits

| Case Title | Case Number | Nature of Case | Court Name and Address | Status |
|---|---|---|---|---|
| NAME ON FILE V. CARBON HEALTH; CARBON HEALTH URGENT CARE; CARBON HEALTH MEDICAL GROUP OF FLORIDA PA; CARBON HEALTH MEDICAL GROUP OF CALIFORNIA, P.C.; AND RELATED ENTITIES | UNDETERMINED | LABOR CODE VIOLATION | CALIFORNIA LABOR AND WORKFOREC DEVELOPMENT AGCENCY 800 CAPITOL MALL SUITE 5000 SACRAMENTO, CA 95814 | Pending |
| NAME ON FILE V. CARBON HEALTH TECHNOLOGIES, INC.; CENTRAL JERSEY URGENT CARE LIMITED LIABILITY COMPANY; CARBON HEALTH MEDICAL GROUP OF FLORIDA | SOM-L-35-26 | EMPLOYMENT DISCRIMINATION | SUPERIOR COURT OF NEW JERSEY 25 MARKET ST TRENTON, NJ 08625 | Pending |
| NAME ON FILE V. CENTRAL JERSEY URGENT CARE AND/OR CARBON HEALTH AND/OR ITS SUCCESSORS AND/OR ASSIGNS, AND/OR NAME ON FILE, AND/OR NAME ON FILE | MMOONN--LL--0000 00991155--224 | MEDICAL MALPRACTICE | SUPERIOR COURT OF NEW JERSEY LAW DIVISION MONMOUTH COUNTY 71 MONUMENT ST FREEHOLD, NJ 07728 | Pending |
| NAME ON FILE V. NAME ON FILE; NAME ON FILE; NAME ON FILE; CARBON HEALTH; CARBON HEALTH URGENT CARE | UNDETERMINED | MEDICAL MALPRACTICE | SUPERIOR COURT OF THE STATE OF CALIFORNIA 400 MCALLISTER ST SAN FRANCISCO, CA 94102 | Pending |

Debtor Name:  Central Jersey Urgent Care Limited Liability Company                                      Case Number:  26-30684

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**SOFA Question 10:**  All losses from fire, theft, or other casualty within 1 year before filing this case.

| Description of Property | Amount of Payments | Date of Loss | Value |
|---|---|---|---|
| | | | |

The Debtors had no reportable losses during the 1 year prior to the petition date. The Debtors do not track or report de minimis losses at clinics to their insurance providers. These losses include but are not limited to: Printers, Breath Alcohol Test Machines, FeNo Devices, Laptops, Speakers, Credit Card Machines, iPads, Otoscopes, X-Ray Gloves, Medical Gloves, and Other Personal Items.

Debtor Name:  Central Jersey Urgent Care Limited Liability Company                              Case Number:  26-30684

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**SOFA Question 14:** Previous addresses

| Previous Address | From Date | To Date |
|---|---|---|
| 2100 FRANKLIN STREET; SUITE 355 OAKLAND, CA 94612 UNITED STATES | Undetermined | Undetermined |
| 500 E. REMINGTON DR. ; STE 20 SUNNYVALE, CA 94087 UNITED STATES | Undetermined | Undetermined |
| 731 HIGHWAY 35 OCEAN, NJ 07712 UNITED STATES | 08/17/2012 | Undetermined |

Debtor Name:  Central Jersey Urgent Care Limited Liability Company                                    Case Number:  26-30684

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**SOFA Question 15:** Health Care bankruptcies

| Facility Name and Address | Nature of Business Operation | Location of Records | Number of Patients | Electronic Records | Paper Records |
|---|---|---|---|---|---|
| CJUC - BROWNS MILLS<br>6 EARLIN AVE<br>BROWNS MILLS, NJ 08015-1700 | URGENT CARE SERVICES | CARBYOS | | True | False |
| CJUC - HOWELL<br>4564 US 9<br>HOWELL, NJ 07731 | URGENT CARE SERVICES | CARBYOS | | True | False |
| CJUC - LAWRENCEVILLE<br>3373 BRUNSWICK PIKE<br>UNIT 56<br>LAWRENCEVILLE, NJ 08648-1375 | URGENT CARE SERVICES | CARBYOS | | True | False |
| CJUC - MARLBORO<br>167 US HWY 9<br>STE 5<br>ENGLISHTOWN, NJ 07726 | URGENT CARE SERVICES | CARBYOS | | True | False |
| CJUC - MARLTON NJ - MARLTON<br>CROSSINGS<br>295 NJ-73<br>MARLTON, NJ 08053 | URGENT CARE SERVICES | CARBYOS | | True | False |
| CJUC - MONROE<br>298 APPLEGARTH RD<br>STE B<br>MONROE, NJ 08831-3822 | URGENT CARE SERVICES | CARBYOS | | True | False |
| CJUC - OCEAN TOWNSHIP<br>731 HIGHWAY 35<br>SUITE G<br>OCEAN TOWNSHIP, NJ 07712 | URGENT CARE SERVICES | CARBYOS | | True | False |
| EATONTOWN, NJ<br>142 NJ-35<br>STE 206<br>EATONTOWN, NJ 07724 | URGENT CARE SERVICES | CARBYOS | | True | False |
| GREEN BROOK, NJ<br>119 US-22<br>GREEN BROOK, NJ 08812 | URGENT CARE SERVICES | CARBYOS | | True | False |
| SKILLMAN, NJ<br>1325 US HIGHWAY 206<br>SUITE 6<br>SKILLMAN, NJ 08558-1922 | URGENT CARE SERVICES | CARBYOS | | True | False |
| SOMERSET, NJ<br>84 VERONICA AVE<br>SOMERSET, NJ 08873-3529 | URGENT CARE SERVICES | CARBYOS | | True | False |

Debtor Name:  Central Jersey Urgent Care Limited Liability Company                                      Case Number:  26-30684

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**SOFA Question 21:** Property held for another

| Owner's Name and Address | Location of Property | Description of Property | Value |
|---|---|---|---|
| PACMED PACIFIC MEDICAL PO BOX 149 TRACY, CA 95378 CA | 84 VERONICA AVE SOMERSET, NJ 08873-3529, UNITED STATES | DURABLE MEDICAL EQUIPMENT | $4,500 |
| PACMED PACIFIC MEDICAL PO BOX 149 TRACY, CA 95378 CA | 167 US HWY 9, STE 5 ENGLISHTOWN, NJ 07726, UNITED STATES | DURABLE MEDICAL EQUIPMENT | $4,500 |
| PACMED PACIFIC MEDICAL PO BOX 149 TRACY, CA 95378 CA | 295 NJ-73 MARLTON, NJ 08053, UNITED STATES | DURABLE MEDICAL EQUIPMENT | $4,500 |
| PACMED PACIFIC MEDICAL PO BOX 149 TRACY, CA 95378 CA | 6 EARLIN AVE BROWNS MILLS, NJ 08015-1700, UNITED STATES | DURABLE MEDICAL EQUIPMENT | $4,500 |
| PACMED PACIFIC MEDICAL PO BOX 149 TRACY, CA 95378 CA | 4564 US 9 HOWELL, NJ 07731, UNITED STATES | DURABLE MEDICAL EQUIPMENT | $4,500 |
| PACMED PACIFIC MEDICAL PO BOX 149 TRACY, CA 95378 CA | 298 APPLEGARTH RD, STE B MONROE, NJ 08831-3822, UNITED STATES | DURABLE MEDICAL EQUIPMENT | $4,500 |
| PACMED PACIFIC MEDICAL PO BOX 149 TRACY, CA 95378 CA | 142 NJ-35, STE 206 EATONTOWN, NJ 07724, UNITED STATES | DURABLE MEDICAL EQUIPMENT | $4,500 |
| PACMED PACIFIC MEDICAL PO BOX 149 TRACY, CA 95378 CA | 3373 BRUNSWICK PIKE, UNIT 56 LAWRENCEVILLE, NJ 08648-1375, UNITED STATES | DURABLE MEDICAL EQUIPMENT | $4,500 |
| PACMED PACIFIC MEDICAL PO BOX 149 TRACY, CA 95378 CA | 1325 US HIGHWAY 206, SUITE 6 SKILLMAN, NJ 08558-1922, UNITED STATES | DURABLE MEDICAL EQUIPMENT | $4,500 |
| PACMED PACIFIC MEDICAL PO BOX 149 TRACY, CA 95378 CA | 731 HIGHWAY 35, SUITE G OCEAN TOWNSHIP, NJ 07712, UNITED STATES | DURABLE MEDICAL EQUIPMENT | $4,500 |
| PACMED PACIFIC MEDICAL PO BOX 149 TRACY, CA 95378 CA | 119 US-22 GREEN BROOK, NJ 08812, UNITED STATES | DURABLE MEDICAL EQUIPMENT | $4,500 |

Debtor Name:  Central Jersey Urgent Care Limited Liability Company                                    Case Number:  26-30684

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**SOFA Question 26a:** List all accountants and bookkeepers who maintained the debtor's books and records within 2 years before filing this case.

| Name and Address | From | To |
|---|---|---|
| ARCE, CHRISTIAN<br>500 EAST REMINGTON DRIVE<br>SUITE 20<br>SUNNYVALE, CA 94087 | 09/06/2022 | 04/09/2024 |
| CAMERON, WESLEY<br>500 EAST REMINGTON DRIVE<br>SUITE 20<br>SUNNYVALE, CA 94087 | 04/14/2025 | CURRENT |
| CHOY, ADELA<br>500 EAST REMINGTON DRIVE<br>SUITE 20<br>SUNNYVALE, CA 94087 | 03/31/2025 | CURRENT |
| KIM, SUNNY<br>500 EAST REMINGTON DRIVE<br>SUITE 20<br>SUNNYVALE, CA 94087 | 09/06/2022 | 05/23/2025 |
| PATEL, BHOOMIKA<br>500 EAST REMINGTON DRIVE<br>SUITE 20<br>SUNNYVALE, CA 94087 | 10/18/2021 | CURRENT |
| SLUSSER, ERIC<br>500 EAST REMINGTON DRIVE<br>SUITE 20<br>SUNNYVALE, CA 94087 | 03/19/2024 | 07/28/2025 |
| TSANG, KIM<br>500 EAST REMINGTON DRIVE<br>SUITE 20<br>SUNNYVALE, CA 94087 | 06/26/2023 | CURRENT |
| WOOLSEY, NATHAN<br>500 EAST REMINGTON DRIVE<br>SUITE 20<br>SUNNYVALE, CA 94087 | 09/19/2022 | 07/18/2025 |

Debtor Name:  Central Jersey Urgent Care Limited Liability Company                                        Case Number:  26-30684

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**SOFA Question 26c:** Firms or individuals who were in possession of the debtor's books of account and records when this case is filed.

| Name and Address | If unavailable, why? |
|---|---|
| CAMERON, WESLEY<br>500 EAST REMINGTON DRIVE<br>SUITE 20<br>SUNNYVALE, CA 94087 | |
| CHOY, ADELA<br>500 EAST REMINGTON DRIVE<br>SUITE 20<br>SUNNYVALE, CA 94087 | |
| PATEL, BHOOMIKA<br>500 EAST REMINGTON DRIVE<br>SUITE 20<br>SUNNYVALE, CA 94087 | |
| TSANG, KIM<br>500 EAST REMINGTON DRIVE<br>SUITE 20<br>SUNNYVALE, CA 94087 | |

Debtor Name:  Central Jersey Urgent Care Limited Liability Company                                    Case Number:  26-30684

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**SOFA Question 26d:** List all financial institutions, creditors, and other parties, including mercantile and trade agencies, to whom the debtor issues a financial statement within 2 years before filing this case.

| Name and Address |
| --- |
|  |

In the ordinary course of business the Debtors provide financial statements to certain parties, such as financial institutions, investment banks, auditors, potential investors, vendors and financial advisors. The Debtors do not maintain complete lists to track such disclosures, and as such, the Debtors have not provided a listing of these parties in response to this question.

Debtor Name:  Central Jersey Urgent Care Limited Liability Company                                                                    Case Number:  26-30684

**Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy**

**SOFA Question 28:** List the debtor's officers, directors, managing members, general partners, members in control, controlling shareholders, or other people in control of the debtor at the time of the filing of this case.

| Name | Address | Position | % Interest |
|---|---|---|---|
| MANDAVIA, SUJAL | 500 EAST REMINGTON DRIVE<br>SUITE 20<br>SUNNYVALE, CA 94087 | CHIEF MEDICAL OFFICER, SOLE OWNER | 100 |