**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |
|---|---|
| In re: | Chapter 11 |
| CARBON HEALTH TECHNOLOGIES, INC., et al., | Case No. 26-90305 (CML) |
| Debtors. [1] | (Jointly Administered) |

**REPLY TO OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS TO THE DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN
ORDER (I) GRANTING INTERIM APPROVAL OF THE ADEQUACY OF
DISCLOSURES IN THE COMBINED DISCLOSURE STATEMENT AND PLAN;
(II) SCHEDULING A COMBINED CONFIRMATION HEARING AND SETTING
DEADLINES RELATED THERETO; (III) APPROVING SOLICITATION PACKAGES
AND PROCEDURES; (IV) APPROVING THE FORMS OF BALLOTS; AND (V)
GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

hereby file this reply (the "Reply") to the *Objection of the Official Committee of Unsecured*

*Creditors to the Debtors' Emergency Motion for Entry of an Order (I) Granting Interim Approval*

*of the Adequacy of Disclosures in the Combined Disclosure Statement and Plan; (II) Scheduling*

*a Combined Confirmation Hearing and Setting Deadlines Related Thereto; (III) Approving*

*Solicitation Packages and Procedures; (IV) Approving the Forms of Ballots; and (V) Granting*

*Related Relief* [Docket No. 411] (the "Objection")[2] filed by the Official Committee of Unsecured

Creditors (the "Committee").  In support of the Reply, the Debtors represent as follows:

---

[1]  A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/CarbonHealth.  The location of Carbon Health Technologies, Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 500 East Remington Drive, Suite 20, Sunnyvale, CA 94087.

[2]  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Objection or the Combined Disclosure Statement and Plan referenced therein (as amended).

**PRELIMINARY STATEMENT**

1.      The Committee objects to the Motion (as defined below) and the Disclosure Statement on the basis of various confirmation objections and asserted disclosure objections, while failing to take into account the substantial revisions to the Combined Disclosure Statement and Plan that the Debtors have already made to accommodate informal comments from the Committee.

2.      The Debtors filed their revised Combined Disclosure Statement and Plan on April 1, 2026 [Docket No. 412], incorporating a variety of the Committee's prior comments.  None of these revisions are reflected in the Objection.  As set forth herein, the Debtors are prepared to make further revisions, if necessary, to the Combined Disclosure Statement and Plan prior to the hearing on April 7, 2026, which the Debtors believe that, combined with the prior changes, address all the Committee's disclosure-based objections. Annexed hereto as **Exhibit A** is chart that summarizes the Committee's objections, the Debtors' responses, and references to the provisions of the Combined Disclosure Statement and Plan that address the issues raised.

3.       The Debtors further have no objection to including an appropriate Committee letter in the solicitation packages that will be sent to creditors.

4.      As currently filed, the Combined Disclosure Statement and Plan contain adequate information to enable creditors to vote on the Plan.  The terms of the Plan are not complex.  The Plan contemplates a debt for equity exchange in favor of the holders of DIP Claims and Prepetition Secured Claims (or the sale of all or substantially all of the Debtors' assets or equity) and the creation of a Trust to hold various estate litigation claims, including preference claims estimated to yield over $3.2 million in value, and associated rights.  The Trust will be funded with $1 million in cash.  The releases proposed under the Plan limited to the Debtors' Independent Director and

SF 4918-6036-7005.3 12854.00002

the DIP Lenders / Prepetition Lenders who are supporting and funding the Plan.  No other current and former equity holders, directors, and officers of the Debtors are released under the Plan.

5.      The Committee's objections to the Motion and the Disclosure Statement are not well taken.  **First**, the Committee asserts that the Plan will enable the holders of DIP Claims and Prepetition Secured Claims to recover more than they are owed.  Aside from the complete lack of legitimate factual basis for this assertion, it is squarely a confirmation objection and not a disclosure issue.  The same goes for the Committee's argument that estate claims against the lenders should not be waived under the Plan.  These are confirmation (and challenge) issues that have nothing to do with the Disclosure Statement.  The Committee is also wrong that unsecured creditors stand to recover nothing under the Plan given that it provides for holders of General Unsecured Claims to benefit from preference recoveries projected to be worth over $3.2 million plus $1 million in Trust funding, of which $500,000 is specifically allocated to holders of General Unsecured Claims, plus other Trust Causes of Action of unknown value.

6.      **Second**, the Committee's objection to the voting record date of March 17, 2026 is moot because the Debtors have already agreed to move such date to April 2, 2026, which is also the general bar date in this case.

7.      **Third**, the Committee seeks to extend the Plan objection deadline beyond the voting and tabulation deadlines.  This is not standard practice in this District or elsewhere.  The Debtors have already agreed to further extend the voting and Plan objection deadlines to May 13, 2026 which given the current proposed Confirmation timeline is nearly two weeks before the start of the Confirmation hearing.  If the Committee has any issue with the voting tabulation, they can cross examine the declarant in support thereof.  There is no basis to delay the Plan objection deadline for the voting deadline to pass or the voting tabulation to be filed.

SF 4918-6036-7005.3 12854.00002

8. **Fourth**, there is no limitation in the Plan on the ability of the Trust to pursue any Trust Causes of Action or any rights against applicable insurance coverage. These are additional issues addressed in the amended Combined Disclosure Statement and Plan that was shared with the Committee before filing. If the Committee has any particular Insider Claims to disclose based on its investigation to date, then the Committee should provide a description of such claims to the Debtors for inclusion in the Disclosure Statement. As to any other estate claims, they can be described in the Plan Supplement and do not need to be mentioned in the Disclosure Statement.

9. **Finally**, the Committee takes issue with the opt-out third party releases in the Plan. Again, this is a confirmation and not a disclosure issue. However, there is no deficiency in the opt-out mechanism proposed in the Plan. If a voting creditor does not wish to grant the releases contemplated under the Plan, then they can opt-out by making such election on their ballot. If no such election is made, then only holders of Claims who affirmatively vote in favor of the Plan grant third party releases thereunder. Inasmuch as the opt-out release only applies to parties that actually cast a ballot in favor of the Plan, the releases are consensual.

10. In sum, the issues raised in the Committee's 25-page Objection are either (a) moot because the Debtors have already agreed to make edits to the Combined Disclosure Statement and Plan and delay the proposed confirmation timeline through the end of May 2026, or (b) premature given that the Committee is attempting to assert confirmation objections. For these reasons and those set forth below, the Debtors urge the Court to overrule the Objection, grant the Motion, and authorize the Debtors to commence solicitation of the Combined Disclosure Statement and Plan.

## **RELEVANT BACKGROUND**

11. On February 2, 2026 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code before this Court.

12.     On February 3, 2026, the Debtors filed a bid procedures and sale motion [Docket No. 38] as part of their effort to run a robust marketing and sale process for the Debtors' assets and to fully test the market for alternative bids.  The Debtors retained Stifel, Nicolaus, & Co. as investment banker to manage the sale process.

13.     On February 10, 2026, this Court entered an order approving the bidding procedures for these cases [Docket No. 100].  The bid deadline was March 6, 2026.  Ultimately, no actionable bids were received and the Debtors canceled the auction.

14.     On February 16, 2026, the Committee was appointed in these cases by the Office of the U.S. Trustee [Docket No. 115].

15.     On February 27, 2026, the Court entered an order [Docket No. 193] (the "Bar Date Order") establishing certain dates by which parties holding prepetition claims against the Debtors must file proofs of claim, including requests for payment pursuant to section 503(b)(9) of the Bankruptcy Code ("Proofs of Claim").

16.     Pursuant to the Bar Date Order, entities holding claims against the Debtors that arose or are deemed to have arisen prior to the Petition Date, including requests for payment pursuant to section 503(b)(9) of the Bankruptcy Code, are required to file Proofs of Claim no later than April 2, 2026 (the "Claims Bar Date").

17.     On March 4, 2026, the Debtors filed the *Debtors' Emergency Motion for Entry of an Order (I) Granting Interim Approval of the Adequacy of Disclosures in the Combined Disclosure Statement and Plan; (II) Scheduling a Combined Confirmation Hearing and Setting Deadlines Related Thereto; (III) Approving Solicitation Packages and Procedures; (IV) Approving the Forms of Ballots; and (V) Granting Related Relief* [Docket No. 275] (the "Motion"), along with the original Combined Disclosure Statement and Plan [Docket No. 274].

SF 4918-6036-7005.3 12854.00002

18.     The Debtors originally scheduled a hearing on the Motion and conditional approval of the Disclosure Statement on March 24, 2026.  After discussions with the Committee, the Debtors continued the hearing to April 7, 2026, and used the extra time to incorporate comments from the Committee to the Combined Disclosure Statement and Plan.

19.     Although not all of the Committee's comments were accepted, the Debtors filed an amended Combined Disclosure Statement and Plan on April 1, 2026 [Docket No. 412], and a redline comparing the amended Combined Disclosure Statement and Plan with the original version filed on March 4, 2026.

20.     As the Committee has been informed, the Debtors have agreed to extend the plan confirmation timeline.  The Debtors' current proposed timeline is set forth below:

| Event | Proposed Date[3] |
|---|---|
| Voting Record Date | April 2, 2026[4] |
| Deadline to Solicit Votes | April 15, 2026 |
| Deadline to File and Serve Assumption Notice | April 15, 2026 |
| Deadline for Creditors to File Rule 3018 Motions | April 22, 2026, at 4:00 p.m. (CT) |
| Deadline to Respond to Rule 3018 Motions | April 29, 2026, at 4:00 p.m. (CT) |
| Contract Objection Deadline | May 6, 2026, at 4:00 p.m. (CT) |
| Deadline to file Plan Supplement | May 6, 2026 |
| Voting Deadline | May 13, 2026, at 4:00 p.m. (CT) |
| Combined Disclosure Statement and Plan Objection Deadline | May 13, 2026, at 4:00 p.m. (CT) |
| Deadline to File Voting Tabulation Affidavit | May 18, 2026, at 4:00 p.m. (CT) |
| Deadline to File Confirmation Brief and Other Evidence Supporting the Combined Disclosure Statement and Plan | May 22, 2026, at 4:00 p.m. (CT) |
| Confirmation Hearing | May 27-29, 2026 |

---

[3]  All times noted are in prevailing Central Time.

[4]  The proposed Voting Record Date is the same date as the Claims Bar Date.

SF 4918-6036-7005.3 12854.00002

21.     Notwithstanding the edits to the Combined Disclosure Statement and Plan incorporating certain of the Committee's comments and the delayed plan confirmation timeline, the Committee filed its Objection to the Motion and the Disclosure Statement as if no revisions had been made.

22.     The Committee has also served extensive discovery on the Debtors, the DIP Lenders / Prepetition Lenders, and certain third parties, including document requests, interrogatories, requests for admission, and deposition notices relating to the Debtors' sale, financing, and plan processes.  To date, the Debtors have made voluminous document productions to the Committee based on the Committee's refusal to narrow their required search parameters. Depositions of the Debtors' fact witnesses are currently scheduled to take place over the next month.

## **ARGUMENT**

**A.     The Committee's Confirmation Objections are Premature and Its Overly Litigious Posture is Not Justified By the Terms of the Plan or the Proposed Timeline**

23.     Despite a Combined Disclosure Statement and Plan that should be uncontroversial, the Committee has adopted a "take no prisoners" litigation style.

24.     The Plan here is unusual in the sense that the Debtors are **not seeking** blanket releases of the Debtors' current or former equity holders, directors, and officers.  The scope of the proposed releases under the Plan are extremely narrow – limited to the Independent Director (Robert Warshauer) appointed within the one month prior to the Petition Date and the DIP Lenders / Prepetition Lenders, and their respective representatives and affiliates solely in their capacities as such, who are funding, sponsoring, and otherwise supporting the Plan.  All remaining retained estate rights and claims against current and former insiders will be conveyed to the Trust as Trust Causes of Action under the Plan.

SF 4918-6036-7005.3 12854.00002

25. Contrary to the Committee's rhetoric, there is no strategy here to subvert bankruptcy priorities or confer an inappropriate benefit to the Debtors' lenders who are funding these cases with new money and access to cash collateral. Although the Debtors' sale process was extensive and robust, it did not yield any value close to that contemplated under the Plan. The Debtors are projected to owe nearly $130 million to the DIP Lenders and Prepetition Lenders and this figure is likely to only increase with further delays. No bid was received for all of the Debtors' assets. The highest aggregate bids for groups of assets, which bids had numerous flaws, contingencies, and risks associated with them, were significantly less than the total amount owed to the DIP Lenders and Prepetition Lenders. Hence, the Committee will have an uphill battle at confirmation in proving up its assertions that the Debtors' assets, despite the clear outcome of the marketing process, are worth substantially more than $130 million, even if the Debtors' tax attributes are taken into account. The Committee also has offered no credible evidence that the Debtors' sale process was anything other than fair, transparent, and comprehensive under the circumstances.

26. As noted earlier, the Committee is incorrect that all estate value under the Plan will go to the Debtors' lenders. The Plan provides for preference recoveries projected to be worth over $3.2 million which will constitute Trust Assets plus other Trust Causes of Action (including Insider Claims, D&O Claims, and other Avoidance Actions), Abuse Insurance Rights, and $1 million in Trust funding. Specifically, the Trust Funding Amount is allocated $500,000 to fund cash distributions to holders of General Unsecured Claims and $500,000 to fund the Trust's continuing efforts to maximize the valuable litigation and insurance rights vested in the Trust.

27. Putting aside the confirmation issues, the Committee's Objection is based on an outdated Combined Disclosure Statement and Plan that has already been superseded by an

8

amended version that incorporates many of the Committee's own comments.  The same applies to the Committee's objections to the plan solicitation timeline.  The Debtors have already agreed to extend this timeline through a confirmation hearing scheduled for May 27, 28, and 29, 2026.  The Debtors remain willing to make further reasonable edits to the latest Combined Disclosure Statement and Plan through the date of the hearing on the Motion scheduled for April 7, 2026.

28.     Further, the Debtors are amenable to the inclusion of a Committee letter as part of the solicitation packages, provided that the letter is accurate.  There is language in the form of letter attached to the Objection that is not true: "certain bids received indicated the Debtors' operating assets had significant value, **yet the holders of the DIP Claims and Prepetition Secured Claims cancelled the auction** in lieu of retaining the equity of the Debtors, likely because they value the estate (and the NOLs), greater than the values of the bids received."  (emphasis added).  The holders of DIP Claims and Prepetition Secured Claims did not cancel the auction.  The Debtors did so, in consultation with the Committee,  because there was no bid for substantially all of the assets and the partial asset bids received were not anywhere near the value to be realized by the estates under the Plan and there was not sufficient overlapping assets in the partial bids to hold partial asset auctions. The Committee also inaccurately states in its proposed letter that "the Plan includes multiple provisions that appear to be intended to facilitate the release of 'Avoidance Actions' and 'Insider Claims.'" In fact, there are no releases in the Plan of Avoidance Actions or Insider Claims (except Avoidance Actions Against Continuing Trade Creditors) and all such actions expressly constitute Trust Causes of Action.

**B.      The Combined Disclosure Statement and Plan,
        as Revised, Contains Adequate Information for Solicitation Purposes**

29.     Pursuant to section 1125 of the Bankruptcy Code, the proponent of a proposed chapter 11 plan must provide "adequate information" regarding that plan to holders of impaired

SF 4918-6036-7005.3 12854.00002

claims and interests entitled to vote on the plan.  Specifically, section 1125(a)(1) of the Bankruptcy

Code states, in relevant part:

> "Adequate information" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the Debtors and the condition of the Debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the Debtors, any successor to the Debtors, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan. . . . [I]n determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information.

11 U.S.C. § 1125(a)(1).

30.     Numerous courts acknowledge that determining what constitutes "adequate information" for the purpose of satisfying section 1125 of the Bankruptcy Code resides within the broad discretion of the court.  *Mabey* v. *Sw. Elec. Power Co. (In re Cajun Elec. Power Co-op., Inc.)*, 150 F.3d 503, 518 (5th Cir. 1998) ("The legislative history of § 1125 indicates that, in determining what constitutes 'adequate information' with respect to a particular disclosure statement . . . the kind and form of information are left essentially to the judicial discretion of the court and that the information required will necessarily be governed by the circumstances of the case."); *Texas Extrusion Corp. v. Lockheed Corp. (In re Texas Extrusion Corp.)*, 844 F.2d 1142, 1157 (5th Cir. 1988) ("The determination of what is adequate information is subjective and made on a case by case basis. This determination is largely within the discretion of the bankruptcy court."); *In re PC Liquidation Corp.*, 383 B.R. 856, 865 (E.D.N.Y. 2008) ("The standard for disclosure is, thus, flexible and what constitutes 'adequate information' in any particular situation is determined on a case-by-case basis, with the determination being largely within the discretion of the bankruptcy court.") (internal citation omitted); *In re Lisanti Foods, Inc.*, 329 B.R. 491, 507 (D.N.J. 2005).

SF 4918-6036-7005.3 12854.00002

31.     Here, the disclosures contain ample information to allow well-informed judgments on the Combined Disclosure Statement and Plan.  Specifically, the disclosures contain information with respect to, among other things: (a) the Debtors' business and prepetition capital structure; (b) the relevant events and circumstances preceding the chapter 11 cases; (c) the major events during the administration of the chapter 11 cases; (d) the key terms of the Combined Disclosure Statement and Plan; (e) estimates of the anticipated distributions to be received by holders of allowed claims; (f) the feasibility of the Combined Disclosure Statement and Plan; (g) a comparison to hypothetical liquidation under chapter 7 of the Bankruptcy Code; (h) risk factors that may affect the Plan; and (i) the existence of federal tax consequences of the Combined Disclosure Statement and Plan for which creditors should seek independent counsel.  *See In re U.S. Brass Corp.*, 194 B.R. 420, 424-25 (Bankr. E.D. Tex. 1996) (listing factors that courts may consider in determining the adequacy of information provided in a disclosure statement); *In re Scioto Valley Mortg. Co.*, 88 B.R. 168, 170-71 (Bankr. S.D. Ohio 1988) (same); *In re Metrocraft Pub. Serv., Inc.*, 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984) (same).

32.     As a highlight, the amended Combined Disclosure Statement and Plan contains (a) a highly detailed liquidation analysis at Exhibit C that shows the obvious benefits of the Plan to all classes of the Debtors' creditors compared to a hypothetical liquidation scenario and (b) specific business projections through fiscal year 2030 for the Reorganized Debtors at Exhibit D that meet the feasibility requirements for confirming the Plan under the Bankruptcy Code.

33.     Further, the amended Combined Disclosure Statement and Plan, which incorporated many of the Committee's prior comments, makes it clear that (a) Insider Claims, D&O Claims, and Avoidance Claims (except Avoidance Actions Against Continuing Trade Creditors) are fully preserved for the benefit of unsecured creditors and vested in the Trust as Trust

Causes of Action and (b) there are no limitations on the ability of the Trust to fully pursue any available insurance coverage, including D&O Insurance Coverage and, for the benefit of the Abuse Claims QSF, the Abuse Insurance Rights.

34.     The Committee also glosses over the detailed disclosures contained in the Disclosure Statement with respect to the Debtors' net operating loss tax attributes, as copied below. There is also detailed discussion that follows the text below regarding possible impacts to these tax attributes as a result of the consummation of the Plan.  It is not clear what else the Committee could believe is required on this point.

> As of December 31, 2024, the Debtors had a consolidated federal income tax net operating loss ("*NOL*") carryforward of approximately $724 million, in addition to substantial other tax attributes (including capitalized R&D expense).  The majority of the losses ($705.6 million) were incurred in 2020-2024:  2020 ($29.2 million); 2021 ($126.6 million); 2022 ($255.8 million); 2023 ($153.8 million); and 2024 ($140.2 million).  The Debtors expect that it generated an additional NOL and other tax attributes in the approximate amount of $60 million for the tax year ending December 31, 2025.  The Debtors' ability to utilize these NOLs may be limited under section 382 of the Tax Code, however the Debtors are not aware of any section 382 limitations which have been triggered due to an ownership change under section 382 for taxable years 2025 or prior.  While the Debtors file a consolidated group, these NOLs reside within specific legal entities. Consequently, limitations on inter-company tax sharing may prevent the group from utilizing the full value of these losses.

*See* Plan, Art. VII.B.

35.     Further, the Debtors disclose that for purposes of the Combined Disclosure Statement and Plan, they are assuming that  NOLs will be available to the Reorganized Debtors as a deduction to reduce future taxable income of the Debtors or Reorganized Debtors, as applicable, subject to the limitation set forth in section 172(a)(2) of the Tax Code.

SF 4918-6036-7005.3 12854.00002

**C.**     **The Claims Bar Date and the Voting Record Date Now Fall on the Same Date**

36.     The Committee's Objection takes issue with a proposed Voting Record Date (initially March 17, 2026) that occurs prior to the Claims Bar Date.

37.     This issue is moot because the current proposed Voting Record Date is April 2, 2026, which is the same date as the Claims Bar Date.  The Committee failed to take into account this date change to the proposed confirmation timeline in its Objection.

**D.**     **There is No Basis to Push the Plan Objection
Deadline Beyond the Voting and Tabulation Deadlines**

38.     The Committee seeks to push the Plan objection deadline beyond the proposed voting and tabulation deadlines.  There is no basis for that.  It is standard practice in this District and others that the Plan objection deadline and the voting deadline fall on the same day – in this case, the Debtors propose May 13, 2026.  The Debtors further propose that the tabulation affidavit is due by May 18, 2026 and the Debtors' confirmation brief and any other evidence in support of the Combined Disclosure Statement and Plan must be filed by May 22, 2026.

39.     If the Committee or any creditor has any issue with the tabulation affidavit, then they can cross examine the tabulating witness at the confirmation hearing and make their arguments at the hearing.

**E.**     **There are No Additional Estate Claims that Need to be Disclosed Now**

40.     The Committee implies that there are highly valuable Insider Claims that need to be disclosed in the Disclosure Statement.  The Debtors are not aware of any such claims.  However, if the Committee's investigation to date has yielded viable causes of action against current or former insiders or others that the Committee wishes to share, then the Committee should provide a description of such claims to the Debtors for inclusion in the Disclosure Statement.

SF 4918-6036-7005.3 12854.00002

41.     Any other estate claims or causes of action can be further disclosed in the Plan Supplement to come, but do not need to disclosed now.

**F.      The Opt-Out Release Mechanism Under the Plan is Entirely Appropriate**

42.     There is nothing controversial about the very limited  consensual third party release provisions under the Plan.  Only creditors who **affirmatively vote** in favor of the Plan and do not opt out of the releases thereunder are bound.  *See* Plan, Art. XVI.D.

43.     The Committee asserts that claimants must be provided with actual notice of the opportunity to opt out.  That is what is happening here as the opt-out release only applies to creditors who return a ballot.

44.     The Committee relies on this Court's decision in *In re Tehum Care Services, Inc.*, 672 B.R. 108, 113 (Bankr. S.D. Tex. 2025).  The Committee states in its Objection (at page 20): "In rejecting an attempt by a settlement party to enjoin certain tort claimants from litigating against affiliates and related parties, this Court ruled that tort claimants who had not received an opt-out release form were not bound by the third party releases provided for under the plan, expressly stating that, as known creditors, they were constitutionally entitled to actual notice."

45.     *Tehum* actually supports the outcome here.  Only creditors who affirmatively vote in favor of the Plan and have actual notice can grant a third party release thereunder and they are given the option to opt out of the release if they so desire without any detrimental impact to them under the Plan.

46.     Hence, the Committee's objection to the opt-out mechanism under the Plan, like the other objections addressed above, completely lacks merit.

SF 4918-6036-7005.3 12854.00002

**CONCLUSION**

47.     Based upon the foregoing, the Debtors urge the Court to (a) grant the Motion, (b) conditionally approve the Disclosure Statement (as amended) for immediate solicitation as part of the Combined Disclosure Statement and Plan, and (c) allow the Debtors to implement the extended plan solicitation timeline proposed herein.

Dated: April 6, 2026

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Maxim B. Litvak*

Maxim B. Litvak (SBT 24002482)
Theodore S. Heckel (SBT 24133488)
700 Louisiana Street, Suite 4500
Houston, TX 77002
Telephone: (713) 691-9385
Facsimile:  (713) 691-9407
mlitvak@pszjlaw.com
theckel@pszjlaw.com

-and-

Debra I. Grassgreen (admitted *pro hac vice*)
John W. Lucas (admitted *pro hac vice*)
One Sansome Street, 34th Floor, Suite 3430
San Francisco, CA 94104
Telephone: (415) 263-7000
Facsimile:  (415) 263-7010
dgrassgreen@pszjlaw.com
jlucas@pszjlaw.com

*Counsel to the Debtors and Debtors in Possession*

15

SF 4918-6036-7005.3 12854.00002

## CERTIFICATE OF SERVICE

I certify that on April 6, 2026, a true and correct copy of the foregoing document was caused to be served via the CM/ECF System for the United States Bankruptcy Court for the Southern District of Texas on parties registered to receive electronic service in the above cases.

*/s/ Maxim B. Litvak*
Maxim B. Litvak

1

# EXHIBIT A

## (Summary Chart)

## DISCLOSURE STATEMENT COMMITTEE OBJECTION RESPONSE CHART

| Basis of Objection | Response | Status |
|---|---|---|
| Definitions | As reflected in the blackline of the Plan filed with the Court, many of the definitions were revised, added, or deleted in response to Committee comments and other changes made by the Debtors. (*See* **Plan § II.B**) | n/a |
| The Debtors assert the Plan is a "straightforward 'absolute priority plan'" paying claims per Bankruptcy Code priorities, yet the Plan may enable holders of DIP Claims and Prepetition Secured Claims to recover potentially 150% or more of their claims while holders of unsecured claims—including victims of sexual abuse—receive less than 1% of the value of their claims, in violation of section 1129(b) of the Bankruptcy Code. (**Cmte. Obj. pp. 2-3, 9-11**) | This is a confirmation objection, not a disclosure deficiency, and therefore premature at the disclosure statement stage. There is no factual basis for the Committee's assertion that secured creditors will recover more than they are owed. Unsecured creditors are not receiving zero recovery: the Plan provides for preference recoveries projected at over $3.2 million, which will constitute Trust Assets plus other Trust Causes of Action (including Insider Claims, D&O Claims, and other Avoidance Actions), Abuse Insurance Rights, and $1 million in Trust funding (with $500,000 specifically allocated to fund cash distributions to holders of General Unsecured Claims and $500,000 to fund the Trust's continuing efforts to maximize the valuable litigation and insurance rights vested in the Trust). No third-party bidder offered to acquire the Debtors' tax attributes, and the highest bids received fell well short of the amount owed to the DIP/Prepetition Lenders. (*See* **Plan § III.G.4**) | Confirmation issue. No further disclosure necessary; the Committee's proposed letter sets forth its contrary position. |
| The Debtors' net operating losses may provide significant additional value to the secured creditors as new owners of the reorganized Debtors, yet this is not adequately disclosed.  (**Cmte. Obj. pp. 11-12**) | The amended Combined Disclosure Statement and Plan contains detailed NOL disclosure, including a year-by-year breakdown of the $724 million federal NOL carryforward and discussion of potential impacts on tax attributes from consummation of the Plan. (*See* **Plan § VII.B.**)<br><br>Further, the Debtors disclose that for purposes of this Combined Disclosure Statement and Plan, they are assuming that  NOLs will be available to the Reorganized Debtors as a deduction to reduce future taxable income subject to the limitation set forth in section 172(a)(2) of the Tax Code. (*Id.*) | Additional language proposed, Adequate disclosure provided. |

| Basis of Objection | Response | Status |
|---|---|---|
| The Disclosure Statement contains misleading statements regarding litigation claims. The Debtors assert the Plan "preserves, for the benefit of the Holders of General Unsecured Claims, certain Causes of Action that were not encumbered as of the Petition Date," but the Plan includes provisions intended to facilitate the release of "Avoidance Actions" and "Insider Claims" that were specifically carved out of the DIP Collateral under the final DIP Order entered February 27, 2026. (**Cmte. Obj. pp. 3, 10-11**) | The Plan does not release Avoidance Actions or Insider Claims. The Combined Disclosure Statement and Plan makes clear that Insider Claims, D&O Claims, and Avoidance Claims (except Avoidance Actions Against Continuing Trade Creditors, are fully preserved for the benefit of unsecured creditors and vested in the Trust as Trust Causes of Action. (***See* Plan § II.B.107, 198**) | Adequate disclosure provided. |
| The Disclosure Statement contains misleading statements regarding the Debtors' insurance policies and may improperly foreclose holders of sexual abuse claims from accessing available insurance coverage. The disclosures in Article III.F.2 of the Combined Plan imply that the Debtors' professional liability policy is the only policy responsive to the abuse claims, when other policies maintained by the Debtors may also be responsive to such claims. (**Cmte. Obj. pp. 3, 11**) | The Combined Disclosure Statement and Plan makes clear there are no limitations on the ability of the Trust to pursue any available insurance coverage. Section III. F. 2., referenced by the Committee, notes the existence of professional liability policies, coverage amounts and the potential for sublimits and the application of self-insured retentions or deductibles that may constitute prerequisites to such coverage. That section also notes the existence of other insurance policies, including those potentially providing coverage for cyber, automobile, workers compensation and property damage. (***See* Plan § III.F.2**)<br><br>Further, Article III.F.1-4 has been further revised to provide additional disclosure regarding the Debtors' Insurance Policies. The Debtors also added Exhibit D, which list the Debtors' current polices and a summary of their terms. (***See* Plan §§ III.F.1-4, VI.A.5, and Exhibit D**) | Additional language proposed; Adequate disclosure provided. |
| Sale Process | Additional disclosures regarding the results of the sale process. (***See* Plan § III.G.3-4**) | No further disclosure necessary. |
| Solicitation and Confirmation Timeline | The dates, milestones, and deadlines for the solicitation and confirmation process were revised as reflected in the chart in the Plan. (***See* Plan § IV.A-F**) | No further disclosure necessary. |
| Liquidation Analysis | The Liquidation Analysis was revised. (***See* Plan § IV.L and Exhibit C**) | No further disclosure necessary. |

| Basis of Objection | Response | Status |
|---|---|---|
| The Disclosure Statement provides inadequate disclosure regarding the Debtors' net operating losses (NOLs) of approximately $784 million. The Debtors have provided almost no information for creditors to assess whether and to what extent the NOLs will survive the reorganization, including whether any prepetition change in control may disqualify the NOLs from being transferred. This information is in the Debtors' exclusive possession and should be disclosed prior to solicitation. (**Cmte. Obj. pp. 3, 7, 11-12**) | The Committee glosses over detailed NOL disclosures already contained in the amended Disclosure Statement, which include: (a) a consolidated federal NOL carryforward of approximately $724 million as of December 31, 2024; (b) a year-by-year breakdown of losses from 2020-2024; (c) an estimated additional $60 million NOL for tax year 2025; and (d) detailed discussion of potential impacts on these tax attributes as a result of consummation of the Plan.  (***See* Plan § VII.B**)<br><br>Further, the Debtors disclose that for purposes of this Combined Disclosure Statement and Plan, they presume  NOLs will be available to the Reorganized Debtors as a deduction to reduce future taxable income of the Debtors or Reorganized Debtors, as applicable, subject to the limitation set forth in section 172(a)(2) of the Tax Code. (***Id.***) | Additional Language proposed; Adequate disclosure provided. |
| Tax Treatment Re Trust | Standard tax disclosures and treatments regarding the trust to be formed under the plan were added in response to the Committee's formulation of the trust related provisions. (***See* Plan § VII.E**) | No further disclosure necessary. |
| The proposed Voting Record Date of March 17, 2026, is improper. The Debtors seek to disenfranchise creditors who timely file proofs of claim by the April 2, 2026, Claims Bar Date but after the March 17 Voting Record Date. This creates a two-week window in which a claimant may timely file a proof of claim and yet be denied the right to vote on the Plan. The Voting Record Date should be set as April 2, 2026, the same date as the Claims Bar Date. (**Cmte. Obj. pp. 3-4, 12-13**) | This objection is moot. Debtors have already agreed to move the Voting Record Date to April 2, 2026, which is the same date as the Claims Bar Date. The Committee failed to account for this agreed date change in its Objection. (**Plan § I.A, IV.A, and IV.D**)<br><br>The Disclosure Statement Order and Solicitation Procedures have also been revised. | Moot; Voting Record Date Moved. |
| The proposed Plan Objection Deadline of April 24, 2026, is improper because it is the same date as the proposed Voting Deadline. Unsecured creditors need to know whether they are members of an impaired rejecting class—and thus entitled to the protections of section 1129(b)—before they are required to file objections to | There is no basis to push the Plan Objection Deadline beyond the Voting Deadline.  This is standard practice in the Southern District of Texas and other districts. The Debtors have already agreed to extend both the Voting Deadline and the Plan Objection Deadline to May 13, 2026. If the Committee has any issue with the voting tabulation, it may cross-examine the tabulating witness | Confirmation issue. No further disclosure necessary. |

3

| Basis of Objection | Response | Status |
|---|---|---|
| Plan confirmation. The Plan Objection Deadline must be set after the Voting Deadline and after the filing of the Tabulation Affidavit. (**Cmte. Obj. pp. 4, 13-15**) | at the Confirmation Hearing. The Tabulation Affidavit is proposed to be filed by May 18, 2026, with the Debtors' Confirmation Brief due May 22, 2026, and the Confirmation Hearing scheduled for May 27-29, 2026. | |
| Classification of Abuse Claims | In response to the Committee's request, the Debtor created a new Class 7 that includes only Abuse Claims. (*See* **Plan § IX.D.10**) | No further disclosure necessary. |
| The proposed Tabulation Affidavit deadline of April 29, 2026, is improper because it falls five days after the Plan Objection Deadline and only two days before the Confirmation Hearing, leaving insufficient time for parties to review voting results and raise concerns before the objection deadline or the hearing. The Tabulation Affidavit must be filed before the Plan Objection Deadline. (**Cmte. Obj. pp. 4, 15**) | There is no requirement that the Tabulation Affidavit be filed before the Plan Objection Deadline.  Any concerns regarding the tabulation affidavit can be addressed through cross-examination of the tabulating witness at the Confirmation Hearing. Under the Debtors' revised proposed timeline, the Tabulation Affidavit is now due May 18, 2026—five days after the May 13 Plan Objection Deadline, but nine days before the May 27, 2026 start of the Confirmation Hearing. (**Plan § I.A and IV.A**)<br><br>The Disclosure State Order and Solicitation Procedures have also been revised. | Revised Dates Proposed in light of the proposed Confirmation Timeline. |
| The Disclosure Statement provides inadequate disclosure regarding estate claims against insiders. The Debtors appear to be attempting to release insiders through: (a) failing to adequately describe claims against insiders; (b) improperly limiting Litigation Trust recoveries to available D&O insurance proceeds, such that if coverage is compromised the Litigation Trust would be barred from any recovery whatsoever; and (c) failing to assign to the Litigation Trust all causes of action carved out of the DIP Collateral—including Avoidance Actions Against Continuing Trade Creditors, Insider Claims (other than D&O Claims), and claims against the Prepetition Secured Parties.  (**Cmte. Obj. pp. 4-5, 15-19**) | Claims against insiders are not being released. The Combined Disclosure Statement and Plan confirms that Insider Claims, D&O Claims, and Avoidance Claims (other than Avoidance Actions Against Continuing Trade Creditors, who are members of the Committee's constituency) are fully preserved and vested in the Trust as Trust Causes of Action, and that there are no limitations on the Trust's ability to pursue available insurance coverage. The Debtors are not aware of any highly valuable Insider Claims that require further disclosure. The Committee is invited to share any specific claims its investigation has yielded so they can be included in the Disclosure Statement. Additional disclosures will also be provided in the Plan Supplement. The proposed releases are narrowly limited to the Independent Director (Robert Warshauer) and the DIP/Prepetition Lenders and their representatives, with all remaining insider claims conveyed to the Trust.  (*See* **Plan § II.B.107, 198**) | Adequate disclosure provided. |

4

| Basis of Objection | Response | Status |
|---|---|---|
| Establishment of Trust | In response to the Committee's request, the Debtors revised the Plan to include the Committee's formulation of the Trust. (***See*** **Plan § XI.E and F**) | |
| Debtors received informal comments from a group of landlords regarding the timing of filing contract and cure objection in response to the Debtors' proposed assumption or assumption and assignment of executory contracts and unexpired real property leases. | The deadlines for filing responses to the assumption and assumption and assignment process were revised. (***See*** **Plan §§ IV.A and XII.A-B**) | Moot; deadlines for assumption and assignment process revised. |
| The Disclosure Statement provides inadequate disclosure regarding the D&O Claims and the cap on Litigation Trust recoveries. The Plan purports to limit the Litigation Trust's ability to execute on any judgment against current or former directors and officers in excess of available D&O insurance proceeds. This effectively releases directors and officers from any liability beyond policy limits, and if coverage is compromised for any reason would bar any recovery whatsoever. The Disclosure Statement does not adequately disclose this risk to creditors, including victims of sexual abuse, who may otherwise have no recovery. (**Cmte. Obj. pp. 5, 16-17**) | There is no limitation in the Plan on the ability of the Trust to pursue any Trust Causes of Action or any rights against applicable insurance coverage.  Section XVII of the amended Combined Disclosure Statement and Plan, details the parameters of the Trust and its succession of all the Debtors' rights in all Trust Causes of Action and Abuse Insurance Rights without limitations on such rights.  (***See*** **Plan § XVII**) | Confirmation issue. No further disclosure necessary. |
| The proposed opt-out release mechanism set forth in Article XVI.D of the Combined Plan is inappropriate under the circumstances. The mechanism would deem any holder of a claim eligible to vote who votes to accept the Plan but does not affirmatively opt out to have released the Released Parties (including the DIP Lenders, DIP Agent, Prepetition Lenders, Prepetition Agent, and Independent Director) from all claims. The mechanism is improper because: (a) the compressed two-week solicitation timeline does not afford claimants—including holders of sexual abuse claims—adequate time to make an informed decision; (b) the proposed notices | The opt-out mechanism is appropriate  and issues regarding its propriety are for confirmation, rather than a disclosure deficiency. Under the Plan, only creditors who affirmatively vote in favor of the Plan and do not opt out are bound by the third-party releases—releases are consensual by definition. A creditor who votes in favor of the Plan necessarily has actual notice of the Plan, satisfying the notice requirement addressed in *In re Tehum Care Services*, *Inc.*, 672 B.R. 108, 113 (Bankr. S.D. Tex. 2025). The extended confirmation timeline—with voting now not closing until May 13, 2026—moots concerns about an inadequate review period. | No further disclosure necessary. |

| Basis of Objection | Response | Status |
|---|---|---|
| do not sufficiently explain the consequences of failing to opt out of the releases; and (c) the Debtors offer no demonstrable consideration to claimants in exchange for the releases. (Cmte. Obj. pp. 5-6, 19-21) | | |
| If the Court approves the Disclosure Statement and the proposed solicitation procedures, the Committee insists that the Debtors should be required to include the Committee Statement attached to the Objection. (**Cmte. Obj. p. 6**) | The Committee's statement in its proposed creditor letter that the Plan "includes multiple provisions that appear to be intended to facilitate the release of 'Avoidance Actions' and 'Insider Claims'" is factually inaccurate.<br><br>The Committee's statement in its proposed creditor letter that the Plan may enable the holders of DIP Claims and Prepetition Secured Claims (*i.e.*, the secured lenders) to recover significantly ***more*** than the value of their claims (*i.e.*, a distribution of potentially ***150% or more*** of the value of their claims), while holders of unsecured claims receive ***less than 1%*** of value of their claims. The foregoing is factually inaccurate. (***See*** **Plan, Exhibit C**)<br><br>Also, the Committee letter states: "certain bids received indicated the Debtors' operating assets had significant value, yet the holders of the DIP Claims and Prepetition Secured Claims cancelled the auction in lieu of retaining the equity of the Debtors, likely because they value the estate (and the NOLs), greater than the values of the bids received." This also is inaccurate: the holders of DIP Claims and Prepetition Secured Claims did not cancel the auction. The Debtors did so because the bids received were not anywhere near the value to be realized by the estates under the Plan. (***See*** **Plan § III.G.4**) | The Debtors have no objection to including the Committee's letter in the solicitation package where the Committee may oppose the Plan and encourage creditors to reject.<br><br>However, any letter must contain factually accurate information before any such letter could be included in solicitation packages. |
| | Exhibit D was added that lists the Debtors' insurance polices and summarizes the terms of each policy. | |
| | Exhibit E was added that contains projections for the Debtors through 2030. | |

6