**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| CARBON HEALTH TECHNOLOGIES, INC., et al., | Case No. 26-90305 (CML) |
| Debtors. [1] | (Jointly Administered) |

**DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN ORDER
(I) AUTHORIZING THE USE OF PROCEEDS OF DIRECTORS AND OFFICERS
LIABILITY INSURANCE POLICY FOR DEFENSE COSTS; (II) AUTHORIZING THE
DEBTORS TO ADVANCE AND INDEMNIFY DEFENSE COSTS AND EXPENSES TO
CERTAIN INDIVIDUALS, AND (III) GRANTING RELATED RELIEF**

> **Emergency relief has been requested. Relief is requested not later than April 9, 2026.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state the following in support of this emergency motion (this "Motion"):  by this Motion, pursuant to sections 105(a), 362(d) and 363(b) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), the Debtors request entry of an order substantially in the form attached hereto as **Exhibit "A"** (the "Proposed Order"), (i) authorizing, and, to the extent necessary, modifying the automatic stay to allow Ascot Specialty Insurance Company (the "Insurer") under one of the Debtors' directors and officers liability insurance policies, Ascot Specialty Insurance Company Policy No. MLPC2410001745-01 (the "D&O Policy"), to advance covered defense costs and out-of-pocket expenses, including, without limitation, the fees and

---

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/CarbonHealth. The location of Carbon Health Technologies, Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 500 East Remington Drive, Suite 20, Sunnyvale, CA 94087.

4921-4240-2708.14 12854.00002

costs of counsel (collectively, "Defense Costs"), on behalf of certain officers and directors of the Debtors (the "Individuals"), (ii) authorizing the Debtors to indemnify and advance Defense Costs on account of certain Individuals' postpetition indemnification claims as set forth herein, and (iii) granting related relief.

## JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). The Debtors confirm their consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The bases for the relief requested herein are sections 105(a), 362(d) and 363 of the Bankruptcy Code.

## BACKGROUND

**A.      Case Background**

3.      On February 2, 2026 (the "Petition Date"), the Debtors each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code. The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these chapter 11 cases.

4.      On February 16, 2026, the Office of the United States Trustee (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Committee"). *See* Docket No. 115.

5.      Additional information regarding the Debtors' business and capital structure and the circumstances leading to the commencement of these chapter 11 cases is set forth in the

4921-4240-2708.14 12854.00002                    2

*Declaration of Kerem Ozkay, in Support of the Debtors' Chapter 11 Petitions and First Day Relief* (the "First Day Declaration"),[2] which is incorporated by reference herein.

**B.      The D&O Policy**

6.      Carbon Health Technologies, Inc. ("CHTI"), has overall director and officer liability insurance coverage for potentially as much as $20 million, drawn from six separate director and officer insurance policies issued by six different surplus line insurers.   These policies are claims made policies (as opposed to occurrence policies) and expire on November 15, 2026. Accordingly, a claim must be made against an insured party before that expiration date and notice of a claim must be submitted to the insurers no later than sixty (60) days after that expiration date.   The primary policy, the D&O Policy, provides the company pay $175,000 per claim on any claim it tenders before the insurer must pay on account of such policy. The retention does not apply to Insuring Agreement A, as referenced below.

7.      Relevant to the relief requested herein, the D&O Policy's definitions include, in relevant part, that "Insured Person" means "a natural person who was, now is, or will become an Executive or Employee of the Named Insured or any Subsidiary in his or her capacity as such;" CHTI is the "Named Insured" and "Executive" includes "a natural person who is a duly elected or appointed . . . officer." Therefore, as of the date hereof, the Insured Persons include the Individuals.

8.      Under the D&O Policy, the D&O liability coverage part provides three separate coverages.   Insuring Agreement A provides for "Insured Person Non-Indemnifiable Loss Coverage: The Insurer will pay on behalf of an Insured Person all Non-Indemnifiable Loss

---

[2] A capitalized term used but not otherwise defined herein shall have the meaning ascribed to it in the First Day Declaration.

resulting from any Claim first made against the Insured Person during the Policy Period or the Extended Reporting Period (if applicable) ….."

9.      Insuring Agreement B provides for Insured Person Indemnifiable Loss Coverage. Unlike Insuring Agreement A, which pays the Insured Person for a covered loss, Insuring Agreement B pays the Named Insured or its subsidiary for indemnifying the Insured Person.  Not too dissimilar, Insuring Agreement C, Private Company Liability Coverage, pays the Named Insured or its subsidiary for losses resulting from a claim against the Named Insured or its subsidiary.

10.      The Priority of Payments section at Article VI of the D&O Policy addresses any conflict between these three Insuring Agreements, A, B and C.  And it prioritizes payments in that order, A, then B and then C.  *See* Ascot Policy art. VI, A-C.  This Motion seeks authorization with respect to Insuring Agreement A.

**C.      The California Attorney General's Investigation**

11.      On January 29, 2024, the California Department of Justice through the Office of the Attorney General (the "AG"), served an investigative subpoena for the production of documents and interrogatories on Carbon Health Technologies, Inc. ("CHTI"), to which the Debtors began responding on March 4, 2024.  The Subpoena and interrogatories seek documents and information related to CHTI's corporate structure and business, advertisements, billing and insurance, and consumer complaint processes.  The AG has been in the process of reviewing the Debtors' interrogatory responses and their production of over 5,500 documents.

12.      On February 18, 2026, the AG also stated its position that CHTI is in *current* noncompliance with various state laws, including prohibitions on the corporate practice of medicine and that a purchaser is not immunized against enforcement for post-sale violations.

CHTI is cooperating with the AG, and has expended, and may continue to expend financial and managerial resources in connection with responding to the subpoena and interrogatories and any related investigation or any other future requests for information.

13.     The Debtors have shared information regarding the AG's investigation on a confidential basis with the Committee.

**D.     Duty to Indemnify and Advance Defense Costs**

14.     Article V of the Amended and Restated Bylaws of Carbon Health Technologies, Inc., adopted May 31, 2022 (the "Bylaws"), contains various provisions for the indemnification of the company's officers, directors and third parties, including the obligation that

> the Company shall indemnify, to the fullest extent permitted by the DGCL, as now or hereinafter in effect, any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (a "Proceeding") (other than an action by or in the right of the Company) by reason of the fact that such person is or was a director or officer of the Company, or is or was a director or officer of the Company serving at the request of the Company as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise, against expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by such person in connection with such Proceeding if such person acted in good faith and in a manner such person reasonably believed to be in or not opposed to the best interests of the Company, and, with respect to any criminal action or proceeding, had no reasonable cause to believe such person's conduct was unlawful.

Bylaws § 5.1 at 11.[3]  The Bylaws also provide:

> Expenses (including attorneys' fees) actually and reasonably incurred by an officer or director of the Company in defending any Proceeding shall be paid by the Company in advance of the final disposition of such Proceeding upon receipt of a written request therefor (together with documentation reasonably evidencing such expenses) and an undertaking by or on behalf of the person to repay such amounts if it shall ultimately be determined that the person is not entitled to be indemnified under this Article V or the

---

[3] Article V of the Bylaws of MD Collab Inc. (CHTI's prior name), adopted June 5, 2015, contains analogous indemnification provisions.

DGCL. Such expenses (including attorneys' fees) actually and reasonably incurred by former directors and officers or other employees and agents of the Company or by persons serving at the request of the Company as directors, officers, employees or agents of another corporation, partnership, joint venture, trust or other enterprise may be so paid upon such terms and conditions, if any, as the Company deems appropriate.

*Id.* § 5.5 at 12.

15.     The Thirteenth Amended and Restated Certificate of Incorporation of Carbon Health Technologies, Inc., dated February 13, 2025 (the "Certificate of Incorporation"), states:

To the fullest extent permitted by applicable law, the Corporation is authorized to provide indemnification of (and advancement of expenses to) directors, officers and agents of the Corporation ( and any other persons to which the General Corporation Law permits the Corporation to provide indemnification) through Bylaw provisions, agreements with such agents or other persons, vote of stockholders or disinterested directors or otherwise, in excess of the indemnification and advancement otherwise permitted by Section 145 of the General Corporation Law.

Any amendment, repeal, modification or elimination of the foregoing provisions of this Article Eleventh shall not (a) adversely affect any right or protection of any director, officer or other agent of the Corporation existing at the time of such amendment, repeal, modification or elimination; or (b) increase the liability of any director, officer or agent of the Corporation with respect to any acts or omissions of such director, officer or agent occurring prior to such amendment, repeal, modification or elimination.

Certificate of Incorporation, Art. 11 at 23.

16.     Accordingly, the Debtors have a duty to indemnify the Individuals for costs and expenses incurred in connection with the investigation, and to advance such costs and expenses to the Individuals at this time, pursuant, and subject to the limitations, exclusions, and defenses in or applicable to (a) the Certificate of Incorporation , (b) the Bylaws (together with the Certificate of Incorporation, the "Organizational Documents"), and (c) any indemnification agreements or employment agreements that provide for indemnity with certain Individuals (collectively, the "Indemnification Agreements").     Although any

indemnification claim related to prepetition conduct would constitute a prepetition unsecured claim, certain Individuals may assert postpetition claims for indemnification in connection with the investigation, which relates to current, postpetition conduct.

17. Additionally, CHTI is incorporated in Delaware. Delaware law specifically authorizes the indemnification provisions described above

> against expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by the person in connection with such action, suit or proceeding if the person acted in good faith and in a manner the person reasonably believed to be in or not opposed to the best interests of the corporation, and, with respect to any criminal action or proceeding, had no reasonable cause to believe the person's conduct was unlawful.

*See* 8 Del.C. § 145(a).[4]

18. CHTI's principal place of business is in California, which has an indemnification statute even broader than the Delaware Code. California Labor Code Section 2802 provides:

> An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful.

19. Accordingly, in addition to the Debtors' obligations under the Organizational Documents and the Indemnification Agreements, the Individuals assert that the Debtors have a duty to indemnify the Individuals for costs and expenses incurred in connection with the investigation and advance such costs and expenses to the Individuals at this time.

---

[4] Delaware law specifies that "[a] corporation *shall* have power to indemnify" and *may* pay "[e]xpenses (including attorneys' fees) incurred by an officer or director of the corporation in defending any civil, criminal, administrative or investigative action, suit or proceeding." 8 Del. C. §§ 145(a), 145(e) (emphasis added).

**BASIS FOR RELIEF**

A.    **Relief from the Automatic Stay May Be Unnecessary for the Debtors to Utilize the Insurance Proceeds**

20.    Relief from the automatic stay may not be necessary to permit the Insurer to advance Defense Costs because the proceeds of the D&O Policy (the "Insurance Proceeds") may not be property of the Debtors' estates.

21.    Despite the broad definition of "property of the estate" contained in section 541(a) of the Bankruptcy Code, proceeds of liability insurance policies do not necessarily belong to the estate merely because the underlying insurance policies are themselves estate property. *See La. World Exposition, Inc. v. Fed. Ins. Co.*, 832 F.2d 1391, 1399 (5th Cir. 1987). For example, in *Louisiana World Exposition* and its progeny, the Fifth Circuit has consistently held that, "when a debtor corporation owns a liability policy that ***exclusively*** covers its directors and officers, . . . the proceeds of that D&O policy are ***not*** part of the debtor's bankruptcy estate when the debtor corporation owns a liability policy that exclusively covers its directors and officers." *Homsy v. Floyd (In re Vitek, Inc.)*, 51 F.3d 530, 535 (5th Cir. 1995) (emphasis in original) (citing *La. World Exposition*); *see also In re Edgeworth*, 993 F.2d 51, 55–56 (5th Cir. 1993) ("when the debtor has no legally cognizable claim to the insurance proceeds, those proceeds are not property of the estate"). Building on this concept, courts have concluded that when a D&O insurance policy provides payment priority to individual insureds, such proceeds are not part of the bankruptcy estate. *See In re Downey Fin. Corp.*, 428 B.R. 595, 605–06 (Bankr. D. Del. 2010) (citing *La. World Exposition*, 832 F.2d at 1399) (concluding that insurance proceeds were not part of a bankruptcy estate even when the applicable policy contained entity coverage, because the individual insureds had payment priority and because the likely need for indemnification coverage was low); *see also*

*MF Glob. Holdings*, 515 B.R. at 203 (finding that proceeds of a D&O insurance policy were not estate property when individual insureds had payment priority under the terms of the policy).

22.     Consequently, it is likely that the Insurance Proceeds related to Insuring Agreement A coverage are not property of the Debtors' estates and stay relief may not be necessary to allow the Insured Persons access to those Insurance Proceeds. The Insuring Agreement A coverage here provides coverage and benefits only to the Insured Persons, but not the Debtors themselves. Thus, under *Louisiana World Exposition* and its progeny, the Insuring Agreement A Insurance Proceeds fall outside of the Debtors' estates.  *See Vitek*, 51 F.3d at 535; *La. World Exposition*, 832 F.2d at 1399; *see also* 11 U.S.C. § 541(a).

23.     The Ascot Policy contains a "Priority of Payments" section (at Article VI) that provides that payments owed to the Insured Persons under the Insuring Agreement A coverage, take priority over all other payments.  This payment priority reflects the intent of the D&O Policy to protect and indemnify current and former directors, officers, and/or employees, like the Insured Persons, from costs associated with claims made against them.  "In essence and at its core, a D&O policy remains a safeguard of officer and director interest and not a vehicle for corporate protection." *See, e.g.*, *Adelphia Commc'ns Corp. v. Associated Elec. & Gas Ins. Svcs., Ltd. (In re Adelphia Commc'ns Corp.)*, 285 B.R. 580, 593 (Bankr. S.D.N.Y. 2002), *vac'd on other grounds*, (quoting *Ochs v. Lipson (In re First Cent. Fin. Corp.)*, 238 B.R. 9, 16 (Bankr. E.D.N.Y. 1999), *aff'd in unreported opinion*, 2000 U.S. Dist. LEXIS 22005, No. 99-VC-6730 (TCP) (E.D.N.Y. Mar. 2, 2000)). Consequently, some courts have concluded that, when an insurance policy contains such a payment priority, such policy proceeds are not property of the debtor's estates. *See, e.g.*, *Downey*, 428 B.R. at 605–06; *MF Glob. Holdings*, 515 B.R. at 203.

24.     Further, in light of the priority of payment and indemnity terms, the Debtors only have a contingent, residual interest in the proceeds of the D&O Policy, including proceeds related to Insuring Agreement B and C coverage. *See, e.g.*, *In re Laminate Kingdom LLC*, No. 07-10279-BKC-AJC, 2008 WL 1766637, at *3 (Bankr. S.D. Fla. Mar. 13, 2008) (finding, in light of a priority of payments provision in the applicable insurance policy, the estate's trustee had only a contingent, residual interest in policy proceeds). By its terms, the D&O Policy provides that if Claims are asserted against the Individuals and the Debtors, the Debtors would have access to the Insurance Proceeds only after the applicable losses incurred by the Individuals, including any Defense Costs, are satisfied. It thus follows that the Individuals should have access to the Insurance Proceeds pursuant to the terms of the coverages designed to protect them, notwithstanding the Debtors' chapter 11 filing. *See Downey*, 428 B.R. at 605–06.

25.     Given that the Debtors retain their rights to any Insuring Agreement B and C Insurance Proceeds following the payment of those losses incurred by Individuals, the Debtors' estates are not forfeiting any estate interest by virtue of the relief requested herein. In other words, the Debtors have the same rights to the Insuring Agreement B and C coverage that they would have had outside of bankruptcy—a contingent right subject to the priority of payment and indemnity provisions of the D&O Policy.

26.     Accordingly, the Debtors respectfully request that the Court allow the use of Insurance Proceeds from Insuring Agreement A of the D&O Policy for the advancement of Defense Costs in connection with the investigation.  The payment of Insurance Proceeds for Defense Costs in connection with the investigation shall be subject to a cap, up to an aggregate amount of $300,000 through May 29, 2026, subject to possible further increases upon request to and order of this Court.

27.     Commensurate with that request, the Debtors respectfully request the Court order that the payment of Defense Costs by the Debtors to any Individual shall terminate that Individual's access to Insurance Proceeds under Insuring Agreement A solely for purposes of the Defense Costs paid by the Debtors.  The Debtors shall then have the right to seek Insurance Proceeds under Insuring Agreement B for reimbursement for indemnity payments of such Defense Costs to that Individual.  Any Individual receiving Defense Costs payments from the Debtors shall be precluded from and shall waive any right to object to the Debtors' receiving Insurance Proceeds under Insuring Agreement B with regard to such Defense Costs, including invoking the Priority Payments provision in the Policy, until such time as the Debtors have been reimbursed for, or have ceased seeking, reimbursement for Defense Costs paid to that Individual pursuant to this Order.

**B.      Even if Certain Insurance Proceeds Are Estate Property, Cause Exists to Modify the Automatic Stay**

28.     Even if the Court determines certain proceeds of the D&O Policy are property of the Debtors' estates, sufficient cause exists to modify the automatic stay to (a) permit payments under the D&O Policy on behalf of the Individuals in connection with any claims, present or future, covered by the terms of the D&O Policy and (b) allow for the potential use of proceeds from the D&O Policy for Defense Costs, in accordance with the terms described herein and in the Proposed Order.

29.     Section 362(d) of the Bankruptcy Code allows for the modification of the automatic stay and states in pertinent part as follows:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
>   (1) for cause, including the lack of adequate protection of an interest in property of such party in interest . . .

11 U.S.C. § 362(d).

30.     To the extent that any portion of the Insurance Proceeds constitutes property of the Debtors' estates, the Court should modify the automatic stay to allow the Insurers to advance the Defense Costs to the Insured Persons, as provided for in the D&O Policy. Courts have recognized that the failure to lift the automatic stay to permit an insured director or officer to access insurance proceeds for purposes of defense costs and indemnification could substantially harm the insureds. *See, e.g.*, *In re Allied Digital Techs. Corp.*, 306 B.R. 505, 514 (D. Del. 2004) ("Without funding, the Individual Defendants will be prevented from conducting a meaningful defense . . . and may suffer substantial and irreparable harm."); *In re Beach First Nat'l Bancshares, Inc.*, 451 B.R. 406, 411 (Bankr. D.S.C. 2011) (finding cause to lift automatic stay to allow insured persons to access policy proceeds even though debtor was covered by same policy). In those cases, courts have determined that the potential harm constitutes sufficient "cause" to lift or modify the automatic stay. *See, e.g.*, *In re MF Glob. Holdings, Ltd.*, 469 B.R. 177, 193 (Bankr. S.D.N.Y. 2012) (lifting the automatic stay to permit insurer to advance defense costs to debtors' current and former directors, officers, and employees because of the irreparable harm such directors, officers, and employees would suffer from paying their defense costs out-of-pocket); *In re CyberMedica, Inc.*, 280 B.R. 12, 17–18 (Bankr. D. Mass. 2002) (lifting automatic stay to permit directors and officers to access defense payments because directors and officers would suffer irreparable harm if prevented from exercising their rights to defense payments under the applicable insurance policy); *see also Laminate Kingdom*, 2008 WL 1766637, at *4 (finding that the proceeds were not estate property but noting that, in the alternative, "numerous courts have granted relief from the automatic stay to permit the advancement of Defense Costs to a debtor's directors and officers – even though the insurance policies also provided direct coverage to debtor."). Additionally, courts

have granted similar relief in other chapter 11 cases. *See, e.g., In re Core Scientific, Inc.*, No. 22-90341 (DRJ) (Bankr. S.D. Tex. May 18, 2023); *In re CBL & Associates Properties, Inc.*, No. 20-35226 (DRJ) (Bankr. S.D. Tex. Dec. 21, 2020) (Docket No. 345); *In re Valeritas Holdings Inc.*, No. 20-10290 (JKS) (Bankr. D. Del. Nov. 22, 2020) (Docket No. 578); *In re Sizmek, Inc.*, No. 19-10971 (SMB) (Bankr. S.D.N.Y. May. 15, 2019) (Docket No. 171).

31.     The circumstances are no different here. If forced to pay for Defense Costs out-of-pocket, the Individuals would suffer irreparable harm. Accordingly, even to the extent that the Insurance Proceeds at issue here are property of the Debtors' estates, the automatic stay in Bankruptcy Code section 362 should be modified to permit advancement of Defense Costs and indemnity for the benefit of the Individuals.

**C.     The Bankruptcy Code Permits the Estates to Satisfy Defense Costs**

32.     To the extent the Individuals are unable to timely receive payment of their Defense Costs from available Insurance Proceeds, after commercially reasonable efforts which efforts shall not include prolonged disputes or litigation with the Insurers or retention of coverage counsel, the Debtors request authority to reimburse the Individuals for, and indemnify them from, actual Defense Costs incurred or to be incurred by the Individuals in connection with the investigation as it relates to postpetition conduct, with a budget of $300,000 through May 29, 2026, and advance such Defense Costs on the terms and conditions as set forth more fully herein, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code.

33.     To the extent that this Court were to find that the transactions contemplated herein are outside of the ordinary course of business, section 363(b) of the Bankruptcy Code permits a debtor to use property of the estate "other than in the ordinary course of business," after notice and a hearing.  11 U.S.C. § 363(b)(l).  Additionally, section 105(a) of the

Bankruptcy Code allows this Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

34.     This Court should approve the Motion if the Debtors demonstrate a sound business justification for indemnifying the Individuals. *In re Cont'l Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986) (citing *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983) ("The rule we adopt requires that a judge determining a § 363(b) application expressly find from the evidence presented before him . . . a good business reason to grant an application")).

35.     Once a debtor articulates a valid business justification, "[t]he business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company.'" In re Integrated Res., Inc., 147 B.R. 650,656 (S.D.N.Y. 1992)(quoting Smith v. Van Gorkom, 488 A.2d. 858 (Del. 1985)). The business judgment rule has vitality in chapter 11 cases and shields a debtor's management from judicial second-guessing. *See In re 9 Houston LLC*, 578 B.R. 600, 619 (Bankr. S.D. Tex. 2017) ("On the issue of the exercise of a debtor-in-possession's business decision and judgment, a debtor-in-possession's business decision 'should be approved by the court unless it is shown to be so manifestly unreasonable that it could not be based upon sound business judgment, but only on bad faith, or whim or caprice.'") (citation omitted); *see also* In re Johns-Manville Corp., 60 B.R.612, 615-16 (Bankr. S.D.N.Y. 1986) ("the Code favors the continued operation of a business by a debtor and a presumption of reasonableness attaches to a debtor's management decisions"). Here, there plainly is a business justification for the Debtors' decision.

36.     The Individuals have been actively involved in these chapter 11 cases—focused on the ongoing sale and plan process as well as efficiently and effectively operating the

business with an aim to achieve a successful restructuring. To avoid distractions and concerns regarding whether the Defense Costs will be paid, it is within the sound exercise of the Debtors' business judgment to advance such costs and expenses to the Individuals on account of their postpetition administrative expenses.

37.     Additionally, the obligations under Delaware and California statutes could not be clearer.  Delaware law empowered CHTI to adopt charter and by-law provisions granting broad indemnification rights. *See* 8 Del. C. 145(a) ("A corporation *shall have* the power to indemnify any person ... ") (emphasis added).  But California law goes even further and gives the employee the unfettered right to indemnification - "[a]n employer *shall indemnify* his or her employee." Cal. Labor C.  § 2802(a) (emphasis added).

38.     The Debtors' obligations to comply with its contractual and statutory obligations do not terminate merely because the Debtors filed for bankruptcy.  *See*  *In re New Orleans Paddlewheels, Inc.*, 350 B.R. 667, 691 (Bankr. E.D. La. 2006)("[T]he general rules of corporate governance remain the purview of state law in a bankruptcy proceeding."); 28 U.S.C. 959(b) ("[A] … debtor in possession, shall manage and operate the property in his possession … according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof.").

39.     In addition, courts have recognized claims filed by a debtor's management or former management for indemnification obligations. *See, e.g., In re With Purpose, Inc.*, 654 B.R. 715, 728 (Bankr. N.D. Tex. 2023) (former CEO and director of debtor's proof of claim "asserting the indemnification rights in the corporate bylaws" has conceivable effect on case giving court subject matter jurisdiction over indemnification claims); *In re H&M Oil & Gas, LLC*, 514 B.R. 790, 837-38 (Bankr. N.D. Tex. 2014) (former manager "is entitled to judgment

in his favor on his counterclaim for indemnification … which shall be allowed as a prepetition general unsecured claim in H&M's bankruptcy case."); *In re Noram Resources, Inc.*, 2011 WL 5357895,*12 (Bankr. S.D. Tex. 2011)("The Directors'' indemnification rights should properly be raised as claims against the bankruptcy estates …").

40.     Pursuant to the Organizational Documents, the Indemnification Agreements and applicable non-bankruptcy law, and subject to the limitations, exclusions, and defenses arising from the foregoing, the Individuals assert or will assert administrative expenses against the Debtors for the costs and expenses incurred by the Individuals in connection with the investigation in light of the investigation's focus on current, ongoing activities and operations.

41.     The Individuals have an immediate need for assurance that their Defense Costs will be provided for in connection with the ongoing post-petition investigation since they already have been compelled to retain separate counsel.  The Individuals have advised that they intend to file claims (including potential administrative expenses) against the Debtors' estates for any Defense Costs incurred in connection with the investigation.  Accordingly, the Debtors submit that advancing Defense Costs to the Individuals at this time is appropriate under the circumstances of these cases *in the event that insurance under the D&O Policy is not available to do so and as set forth herein*.

42.     Commensurate with that request, the Debtors respectfully request the Court order that the payment of Defense Costs by the Debtors to any Individual shall terminate that Individual's access to Insurance Proceeds under Insuring Agreement A solely for purposes of the Defense Costs paid by the Debtors.  The Debtors shall then have the right to seek Insurance Proceeds under Insuring Agreement B for reimbursement for indemnity payments of such Defense Costs to that Individual.  Any Individual receiving Defense Costs payments from the Debtors shall

4921-4240-2708.14 12854.00002                           16

be precluded from and shall waive any right to object to the Debtors' receiving Insurance Proceeds under Insuring Agreement B with regard to such Defense Costs, including invoking the Priority Payments provision in the Policy, until such time as the Debtors have been reimbursed for, or have ceased seeking, reimbursement for Defense Costs paid to that Individual pursuant to this Order.

**D.     Fee Reporting**

43.     To ensure that any expenses paid on the Individuals' behalves for legal fees are reasonable and appropriate, the Debtors propose that any law firm[5] or other professional retained by the Individuals provide a monthly report of fees paid to such law firm or other professional retained by the Individuals to the Debtors, the Committee, the DIP Agent and U.S. Trustee.   The Defense Costs paid through this process shall not otherwise be subject to separate approval by the Court or to the United States Trustee Guidelines.

44.     The payment of defense costs shall be made directly to the law firm(s) or other professionals retained by the Individuals.  Additionally, the Debtors' authorization to reimburse all actual and necessary Defense Costs incurred (or to be incurred) in connection with the investigation by the Individuals shall be subject to a cap, up to an aggregate amount of $300,000 through May 29, 2026, subject to possible further increases upon request to and order of this Court. All parties' rights are reserved with respect to any request for further increases in the budget or aggregate amount.

---

[5] After withdrawal of prior counsel due to objections to this Motion raised by the Committee, the Debtor understands that certain Individuals have now retained Wilson Sonsini Goodrich & Rosati as their counsel in connection with the investigation and related matters.  Any other law firm(s) retained by the Individuals would be subject to the same terms of reimbursement of Defense Costs set forth herein. Wilson Sonsini Goodrich & Rosati has also been retained as corporate counsel to the Debtors in unrelated matters and will file a supplemental declaration in connection with such retention with the Court as soon as practicable.

**EMERGENCY CONSIDERATION**

45.     The Debtors request emergency consideration of the Motion because

(a)  the Individuals need to become actively involved immediately in responding to the investigation on their own behalf;

(b) they are critical participants in assisting the Debtors in engaging with the AG;

(c) the relief requested helps limit the Debtors' exposure to the AG's claims and on-going potential indemnification claims arising from the investigation; and

(d) the Debtor provided the Committee with a draft of this Motion on March 10, 2026, soon after the Individuals retained prior counsel.  Despite multiple meetings between the parties since that date, the Committee consistently voiced its opposition to the relief requested in the Motion. Consequently, prior counsel withdrew from its contemplated representation of the Individuals and the Individuals were compelled to retain new counsel. However, current counsel's budget is *less than half* of the budget for the prior counsel. The Debtors consulted with the Committee prior to filing this Motion as it applies to current counsel and is optimistic that the reduced costs address the Committee's concerns.

**RESERVATION OF RIGHTS**

46.     Nothing contained herein is intended or shall be construed as (a) an admission as to the validity of any claim against the Debtors or the Individuals; (b) a waiver of the Debtors' or any appropriate party-in-interest's rights to dispute the amount of, basis for, or validity of any claim or administrative expense against, or Defense Cost sought to be reimbursed by, the Debtors; (c) a waiver of any claims or causes of action which may exist against any creditor or interest holder; or (d) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between the Debtors and any third party under section 365 of the Bankruptcy

Code. Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or administrative expense or a waiver of the Debtors' rights to dispute such claim or administrative expense subsequently.  Moreover, the Debtors expressly reserve all of their rights to seek to recover any of the costs paid herein to the Individuals from any insurance policy(s) to which the Debtors may be a party or a beneficiary or under which the Debtors may have any rights of recovery.

## WAIVER OF BANKRUPTCY RULES 6004(A) AND 6004(H)

47.     The Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## NOTICE

48.     Notice of the hearing on the relief requested in this Motion will be provided by the Debtors in accordance and compliance with Bankruptcy Rules 4001 and 9014, as well as the Local Rules, and is sufficient under the circumstances. The Debtors will provide notice to parties-in-interest, including on the Debtors' Master Service List.

## NO PRIOR REQUEST

49.     No prior motion for the relief requested herein has been made to this Court or any other court.

## CONCLUSION

**WHEREFORE**, the Debtors request that the Court enter the Order granting the relief requested herein and such other and further relief as may be just and proper under the circumstances.

4921-4240-2708.14 12854.00002

19

Dated: April 7, 2026

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Theodore S. Heckel*
Maxim B. Litvak (SBT 24002482)
Theodore S. Heckel (SBT 24133488)
700 Louisiana Street, Suite 4500
Houston, TX 77002
Telephone: (713) 691-9385
Facsimile:  (713) 691-9407
mlitvak@pszjlaw.com
theckel@pszjlaw.com

-and-

Debra I. Grassgreen (admitted *pro hac vice*)
John W. Lucas (admitted *pro hac vice*)
One Sansome Street, 34th Floor, Suite 3430
San Francisco, CA 94104
Telephone: (415) 263-7000
Facsimile:  (415) 263-7010
dgrassgreen@pszjlaw.com
jlucas@pszjlaw.com

*Counsel to the Debtors and Debtors in Possession*

## CERTIFICATE OF SERVICE

I certify that on April 7, 2026, a true and correct copy of the foregoing document was caused to be served via the CM/ECF System for the United States Bankruptcy Court for the Southern District of Texas on parties registered to receive electronic service in the above cases.

*/s/ Theodore S. Heckel*
Theodore S. Heckel