**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| CARBON HEALTH TECHNOLOGIES, INC., *et al.*, | Case No. 26-90306 (CML) |
| Debtors. [1] | (Jointly Administered) |

**DEBTORS' MOTION FOR AN ORDER PURSUANT TO BANKRUPTCY RULE 9019
AND 11 U.S.C. §§ 362 AND 363 APPROVING SETTLEMENT WITH THE STATE OF
CALIFORNIA AND AUTHORIZING ACTIONS CONSISTENT THEREWITH**

> **If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within twenty-one days from the date this motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within twenty-one days from the date this motion was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on May 20, 2026, at 10:00 am (prevailing Central Time) in Courtroom 402, 4th floor, 515 Rusk, Houston, TX 77002. You may participate in the hearing either in person or by an audio and video connection**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at 832-917-1510. Once connected, you will be asked to enter the conference room number. Judge Lopez's conference room number is 590153. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Lopez's home page. The meeting code is "JudgeLopez". Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Lopez's home page. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

---

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/CarbonHealth. The location of Carbon Health Technologies, Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 500 East Remington Drive, Suite 20, Sunnyvale, CA 94087.

Carbon Health Technologies, Inc. ("CHTI"), and the other above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby submit this motion (the "Motion") for entry of an order, in the proposed form attached hereto as **Exhibit "A"**, pursuant to sections 105(a), 362 and 363 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving the *Stipulation for Entry of Final Judgment and Permanent Injunction*, attached hereto as **Exhibit "B"** (the "Stipulation") and, together with the *Final Judgment and Permanent Injunction* (the "Injunction") attached hereto as **Exhibit "C"** (the "Settlement")[2] by and among the California Department of Justice through the Office of the Attorney General (the "AG"),  on the one hand, and the Carbon Health Entities[3] and the Debtors' former CEO, Eren Bali ("Bali" and, together with the Carbon Health Entities, the "Defendants")), on the other hand. The Debtors are filing concurrently herewith the *Declaration of Robert Warshauer in Support of Debtors' Motion for an Order Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. §§ 362 and 363 Approving Settlement with the State of California and Authorizing Actions Consistent Therewith* (the "Declaration"). In support of this Motion, the Debtors respectfully state as follows:[2]

## PRELIMINARY STATEMENT

1.      The Debtors are in the process of completing a balance sheet restructuring of, and obtaining a substantial capital investment in, their business through these chapter 11 cases.  To that

---

[2]  Capitalized terms used herein, but not defined, have the meanings ascribed to them in the Stipulation or this Motion, as applicable.

[3]  The Carbon Health Entities are:  Carbon Health Technologies, Inc., Carbon Health Alpha Medical Group of California, P.C., Caron Health Alpha Primary Care of California, P.C., Carbon Health East Bay Medical Group, P.C., Carbon Health East Bay Primary Care, P.C., Carbon Health Medical Group of California, P.C., Carbon Health Medical Group of Florida, P.A., Carbon Health Medical Group of Sunnyvale, Inc., Carbon Health Primary Care of California, P.C., Carbon Health South Bay Medical Group, P.C., Carbon Health South Bay Primary Care, P.C., Djavaherian Medical Practice, PLLC, and Treat Medical, Inc., which are the Debtors that are organized under the laws of the State of California or have an operational presence in California that are subject to the claims alleged in the Investigation.

end, the Debtors have proposed a Plan of Reorganization (the "Plan"), confirmation of which will be considered by this Court on May 27-29, 2026. *See* [Docket Nos. 431, 440, and 468]. A critical step in that process is the resolution of a pre-bankruptcy investigation of the Carbon Health Entities' business practices and the threatened enforcement action by the AG concerning alleged violations of California state law (the "Investigation").

2. Prior to the Petition Date, on January 29, 2024, the AG served an investigative subpoena for the production of documents and interrogatories on CHTI, seeking documents and information related to CHTI's corporate structure and business, advertisements, billing and insurance, and consumer complaint processes. On February 18, 2026, the AG's office presented to the Debtors its position that CHTI was in non-compliance with various California state laws, including prohibitions on the corporate practice of medicine, arising from California's Unfair Competition Law ("UCL"), Cal. Business & Professionals Code ("B&P Code") § 17200, and False Advertising Law ("FAL"), B&P Code § 17500.

3. While the Defendants deny any wrongdoing or liability, litigating the AG's claims would be very costly, time-consuming, and value-destructive to the Debtors' bankruptcy estates and creditor recoveries, and there is no guarantee that the Defendants would prevail in any such litigation in a timely fashion. Accordingly, the Defendants immediately reengaged with the AG because any reorganization of the Debtors' operations could not be completed without resolving the AG's claims raised in the Investigation.

4. Following arm's-length and good faith negotiations between the AG and the Defendants, the Parties reached the Settlement, memorialized in the Stipulation that provides for, among other things: (a) a permanent injunction with respect to the alleged practices at issue in the

Investigation; and (b) the allowance of claims arising from the civil penalties imposed by the AG against the Debtors in the form of a general unsecured claim and administrative expense.

5.      The Debtors believe that the Settlement is overwhelmingly in the best interests of the Debtors' estates and their stakeholders, avoids the significant costs, risks, delays, and uncertainties of potential protracted litigation with the AG, facilitates the Debtors' impending reorganization (in the event the Court determines that the Debtors' Plan meets the requirements for confirmation) and results from a sound exercise of the Debtors' business judgment. The Motion should therefore be granted.

## RELEVANT BACKGROUND

### A.      Filing of the Chapter 11 Cases

6.      On February 3, 2026 (the "Petition Date"), the Debtors commenced voluntary bankruptcy cases (the "Chapter 11 Cases") under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court").  The Debtors continue to manage their assets and affairs as debtors in possession.

7.      In light of ongoing liquidity constraints, the Debtors commenced the Chapter 11 Cases to implement an operational and balance sheet restructuring while preserving continuity of patient care.

8.      The Official Committee of Unsecured Creditors (the "Committee") was appointed by the U.S. Trustee in the Chapter 11 Cases on February 16, 2026.

9.      Additional information regarding the Debtors' business and capital structure and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Kerem Ozkay, in Support of the Debtors' Chapter 11 Petitions and First Day Relief*, which is incorporated by reference herein.

4900-1658-4098.10 12854.00002                                  4

**B.** **The AG's Investigation**

10. On January 29, 2024, the AG served an investigative subpoena for the production of documents and interrogatories on CHTI, to which the Debtors began responding on March 4, 2024. The subpoena and interrogatories sought documents and information related to CHTI's corporate structure and business, advertisements, billing and insurance, and consumer complaint processes. The AG reviewed the Debtors' interrogatory responses and their production of over 5,500 documents.

11. On February 18, 2026, the AG presented the status of its Investigation to the Debtors and stated its position that CHTI is in *current* non-compliance with various state laws, including prohibitions on the corporate practice of medicine. The AG also alleged certain historical concerns, including:

- From 2021-2023, the Debtors advertised that it accepted "all major insurance," which the AG contends was false because it states multiple major health plans were not covered.

- Prior to the Petition Date, the Debtors engaged in allegedly improper billing in connection with contract negotiations with a payor.

- The Debtors' credit card authorization was on the second page of the Debtors' intake form, and the Debtors did not obtain patients' express consent prior to charging them in accordance with the credit card authorization.

- The Debtors, in certain instances, billed patients prior to billing their insurance.

12. The Debtors disagree with the historical concerns raised by the AG and indicated as much when the Debtors subsequently responded in a March 13, 2026, presentation. Specifically, the Debtors noted that:

- The advertising and marketing materials did appear to be accurate, particularly related to COVID messaging, and were not misleading to a reasonable consumer.

- There was nothing improper or improper related to the payor negotiations and, in fact, Carbon is now in network with that payor.

- The Debtors' credit card authorization and billings appear to have been done in accordance with state law and, in any event, the Debtors were already updating their authorizations.

Nonetheless, the Debtors noted the historical concerns and sought to resolve the matter expeditiously.

13. According to the AG, the Debtors' conduct exposes it to civil penalties, including up to $2500 per UCL and FAL violation (with an additional $2500 per violation for elderly, disabled or veteran victims under the UCL), calculable per incident, per facility, per day, and/or per patient.

14. The Debtors have shared information regarding the AG's investigation on a confidential basis with the Committee.

15. Both prior to and after commencement of the Chapter 11 Cases, CHTI cooperated with the AG and responded to the subpoena and interrogatories and the related Investigation regarding the AG's allegations of non-compliance with various California state laws. CHTI has expended, and, in the absence of the Settlement, would have been obligated to continue to expend financial and managerial resources in connection with responding to the subpoena and interrogatories and any related Investigation or any other future requests for information.

**C.** **The Parties' Entry into the Settlement**

16. After good faith and arm's-length negotiations, the AG and the Defendants entered into the Settlement to fully and finally resolve the AG's claims against the Defendants. The principal terms of the Settlement are as follows:[4]

---

[4] In the event of any inconsistency between this Motion and the Stipulation or Injunction, the terms of the Stipulation or Injunction, as applicable, shall control.

(a) *Permanent Injunction.* The Injunction permanently enjoins the Defendants from: (i) engaging in the corporate practice of medicine as prohibited by B&P Code sections 2052(a) and 146(a); (ii) using unfair consumer contracts as prohibited by California Civil Code section 1770(a)(19) and in breach of the covenant of good faith and fair dealing; (iii) improperly billing patients and insurance companies in violation of applicable California and federal laws; and (iv) making or causing to be made false or misleading statements or any other false advertising as prohibited by B&P Code section 17500.

(b) *Civil Penalty.* A civil penalty shall be imposed in the aggregate amount of $4,500,000.00, divided as follows: (i) an allowed general unsecured claim of $4,025,000.00 (the "General Unsecured Claim"); (ii) an administrative expense of $375,000.00, allowed pursuant to section 503(b) of the Bankruptcy Code (the "Administrative Claim"), to be paid by the Debtors within three (3) business days upon entry of the Bankruptcy Court's order approving the Settlement and approval of the Stipulation and Injunction by the state court; and (iii) the amount of $100,000.00 against Bali.

(c) *Release.* The Settlement shall have a *res judicata* effect and shall constitute a full, final, and binding settlement and release, to the fullest extent permitted by law, of any claims that (i) the AG has or could have brought against the Defendants arising out of or in connection with the factual allegations set forth in the letter from the AG dated, February 10, 2026; or (ii) are addressed by the terms of the Stipulation.

(d) *Reservation of Medicaid Claims*. The Settlement does not resolve, estop, adjudicate, preclude, or bar any claims for civil, criminal, or administrative liability to the State's Medicaid Program.

(e) *State Court Action.* To facilitate implementation of the Settlement, the AG will file a complaint in the Superior Court for the State of California, that outlines various causes of action against the Defendants under B&P Code sections 17200, *et seq.*, and 17500, *et seq.*, which alleges, among other things, that the Carbon Health Entities are: (i) engaging in the corporate practice of medicine in violation of B&P Code sections 2052 and 146; (ii) using unfair consumer contracts in violation of Civil Code section 1770(a)(19) and in breach of the covenant of good faith and fair dealing; (iii) improperly billing patients and insurance companies in violation of California and federal laws; and (iv) making false or misleading statements and engaging in false advertising in violation of B&P Code section 17500. The Stipulation will be filed contemporaneously with the complaint.

17.     The Settlement will become effective and enforceable upon, among other things,

(a) entry of an order of the Bankruptcy Court granting this Motion and approving the Settlement,

(b) entry of an order approving the Stipulation and of the Injunction by the State Court, and (c) the effective date of a Plan in these Chapter 11 Cases.

## RELIEF REQUESTED

18.     Pursuant to Bankruptcy Rule 9019 and sections 105(a), 362(d), and 363(b) of the Bankruptcy Code, the Debtors request entry of an order substantially in the form attached hereto as **Exhibit "A"**, granting the Motion, approving the Settlement (including the Stipulation and the Injunction), and authorizing the Debtors and their agents to take all actions necessary or desirable to implement the Settlement, including the payment of the Administrative Claim in accordance with the terms of the Stipulation, subject to entry of an order approving the Plan and the effective date thereunder.

## BASIS FOR RELIEF REQUESTED

19.     Bankruptcy Rule 9019 provides that "[o]n … motion and after notice and a hearing, the court may approve a compromise or settlement."  Fed. R. Bankr. P. 9019(a). Settlements are favored in the bankruptcy context to "minimize litigation and expedite the administration of a bankruptcy estate." *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996). The approval of a settlement is within the "sound discretion" of the Court. *In re Jackson Brewing Co.*, 624 F.2d 599, 603 (5th Cir. 1980). Pursuant to Bankruptcy Rule 9019(a), the Court may approve a settlement if it is fair, reasonable, and in the best interests of the estate.  *See, e.g., Official Comm. of Unsecured Creditors v. Moeller (In re Age Ref., Inc.)*, 801 F.3d 530, 540 (5th Cir. 2015).

20.     Ultimately, approval of a compromise is within the sound discretion of the bankruptcy court. *United States v. AWECO, Inc. (In re AWECO, Inc.)*, 725 F.2d 293, 297–98 (5th Cir. 1984). A settlement should be approved unless it falls below the lowest point in the range of reasonableness. *See, e.g., In re Jackson Brewing Co.*, 624 F.2d at 602; *Cook v. Waldron*, 2006 U.S.

Dist. LEXIS 31411, at *10 (S.D. Tex. April 18, 2006). Generally, the role of the Bankruptcy Court is not to decide the issues in dispute when evaluating a settlement. *Watts v. Williams*, 154 B.R. 56, 59–60 (S.D. Tex. 1993). Instead, the Court should determine whether the settlement as a whole is fair and equitable. *See, e.g., Age Refin. Inc.*, 801 F.3d at 540; *Protective Comm. for Indep. S'holder of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968). Settlements are considered a "normal part of the process of reorganization" and an "oftentimes desirable and wise method[] of bringing to a close proceedings otherwise lengthy, complicated and costly." *Rivercity v Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 602 (5th Cir. 1980).

21. In evaluating a proposed settlement, courts in the Fifth Circuit consider (a) the probability of success in the litigation, with due consideration for the uncertainty in fact and law, (b) the complexity and likely duration of the litigation and any attendant expense, inconvenience and delay, and (c) all other factors bearing on the wisdom of the compromise. *Official Comm. of Unsecured Creditors v. Cajun Elec. Power Coop. (In re Cajun Elec. Power Coop.)*, 119 F.3d 349, 356 (5th Cir. 1997). The "other factors" include "the best interests of the creditors, 'with proper deference to their reasonable views,'" as well as "'the extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion.'" *Id.* (quoting *Conn. Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortg. Corp.)*, 68 F.3d 914, 917-18 (5th Cir. 1995)).

22. Also, section 363 of the Bankruptcy Code provides, in relevant part, "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Courts in the Fifth Circuit have granted a debtor's request to use property of the estate outside of the ordinary course of business pursuant to section 363(b) of the Bankruptcy Code upon a finding that such use is supported by sound business reasons. *See, e.g., In re BNP Petroleum Corp.*, 642 F. App'x 429, 435 (5th Cir. 2016) (granting

debtor's request to enter settlement agreement because the agreement "provided the estate with immediate cash and also eliminated the underlying controversy"); *Inst. Creditors of Cont'l Air Lines, Inc. v. Cont'l Air Lines (In re Cont'l Air Lines)*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business."); *see also In re Terrace Gardens Park P'ship*, 96 B.R. 707, 714 (Bankr. W.D. Tex. 1989) ("[T]here must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business.") (quoting *In re Cont'l Air Lines, Inc.*, 780 F.2d at 1226)).

23.     The business judgment standard under section 363(b) is "flexible and encourages discretion." *ASARCO, Inc. v. Elliott Mgmt. (In re ASARCO, L.L.C.)*, 650 F.3d 593, 601 (5th Cir. 2011); *see also In re Crutcher Res. Corp.*, 72 B.R. 628, 631 (Bankr. N.D. Tex. 1987) ("A Bankruptcy Judge has considerable discretion in approving a § 363(b) sale of property of the estate other than in the ordinary course of business, but the movant must articulate some business justification for the sale (other than the appeasement of major creditors) . . . ."). Generally, courts "give great deference to the substance of the directors' decision and will not invalidate the decision, will not examine its reasonableness, and will not substitute its views for those of the board if the latter's decision can be attributed to any rational business purpose." *In re Glob. Crossing Ltd.*, 295 B.R. 726, 744 (Bankr. S.D.N.Y. 2003) (quoting *Paramount Commc'ns Inc. v. QVC Network Inc. (In re Paramount Commc'ns Inc. S'holders' Litig.)*, 637 A.2d 34, 45 n.17 (Del.1994)).

24.     As discussed herein, the factors to be considered pursuant to Bankruptcy Rule 9019 and Bankruptcy Code section 363(b) strongly weigh in favor of approving the Settlement.

## A.      Probability of Success in Litigation

25.      The AG has asserted that the Defendants violated various California state laws, including the prohibition on the corporate practice of medicine under B&P Code sections 2052 and 146, unfair consumer contracting practices under Civil Code section 1770(a)(19), and improper billing and false advertising under the B&P Code.  Although the Defendants deny any wrongdoing or liability, litigating the AG's claims would be very costly, time-consuming, and value-destructive to these estates and creditor recoveries, and there is no guarantee that the Defendants would prevail in any such litigation in a timely fashion.  In particular, the AG has broad investigative and enforcement authority under the California Unfair Competition Law, and any litigation would likely involve complex factual and legal questions requiring extensive discovery and expert analysis.

26.      The economic terms of the Settlement reflect the litigation risks and uncertainties facing the Defendants. The total civil penalty of $4,500,000.00, the majority of which is bifurcated as to the Debtors between an allowed General Unsecured Claim ($4,025,000.00) and the Administrative Claim ($375,000.00),[5] represents a reasonable and negotiated resolution of the AG's claims.  Absent the Settlement, the AG could impose substantial civil penalties, including up to $2500 per UCL and FAL violation (with an additional $2500 per violation for elderly, disabled or veteran victims under the UCL), calculable per incident, per facility, per day, and/or per patient. Given the breadth of the AG's allegations and the potential for significant civil penalties under the B&P Code, the Settlement provides a fixed, certain, and final resolution of these claims.

## B.      Complexity, Expense, and Delay of the Litigation Involved

27.      The substantial expense, inconvenience, time, and delay that would ensue if the Court rejects the Settlement is a significant factor supporting approval. The AG's Investigation has

---

[5]  $100,000.00 of the civil penalty shall be assessed against Bali.

been ongoing since January 2024 and involves complex regulatory and legal issues spanning the corporate practice of medicine, consumer protection, billing practices, and false advertising. Any litigation among the Parties would be time-consuming, expensive, and disruptive, with the AG potentially asserting the full range of claims identified by the AG and seeking significant civil penalties and injunctive relief in State Court while these bankruptcy proceedings are also pending. Plus, section 1129(a)(3) of the Bankruptcy Code requires the Debtors to demonstrate that the Plan is not by any means forbidden by law. Thus,  any litigation would unduly burden the Debtors' administration of these Chapter 11 Cases and potentially delay their proposed conclusion through the Plan, confirmation of which is to be considered by the Court in a little over one month's time.

28.     By considering the likelihood of success on the Parties' respective claims and defenses and the costs related to litigation thereof, the Settlement comes to a fair, beneficial, and expedited resolution for the Debtors' estates.

**C.      The Paramount Interest of Creditors**

29.     Approval of the Settlement is further justified by the paramount interest of the Debtors' creditors. By resolving the AG's claims through a fixed civil penalty of $4,500,000.00 (of which $4,025,000.00 constitutes the General Unsecured Claim, $375,000.00 constitutes the Administrative Claim and $100,000.00 is to be paid by Bali), the Settlement provides certainty with respect to the AG's claims against the Debtors' estates, avoids additional administrative costs and the distraction of protracted litigation with a state enforcement authority, and permits the Debtors to focus on maximizing value for all stakeholders.

**D.      Entering Into the Settlement Is A Sound Exercise of the Debtors' Business Judgment**

30.     Based on all of the foregoing, the Settlement also reflects an exercise of the Debtors' sound business judgment. The Settlement minimizes and fixes the AG's claims against

4900-1658-4098.10 12854.00002

12

the Debtors' estates and avoids potentially significant litigation costs, delays, and uncertainties.[6] The thoroughness and sophistication of the arm's-length negotiations between the AG and the Defendants represents a careful consideration of the terms of the Settlement. As explained by one bankruptcy court, business judgment "is a deferential standard." *In re Claar Cellars LLC*, 2020 Bankr. LEXIS 682, at *9 (Bankr. E.D. Wash. Mar. 13, 2020); *see also In re Mickey Thompson Entm't Grp., Inc.*, 292 B.R. 415, 420 (BAP 9th Cir. 2003). The Settlement readily passes this deferential standard and all other applicable standards.

### E.    Complexity, Expense, and Delay of the Litigation Involved

31.    Section 362(d)(1) of the Bankruptcy Code provides that "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay . . . such as by terminating, annulling, modifying, or conditioning such stay . . . for cause." 11 U.S.C. § 362(d)(1). The Bankruptcy Code does not define the term "cause," and "whether cause exists must be determined on a case by case basis." *In re Xenon Anesthesia of Tex., PLLC*, 510 B.R. 106, 112 (Bankr. S.D. Tex. 2014). "The Bankruptcy Code gives the court broad discretion to provide appropriate relief from the automatic stay as may fit the facts of a particular case." *In re Kao*, No. 15-31193-H3-13,

---

[6] The State of California, through its offices and agencies, routinely enters into settlements regarding claims and other matters which are regularly approved by bankruptcy courts. *See, e.g., In re Boisson Inc.*, Case No. 2:24-bk-12614-NB (Bankr. C.D. Cal. Nov. 13, 2025), Docket No. 275 (approving stipulation resolving California Department of Resources Recycling and Recovery's administrative expense, priority claim and other matters); *In re RML, LLC*, Case No. 22-10784 (Bankr. S.D. N.Y. Oct. 20, 2025), Docket No. 1352 (approving stipulation with California Franchise Tax Board resulting in withdrawal and satisfaction of claims and settlement payment); *In re Jacob Gerritt Weststeyn, et al.*, Case No. 23-21899 (Bankr. E.D. Cal. Sep. 24, 2023), Docket No. 113 (approving stipulation with California Franchise Tax Board avoiding lien, returning funds and allowing unsecured claim); *In re HVI Cat Canyon, Inc.*, Case No. 9:19-bk-11573-MB (Bankr. C.D. Cal. Aug. 10, 2020), Docket No. 1187 (approving settlement with California Department of Conservation, Geologic Management Division, reducing unsecured penalty claim); *In re PG&E Corporation, et al.*, Case No. 19-30088-DM (Bankr. N.D. Cal. May 18, 2020), Docket No. 7399 (approving settlements of governmental agency fire claims, including Cal OES, Cal FIRE, Cal DDS, Cal Parks, Caltrans, Cal Cet, etc.); *In re Philmar Care, LLC*, Case No. 6:18-bk-20286-WJ (Bankr. C.D. Cal. Nov. 22, 2019), Docket No. 338 (approving settlement with California Department of Public Health regarding allowed amount of civil penalties assessed against debtor); *In re NEC Holdings Corp.*, Case No. 10-11890-PJW (Bankr. D. Del. June 9, 2011), Docket No. 1421 (approving settlement agreement between debtors and California State Board of Equalization providing for payment of allowed, agreed-upon amounts of claims and releases of any other claims).

2015 WL 9412744, at *2 (S.D. Tex. Dec. 21, 2015) (citing *In re Atl. Ambulance Assocs., Inc.*, 166 B.R. 613 (Bankr. E.D. Va. 1994)).

32.      To the extent necessary to implement the Settlement, including the filing of the complaint, Stipulation and Injunction, the Debtors seek modification of the automatic stay provisions of section 362 of the Bankruptcy Code to allow the Parties to take action in accordance with the terms of the Settlement. Cause exists to modify the stay as needed because, absent the Debtors' agreeing to such modification to implement the components of the transaction, the AG would not have agreed to the terms of the Settlement. Accordingly, the Debtors believe that modification of the automatic stay is reasonable under the circumstances and in the best interest of their estates and all parties in interest in these Chapter 11 Cases.

**F.      Section 105(a) Is An Additional Basis for Granting the Requested Relief**

33.      Under section 105(a) of the Bankruptcy Code, "[t]he court may issue any order … that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a). Approval of the Settlement is necessary to further the Debtors' impending reorganization, assure the Debtors' compliance with various legal requirements governing their business structure and operations, and maximize the value of the estates for all of the Debtors' stakeholders. Accordingly, the Debtors believe that application of section 105(a) of the Bankruptcy Code forms a basis to grant the relief requested.

**NO PRIOR REQUEST**

34.      No previous request for the relief sought herein has been made to this Court or any other court.

## NOTICE

35.     Notice of this Motion has been given to: (a) the AG; (b) counsel to the Committee; (c) the U.S. Trustee; and (d) those parties on the Debtors' Master Service List.  The Debtors respectfully submit that such notice is sufficient and proper under the circumstances and that no other or further notice is required.

**WHEREFORE**, the Debtors respectfully request entry of an order, substantially in the form attached hereto, granting the Motion and the relief requested herein, and granting them such other and further relief as the Court deems just and proper.

Dated: April 25, 2026

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Maxim B. Litvak*

Maxim B. Litvak (SBT 24002482)
Theodore S. Heckel (SBT 24133488)
700 Louisiana Street, Suite 4500
Houston, TX 77002
Telephone: (713) 691-9385
Facsimile:  (713) 691-9407
mlitvak@pszjlaw.com
theckel@pszjlaw.com

-and-

Debra I. Grassgreen (admitted *pro hac vice*)
John W. Lucas (admitted *pro hac vice*)
One Sansome Street, 34th Floor, Suite 3430
San Francisco, CA 94104
Telephone: (415) 263-7000
Facsimile:  (415) 263-7010
dgrassgreen@pszjlaw.com
jlucas@pszjlaw.com

*Counsel to the Debtors and Debtors in Possession*

4900-1658-4098.10 12854.00002

15

## Certificate of Service

I certify that on April 25, 2026, I caused a copy of the foregoing document to be served via the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/ Maxim B. Litvak

Maxim B. Litvak