**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |
|---|---|
| In re | Chapter 11 |
| CARBON HEALTH TECHNOLOGIES, INC., *et al.*, | Case No.:  26-90306 (CML) |
| Debtors.[1] | (Jointly Administered) |

**ORDER GRANTING FINAL APPROVAL OF COMBINED DISCLOSURE**
**STATEMENT AND CONFIRMING THIRD AMENDED PLAN OF REORGANIZATION**
**OF CARBON HEALTH TECHNOLOGIES, INC. AND ITS AFFILIATED DEBTORS**
(Related Docket No. 681)

The above-captioned debtors and debtors in possession (the "***Debtors***") or the Court, as applicable, having:

a)  commenced on February 2, 2026 (the "***Petition Date***") their respective chapter 11 cases (the "***Chapter 11 Cases***") by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***");

b)  operated their businesses and managed their properties during the Chapter 11 Cases as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

c)  entered, on February 27, 2026, *Order (I) Setting Bar Dates for Filing Proofs of Claim, Including Requests for Payment Under Section 503(b)(9), (II) Establishing Amended Schedules Bar Date and Rejection Damages Bar Date, (III) Approving the Form and Manner for Filing Proofs of Claim* [Docket No. 193] ("***Bar Date Order***");

d)  filed, on March 3, 2026, *Notice of Deadlines for the Filing of (I) Proofs of Claim, Including Requests for Payment Pursuant to Section 503(b)(9) of the Bankruptcy Code* [Docket No. 266] ("***Notice of Claims Bar Date***");

e)  filed, on March 4, 2026, the *Combined Disclosure Statement and Plan of Reorganization of Carbon Health Technologies, Inc. and Its Affiliated Debtors* [Docket No. 274];

---

[1]  A complete list of each of the Debtors in these chapter 11 cases is annexed as ***Exhibit A*** to the Plan. The Debtors' address is 500 East Remington Drive, Suite 20, Sunnyvale, CA 9408.

f)    filed, on March 4, 2026, the *Debtors' Emergency Motion for Entry of an Order (I) Granting Interim Approval of the Adequacy of Disclosures in the Combined Disclosure Statement and Plan; (II) Scheduling a Combined Confirmation Hearing and Setting Deadlines Related Thereto; (III) Approving Solicitation Packages and Procedures; (IV) Approving the Forms of Ballots; and (V) Granting Related Relief* [Docket No. 275];

g)    filed, on March 5, 2026, the *Affidavit Re: of Alain B. Francoeur Regarding Carbon Health Technologies, Inc. and Debtor Affiliates Combined Disclosure Statement and Plan of Reorganization, Debtors Emergency Motion for Entry of an Order (I) Granting Interim Approval of the Adequacy of Disclosures in the Combined Disclosure Statement and Plan; (II) Scheduling a Combined Confirmation Hearing and Setting Deadlines Related Thereto; (III) Approving Solicitation Packages and Procedures; (IV) Approving the Forms of Ballots; and (V) Granting Related Relief* [Docket No. 281] ("***Disclosure Statement Hearing Affidavit***");

h)    filed, on March 12, 2026, the *Affidavit Re: (Publication) of Gregory Winter Regarding Notice of Deadlines for the Filing of (I) Proofs of Claim, Including Requests for Payment Pursuant to Section 503(b)(9) of the Bankruptcy Code* [Docket No. 309] (the "***Affidavit of Service of Publication of Notice of Claims Bar Date***");

i)    filed, on March 25, 2026, the *Affidavit Re: of Jessica G. Berman Regarding Bar Date Notice, Proof of Claim Form, and Abbreviated Bar Date Notice* [Docket No. 361] ("***Affidavit of Service of Notice of Claims Bar Date***");

j)    filed, on April 7, 2026, the *Combined Disclosure Statement and Amended Plan of Reorganization of Carbon Health Technologies, Inc. and Its Affiliated Debtors* [Docket No. 431];

k)    entered, on April 8, 2026, the *Order (I) Granting Interim Approval of the Adequacy of Disclosures in the Combined Disclosure Statement and Plan; (II) Scheduling a Combined Confirmation Hearing and Setting Deadlines Related Thereto; (III) Approving Solicitation Packages and Procedures; (IV) Approving the Forms of Ballots; and (V) Granting Related Relief* [Docket No. 440] (the "***Disclosure Statement Order***");

l)    filed, on April 15, 2026, the *Notice of (I) Interim Approval of Disclosures; (II) Hearing to Consider Confirmation of the Plan; (III) Deadline for Filing Objections to Confirmation of the Plan and Final Approval of the Disclosures; (IV) Deadline for Voting on the Plan; and (V) Bar Date for Filing Administrative Claims Established by the Plan* [Docket No. 468] (the "***Combined Hearing Notice***"), which contained notice of the date and time set for the Confirmation Hearing to consider confirmation of the Plan and final approval of the Disclosure Statement (the "***Combined Hearing***") and the deadline for filing objections to Confirmation or final approval of Disclosure Statement;

2

m)      filed, on April 22, 2026, the *Affidavit Re: Certificate of Publication of Justin Lewenson Regarding Notice of (I) Interim Approval of Disclosures; (II) Hearing to Consider Confirmation of the Plan; (III) Deadline for Filing Objections to Confirmation of the Plan and Final Approval of the Disclosures; (IV) Deadline for Voting on the Plan; and (V) Bar Date for Filing Administrative Claims Established by the Plan* [Docket No. 498] ("***Publication of Combined Hearing Notice***");

n)      filed, on May 6, 2026, the *Notice of Filing Plan Supplement for the Combined Disclosure Statement and Amended Plan of Reorganization of Carbon Health Technologies, Inc. and Its Affiliated Debtors* [Docket No. 587] (the "***Initial Plan Supplement***");

o)      filed, on May 7, 2026, the *Affidavit Re: of Stanislav Kesler Regarding Solicitation Materials* [Docket No. 601] (the "***Affidavit Re Solicitation***" and together with the Disclosure Statement Hearing Affidavit, the "***Affidavits of Service***");

p)      filed, on May 15, 2026, the *Combined Disclosure Statement and Second Amended Plan of Reorganization of Carbon Health Technologies, Inc. and Its Affiliated Debtors* [Docket No. 635];

q)      filed, on May 22, 2026, the *Notice of Filing of Amended Notice of Filing Plan Supplement for the Combined Disclosure Statement and Amended Plan of Reorganization of Carbon Health Technologies, Inc. and Its Affiliated Debtors* [Docket No. 666] (the "***Amended Plan Supplement***");

r)      filed, on May 27, 2026, the *Notice of Filing of Second Amended Notice of Filing Plan Supplement for the Combined Disclosure Statement and Third Amended Plan of Reorganization of Carbon Health Technologies, Inc. and Its Affiliated Debtors* [Docket No. 682] (the "***Second Amended Plan Supplement***");

s)      filed, on May 27, 2026, the *Combined Disclosure Statement and Third Amended Plan of Reorganization of Carbon Health Technologies, Inc. and Its Affiliated Debtors* [Docket No. 681];

t)      filed, on May 27, 2026, the *Declaration of Craig E. Johnson of Kroll Restructuring Administration LLC Regarding the Solicitation and Tabulation of Ballots Cast on the Combined Disclosure Statement and Amended Plan of Reorganization of Carbon Health Technologies, Inc. and Its Affiliated Debtors* [Docket No. 683] (the "***Voting Declaration***");

u)      filed, on May 27, 2026, the *Declaration of Kerem Ozkay in Support of Final Approval and Confirmation of Plan of Reorganization of Carbon Health Technologies, Inc., and Its Affiliated Debtors* [Docket No. 684] (the "***Ozkay Declaration***");

v)      filed, on May 27, 2026, the *Declaration of Sujal Mandavia in Support of Final Approval and Confirmation of Plan of Reorganization of Carbon Health Technologies, Inc., and Its Affiliated Debtors* [Docket No. 685] (the "***Mandavia***

3

4907-7308-4584.9

***Declaration***" and collectively with the Ozkay Declaration and the Voting Declaration, the "***Declarations***"); and

w)      filed, on May 27, 2026, the *Memorandum of Law in Support of Final Approval of Disclosure Statement and Confirmation of Plan of Reorganization of Carbon Health Technologies, Inc. and Its Affiliated Debtors* [Docket No. 686] (the "***Confirmation Brief***");

x)      filed, on May 29, 2026, the *Notice of Filing of Third Amended Notice of Filing Plan Supplement for the Combined Disclosure Statement and Third Amended Plan of Reorganization of Carbon Health Technologies, Inc. and Its Affiliated Debtors* [Docket No. 697] (the "***Third Amended Plan Supplement***" and, together with the Initial Plan Supplement, Amended Plan Supplement, Second Amended Plan Supplement, as applicable and as may have been superseded, the "***Plan Supplement***");

The Court having:

a)      reviewed the Plan, the Disclosure Statement, the Plan Supplement, the Confirmation Brief, the Declarations, the Confirmation Hearing Notice, the Affidavits of Service, and all filed pleadings filed with respect to final approval of the Disclosure Statement and Confirmation of the Plan, including all objections, statements, and reservations of rights with respect thereto, if any, filed on the docket in these Chapter 11 Cases or voiced at the Combined Hearing;

b)      held the Combined Hearing on May 29, 2026, at 9:00 a.m. Central Time;

c)      considered the statements and arguments made by counsel in respect of Confirmation of the Plan and the objections thereto; and

d)      considered all oral representations, Affidavits of Services, testimony, documents, filing, and other evidence regarding Confirmation of the Plan and the objections thereto.

**NOW, THEREFORE**, it appearing to the Court that notice of the Combined Hearing and the opportunity for any party in interest to object to the final approval of the Disclosure Statement and Confirmation of the Plan have been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby, and the legal and factual bases set forth in the documents filed in support of Confirmation of the Plan and other evidence presented at the Combined Hearing establish just cause for the relief granted herein; and after due

4

deliberation thereon and good cause appearing therefor, it hereby is DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A.    Findings and Conclusions. The determinations, findings, judgments, decrees, and orders set forth and incorporated in this order (this "**_Confirmation Order_**") constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. Each finding of fact set forth or incorporated herein, to the extent it is or may be deemed a conclusion of law, shall also constitute a conclusion of law. Each conclusion of law set forth or incorporated herein, to the extent it is or may be deemed a finding of fact, shall also constitute a finding of fact.

B.    Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157(b)(2) and 1334(a)). The Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. § 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The Court has jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed. Final approval of the Disclosure Statement and Confirmation of the Plan are core proceedings within the meaning of 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.

C.    Chapter 11 Petitions. On the Petition Date, each Debtor commenced a voluntary case under chapter 11 of the Bankruptcy Code. Since the Petition Date, the Debtors have operated their businesses and managed their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these Chapter 11 Cases. On February 16, 2026, the Office of the United States Trustee for the Southern District of Texas (the "**_U.S. Trustee_**") appointed an Official Committee of Unsecured Creditors

4907-7308-4584.9

(the "***Committee***") [Docket No. 115]. In accordance with the *Order (I) Directing Joint Administration of Related Chapter 11 Cases and (II) Granting Related Relief* [Docket No. 17], the Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).

D. <u>Judicial Notice</u>. The Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the Clerk of the Court, including, without limitation, all pleadings and other documents filed and orders entered thereon. The Court also takes judicial notice of all evidence proffered or adduced and all arguments made at the hearings held before the Court during the pendency of the Chapter 11 Cases.

E. <u>Eligibility for Relief</u>. The Debtors are proper debtors under section 109 of the Bankruptcy Code and the Debtors are proper proponents of the Plan under section 1121(a) of the Bankruptcy Code.

F. <u>Solicitation and Notice</u>. On April 8, 2026, the Court entered the Disclosure Statement Order, which, among other things, established May 13, 2026,[2] as the deadline for voting to accept or reject the Plan (the "***Voting Deadline***"), and as the deadline for objecting to the Plan and final approval of the Disclosure Statement (the "***Objection Deadline***"). The solicitation of votes on the Plan complied with the solicitation procedures in the Solicitation Procedures Order and the direction of the Court at the April 7, 2026 hearing in these Chapter 11 Cases, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases and was in compliance with all applicable provisions of the Bankruptcy Code and the Bankruptcy Rules. As evidenced by the Affidavits of Service, all parties required to be given notice of the Combined Hearing (including the deadline for filing and serving objections to final approval of the Disclosure

---

[2] The Voting Deadline was extended to May 23, 2026 as provided in [Docket No. 636] and also extended by Debtors' counsel with respect to a few ballots that were submitted during or shortly after the Memorial Day weekend.

4907-7308-4584.9

Statement and Confirmation) have been provided due, proper, timely, and adequate notice and have had an opportunity to appear and be heard with respect thereto. No other or further notice is required.

G.     Disclosure Statement. The Disclosure Statement provides Holders of Claims entitled to vote on the Plan with adequate information to make an informed decision as to whether to vote to accept or reject the Plan in accordance with section 1125 of the Bankruptcy Code. The Disclosure Statement also provides Holders of Claims and other entities with sufficient notice of the injunction, exculpation, and Debtor/Estate Release provisions contained in Section XVI of the Plan, in satisfaction of the requirements of Bankruptcy Rule 3016(c).

H.     Solicitation. There are eleven classes of Claims or Interests under the Plan. Each Class is broken into separate sub-classes, as applicable, to represent the Class of Claims or Interests with respect to the applicable Debtor. Pursuant to Article X.D of the Plan, if any Class of Claims or Interest is entitled to vote but does not then such Classes of Claims or Interests, as the case may be, are presumed to accept the Plan. On May 27, 2026, the Debtors filed the Voting Declaration with the Court, certifying the method and results of the Ballots tabulated for Class 1(b) (John Muir Secured Claims), Class 1(c) (Prime Health Secured Claims), Class 1(d) (Stanford Health Secured Claims), Class 4 (Prepetition Secured Claims), Class 6 (Commercial GUC Claims), and Class 7 (Abuse Claims) (together, the "***Voting Classes***"). The procedures used to tabulate Ballots were fair and conducted in accordance with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Complex Case Procedures, and all other applicable rules, laws, and regulations. As set forth in the Combined Disclosure Statement and Plan, only Holders of Claims in the Voting Classes were eligible to vote on the Plan. Under section 1126(f) of the Bankruptcy Code, Holders of Claims in Class 1(a) (Other Secured Claims), Class 2 (Priority Non-

4907-7308-4584.9

Tax Claims), and Class 3 (Priority Tax Claims) are unimpaired and are conclusively presumed to have accepted the Plan. Holders of Class 8 (Subordinated Claims), Class 9 (Equity Interests), Class 10 (Intercompany Claims), and Class 11 (Intercompany Interests) are Impaired and conclusively presumed to have rejected the Plan.

I.      Voting. As evidenced by the Voting Declaration, (i) Classes 1(b)-1 and 2 (John Muir Secured Claims) (including the sub-classes that are presumed to accept the Plan for failure to vote), Class 1(c)-1-6 (Prime Health Secured Claims) (including the sub-classes that are presumed to accept the Plan for failure to vote), Class 1(d)-1 and 2 (Stanford Secured Claims) (including the sub-classes that are presumed to accept the Plan for failure to vote), Class 4 (Prepetition Secured Claims) (including the sub-classes that are presumed to accept the Plan for failure to vote), except as noted below, Class 6 (Commercial GUC Claims) (including the sub-classes that are presumed to accept the Plan for failure to vote), and Class 7 (Abuse Claims) (including the sub-classes that are presumed to accept the Plan for failure to vote) voted to accept the Plan (collectively, the "Accepting Classes") and (ii) Class 6(i) (Carbon Health Medical Group of California, P.C.), Class 6(j) (Carbon Health Medical Group of Florida, P.A.), Class 6(m) (Carbon Health Medical Group of New Jersey, P.A.), Class 6(r) (Carbon Health Primary Care of Florida, P.A.), and Class 6(y) (Central Jersey Urgent Care Limited Liability Company), each voted to reject the Plan (collectively, the "Rejecting Classes"), each voted to reject the Plan.

J.      Plan Supplement Documents. The Plan Supplement (including as subsequently modified, supplemented, or otherwise amended pursuant to a filing with the Court), complies with the terms of the Plan, and the Debtors provided sufficient and proper notice of its filing in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Complex Case Procedures, the Disclosure Statement Order, and all other applicable laws, rules, and regulations.

4907-7308-4584.9

All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan. Subject to the terms of the Plan, the Debtors are authorized to alter, amend, update, modify, or supplement the Plan Supplement on or before the Effective Date. The transmittal and notice of the Plan Supplement (and all documents identified therein) were appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases and were conducted in good faith. No other or further notice with respect to the Plan Supplement (and all documents identified therein) is necessary or shall be required.

K.    Modifications to Plan. Pursuant to, and in compliance with, section 1127 of the Bankruptcy Code, the Debtors have proposed certain modifications to the Plan as reflected therein (the "***Plan Modifications***"). In accordance with Bankruptcy Rule 3019, the Plan Modifications do not (a) constitute material modifications of the Plan under section 1127 of the Bankruptcy Code, (b) cause the Plan to fail to meet the requirements of sections 1122 or 1123 of the Bankruptcy Code, (c) materially or adversely affect or change the treatment of any Claims or Interests, (d) require re-solicitation of any Holders of Claims, or (e) require that any such Holders be afforded an opportunity to change previously cast acceptances or rejections of the Plan. Under the circumstances, the form and manner of notice of the Plan Modifications were adequate, and no other or further notice of the Plan Modifications is necessary or required. In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all Holders of Claims that voted to accept the Plan or that are conclusively presumed to have accepted the Plan, as applicable, are deemed to have accepted the Plan as modified by the Plan Modifications. No Holder of a Claim that has voted to accept the Plan shall be permitted to change its acceptance to a rejection as a consequence of the Plan Modifications.

4907-7308-4584.9

L.      Objections. To the extent that any objections (whether formal or informal), reservations of rights, statements, or joinders with respect to approval of the Disclosure Statement and Confirmation have not been resolved, withdrawn, waived, or settled prior to entry of this Confirmation Order or otherwise resolved herein, they are hereby overruled on the merits based on the record before the Court; *provided, however*, that any Cure Objections (as defined below) are preserved and shall be resolved as set forth in paragraph 14 below.

M.      Burden of Proof. The Debtors, as proponents of the Plan, have met their burden of proving the applicable elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for Confirmation of the Plan. In addition, and to the extent applicable, the Plan is confirmable under the clear and convincing evidentiary standard. Each witness who testified or submitted a declaration on behalf of the Debtors or any other party, in support of the Plan and Confirmation, in connection with the Combined Hearing was credible, reliable, and qualified to testify as to the topics addressed in their testimony.

N.      Bankruptcy Rule 3016. The Plan is dated and identifies its proponents (*i.e.*, the Debtors) in accordance with Bankruptcy Rule 3016(a). The filing of the Disclosure Statement on the docket of the Chapter 11 Cases satisfied Bankruptcy Rule 3016(b).

### Compliance with Section 1129 of the Bankruptcy Code

O.      Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1)). The evidentiary record at the Combined Hearing, the Declarations, the contents of the Plan and the Disclosure Statement, the Affidavits of Service, the Confirmation Brief, and the Court's judicial notice of the complete record of the Chapter 11 Cases support the findings of fact and conclusions of law set forth herein.

4907-7308-4584.9

P.        Proper Classification (11 U.S.C. §§ 1122 and 1123(a)(1)). Article IX of the Plan designates Classes of Claims and Interests, other than Administrative Claims (including Professional Fee Claims) and Priority Tax Claims, which, pursuant to section 1123(a)(1) of the Bankruptcy Code, need not be designated. The Plan designates eleven Classes of Claims and Interests. As required by section 1122(a) of the Bankruptcy Code, each Class of Claims contains only Claims and Interests that are substantially similar to the other Claims and Interests within the applicable Class. Valid reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan. Such classifications were not implemented for improper purposes, and such Classes do not unfairly discriminate between or among Holders of Claims or Interests. The Plan, therefore, satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

Q.        Specified Unimpaired and Impaired Classes (11 U.S.C. §§ 1123(a)(2) and 1123(a)(3)). Article IX of the Plan specifies that Claims in Class 1(a), Class 2, Class 3, and Class 5 are unimpaired. Article IX of the Plan also specifies the treatment of each Impaired Class under the Plan, which are Classes 1(b), 1(c), 1(d), 4, 6, 7, 8, 9, 10, and 11. The Plan, therefore, satisfies sections 1123(a)(2) and 1123(a)(3) of the Bankruptcy Code.

R.        No Discrimination (11 U.S.C. § 1123(a)(4)). Article IX.D of the Plan provides the same treatment for each Claim or Interest within a particular Class unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment with respect to such Claim or Interest. The Plan, therefore, satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code.

S.        Implementation of the Plan (11 U.S.C. § 1123(a)(5)). The Plan and the Trust Agreement set forth in the Plan Supplement provide adequate and proper means for the Plan's implementation, including, without limitation: (a) the good faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan; (b) establishment of the Trust

11

and vesting of the Trust Assets for distribution to the Trust Beneficiaries in a manner as more fully set forth in the Plan; (c) appointment of the Trustee and the Trust Advisory Committee; and (d) collecting, holding, administering, distributing, and liquidating the Trust Assets for the Trust Beneficiaries. Article XII (Treatment of Executory Contracts and Unexpired Leases), Article XI (Means for Implementation of the Plan), Article XV (Conditions Precedent to Confirmation and Effective Date of the Plan), and Article XVI (Settlement, Discharge, Release, Exculpation, Injunctive, and Related Provisions), among other provisions of the Plan, set forth the means for its implementation. The Plan, therefore, satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code.

T. <u>Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6))</u>. Effective upon the Effective Date, the Debtors' formation documents shall be deemed amended to prohibit the issuance by the Debtors of nonvoting securities to the extent required under section 1123(a)(6) of the Bankruptcy Code.

U. <u>Directors and Officers (11 U.S.C. § 1123(a)(7))</u>. The Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code. Exhibit F of the Plan Supplement identifies the members of the boards of directors and officers of each of the Debtors. Article XI.E of the Plan describes the powers of the Trustee, which, as identified in Exhibit C of the Plan Supplement, shall initially be META Advisors LLC, as set forth and disclosed in the Plan Supplement. Article XI.E of the Plan and Exhibit H of the Plan Supplement describes the Trust, the appointment, rights and powers of the Trustee, the appointment, rights, and powers of the Trust Advisory Committee, who shall initially be Ernst Bell, Matthew Dundon, and Kevin O'Brien, and the transfer of Trust Interests in the Trust. The Trust Agreement included with the Plan Supplement also references the compensation of the Trustee. The foregoing appointment of the Trustee and the Trust Advisory

4907-7308-4584.9

Committee is consistent with the interests of Holders of Claims and with public policy. The foregoing provisions regarding the Trustee and the Trust Advisory Committee satisfy section 1123(a)(7) of the Bankruptcy Code.

V.      Impairment/Unimpairment of Any Class of Claims or Interest. The Plan is consistent with section 1123(b)(1) of the Bankruptcy Code. Article IX of the Plan impairs or leaves unimpaired each Class of Claims and Interests.

W.      Assumption and Rejection (11 U.S.C. § 1123(b)(2)). Consistent with section 1123(b)(2) of the Bankruptcy Code, Article XII of the Plan provides for the assumption or rejection, as applicable, of all of the executory contracts or unexpired leases of the Debtors that have not already been assumed or rejected in the Chapter 11 Cases; *provided however*, that nothing in the Plan shall cause the rejection, breach, or termination of any contract of insurance benefiting the Debtors and the Estates, the Debtors' officers, managers and directors, and/or the Trust. Nothing in the Plan shall be construed as an acknowledgement that a particular contract or agreement is executory or is properly characterized as a lease.  The Debtors' determinations regarding the assumption, assumption and assignment, or rejection of executory contracts and unexpired leases are based on and within the sound business judgment of the Debtors, are necessary to the implementation of the Plan, and are in the best interests of the Debtors, their Estates, and other parties in interest in these Chapter 11 Cases.

X.      The Debtors' Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2)). The Debtors have complied with the applicable provisions of the Bankruptcy Code. Specifically: (a) the Debtors are proper debtors under section 109 of the Bankruptcy Code; (b) the Debtors have complied with all applicable provisions of the Bankruptcy Code, including section 1125, except as otherwise provided or permitted by order of the Bankruptcy Court; and (c) the Debtors have

13

complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Solicitation Procedures Order in transmitting the Solicitation Materials and in tabulating the votes with respect to the Plan. In compliance with the Solicitation Procedures Order, the Debtors caused copies of the following materials to be transmitted to the known Holders of Claims in Classes that were entitled to vote to accept or reject the Plan (*i.e.*, Claims in Classes 1(b), 1(c), 1(d), 4, 6, and 7): (1) the Combined Disclosure Statement and Plan; (2) the Combined Hearing Notice; (3) the Solicitation Procedures Order; and (4) an appropriate form of ballot and a pre-addressed postage prepaid return envelope; (collectively, the "***Solicitation Materials***"). In further compliance with the Solicitation Procedures Order and as evidenced by the Affidavits of Service, the Debtors caused copies of the Combined Hearing Notice to be served on all parties in interest. In addition, copies of the Solicitation Procedures Order, the Plan, the Disclosure Statement, and the Combined Hearing Notice have been available free of charge, at https://restructuring.ra.kroll.com/carbonhealth/Home-Index, and the foregoing was set forth in the Combined Hearing Notice. The Combined Hearing Notice provided due and proper notice of the Hearing and all relevant dates, deadlines, procedures, and other information relating to the Plan and/or the solicitation of votes thereon, including, without limitation, the Voting Deadline and the Objection Deadline (as such terms are defined in the Combined Hearing Notice), the time, date, and place of the Combined Hearing and the provisions in the Plan concerning the Plan's exculpation, the Debtor/Estate Releases, and the Plan injunction provided for in the Plan. The Debtors also provided the Court-approved notices of non-voting status (the "***Notices of Non-Voting Status***") to the Holders of Claims and Interests not entitled to vote on the Plan, consistent with terms of the Solicitation Procedures Order. Based on the foregoing, all persons entitled to receive notice of the Disclosure Statement, the Plan, the Combined Hearing Notice, and Notices

4907-7308-4584.9

of Non-Voting Status have received proper, timely, and adequate notice in accordance with the Solicitation Procedures Order, the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules, and have had an opportunity to appear and be heard with respect thereto. As such, the Debtors are in compliance with section 1128 of the Bankruptcy Code and Bankruptcy Rules 2002(b) and 3017(d)-(f). No other or further notice is required.

Y.      Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)). The Plan has been proposed by the Debtors in good faith and in the belief that the reorganization contemplated under the Plan and establishment of the Trust will maximize value for the Debtors' creditors. The Plan accomplishes the goals promoted by section 1129(a)(3) of the Bankruptcy Code by enabling the Trustee to make distributions to creditors on a fair and equitable basis, in accordance with the priorities established by the Bankruptcy Code, subject to the terms of the Plan. The Plan has been proposed with the legitimate purpose of maximizing the value of the Estates to achieve the best interests of the Debtors' creditors and not by any means forbidden by applicable law. The Debtors, the Released Parties, and the Exculpated Parties have acted diligently, in good faith, and in compliance with all applicable laws and duties in connection with the preparation, filing, and prosecution of these Chapter 11 Cases and actions taken in connection therewith, as is evident from the facts and record of the Chapter 11 Cases, the Disclosure Statement, the Plan, the Solicitation Materials, the hearing to conditionally approve the Disclosure Statement, the record of the Combined Hearing, the Declarations and testimony submitted to the Court, and other proceedings held in the Chapter 11 Cases. In so finding, the Court has considered the totality of the circumstances in the Chapter 11 Cases. The support for the Plan by Holders of Claims in the Accepting Classes who voted to accept the Plan further demonstrates that the Plan was proposed in good faith. Finally, as described in greater detail below, the Plan's indemnification, exculpation,

4907-7308-4584.9

Debtor/Estate Release, and injunction provisions are warranted, necessary, and appropriate, and are supported by sufficient consent and consideration under the circumstances of the Chapter 11 Cases as a whole and are consistent with sections 105, 1123(b)(6), and 1129 of the Bankruptcy Code and applicable law in this Circuit, and the Debtors, the Released Parties, and the Exculpated Parties will be acting in good faith if they proceed to consummate the Plan and the agreements, settlements, transactions, distributions, and other transfers contemplated therein and in this Confirmation Order and take any actions authorized by the Plan and this Confirmation Order.

Z.    <u>Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))</u>. No payment for services or costs and expenses in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been or will be made by the Debtors other than payments that have been authorized by an order of the Court, including without limitation by the Confirmation of the Plan by this Confirmation Order. Pursuant to Section VIII.C of the Plan, such Professionals' applications for allowance of final compensation and reimbursement of expenses must be filed and served **no later than thirty (30) days after the Effective Date.** Such applications will be subject to review and approval by the Court.

AA.    <u>Proper Disclosure of Officers (11 U.S.C. § 1129(a)(5))</u>. The Debtors have complied with section 1129(a)(5) by providing such disclosures in the Plan Supplement and the Plan. The Plan, in conjunction with the Plan Supplement, satisfies the requirements of section 1129(a)(5) of the Bankruptcy Code.

BB.    <u>No Rate Changes (11 U.S.C. § 1129(a)(6))</u>. The Plan does not contain any rate changes subject to the jurisdiction of any governmental regulatory commission and will not require governmental regulatory approval. Therefore, section 1129(a)(6) of the Bankruptcy Code does not apply to the Plan.

16

4907-7308-4584.9

CC.     "Best Interest Test" 11 U.S.C. § 1129(a)(7). Each holder of an Impaired Claim or Impaired Interest has either accepted the Plan or will receive or retain on account of such Claim or Interest, property of a value on the Effective Date of the Plan that is not less than the amount that such holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code. The Plan satisfies section 1129(a)(7) of the Bankruptcy Code. The liquidation analysis attached as Exhibit C to the Plan and the other evidence related thereto in support of Confirmation that was presented, proffered, or adduced at or prior to the Combined Hearing: (a) are reasonable, persuasive, credible, and accurate as of the dates such analyses and evidence were prepared, presented, or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; and (d) establish that each Holder of an Impaired Claim or Interest has accepted the Plan and/or will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date. The Plan, therefore, satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

DD.     Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)). Section 1129(a)(8) of the Bankruptcy Code requires that each class of claims or interests must either accept a plan or be unimpaired under a plan. Classes 1(a), 2, 3, and 5 are unimpaired Classes of Claims, which are conclusively presumed to have accepted the Plan in accordance with section 1126(f) of the Bankruptcy Code. Classes 1(b), 1(c), 1(d), 4, 6 and 7 are the Impaired Classes entitled to vote on the Plan. Classes 1(b)-1 and 2 (John Muir Secured Claims) (including the sub-classes that are presumed to accept the Plan for failure to vote), Class 1(c)-1-6 (Prime Health Secured Claims) (including the sub-classes that are presumed to accept the Plan for failure to vote), Class 1(d)-1

and 2 (Stanford Secured Claims) (including the sub-classes that are presumed to accept the Plan for failure to vote), Class 4 (Prepetition Secured Claims) (including the sub-classes that are presumed to accept the Plan for failure to vote), except as noted below, Class 6 (Commercial GUC Claims) (including the sub-classes that are presumed to accept the Plan for failure to vote), and Class 7 (Abuse Claims) (including the sub-classes that are presumed to accept the Plan for failure to vote) voted to accept the Plan (i.e., the Accepting Classes).  Class 6(i) (Carbon Health Medical Group of California, P.C.), Class 6(j) (Carbon Health Medical Group of Florida, P.A.), Class 6(m) (Carbon Health Medical Group of New Jersey, P.A.), Class 6(r) (Carbon Health Primary Care of Florida, P.A.), and Class 6(y) (Central Jersey Urgent Care Limited Liability Company), each voted to reject the Plan, and Class 8 (Subordinated Claims) and Class 9 (Equity Interests) are deemed to have rejected the Plan and not entitled to vote on the Plan, pursuant to section 1126(g) of the Bankruptcy Code (i.e., the Rejecting Classes) because no distribution is anticipated to the Holders of such Claims or Interests. Class 10 (Intercompany Claims) and Class 11 (Intercompany Interest) are Claims or Interests held by one Debtor against another Debtor. Each of the Debtors are parties to the Plan and support and consent to the proposed treatment under the Plan, which satisfies section 1129(a)(8) of the Bankruptcy Code and renders cram-down for such classes unnecessary. The Plan does not satisfy the requirements of section 1129(a)(8) of the Bankruptcy Code because at least one Impaired Class has voted against the Plan. Notwithstanding the foregoing, the Plan is confirmable because it satisfies sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.

EE.     Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code (11 U.S.C. § 1129(a)(9)). The treatment of Administrative Claims and Priority Tax Claims as set forth in Article VIII of the Plan is in accordance with the requirements of

4907-7308-4584.9

section 1129(a)(9) of the Bankruptcy Code. The Plan, therefore, satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code.

FF.     <u>Acceptance by at Least One Impaired Class of Claims (11 U.S.C. § 1129(a)(10))</u>. Under Article IX.D.9 and 10 of the Plan, the distributions to the Holders of Allowed Class 6 (Commercial GUC Claims) and Allowed Class 7 (Abuse Claims) are being treated on a consolidated basis within their respective Classes, and each are projected to receive the approximately equal value for their respective claims.  For purposes of tabulation of votes, courts have consolidated ballots among jointly administered debtors where distributions were consolidated, *see, e.g., In re SGPA, Inc.*, 2001 WL 34750646 (Bankr. M.D. Pa. Sept. 28, 2001) and also in cases where the debtors were substantively consolidated, *see, e.g., In re ADPT DFW Holdings, LLC*, 574 B.R. 87, 104-05 (Bankr. N.D. Tex. 2017).  As set forth in the Voting Declaration, at least one impaired class voted to accept the Plan on a consolidated basis. Therefore, the requirement of section 1129(a)(10) is satisfied.

GG.     <u>Confirmation is Not Likely to Be Followed by Need for Further Reorganization (11 U.S.C. § 1129(a)(11))</u>. The Plan provides for, among other things, the reorganization of the Debtors' businesses. The Disclosure Statement, the financial projections, the Ozkay Declaration, and other evidence proffered or adduced by the Debtors at the Confirmation Hearing with respect to the feasibility of the Plan (a) are reasonable, persuasive and credible, (b) have not been controverted by other evidence or credibly challenged in any objection, and (c) establish that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Reorganized Debtors. Accordingly, the Plan is feasible. The Plan, therefore, satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.

4907-7308-4584.9

HH.     Payment of Bankruptcy Fees (11 U.S.C. § 1129(a)(12)). Section XIX.D of the Plan provides for the payment of all fees payable by the Debtors under 28 U.S.C. § 1930(a). The Plan, therefore, satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

II.     Non-Applicability of Certain Sections (11 U.S.C. §§ 1129(a)(13), (14), (15), and (16)). The Debtors do not owe any retiree benefits or domestic support obligations, are not individuals, and are not nonprofit corporations. Therefore, sections 1129(a)(13), 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to the Chapter 11 Cases.

JJ.     "Cram Down" Requirements (11 U.S.C. § 1129(b)). The Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code. The Plan does not unfairly discriminate against the Rejecting Classes because under Article IX.D.9 of the Plan, all Holders of Allowed Commercial GUC Claims in both Classes that accepted and rejected are being treated similarly and will receive their pro rata of the distribution of the Commercial GUC Fund. Consequently there is no discrimination against the Rejecting Classes.  The Deemed Rejecting Class (*i.e.*, Class 9(x) (Interests in Carbon Health Technologies, Inc.) is the only class of equity securities in Carbon Health Technologies, Inc. As a deemed rejected class, the Holders in Class 9(x) are not receiving any distributions nor are there any other similar classes under the Plan that are receiving distributions on account of Interest being treated under the Plan. Consequently there is no discrimination against the Deemed Rejected Class.  No class junior to the Rejecting Classes is entitled to any distributions under the Plan. Further, as noted above, there is no other class equally situated to the Rejecting Classes that will receive more favorable treatment under the Plan. In addition, the Classes of Claims senior to the Deemed Rejected Class 9(x) (Interests in Carbon Health Technologies, Inc.) will not be paid in full thereby prohibiting any distribution to the holders of  Interests in Class 9(x). The foregoing treatment conforms to the absolute priority rule

and is therefore fair and equitable within the meaning of section 1129(b). Accordingly, the Plan satisfies the cramdown requirements of section 1129(b) of the Bankruptcy Code and may be confirmed notwithstanding the rejection of the Plan by the Rejecting Classes and Deemed Rejecting Class.

KK.     Only One Plan (11 U.S.C. § 1129(c)). The Plan (including previous versions thereof), supersedes any other plan filed in the Chapter 11 Cases. The Debtors seek Confirmation of the Plan. No party other than the Debtors has proposed a plan. The Plan, therefore, satisfies the requirements of section 1129(c) of the Bankruptcy Code.

LL.     Principal Purpose of the Plan (11 U.S.C. § 1129(d)). The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act, 15 U.S.C. § 77e. The Plan, therefore, satisfies the requirements of section 1129(d) of the Bankruptcy Code.

MM.    Good Faith Solicitation (11 U.S.C. § 1125(e)). The Debtors' good faith is evident from the facts and record of the Chapter 11 Cases, the Disclosure Statement, the Plan, the Solicitation Materials, the hearing to conditionally approve the Disclosure Statement, and the record of the Combined Hearing, the Declarations and testimony submitted to the Court, and other proceedings held in the Chapter 11 Cases. The Debtors and their advisors have proposed the Plan with the legitimate and honest purpose of maximizing the value of each of the Debtors' Estates for the benefit of their stakeholders. Accordingly, the Debtors and their advisors have been, are, and will continue to act in good faith if they proceed to: (a) consummate the Plan and the agreements, settlements, transactions, and transfers contemplated thereby; and (b) take the actions authorized and directed or contemplated by this Confirmation Order. Therefore, the Plan has been proposed in good faith to achieve a result consistent with the objectives and purposes of the Bankruptcy

21

4907-7308-4584.9

Code and the aforementioned parties have acted in good faith within the meaning of sections 1125(e) and 1126(e) of the Bankruptcy Code.

NN.    Implementation. The various means for implementation of the Plan, as set forth in Section XIV and other provisions of the Plan (collectively, the "***Implementation Activities***"), have been designed and proposed in good faith. The Implementation Activities are adequate and will promote the maximization of the value of the ultimate recoveries under the Plan in a fair and equitable manner in accordance with the priorities established by the Bankruptcy Code. The Implementation Activities are not intended to hinder, delay, or defraud any entity to which the Debtors is indebted on the Effective Date.

OO.    Exculpation. The exculpation described in Section XVI.I of the Plan is essential to the Plan, proposed in good faith, was formulated following extensive, good faith, arm's-length negotiations with key constituents, is appropriately limited in scope to achieve the overall purpose of the Plan, and is consistent with applicable law. Each Exculpated Party made significant contributions to the Chapter 11 Cases, including with respect to the negotiation and implementation of the transactions embodied in the Plan. The Exculpated Parties have, and upon Consummation of the Plan shall be deemed to have, participated in good faith and in compliance with all applicable laws and duties with regard to the negotiation of the Plan, solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable duty, law, rule, or regulation governing the negotiation of the Plan, solicitation of acceptances or rejections of the Plan, or distributions made pursuant to the Plan. The Plan's exculpation provisions do not relieve any party of liability for an act or omission to the extent such act or omission is determined by a final order of a court of competent jurisdiction to have constituted gross negligence, fraud, or

22

4907-7308-4584.9

willful misconduct and are consistent with established practice in this jurisdiction and others. The record in the Chapter 11 Cases fully supports the exculpation provisions, which are appropriately tailored to protect the Exculpated Parties from inappropriate litigation arising from their participation in the Chapter 11 Cases and the Debtors' reorganization and are consistent with the Bankruptcy Code and applicable law.

PP.     Injunction. The injunction provision provided in Section XVI.E of the Plan, as may be modified herein, is necessary to implement, preserve, and enforce the Plan.

QQ.     Plan Releases. Entry of this Confirmation Order shall constitute the Bankruptcy Court's approval of the Debtor/Estate Release set forth in Section XVI.F of the Plan, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor/Estate Release is: (a) in exchange for the good and valuable consideration provided by the Released Parties who played an extensive and integral role in the Debtors' Chapter 11 Cases; (b) in the best interests of the Debtors and all Holders of Claims and Interests; (c) fair, equitable, and reasonable; (d) given and made after due notice and opportunity for hearing; (e) a necessary element to the Plan; (f) negotiated in good faith and critical to reaching consensus to support the Plan; and (g) a bar to any of the Debtor/Estate Releasors asserting any Claim or Cause of Action released pursuant to the Debtor/Estate Release. The Released Parties: (a) made substantial and valuable contributions to the Debtors' Chapter 11 Cases and the Estates, including through extensive negotiations with various stakeholders, ensuring the operation of the Debtors' business during the Chapter 11 Cases, and continuing to provide contributions to the Debtors and/or their Estates, including as set forth in Article XVI.F of the Plan, and (b) invested significant time and effort in the preparation of the Plan, all supporting analyses, and the numerous other pleadings filed in the Chapter 11 Cases,

23

thereby ensuring the smooth administration of the Chapter 11 Cases. Each of the Released Parties made significant concessions in, and good faith contributions to, these Chapter 11 Cases. The Released Parties share an identity of interest with the Debtors, supported the Plan and these Chapter 11 Cases, actively and diligently participated in meetings, hearings, and negotiations during these Chapter 11 Cases in good faith, and have provided other valuable consideration to the Debtors to facilitate the Debtors' liquidation pursuant to the Plan. The scope of the Debtor/Estate Release is appropriately tailored to the facts and circumstances of the Chapter 11 Cases. The Debtor/Estate Release is appropriate in light of, among other things, the value provided by the Released Parties to the Debtors' Estates and the critical importance of the Debtor/Estate Release to the Plan.

RR.     Preservation of Causes of Action. Article XVII of the Plan appropriately provides that the Debtors, Reorganized Debtors, and the Trustee will retain, and may enforce, all rights to commence and pursue, as appropriate, any and all Causes of Action, except any Causes of Action that have been expressly waived, settled, excluded, or otherwise released as provided under the Plan (including, without limitation, the Debtor/Estate Release), whether arising before or after the Petition Date, including any actions specifically enumerated in the Plan Supplement, in accordance with section 1123(b)(3)(B) of the Bankruptcy Code. The provisions regarding the preservation of Causes of Action in the Plan are appropriate, fair, equitable, and reasonable, and are in the best interests of the Debtors, the Estates, and Holders of Claims and Interests.

SS.     Satisfaction of Confirmation Requirements. Based upon the foregoing, the Plan satisfies the requirements for Confirmation set forth in section 1129 of the Bankruptcy Code.

4907-7308-4584.9

**BASED ON THE FOREGOING FINDINGS OF FACT, IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:**

1.      Confirmation. The Plan, attached hereto as **Exhibit A**, is **APPROVED** in its entirety and confirmed under section 1129 of the Bankruptcy Code. The Plan is **CONFIRMED** in its entirety pursuant to section 1129 of the Bankruptcy Code. The terms of the Plan, the Plan Supplement and each of the documents comprising the Plan Supplement, any amendments, modifications, or supplements thereto, and all documents and agreements thereto are incorporated by reference into and are an integral part of the Plan, and such terms and their implementation are hereby approved and authorized. The Debtors, the Reorganized Debtors, and/or the Trustee (as applicable) are authorized to take all actions necessary or appropriate to enter into, implement, and consummate the contracts, instruments, releases, and other agreements or documents created or contemplated in connection with the Plan.

2.      Final Approval of Disclosure Statement. The Disclosure Statement is hereby **APPROVED**, on a final basis, pursuant to section 1125 of the Bankruptcy Code.

3.      Objections. To the extent that any objections have not been withdrawn or resolved prior to the entry of this Confirmation Order, all objections are overruled in all respects for the reasons set forth in the record of the Combined Hearing, which record is incorporated herein, and all withdrawn informal comments, if any, are deemed withdrawn with prejudice; *provided, however*, that any Cure Objections are preserved and shall be resolved as set forth in paragraph 14, below.

4.      Omission of Reference to Particular Plan Provisions. The failure to specifically describe or include any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Plan be approved and confirmed in its entirety.

5.     Implementation. The Debtors and the Trustee are authorized to take all actions necessary, appropriate, or desirable to enter into, implement, and consummate the contracts, instruments, releases, leases, agreements, or other documents created, executed, or contemplated in connection with the Plan. Without further order or authorization of this Court, the Debtors and the Trustee, and their successors are authorized and empowered to make all modifications to all Plan documents that are consistent with the Plan. Execution versions of the Plan and all related documents, where applicable, shall constitute legal, valid, binding, and authorized obligations of the respective parties thereto, enforceable in accordance with their terms.

6.     Classifications. The classification of Claims for purposes of distributions made under the Plan shall be governed solely by the terms of the Plan and the Solicitation Procedures Order.

7.     Effective Date. The Effective Date of the Plan shall occur on the date determined by the Debtors when the conditions set forth in Article XV of the Plan have been satisfied or, if applicable, waived in accordance with the Plan.

8.     Resolution of Claims. As discussed in detail in the Disclosure Statement and Plan, and as otherwise provided herein, in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise of all Claims and controversies resolved pursuant to the Plan. Subject to Articles XIII and XIV of the Plan, all distributions made to Holders of Allowed Claims in any Class are intended to be and shall be final. The compromises or settlements of Claims, Equity Interests, and controversies contemplated by the Plan are approved in accordance with 11 U.S.C. §§ 105, 363, and 1123 and Bankruptcy Rule 9019.

4907-7308-4584.9

9.      Causes of Action. Unless any Causes of Action are expressly waived, relinquished, released, compromised, excluded, or settled in the Plan or any final order entered by this Court including, without limitation, this Confirmation Order (collectively, a "***Final Order***"), the Debtors, Reorganized Debtors, and the Trust expressly reserve all such Causes of Action for later adjudication. The reservation shall include, without limitation, a reservation by the Debtors, Reorganized Debtors, and the Trust of any Causes of Action not specifically identified in the Plan, Disclosure Statement, or Plan Supplement or of which the Debtors may presently be unaware, or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time or facts or circumstances that may change or be different from those the Debtors now believe to exist and, therefore, no preclusion doctrine, including, without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise), or laches will apply to such Causes of Action upon or after the Confirmation of the Plan based on the Disclosure Statement, the Plan, or this Confirmation Order, except where such claims and/or defenses have been expressly waived, relinquished, released, compromised, or settled in the Plan or by Final Order. Following the Effective Date, the Reorganized Debtors and the Trustee may assert, compromise or dispose of the Causes of Action, as they pertain to such respective parties, without further notice to Creditors or Interest Holders or authorization of the Bankruptcy Court, except as otherwise expressly provided herein or in the Plan, Plan Supplement, or Trust Agreement.

10.      Trust and Trust Agreement. The Court hereby authorizes and approves, as of the Effective Date, (a) the establishment of the Trust in accordance with the Plan and the Trust Agreement; (b) the appointment of META Advisors LLC, as the initial Trustee as set forth and disclosed in the Plan Supplement; (c) the appointment of the Trust Advisory Committee, as set

forth and disclosed in the Plan Supplement; (d) the establishment of the Abuse Claims QSF; and (e) the appointment of the Abuse Claims Administrator. The Court further authorizes and approves the Trust Agreement and all transactions contemplated thereby or the Plan to be undertaken by the Trust. Without limitation of the generality of the foregoing, the Debtors and Trustee are hereby authorized, without further approval of this Court or any other party and in accordance with the Plan, to execute the Trust Agreement and deliver, file, and/or record any contracts, agreements, instruments, or other documents, including relating to the Trust Agreement, contemplated by the Plan or the Trust Agreement (or necessary or desirable to effectuate the transactions contemplated thereby) and to take all other steps necessary to establish the Trust and to perform its obligations pursuant to the Trust Agreement and consistent with the Plan. Once executed, the Trust Agreement shall constitute legal, valid, and binding obligations of the parties thereto and shall be enforceable according to its terms.

11.     Trust Assets. On the Effective Date, other than as set forth in the Plan or this Confirmation Order and subject to applicable law, the Debtors are authorized and directed to, and shall be deemed to have irrevocably transferred, granted, assigned, conveyed, and delivered to the Trust, all of the Debtors' and their Estates' right, title, and interest in and to all of the Trust Assets free and clear of any and all Liens, Claims, encumbrances, and interests (legal, beneficial, or otherwise) of all other Persons and entities; *provided that*, the Debtors or their advisors may transfer Data Transfer Documents to the Trust irrespective of any applicable law or requirement to the contrary and the Trust shall have the same confidentiality obligations as the Debtors with respect thereto, unless otherwise provided by applicable law. The Debtors and the Trustee, and any party under the control of such parties are hereby authorized to execute any documents or other instruments and to take all other steps as necessary to cause title to the Trust Assets to be

4907-7308-4584.9

transferred to the Trust. Subject to the terms of the Trust Agreement, the Trust shall be permitted to use the Trust Assets for the operation of the Trust for the payment of or distribution on account of all Allowed Claims in accordance with the terms of the Plan, the Trust Agreement and/or or this Confirmation Order. To enable the Trustee to fulfill its responsibilities under the Trust, subject to the terms of the Trust Agreement, the Trustee shall timely pay all trust expenses, including property insurance, professionals, and the Trustee's own compensation, from the Trust Assets and proceeds therefrom regardless of whether any or all secured, administrative, priority, or other claims have been paid or are otherwise outstanding. On and after the Effective Date, the Trustee shall carry out the Trust functions on behalf of the Trust as required by the Trust Agreement and the Plan.

12.     Transfers by Debtor; Vesting and Revesting of Assets. All transfers of property of the Estates, including, without limitation, the vesting of assets in the Reorganized Debtors and the vesting of the Trust Assets in the Trust, (a) are legal, valid and effective transfers of property, and shall be effective as and to the extent provided in the Plan without need for further order of the Court or any act by the Debtors, Reorganized Debtors, the Trustee, or the Trust, except as otherwise provided in this Confirmation Order or in the Plan; (b) vest the transferees with good title to such property free and clear of all claims, liens, interests, charges or other encumbrances, except as expressly provided in the Plan or this Confirmation Order, (c) do not and will not constitute avoidable transfers under the Bankruptcy Code or other applicable law, and (d) are for good consideration and value.

13.     Sources of Consideration for Plan Distributions. The distributions to be made under the Plan, including on account of certain Administrative Claims and Priority Tax Claims, as well as the Trust Funding Amount, shall be funded, as applicable, by the Debtors pursuant to the

29

Amended DIP Order; *provided, however*, the budgeted amounts for Administrative Claims pursuant to the Amended DIP Order shall not serve to cap Allowed Administrative Claims subject to satisfaction of the condition set forth in Article XV.B.(iii) of the Plan.

14.     <u>Assumed and Assumed and Assigned Executory Contracts and Unexpired Leases and Cure Claims Relating Thereto</u>. The executory contracts and unexpired leases set forth in <u>Exhibit B</u> of the Plan Supplement are assumed or assumed and assigned as set forth therein. All of the cure claims reflected in <u>Exhibit B</u> of the Plan Supplement reflect the prepetition arrearages arising prior to the Petition Date, including the rent arising under any unexpired nonresidential lease agreement for the period of February 2, 2026, through February 28, 2026 (the "***Prepetition & Stub Claims***"), which shall be paid no later than five (5) business days following the Effective Date. Subject to the reconciliation of the Postpetition Cures (as such term is defined below), this Confirmation Order constitutes a conclusive determination that the amount of any cure and compensation due under the applicable contracts and leases assumed hereunder is fixed in the applicable amount set forth in <u>Exhibit B</u> of the Plan Supplement, and no other or further amount is due and owing to the applicable counterparty on account of such contracts and leases for the period related to the Prepetition & Stub Claims. The Reorganized Debtor has demonstrated adequate assurance of future performance with respect to such contracts and leases, to the extent required, and otherwise satisfied the requirements of 11 U.S.C. § 365.  All other amounts arising on or after the Petition Date (the "***Postpetition Cures***") shall be paid in the ordinary course of business pursuant to the terms of the applicable executory contract or unexpired lease, but to the extent due as of the Effective Date (which shall include any Postpetition Cure amount or compensation due that is reconciled and agreed as of the entry of this Confirmation Order), shall be paid in no event later than thirty (30) days from the Effective Date, unless such contract or lease

provides for a longer period and except where there is a dispute related to the Postpetition Cures, which dispute shall be resolved pursuant to the terms of this Confirmation Order. Further, the omission of Postpetition Cures from Exhibit B of the Plan Supplement shall not preclude the Reorganized Debtors or any counterparties from contesting or seeking the collection and enforcement, as applicable, of the Postpetition Cures or any nonmonetary defaults capable of cure under any executory contracts or unexpired leases notwithstanding any term or provision of the Plan or this Confirmation Order to the contrary. For the purposes of resolving any disputes relating to the Prepetition & Stub Claims or the Postpetition Cures ("***Cure Objections***"), as applicable, the Court hereby schedules a status conference to be held on July ___, 2026 at __:__ __.m. (CT) (the "***Cure Objections Status Conference***") to determine any disputes regarding the payment of the Prepetition & Stub Claims or Postpetition Cures, as applicable, that have not been resolved by the parties before that time.

15. Assumed and Assumed and Assigned Executory Contracts and Unexpired Leases. Notwithstanding anything to the contrary in the Plan or this Confirmation Order, with respect to each executory contract or unexpired lease as set forth on Exhibit B of the Plan Supplement (collectively, the "***Assumed and Assumed and Assigned Contracts***") to be assumed or assumed and assigned under the Plan, upon the assumption or assumption and assignment of such Assumed and Assumed and Assigned Contracts pursuant to the Plan, the Reorganized Debtors, as applicable, shall be responsible for, and shall timely perform, all obligations under such Assumed and Assumed and Assigned Contracts, *cum onere*, including, without limitation, liabilities for any default under such Assumed and Assumed and Assigned Contracts, in each case arising or occurring after such assumption or assumption and assignment, as applicable, and for the payment or performance of any and all obligations under such Assumed and Assumed and Assigned

31

Contracts arising or occurring after such assumption, or assumption and assignment when due in accordance with the terms of such Assumed and Assumed and Assigned Contracts (irrespective of whether such obligations accrued before, on, or after assumption and assignment of the Assumed and Assumed and Assigned Contracts), including, but not limited to, with respect to (a) claims for indemnification, and (b) year-end adjustment and reconciliation amounts that become due or accrue after the entry of this Confirmation Order, including for royalties, rents, utilities, taxes, insurance, fees, common area or other maintenance charges, promotional funds, and percentage rent, in each case as applicable and subject to the terms and conditions of the Assumed and Assumed and Assigned Contracts, and subject to any defenses provided by such Assumed and Assumed and Assigned Contracts and applicable non-bankruptcy law and unless otherwise agreed with the counterparty to the Assumed and Assumed and Assigned Contracts. To the extent the applicable Reorganized Debtor relies on the Debtors' existing insurance coverage to satisfy any such assumed indemnification obligations under any Assumed and Assumed and Assigned Contracts, any deductibles or self-insured retention amount shall be the responsibility of the applicable Reorganized Debtor, except to the extent it has already been satisfied.

16.     <u>NHP/PMB Los Alamitos MOB, LP Ground Lease</u>. Notwithstanding anything to the contrary in the Plan, this Confirmation Order, the Plan Supplement, or any other Plan-related document:

a.      As to Carbon Health Medical Group of California, P.C.'s ("***CHMGCA***") lease with NHP/PMB Los Alamitos MOB, LP (the "***NHP/PMB Lease***"), nothing in the Plan, this Confirmation Order, the Plan Supplement or any other Plan-related document, changes, modifies or alters in any manner (i) the obligations (if any) of any tenant (including, for the removal of doubt, debtor CHMGCA and any assignee of CHMGCA) to

timely comply with the "MOB Ground Lease" identified on "Exhibit G (Use Restrictions)" to the NHP/PMB Lease (the "***MOB Ground Lease***"), or (ii) the MOB Ground Lease.

b. The NHP/PMB Lease is not, and shall not be, assumed pursuant to Bankruptcy Code section 365 until the earliest date all of the following has occurred: (i) NHP/PMB Los Alamitos MOB, LP ("***NHP/PMB***"), has received adequate assurance of future performance (as such term is utilized in Bankruptcy Code section 365) from CHMGCA's assignee; (ii) all amounts, whether such amounts arise pre-petition or post-petition, owed to NHP/PMB under the NHP/PMB Lease have been paid in full to NHP/PMB; and (iii) there are no uncured defaults under the NHP/PMB Lease (other than the defaults excepted from the Bankruptcy Code's cure requirements as set forth in Bankruptcy Code section 365(b)(1)(A)); *provided, however*, that if items (i) through (iii) hereinabove have not occurred or the parties have not resolved their disputes relating thereto prior to the Cure Objections Status Conference, such disputes shall be heard at the Cure Objections Status Conference and CHMGCA shall have the initial evidentiary burden of proof at such hearing.

17. <u>Rejection of Executory Contracts and Unexpired Leases</u>. Except with respect to: (a) Assumed and Assumed and Assigned Contracts set forth on <u>Exhibit B</u> of the Plan Supplement, (b) executory contracts or unexpired leases that were previously assumed or rejected by order of the Bankruptcy Court, (c) unexpired leases that were previously the subject of a stipulation filed with the Court; and (d) executory contracts or unexpired leases that are the subject of a pending motion to assume or reject pursuant to section 365 of the Bankruptcy Code pending as of the Confirmation Date, each executory contract and unexpired lease entered into by the Debtors prior to the Petition Date that has not previously expired or terminated pursuant to its own terms shall

be deemed rejected pursuant to section 365 of the Bankruptcy Code upon the entry of this Confirmation Order, subject to the occurrence of the Effective Date. To the extent there is a deemed rejection of any unexpired lease of nonresidential real property, the effective date of any such rejection shall be the later of the occurrence of the Effective Date and the date that the Debtors or Reorganized Debtors, as applicable, surrender possession of the premises to the applicable landlord counterparty by written notice and return of the keys and keys codes to such landlord counterparty, or if such keys or key codes are unavailable, written notice that the landlord may rekey and take control of the premises.

18. <u>Claims Based on Rejection of Executory Contracts or Unexpired Leases</u>. All proofs of claim with respect to Claims arising from the rejection of executory contracts or unexpired leases pursuant to Confirmation of the Plan, if any, must be filed with the Claims Agent **within thirty (30) days after the last to occur of (x) the Effective Date, (y) the entry of an order of the Bankruptcy Court approving such rejection and (z) such other date as may be ordered by the Bankruptcy Court**. Any Claim arising from the rejection of an executory contract or unexpired lease pursuant to Confirmation of the Plan that is not filed within such time will be subject to objection. All such Claims for which Proofs of Claim are timely and properly filed and ultimately Allowed will be treated as Commercial GUC Claims (Class 6).

19. <u>Distributions Under the Plan</u>. On and after the Effective Date, the Distributions on account of Allowed Claims pursuant to Article XIII of the Plan and the resolution and treatment of Disputed Claims pursuant to Article XIV of the Plan are authorized to occur and, without limitation of the other provisions of the Plan and this Confirmation Order concerning the powers, duties, and authority of the Debtors, Reorganized Debtors, and Trustee, each, as applicable, shall be authorized to effectuate such Distributions, resolution, and treatment required by the Plan and

Trust Agreement; *provided, however*, notwithstanding any provision of the Plan to the contrary, no Claim shall be automatically deemed disallowed, expunged or marked as satisfied absent notice to the applicable Holder of such Claim (and its counsel, if known).

20.     Exculpation. The exculpation provision contained in Article XVI.I of the Plan is approved and incorporated herein in all respects.

21.     Plan Releases. The releases contained in Article XVI.D and F of the Plan are approved and incorporated herein in all respects.

22.     Releases by Creditors. Notwithstanding anything to the contrary in the Plan or this Confirmation Order, the release by holders of Claims under Article XVI.D of the Plan shall only apply to and bind creditors that affirmatively vote to accept the Plan and do not affirmatively opt out of the releases as set forth in the Ballot. For the avoidance of doubt, any other creditor shall not be subject to the release under Article XVI.D of the Plan.

23.     Provisions Related to the United States. Notwithstanding anything to the contrary contained in the Plan and this Confirmation Order, nothing shall limit or be intended to or be construed as a release that would, in effect, act as a bar to the United States Government or any of its agencies, or any state and local authority, from pursuing any police or regulatory action or any criminal action.

24.     Injunction and Discharge. The injunction contained in Article XVI.E of the Plan and the discharge of claims and termination of interests in Article XVI.D of the Plan are approved and incorporated herein in all respects.  Without limiting the foregoing, this Confirmation Order permanently enjoins the commencement or prosecution by any Person or Entity, whether directly, derivatively, or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities released pursuant to the Plan, including the claims,

4907-7308-4584.9

obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities released or exculpated in the Plan or this Confirmation Order.  Also without limiting the foregoing, except as expressly provided herein or in the Plan, upon the Effective Date, all Holders of Claims and Equity Interests shall be forever precluded and enjoined, pursuant to sections 105, 524, 1141 of the Bankruptcy Code and Article X.D of the Plan, from prosecuting or asserting any such discharged Claim against or terminated Equity Interest in the Debtors or the Reorganized Debtors. The Debtors' discharge and release from all Claims as provided herein and in the Plan shall not diminish, impair, or otherwise affect the enforceability of any insurance policy that may provide coverage for claims against the Debtors, the Reorganized Debtors, their current and former directors and officers, or any other person or entity.

25.      Notwithstanding the foregoing, and notwithstanding anything to the contrary herein, nothing in the Plan or this Confirmation Order shall modify the rights, if any, of any counterparty to an executory contract or unexpired lease to assert any right of setoff or recoupment that such party may have under applicable bankruptcy law or non-bankruptcy law, including, but not limited to, the (a) ability, if any, of such parties to setoff or recoup a security deposit held pursuant to the terms of their unexpired lease(s) with the Debtors, or Reorganized Debtors, as applicable, under the Plan, (b) assertion of rights of setoff or recoupment, if any, in connection with Claims reconciliation, or (c) assertion of setoff or recoupment as a defense, if any, to any Claim or action by the Debtors, the Reorganized Debtors, or any successors of the Debtors.

26.      Restructuring Transactions. The Debtors or the Reorganized Debtors, as applicable, are hereby authorized, immediately upon entry of this Confirmation Order (but subject to the occurrence of the Effective Date), to enter into and take all steps desirable or necessary to effectuate the Restructuring Transactions, including the entry into and consummation of the

transactions contemplated by the Plan, the Plan Supplement, the New Organizational Documents, or the Exit Facility, as the same may be modified in accordance with the Plan, from time to time prior to the Effective Date (including, without limitation, any restructuring transaction steps set forth in the Restructuring Transactions Memorandum or other exhibits to or referred to in the Plan Supplement), and may take any actions as may be necessary or appropriate to effectuate a corporate restructuring of their respective businesses or a corporate restructuring of the overall corporate structure of the Reorganized Debtors, as and to the extent provided in the Plan. Any transfers of assets, Claims, or equity interests effected or any obligations incurred through the Restructuring Transactions (including the deemed contributions of Claims or the transfers of assets of and/or Claims and Liens against a Debtor or a Reorganized Debtor or its property contemplated in the Restructuring Transactions Memorandum) are hereby approved and shall be deemed not to constitute a fraudulent conveyance, fraudulent transfer, or undervalue transaction or any similar avoidable or voidable transaction and shall not otherwise be subject to avoidance, recharacterization, or subordination for any purposes whatsoever and shall not constitute an unfair preference or a preferential transfer, fraudulent conveyance, or any similar avoidable or voidable transaction under the Bankruptcy Code or any applicable Law, whether federal, state, or foreign Law. Except as otherwise provided in the Plan, including in the Restructuring Transactions Memorandum, each Reorganized Debtor, as applicable, shall continue to exist after the Effective Date as a separate corporate Entity, limited liability company, partnership, professional corporation, or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form, as the case may be, under the applicable Law in the jurisdiction in which such applicable Debtor is incorporated or formed. The Debtors or the Reorganized Debtors, as applicable, are hereby authorized, immediately upon entry of this

37

Confirmation Order, without the need to seek any third-party consents, corporate approvals, or further approvals of this Court, to take any and all actions necessary to implement the Restructuring Transactions contemplated by the Restructuring Transactions Memorandum, including the transfers of assets of and/or Claims and Liens against a Debtor or a Reorganized Debtor or its property.

27.     Cancellation of Equity Interests.  Pursuant to Article IX.D of the Plan. as of the Effective Date, any and all Equity Interests (Class 9) shall be deemed automatically cancelled, discharged, and surrendered and shall be of no further force, and the obligations of the Debtors thereunder or in any way related thereto, including any obligation of the Debtors to pay any franchise or similar type taxes on account of such Equity Interests, shall be discharged.

28.     Specific Authorizations as to New Equity Interests; Exemption.  Pursuant to Article XI.C of the Plan, from and after the Effective Date, the Reorganized Debtors are authorized to issue the New Equity Interests in accordance with the provisions of the Plan.  Pending the occurrence of the Effective Date, the Debtors are authorized and directed to take all actions as may be necessary to facilitate the issuance of the New Equity Interests as of the Effective Date, including, without limitation, executing, delivering and performing under the various documents, paying any agreed fees and costs, and providing such other support, assurances and indemnifications as may be required, to facilitate or implement the Reorganized Debtors' governing documents, any other Plan related document, or the issuance and distribution of the New Equity Interests. Upon such issuance, the New Equity Interests shall be duly and validly authorized, issued, and outstanding, fully paid and nonassessable and not subject to pre-emptive or similar rights of third parties.  The exemption from the requirements of section 5 of the Securities Act of 1933, and any state or local law requiring registration for the offer, sale, issuance,

38

exchange or transfer of the New Equity Interests provided for in the Plan is authorized by and ordered hereby pursuant to 11 U.S.C. § 1145.

29.    Section 1146(a) Exemption. Pursuant to Section 1146 of the Bankruptcy Code, the issuance, transfer, or exchange of any security under the Plan, or the execution, delivery, or recording of any instrument of transfer pursuant to, in implementation of, or as contemplated by the Plan, the Plan Supplement, the Restructuring Transactions Memorandum, and the Exit Facility Documents, including, without limitation, any transfers to or by the Debtors, if on the Effective Date, and the Reorganized Debtors or Trustee, as applicable, if after the Effective Date, of the Debtors' property in implementation of or as contemplated by the Plan, the Plan Supplement, the Restructuring Transactions Memorandum, and the Exit Facility Documents (including, without limitation, any subsequent transfer of property by the Trust or the Abuse Claims QSF) shall not be taxed under any state or local law imposing a stamp tax, transfer tax, or similar tax or fee. Consistent with the foregoing, each recorder of deeds or similar official for any county, city or Governmental Unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax, or similar tax.

30.    Release of Liens. Except as otherwise provided herein or in the Plan, the Trust Agreement, and/or relevant documents, agreements, and instruments contained in the Plan Supplement, on the Effective Date and concurrently with the applicable Distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estates shall be fully released,

without any further action of any party, including, but not limited to, further order of the Bankruptcy Court or filing updated schedules or statements typically filed pursuant to the Uniform Commercial Code, and all of the right, title and interest of any holder of such mortgages, deeds of trust, Liens, pledges or other security interests shall revert to the Reorganized Debtors and their successors and assigns. Following the Effective Date, the Reorganized Debtors and the Trustee, as applicable, may transfer and dispose of any such property, free of any restrictions imposed by the Bankruptcy Code or the Bankruptcy Rules and without further approval of the Bankruptcy Court or notice to Creditors, except as may otherwise be required under the Plan or herein.

31.     _Administrative Expense Bar Date Provisions_. Unless otherwise provided in the Bankruptcy Code or previously filed or as otherwise governed by a bar date order or in another order of the Court, requests for payment of Administrative Claims arising on or after the Petition Date, through and including the Effective Date, must be filed with the Court and served on counsel for the Debtors, and U.S. Trustee **on or before thirty  (30) days after the Effective Date** (the "**_Administrative Expense Bar Date_**"); _provided, however_, **for any counterparty to a non-residential real property lease that is assumed or assumed and assigned under the Plan with an unresolved Postpetition Cure claim following the Cure Objections Status Conference (the "_Assumed Lease Administrative Claims_"), the deadline to file such Assumed Lease Administrative Claims on account of unresolved Postpetition Cure claim shall be 30 days following the Cure Objections Status Conference; provided, further, notwithstanding anything to the contrary in this Order or the Plan, the Claims Objection Deadline for objecting to any Assumed Lease Administrative Claims shall be limited to thirty (30) days following the filing of such Assumed Lease Administrative Claims, which period may only be extended by consent of the applicable counterparty.** Holders of Administrative Claims that

4907-7308-4584.9

are required to file and serve a request for payment of such Administrative Claims and that do not file and serve such a request by the Administrative Expense Bar Date shall be forever barred from asserting such Administrative Claims against the Debtors, the Estates, the Trust, or their respective property; *provided, however*, that a counterparty to an unexpired lease of non-residential real property shall not be required to File a request for payment of an Administrative Claim with the Bankruptcy Court; rather, they may submit their Claims directly to the Claims Agent by mail, by hand delivery, or through the Claims Agent's website, and must serve such request on the Debtors and their counsel.

32.     Professional Fee Claims. Any Professional or other Entity asserting a Professional Fee Claim must file and serve on respective counsel for the Debtors or Reorganized Debtors, as applicable, and such other Entities who are designated by the Bankruptcy Rules or order of the Bankruptcy Court an application for final allowance of such Claim **no later than thirty (30) days after the Effective Date.** All such applications for final allowance of compensation and reimbursement of expenses will be subject to the authorization and approval of the Bankruptcy Court.

33.     Provisions Related to Texas State Taxing Authorities. Notwithstanding anything else to the contrary in the Plan or Confirmation Order, these provisions will govern the treatment of the claims of the Texas Comptroller of Public Accounts (the *"**Comptroller**"*) and the Texas Workforce Commission (the "***TWC***", collectively with the Comptroller, the "***Texas State Taxing Authorities***"): (a) to the extent that interest is payable with respect to any administrative expense claim, unsecured priority claim, or secured tax claim of the Texas State Taxing Authorities, the interest rate shall be the applicable statutory interest rate; (b) nothing provided in the Plan or Confirmation Order shall affect or impair any statutory or common law setoff rights of the Texas

4907-7308-4584.9

State Taxing Authorities in accordance with 11 U.S.C. § 553; (c) nothing provided in the Plan or Confirmation Order shall affect or impair any rights of the Texas State Taxing Authorities to pursue any non-debtor third parties for tax debts or claims, and the Texas State Taxing Authorities specifically opts out of any third party releases, if any; (d) The Texas State Taxing Authorities shall not be required to file any proof of claim, motion, or request for payment in order to be paid any Administrative Claims for taxes that arises or have arisen in the ordinary course of business, including all post-petition taxes incurred by the Debtor(s) after the Petition Date; and (e) Allowed Priority and Secured Tax Claims owed to the Texas State Taxing Authorities shall be paid, upon allowance, in accordance with section 1129(a)(9)(C) of the Bankruptcy Code. For the avoidance of doubt, to the extent interest is payable with respect to any Allowed Priority and Secured Tax Claims, the Texas State Taxing Authorities will receive interest on their Allowed Priority Tax Claims after the Effective Date to the extent required by sections 511 and 1129(a)(9)(C) of the Bankruptcy Code.

34.     Provisions Relating to UnitedHealthcare. Notwithstanding anything to the contrary in the Plan, the Plan Supplement, or this Confirmation Order, all payor contracts or provider agreements (the "Network Contracts") by and between any of the Debtors, on the one hand, and UnitedHealthcare Insurance Company and its affiliates (collectively, "United"), on the other hand, shall be assumed, or as applicable, assumed and assigned, as of the Effective Date as set forth in the Plan Supplement.  Any and all unpaid claims submitted by the Debtors and overpayment claims of United shall pass through and survive assumption and will be paid in the ordinary course of business in accordance with the terms of the Network Contracts, subject to all rights and defenses of United and the Reorganized Debtors regarding the validity and enforceability of such unpaid claims and overpayment claims. Nothing in the Plan, the Plan Supplement, this

Confirmation Order, or section 365 of the Bankruptcy Code shall affect the rights of recovery, setoff, or recoupment of United.

35.     <u>Provisions Related to Cigna</u>.  Notwithstanding anything to the contrary in the Plan, the Plan Supplement, any Notice related thereto, or this Order:

a.     The active Third Party Payor contracts between Cigna (as such term is defined in the *Limited Objection of Cigna to (i) Final Disclosure Statement Approval, (ii) Confirmation of Amended Plan, (iii) Notice of Proposed Assumption and Assignment, and (iv) Supplemental Credit Bid Sale Motion* [Docket No. 623] (the "***Cigna Objection***")) and the Debtors (collectively, the "***Cigna Payor Contracts***") shall be assumed under the Plan and assigned to the applicable respective Reorganized Debtor as of the Effective Date and, in lieu of cure, all obligations due and unpaid under the Cigna Payor Contracts accruing prior to the Effective Date shall pass through to the applicable respective Reorganized Debtor and survive assumption and assignment, and nothing in this Order or section 365 of the Bankruptcy Code shall affect such obligations; *provided that*, in connection with such obligations, any defenses, claims, counterclaims, affirmative defenses, and other rights that exist under the Cigna Payor Contracts and applicable law are preserved and unimpaired.

b.     The ASO Agreements (as defined in the Cigna Objection) shall be assumed under the Plan and assigned to the applicable respective Reorganized Debtor as of the Effective Date and, in lieu of cure, all obligations due and unpaid under the ASO Agreements accruing prior to the Effective Date shall pass through to the applicable respective Reorganized Debtor and survive assumption and assignment, and nothing in this Order or section 365 of the Bankruptcy Code shall affect such obligations; *provided that*,

4907-7308-4584.9

in connection with such obligations, any defenses, claims, counterclaims, affirmative defenses, and other rights that exist under the ASO Agreements and applicable law are preserved and unimpaired; and upon the Effective Date, the Debtors shall transfer to the respective Reorganized Debtors, the Debtors' segregated Plan Bank Accounts (as defined in the Cigna Objection) through which eligible healthcare claims of the Debtors' employees and their dependents are funded under the ASO Agreements.

c.      No later than the Effective Date, the Debtors shall provide written notice (email will suffice) to Cigna, through its counsel of record, of the respective Reorganized Debtor assignee for each Cigna Payor Contract and each ASO Agreement.

36.     <u>Authorization to Borrow</u>. In order to provide the Debtors with sufficient financing to consummate the transactions required upon the Effective Date of the Plan, the Debtors are authorized to amend the DIP Financing Agreement, pursuant to the "Second Amendment," to increase the loan commitment thereunder from to $30.5 million to $63.04 million. The Second Amendment, in form and substance attached as **Exhibit B** is approved, and the Debtors are authorized and empowered to execute and consummate the Second Amendment.

37.     <u>Carbon Health Physicians, PA</u>.  Solely for purposes of Internal Revenue Code section 3121(a)(1) and Treas. Reg. 31.3121(a)(1) and consistent with the Restructuring Transaction Memorandum, Carbon Health Physicians, PA, will be the successor employer of Carbon Health Medical Group of Florida, PA, as described in Internal Revenue Code section 3121(a)(1) and Treas. Reg. 31.3121(a)(1).

38.     <u>Notices of Confirmation and Effective Date</u>. The Debtors shall serve a combined notice of entry of this Confirmation Order and notice of the Effective Date in accordance with Bankruptcy Rules 2002 and 3020(c) on all creditors, equity holders, and parties having requested

notice in the Chapter 11 Cases. Notwithstanding the above, no notice of Confirmation or Effective Date or service of any kind shall be required to be mailed or made upon any party to whom the Debtors mailed notice of the Combined Hearing, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address" or "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address. The above-referenced notices are adequate under the particular circumstances of the Chapter 11 Cases and no other or further notice is necessary.

39.     Payment of Statutory Fees. All fees payable under section 1930 of chapter 123 of title 28 of the United States Code shall be paid on the Effective Date, or when due. As of the Effective Date, the Reorganized Debtors may seek to close any of the Debtors' cases by filing a motion for entry of a final decree. The Voting Agent is authorized to destroy all paper/hardcopy records related to this matter two years after the Effective Date has occurred.

40.     Successors and Assigns. The rights, duties and obligations of any Person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Person.

41.     Plan Supplement. The documents contained in the Plan Supplement, and any amendments, modifications, and supplements thereto, and all documents and agreements introduced into evidence by the Debtors at the Combined Hearing (including all exhibits and attachments thereto and documents referred to therein), and the execution, delivery, and performance thereof by the Trust and/or the Reorganized Debtors, are authorized and approved when they are finalized, executed, and delivered. Without further order or authorization of this Court, the Debtors, the Reorganized Debtors, and their respective successors are authorized and empowered to make all modifications to all documents included as part of the Plan Supplement

4907-7308-4584.9

that are consistent with the Plan. To the extent any document intended to be in the Plan Supplement is not attached to the Plan Supplement as of the entry of this Confirmation Order, the Debtors or the Reorganized Debtors, as applicable, are authorized to enter into such document to the extent it is consistent with this Confirmation Order and the Plan (including any applicable consent rights and approval requirements set forth therein).

42.     Exit Facility.  On the Effective Date, the Reorganized Debtors shall enter into the Exit Facility on the terms set forth in the Exit Credit Agreement and the Loan Documents (as defined therein, the "***Exit Facility Documents***"), and are hereby authorized to enter into the Exit Facility.  This Confirmation Order shall be deemed approval of the Exit Facility and the Exit Facility Documents, as applicable, and all transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtors in connection therewith, including the payment of all fees, indemnities, expenses, and other payments provided for therein and authorization of the Reorganized Debtors to enter into and execute the Exit Facility Documents and such other documents as may be required to effectuate the treatment afforded by the Exit Facility.

43.     On the Effective Date, all of the Liens and security interests to be granted in accordance with the Exit Facility Documents: (a) shall be deemed to be granted; (b) shall be legal, binding, automatically perfected, non-avoidable, and enforceable Liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the Exit Facility Documents; (c) shall be deemed automatically perfected on or prior to the Effective Date, subject only to such Liens and security interests as may be permitted under the respective Exit Facility Documents; and (d) shall not be subject to avoidance, recharacterization, or equitable subordination for any

46

purposes whatsoever and shall not constitute preferential transfers, fraudulent transfers, or fraudulent conveyances under the Bankruptcy Code or any applicable non-bankruptcy Law.

44. The Reorganized Debtors granting such Liens and security interests are authorized to make all filings and recordings, and to obtain all government approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, federal, or other Law that would be applicable in the absence of the Plan and this Confirmation Order (it being understood that perfection shall occur automatically by virtue of entry of this Confirmation Order and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable Law to give notice of such Liens and security interests to third parties.

45. Notwithstanding anything to the contrary in the Plan or this Confirmation Order, the Liens granted in connection with the Exit Facility shall not encumber leasehold interests of non-residential real property that prohibit or restrict the granting of such Liens in the applicable lease except as permitted pursuant to applicable non-bankruptcy law (but shall include the proceeds of the sale or disposition of such leases) and (b) any security deposits (in possession of the landlord) or the Reorganized Debtors' interests, if any, in pre-paid rent, unless Liens on such security deposits or pre-paid rent are expressly permitted pursuant to the underlying lease documents; provided, that the Liens and security interests granted pursuant to the Exit Facility shall extend to any such security deposits or pre-paid rent upon reversion thereof to the Reorganized Debtors, if at all.

46. Binding Effect of the Plan. The Plan shall bind the Debtors, Reorganized Debtor, the Trustee, any Entity receiving or acquiring property under the Plan, any Trust Beneficiaries,

47

and any Creditor or Interest Holder, whether or not such Creditor or Interest Holder has filed a Proof of Claim or Interest in the Chapter 11 Cases, whether or not the Claim of such Creditor or the Interest of such Interest Holder is Impaired under the Plan, and whether or not such Creditor or Interest Holder has accepted or rejected the Plan. All Claims and Debts shall be fixed and adjusted pursuant to the Plan. The Plan shall also bind any taxing authority, recorder of deeds, or similar official for any county, state, or Governmental Unit or parish in which any instrument related to under the Plan or related to any transaction contemplated under the Plan is to be recorded with respect to any taxes of the kind specified in Bankruptcy Code section 1146(a).

47.     Governmental Approvals Not Required. Except as otherwise specifically provided herein, this Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or other governmental authority with respect to the implementation or consummation of the Plan and Disclosure Statement, any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan and the Disclosure Statement.

48.     Applicable Non-Bankruptcy Law. Pursuant to 11 U.S.C. §§ 1123(a), 1123(b) and 1142(a), the provisions of this Order, the Plan, or any other amendments or modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law. The consummation of the Plan, including the assumption or assumption and assignment of any executory contract or unexpired lease by the Reorganized Debtors, shall not constitute a change in ownership or change in control under any employee benefit plan or program, financial instrument, loan or financing agreement, executory contract or unexpired lease or contract, lease or agreement in existence on the Effective Date to which any Debtor is a party.

48

4907-7308-4584.9

49.     Effectiveness of All Actions. All actions authorized to be taken pursuant to the Plan shall be effective on, prior to, or after the Effective Date pursuant to this Confirmation Order, without further application to or order of the Bankruptcy Court or further action by the respective officers, directors, members, managers, or the Trust and with the effect that such actions had been taken by unanimous action of such officers, directors, members, managers, or employees.

50.     Plan and Confirmation Order Mutually Dependent. This Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the Debtors' consent; and (c) nonseverable and mutually dependent.

51.     Reversal. If any of the provisions of this Confirmation Order are hereafter reversed, modified, or vacated by a subsequent order of the Bankruptcy Court or any other court, such reversal, modification, or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under, or in connection with, the Plan prior to receipt of written notice of such order by the Debtors. Notwithstanding any such reversal, modification, or vacatur of this Confirmation Order, any such act or obligations incurred undertaken pursuant to, and in reliance on, this Confirmation Order prior to the effective date of such reversal, modification, or vacatur shall be governed in all respects by the provisions of this Confirmation Order, the Plan, all documents relating to the Plan, and any amendments or modifications to any of the foregoing.

52.     No Stay. Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall not be stayed and shall be immediately effective and enforceable and deemed binding upon the Debtors, the Trust, and any and all Holders of Claims and Interests, all entities that are parties to or subject to the settlements, compromises, releases, and injunctions described in the Plan or in this Confirmation Order, all

4907-7308-4584.9

state or local governments and governmental officials subject to the provisions of section 1146(a) of the Bankruptcy Code, and any and all non-Debtor parties to executory contracts and unexpired leases with the Debtors.

53.     Confirmation Order Supersedes. This Confirmation Order shall supersede any Bankruptcy Court orders issued prior to the Confirmation Date that may be inconsistent with this Confirmation Order.

54.     Substantial Consummation. On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

55.     Recording. The Debtors, Reorganized Debtors, and the Trustee hereby are authorized to deliver a notice or short form of this Confirmation Order, with the Plan attached, to any state or local recording officer, and such officer must accept for filing such documents or instruments without charging any stamp tax, recording tax, personal property transfer tax, mortgage, or other similar tax. Such notice (a) shall have the effect of an order of this Court, (b) shall constitute sufficient notice of the entry of this Confirmation Order to such filing and recording officers, and (c) shall be a reasonable instrument notwithstanding any contrary provision of non-bankruptcy law. This Court specifically retains jurisdiction to enforce the foregoing direction, by contempt or otherwise.

56.     Plan and Confirmation Order Govern. Without intending to modify any prior order of this Court (or any agreement, instrument, or document addressed by any prior order), in the event of an inconsistency between the Plan, on the one hand, and any other agreement, instrument, or document intended to implement the provisions of the Plan, on the other, the provisions of the Plan shall govern; *provided, further,* that, for the avoidance of doubt, in the event of any

50

4907-7308-4584.9

inconsistency between the Plan and the terms of this Confirmation Order, the terms of this Confirmation Order shall govern.

57.     <u>Final Order</u>. This Confirmation Order is a final order, and the period in which an appeal must be filed shall commence immediately upon the entry hereof.

58.     <u>Governmental Units</u>. Nothing in this Order, the Plan, or Plan Documents discharges, releases, precludes, exculpates, or enjoins any liability to a Governmental Unit of a non-debtor. Nothing in this Order, the Plan, or Plan Documents shall affect any setoff or recoupment rights of any Governmental Unit.

59.     <u>Retention of Jurisdiction</u>. Notwithstanding the entry of this Confirmation Order of the occurrence of the Effective Date, this Court shall retain jurisdiction over the Chapter 11 Cases and any of the proceedings related to the Chapter 11 Cases pursuant to section 1142 of the Bankruptcy Code and 28 U.S.C. § 1334 to the fullest extent permitted by the Bankruptcy Code and other applicable law, including, without limitation, such jurisdiction as is necessary to ensure that the purpose and intent of the Plan are carried out and as set forth in Article XVIII of the Plan.

Dated: May ___, 2026

_____
CHRISTOPHER M. LOPEZ
UNITED STATES BANKRUPTCY JUDGE

4907-7308-4584.9

# EXHIBIT A

Plan

**EXHIBIT B**

**(Second Amendment)**

4907-7308-4584.9

EXECUTION VERSION

**SECOND AMENDMENT TO**
**SENIOR SECURED SUPERPRIORITY DEBTOR-IN-POSSESSION**
**FINANCING AGREEMENT**

THIS **SECOND AMENDMENT TO SENIOR SECURED SUPERPRIORITY DEBTOR-IN-POSSESSION FINANCING AGREEMENT** (this "**Amendment**"), dated as of May 29, 2026, is entered into by and among CARBON HEALTH TECHNOLOGIES, INC., a Delaware corporation ("**Carbon Health**"), as a borrower, debtor and debtor in possession under Chapter 11 of the Bankruptcy Code, the other borrowers signatory hereto, each as a borrower, debtor and debtor in possession under Chapter 11 of the Bankruptcy Code (the "**Medical Group Borrowers**" and together with Carbon Health, the "**Borrowers**" and each, a "**Borrower**"), certain lenders from time to time party hereto (collectively, the "**Lenders**", and each, a "**Lender**"), and Future Solution Investments LLC, a Wyoming limited liability company, as administrative and collateral agent for the Lenders (in such capacities, the "**Agent**").

RECITALS

**WHEREAS**, Borrowers have entered into that certain Senior Secured Superpriority Debtor-In-Possession Financing Agreement, dated as of February 2, 2026, as approved by the Final DIP Order [Docket No. 104] entered February 27, 2026, as amended by that certain First Amendment to Senior Secured Superpriority Debtor-in-Possession Financing Agreement, dated as of April 27, 2026, as approved by the Order Approving First Amendment to Senior Secured Superpriority Debtor-in-Possession Financing Agreement [Docket No. 609] entered May 8, 2026  (as further amended, restated, supplemented or otherwise modified prior to the date hereof, the "**Existing DIP Financing Agreement**" and as amended and otherwise modified by this Amendment, and as the same may be further amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "**DIP Financing Agreement**"), with the lenders from time to time party thereto (collectively, the "**Lenders**" and each a "**Lender**"), and the Agent;

**WHEREAS**, in accordance with the terms of the DIP Financing Agreement, the parties hereto have agreed to modify certain provisions of the DIP Financing Agreement, including, without limitation, to (i) increase the Total Term Loan Commitments to $63,040,000 from $30,500,000, and (ii) make certain other amendments, as set forth herein.

**NOW, THEREFORE**, in consideration of the premises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

AGREEMENT

**SECTION 1     Definitions; Interpretation.**

(a)     **Incorporation of Recitals**.  The recitals hereinabove set forth constitute an integral part of this Amendment, evidencing the intent of the parties in executing this Amendment, and describing the circumstances surrounding its execution. Accordingly, said recitals are, by express reference, made a part of the covenants hereof, and this Amendment shall be construed in light thereof.

(b)     **Terms Defined in DIP Financing Agreement**.  All capitalized terms used in this Amendment (including in the recitals hereof) and not otherwise defined herein shall have the meanings assigned to them in the DIP Financing Agreement.

1193292.3

(c)    **Rules of Construction**.  The rules of construction that appear in Section 1.2 of the DIP Financing Agreement shall be applicable to this Amendment and are incorporated herein by this reference.

(d)    **References Within DIP Financing Agreement**.  Each reference in the DIP Financing Agreement to "this Agreement" and the words "hereof," "herein," "hereunder," or words of like import, shall mean and be a reference to the DIP Financing Agreement as amended by this Amendment. This Amendment shall be a Loan Document.

**SECTION 2    Amendments to the Existing DIP Financing Agreement**.  Subject to the satisfaction of the conditions set forth in <u>Section 3</u> of this Amendment, each of the parties hereto agrees that, effective on the Second Amendment Effective Date (as hereinafter defined), the Existing DIP Financing Agreement shall be amended as follows:

(a)    Section 1.1 of the Existing DIP Financing Agreement is hereby amended by amending and restating the definition of "Total Term Loan Commitments" as follows:

" '**Total Term Loan Commitments**' means the sum of the amounts of the Lenders' Term Loan Commitments; provided that (a) prior to the Final Facility Effective Date such aggregate amount shall not exceed $9,000,000, (b) on and after the Final Facility Effective Date such aggregate amount shall not exceed $19,500,000, (c) on and after the First Amendment Effective Date, such aggregate amount shall not exceed $30,500,000 and (d) on and after the Second Amendment Effective Date, such aggregate amount shall not exceed $63,040,000.  For the avoidance of doubt, the Total Term Loan Commitment amount on the Second Amendment Effective Date includes and is not in addition to the Total Term Loan Commitment amount in effect on the Final Facility Effective Date, the Final Facility Effective Date or the First Amendment Effective Date."

(b)    Section 1.1 of the Existing DIP Financing Agreement is hereby amended by adding the following definitions in alphabetical order:

" '**Second Amendment**' means that certain Second Amendment to Senior Secured Superpriority Debtor-In-Possession Financing Agreement, dated as of May 29, 2026, by and among the Borrowers, the Lenders and the Agent.

'**Second Amendment Effective Date**' has the meaning given such term in Section 3 of the Second Amendment."

(c)    Section 2.1(a) of the Existing DIP Financing Agreement is hereby amended by deleting "and" at the end of clause (ii), adding "and" at the end of clause (iii), and adding the following as a new clause (iv):

"(iv)    from and after the Second Amendment Effective Date up to the Maturity Date, delayed-draw term loans in an aggregate original principal amount up to $30,500,000 in accordance with, and subject to the timing set forth in, the Approved Budget;"

(d)    Schedule 1.1(a) *Term Loan Commitments* of the Existing DIP Financing Agreement is hereby replaced in its entirety with the new Schedule 1.1(a) *Term Loan Commitments* attached hereto as Annex A.

**SECTION 3    Conditions of Effectiveness**.  The effectiveness of this Amendment (the date of such

effectiveness, the "**Second Amendment Effective Date**") shall be subject to satisfaction of the following conditions:

      (a)    Agent's receipt of this Amendment, duly executed by the Agent, Lenders and the Borrowers;

      (b)    entry by the Bankruptcy Court of an order, in form and substance satisfactory to the Agent, approving the terms and conditions of this Amendment and authorizing each Borrower's performance under this Amendment and the DIP Financing Agreement; and

      (c)    entry by the Bankruptcy Court of the Confirmation Order.

**SECTION 4    Representations and Warranties**. To induce the Agent and Lenders to enter into this Amendment, each Borrower hereby represents and warrants, as of the date hereof (or to the extent such representations and warranties relate to an earlier date, in which case, as of such date), (a) that the representations and warranties made by it in Section 5 of the DIP Financing Agreement and in the other Loan Documents are true and correct in all material respects; *provided*, *however*, that such materiality qualifier shall not be applicable to any representations and warranties that already are qualified or modified by materiality in the text thereof, (b) no fact or condition exists that would (or would, with the passage of time, the giving of notice, or both) constitute an Event of Default, and (c) no event or condition has occurred that has had or could reasonably be expected to have a Material Adverse Effect.

**SECTION 5    Miscellaneous.**

      (a)    **Loan Documents Otherwise Not Affected; Reaffirmation**. Except as expressly amended pursuant hereto or referenced herein, the DIP Financing Agreement and the other Loan Documents shall remain unchanged and in full force and effect and are hereby ratified and confirmed in all respects. Except as expressly set forth herein, the waiver herein shall not be deemed a waiver of any breach by any Borrower of any representations, warranties, covenants or agreements contained in the DIP Financing Agreement or any of the other Loan Documents with respect to any other transaction or matter or a waiver of any Default or Event of Default or any modification of, or a departure from the requirements of, any other term or condition of the DIP Financing Agreement or any of the other Loan Documents. Lenders' and Agent's execution and delivery of, or acceptance of, this Amendment shall not be deemed to create a course of dealing or otherwise create any express or implied duty by any of them to provide any other or further amendments, consents or waivers in the future.  Each Borrower hereby reaffirms the security interest granted pursuant to the Loan Documents and hereby reaffirms that such grant of security in the Collateral granted as of the Closing Date continues without novation and secures all Secured Obligations under the DIP Financing Agreement and the other Loan Documents. Each Borrower hereby agrees that nothing herein contained in any way impairs Agent's or any Lender's existing rights and priority in the Collateral under the DIP Financing Agreement and the other Loan Documents.

      (b)    **Conditions**. For purposes of determining compliance with the conditions specified herein, each Lender that has signed this Amendment shall be deemed to have consented to, approved or accepted or to be satisfied with, each document or other matter required thereunder to be consented to or approved by or acceptable or satisfactory to a Lender unless Agent shall have received notice from such Lender prior to the date hereof specifying its objection thereto.

      (c)    **Approved Budget**.  The updated 13-week cash flow forecast attached hereto as Exhibit I has been approved in form and substance by the Agent and constitutes the Approved Budget, as referenced in clause (b) of the definition of "Approved Budget" in the DIP Financing Agreement, and in accordance with the requirements of Section 7.1(b) of the DIP Financing Agreement.

(d) **No Reliance**. Each Borrower hereby acknowledges and confirms to Agent and Lenders that such Borrower is executing this Amendment on the basis of its own investigation and for its own reasons without reliance upon any agreement, representation, understanding or communication by or on behalf of any other Person.

(e) **Costs and Expenses**.  Each Borrower jointly and severally agrees to pay to Agent the reasonable out-of-pocket costs and expenses of Agent and Lenders party hereto, and the fees and disbursements of counsel to Agent and Lenders party hereto, in each case, as described in Section 10.11 of the DIP Financing Agreement.

(f) **Binding Effect**. This Amendment binds and is for the benefit of the successors and permitted assigns of each party.

(g) **Governing Law**. This Amendment and the other Loan Documents shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, applicable to contracts made and to be performed in the State of New York, except as governed by the Bankruptcy Code.

(h) **Complete Agreement; Amendments**. This Amendment and the Loan Documents represent the entire agreement about this subject matter and supersede prior negotiations or agreements with respect to such subject matter. All prior agreements, understandings, representations, warranties, and negotiations between the parties about the subject matter of this Amendment and the Loan Documents merge into this Amendment and the Loan Documents.

(i) **Severability of Provisions**. Each provision of this Amendment is severable from every other provision in determining the enforceability of any provision.

(j) **Counterparts**. This Amendment may be executed in any number of counterparts and by different parties on separate counterparts, each of which, when executed and delivered, is an original, and all taken together, constitute one Amendment. Delivery of an executed counterpart of a signature page of this Amendment by facsimile, portable document format (.pdf) or other electronic transmission will be as effective as delivery of a manually executed counterpart hereof.

*[Remainder of page intentionally left blank.]*

IN WITNESS WHEREOF, each of the parties has signed this Amendment as of the day and year first above written, which Amendment shall be made effective as of the Second Amendment Effective Date.

**CARBON HEALTH TECHNOLOGIES, INC.**

By: _____
Name:
Title:

**CARBON HEALTH MEDICAL GROUP OF CALIFORNIA, P.C.**

By: _____
Name:
Title:

**CARBON HEALTH PRIMARY CARE OF CALIFORNIA, P.C.**

By: _____
Name:
Title:

**CARBON HEALTH MEDICAL GROUP OF FLORIDA, P.A.**

By: _____
Name:
Title:

**CARBON HEALTH PRIMARY CARE OF FLORIDA, P.A.**

By: _____
Name:
Title:

[Signature Page to Second Amendment to DIP Financing Agreement]

**CARBON HEALTH MEDICAL GROUP OF NEW JERSEY, P.A.**


By: _____
Name:
Title:

**CARBON HEALTH PRIMARY CARE OF NEW JERSEY, P.A.**


By: _____
Name:
Title:

**CENTRAL JERSEY URGENT CARE LIMITED LIABILITY COMPANY**


By: _____
Name:
Title:

**DJAVAHERIAN MEDICAL PRACTICE, PLLC**


By: _____
Name:
Title:

**CARBON HEALTH MEDICAL GROUP OF MASSACHUSETTS, P.C.**


By: _____
Name:
Title:

**CARBON HEALTH MEDICAL GROUP OF KANSAS, P.A.**

By: _____
Name:
Title:

[Signature Page to Second Amendment to DIP Financing Agreement]

**CARBON HEALTH PRIMARY CARE OF KANSAS, P.A.**


By: _____
Name:
Title:

**CARBON HEALTH MEDICAL GROUP OF SUNNYVALE, INC.**


By: _____
Name:
Title:

**CARBON HEALTH MEDICAL GROUP OF TEXAS, PLLC**


By: _____
Name:
Title:

**HILLCREST URGENT CARE OF ALABAMA PC**


By: _____
Name:
Title:

**RITECARE MEDICAL CENTER, LLC**


By: _____
Name:
Title:

**TREAT MEDICAL, INC.**


By: _____
Name:
Title:

[Signature Page to Second Amendment to DIP Financing Agreement]

**CARBON HEALTH SOUTH BAY MEDICAL GROUP, P.C.**


By:    _____
Name:
Title:

**CARBON HEALTH SOUTH BAY PRIMARY CARE, P.C.**


By:    _____
Name:
Title:


**CARBON HEALTH MEDICAL GROUP OF WISCONSIN, S.C.**


By:    _____
Name:
Title:

**CARBON HEALTH PRIMARY CARE OF WISCONSIN, S.C.**


By:    _____
Name:
Title:

**CARBON HEALTH ALPHA MEDICAL GROUP OF CALIFORNIA, P.C.**


By:    _____
Name:
Title:

**CARBON HEALTH ALPHA MEDICAL GROUP OF FLORIDA, P.A.**


By:    _____
Name:
Title:

[Signature Page to Second Amendment to DIP Financing Agreement]

**CARBON HEALTH ALPHA MEDICAL GROUP OF KANSAS, P.A.**


By:  _____
Name:
Title:

**CARBON HEALTH ALPHA PRIMARY CARE OF CALIFORNIA, P.C.**


By:  _____
Name:
Title:

**CARBON HEALTH ALPHA PRIMARY CARE OF FLORIDA, P.A.**


By:  _____
Name:
Title:

**CARBON HEALTH ALPHA PRIMARY CARE OF KANSAS, P.A.**


By:  _____
Name:
Title:

**CARBON HEALTH EAST BAY MEDICAL GROUP, P.C.**


By:  _____
Name:
Title:

**CARBON HEALTH EAST BAY PRIMARY CARE, P.C.**


By:  _____
Name:
Title:

[Signature Page to Second Amendment to DIP Financing Agreement]

**AGENT:**

**FUTURE SOLUTION INVESTMENTS LLC**

By:      _____
Name:   Michael F. Solomon
Title:   Managing Director

[Signature Page to Second Amendment to DIP Financing Agreement]

**LENDER:**

**FUTURE SOLUTION INVESTMENTS LLC**


By:      _____
Name:  Michael F. Solomon
Title:    Managing Director

[Signature Page to Second Amendment to DIP Financing Agreement]

**ANNEX A**

**Restated Schedule 1.1(a)**

**TOTAL TERM LOAN COMMITMENTS**

**Total Term Loan Commitments on Second Amendment Effective Date**

| Lender | Term Loan Commitment |
|---|---|
| Future Solution Investments LLC | $63,040,000.00 |
| **Total** | **$63,040,000.00** |

**EXHIBIT I**

**Approved Budget**

**(see attached)**

**Carbon Health**
**DIP Budget**

| Actuals/Forecast (USD $000s) | Actuals | Forecast | Forecast | Forecast | Forecast | | Total FCST | | Additional |
|---|---|---|---|---|---|---|---|---|---|
| MFY | May 26 | May 26 | May 26 | Jun 26 | Jun 26 | | Jun 26 | | DIP Funding |
| FCST Period | - | 1 | 2 | 3 | 4 | | 4 | | |
| Period End | 5/15/26 | 5/22/26 | 5/29/26 | 6/5/26 | 6/12/26 | | 6/12/26 | | |
| **Receipts** | | | | | | | | | |
| Operating Collections | 2,710 | 2,445 | 2,008 | 2,352 | 2,358 | | 9,164 | | - |
| DIP Funding | - | 5,500 | - | 5,500 | - | | 11,000 | | 32,540 |
| **Total Receipts** | $ 2,710 | $ 7,945 | $ 2,008 | $ 7,852 | $ 2,358 | | $ 20,164 | $ | 32,540 |
| **Operating Disbursements** | | | | | | | | | |
| Payroll + Benefits | (283) | (4,133) | (459) | (4,486) | (766) | | (9,844) | | - |
| Vendor Payments | (881) | (138) | (7,490) | (2,702) | (1,463) | | (11,793) | | - |
| Rent | - | - | - | (1,361) | - | | (1,361) | | - |
| CH Colombia/Turkey | - | (311) | - | - | - | | (311) | | - |
| **Operating Disbursements** | (1,164) | (4,582) | (7,948) | (8,549) | (2,229) | | (23,308) | | - |
| **Non-Operating Disbursements** | | | | | | | | | |
| Notice Plan | - | - | (214) | - | (214) | | (428) | | - |
| Professional Fees | (609) | - | (4,870) | (1,405) | (1,167) | | (7,441) | | - |
| Exit Fees | - | - | - | - | - | | - | | (32,540) |
| **Non-Operating Disbursements** | (609) | - | (5,084) | (1,405) | (1,381) | | (7,869) | | (32,540) |
| **Liquidity** | | | | | | | | | |
| Beginning Cash Balance | 11,870 | 12,806 | 16,169 | 5,145 | 3,044 | | 12,806 | | 1,792 |
| Net Cash Flow | 936 | 3,363 | (11,023) | (2,102) | (1,251) | | (11,014) | | 0 |
| **Ending Cash Balance** | 12,806 | 16,169 | 5,145 | 3,044 | 1,792 | $ | 1,792 | $ | 1,792 |
| Letters of Credit | (670) | (670) | (670) | (670) | (670) | | (670) | | (670) |
| Restricted Account | (399) | (399) | (399) | (320) | (320) | | (320) | | (320) |
| Utility Deposit | (135) | (135) | (135) | (135) | (135) | | (135) | | (135) |
| Rent Reserve | (400) | (400) | (400) | (400) | (400) | | (400) | | (400) |
| **(Less) Restricted Cash** | (1,605) | (1,605) | (1,605) | (1,526) | (1,526) | $ | (1,526) | $ | (1,526) |
| **Net Available Cash** | 11,201 | 14,564 | 3,540 | 1,518 | 267 | $ | 267 | $ | 267 |
| **DIP Funding** | | | | | | | | | |
| Beginning Balance | 19,500 | 19,500 | 25,000 | 25,000 | 30,500 | | 19,500 | | 30,500 |
| +Draw/(Repay) | - | 5,500 | - | 5,500 | - | | 11,000 | | 32,540 |
| **Ending Balance** | $ 19,500 | $ 25,000 | $ 25,000 | $ 30,500 | $ 30,500 | | $ 30,500 | $ | 63,040 |

**Carbon Health**
**Summary of Proposed DIP Commitment**

| (USD $000s) | Amounts |
|---|---:|
| **DIP** | |
| **Current DIP Commitment** | **30,500** |
| **Additional DIP Funding at or current to the Effective Date** | |
| **Additional DIP Budget Items** | |
| Pre-petition taxes | 488 |
| Accrued Payroll & Benefits | 4,000 |
| Executory Contract Vendor Cure, net of Critical vendor reserve | 650 |
| Executory Contract Landlord Cure, net of landlord rent reserve | 1,103 |
| KERP | 1,110 |
| KEIP | 1,195 |
| Utility deposit | (135) |
| US Trustee | 500 |
| Attorney General Settlement | 375 |
| Litigation Trust | 12,000 |
| M&A / Restructuring Transaction Fee | 1,146 |
| DIP Transaction Fee | 250 |
| Post-petition taxes | 618 |
| IRS taxes | 2,442 |
| CSC replacement equipment | 1,000 |
| Camber post-petition expense | 1,200 |
| John Muir Partnership settlement | 971 |
| Prime Partnership settlement | 351 |
| Landlord Legal fees | 200 |
| UCC supplement fees | 2,275 |
| Keen Lease Settlement Fees | 800 |
| **Subtotal of Additional DIP Funding** | **32,540** |
| **Total DIP Funding** | **63,040** |